ANTHONY & PARTNERS, LLC
JOHN A. ANTHONY (FL SBN 0731013)
  janthony@anthonyandpartners.com
ANDREW J. GHEKAS (FL SBN 0119169)
  aghekas@anthonyandpartners.com
*Both admitted Pro Hac Vice*
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone: 813.273.5616
Facsimile: 813.221.4113

NIESAR & VESTAL LLP
PETER C. CALIFANO (SBN 129043)
  pcalifano@nvlawllp.com
JOHN A. KELLEY (SBN 194073)
  jkelley@nvlawllp.com
90 New Montgomery St. 9th Floor
San Francisco, California 94105
Telephone: 415.882.5300
Facsimile: 415.882.5400

Attorneys for Plaintiff
CENTENNIAL BANK

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### [San Jose Division]

| | |
|---|---|
| In re | CASE NO. 21-50028 SLJ |
| EVANDER FRANK KANE, | Chapter 7 |
| Debtors. | |
| CENTENNIAL BANK, an Arkansas state chartered bank, | Adv No. 21-05016 |
| Plaintiff, | **DECLARATION OF ANDREW J. GHEKAS IN SUPPORT OF CENTENNIAL BANK'S MOTION FOR SUMMARY JUDGMENT VOLUME 1 (EXHIBITS 1-14)** |
| vs. | |
| EVANDER FRANK KANE, | Date: January 10, 2023 |
| Defendant. | Time: 1:30pm<br>Place: Via Zoom Video-conference<br>Judge: Hon. Stephen L. Johnson |

I, Andrew J. Ghekas, know the following matters to be true of my own, personal knowledge and, if called as a witness, could and would testify competently thereto:

1.     I am a member of the State Bar of Florida in good standing and am admitted *pro hac vice* to practice before this Court in this case. I am a partner employed by Anthony & Partners, LLC, counsel of record for creditor Centennial Bank ("Centennial"). This declaration is offered in support of "Centennial Bank's Motion for Summary Judgment" (the "Summary Judgment Motion") regarding Debtor Evander Frank Kane's ("Kane").

2.     The defendant, Kane, is also the debtor who commenced Case No. 21-50028-SLJ (the "Bankruptcy Case") with the filing of a voluntary petition under Chapter 7 of the Bankruptcy Code on January 9, 2021 (the "Petition Date"). Frode S. Hjelmest (the "Chapter 7 Trustee") was appointed as the Chapter 7 Trustee in the Bankruptcy Case. Marta Villacorta, Esquire (the "United States Trustee") was appointed as the United States Trustee in the Bankruptcy Case.

3.     Centennial is scheduled as a secured creditor in the amount of $8,360,000. Centennial has filed its "Proof of Claim" (the "Centennial Obligation") [POC 5] on March 18, 2021. On December 17, 2021, Centennial amended its Proof of Claim.

4.     On May 5, 2021, Centennial filed its "Complaint to Determine Nondischargeability of Debt Pursuant to: 11 U.S.C. §523(a)(2)(A); and 11 U.S.C. §§727(a)(2)-(a)(5)" (the "Original Adversary Complaint") thereby initiating the above-captioned adversary proceeding, No. 21-05016 (the "Adversary Proceeding").

5.     On December 7, 2021, Centennial amended the Original Adversary Complaint by filings its "Amended Complaint to Determine Nondischargeability of Debt Pursuant to: 11 U..S.C. §523(a)(2)(A); and 11 U.S.C. §§727(a)(2)-(a)(5)" (the "Operative Adversary Complaint"), pursuant to the "Order on Stipulation to File an Amended Complaint and Amended Answer" entered on December 6, 2021.

6.     I attended, via teleconference, the initial meeting of creditors held pursuant to §341(a) (the "Initial 341 Meeting") that occurred on February 3, 2021.

7.     At the Initial 341 Meeting, Kane was examined, <u>inter alia</u>, by the United States Trustee. The United States Trustee asked Kane a series of questions regarding certain loans Kane listed on his Schedule E/F and amended Schedule E/F that Kane received from Davis Sanchez, Hebron Shyng, Mike Lispti, Pete Gianakas, Raj Banghu, and Tony Veltri (collectively, the

"Individual Loans").  A true and correct copy of the cover page, pages 55-60, and the reporter's certificate of the transcript of the Initial 341 Meeting are attached hereto as **Exhibit 1**.

        8.     As it relates to the Individual Loans, Kane testified that:

          a.    there was no written documentation relating to the loan that he received from Davis Sanchez. <u>See</u> Tr. 55:11-24, attached as part of **Exhibit 1**.

          b.    he could not recall at that time what he used the loan proceeds he received from Davis Sanchez for. <u>See</u> Tr. 55:25-56:2, attached as part of **Exhibit 1**.

          c.    he could not recall when he incurred the loan that he received from Hebron Shyng. <u>See</u> Tr. 56:3-6, attached as part of **Exhibit 1**.

          d.    he used the loan proceeds he received from Hebron Shyng to "pay off bills … [p]robably mortgages". <u>See</u> Tr. 56:7-11, attached as part of **Exhibit 1**.

          e.    there "is some written documentation, promissory note" memorializing the loan he received from Hebron Shyng. <u>See</u> Tr. 56:17-22, attached as part of **Exhibit 1**.

          f.    he could not recall when he incurred the loan that he received from Mike Lispti. <u>See</u> Tr. 56:23-4, attached as part of **Exhibit 1**.

          g.    he used the loan proceeds he received from Mike Lispti to "pay back other personal loans." <u>See</u> Tr. 57:5-6, attached as part of **Exhibit 1**.

          h.    he did not have any written documentation with respect to the loan that he received from Mike Lispti. <u>See</u> Tr. 57:11-15, attached as part of **Exhibit 1**.

          i.    he could not recall when he incurred the loan that he received from Pete Gianakas.<u>See</u> Tr. 58:12-19, attached as part of **Exhibit 1**.

          j.    he could not recall what the loan funds he received from Pete Gianakes were used for. <u>See</u> Tr. 58:20-21, attached as part of **Exhibit 1**.

          k.    he did not have any written contract with Pete Gianakas associated with the loan that he received. <u>See</u> Tr. 59:1-3, attached as part of **Exhibit 1**.

          l.    he believes that the loan he incurred from Raj Banghu was incurred sometime in 2019. <u>See</u> Tr. 59:4-14, attached as part of **Exhibit 1**.

| | | |
|---|---|---|
| 1 | m. | he could not recall what he used the loan funds he received from Raj Banhu |
| 2 | | for. <u>See</u> Tr. 59:15-17, attached as part of **Exhibit 1**. |
| 3 | n. | he did not have any documentation with respect to the loan that he received |
| 4 | | from Raj Banhu. <u>See</u> Tr. 59:21-24, attached as part of **Exhibit 1**. |
| 5 | o. | he did not recall when he incurred the loan that he received from Tony Veltri. |
| 6 | | <u>See</u> Tr. 60:23-61:4, attached as part of **Exhibit 1**. |
| 7 | p. | he did not recall what he used the loan funds that he received from Tony |
| 8 | | Veltri for. <u>See</u> Tr. 61:5-7, attached as part of **Exhibit 1**. |
| 9 | q. | there was nothing reduced to writing evidencing the loan he received from |
| 10 | | Tony Veltri. <u>See</u> Tr. 61:8-9, attached as part of **Exhibit 1**. |

9.    At the Initial 341 Meeting, Kane was also examined by the Chapter 7 Trustee who asked him a series of questions regarding each of the loans Kane incurred from Centennial, Professional Bank ("Professional"), South River Capital LLC ("South River"), and Zions Bancorporation ("Zions"), collectively, the "Non-Real Estate Loans," listed on Kane's Amended Schedules D, Schedules E_F. A true and correct copy of cover page, pages 21-23, and reporter's certificate are attached hereto as **Exhibit 2**.

10.    As it relates to the Non-Real Estate Loans, Kane testified that:

| | | |
|---|---|---|
| | a. | the loan he incurred with Centennial was used "to get [him] out of some of the hard money loans [he] was in … [a]nd pay them off." <u>See</u> Tr. 21:13-19, attached as part of **Exhibit 2**. |
| | b. | the hard money loans "were many loans that were taken out for a number of years. [That he] ended up just paying off loan after loan." <u>See</u> Tr. 21:24-22:3, attached as part of **Exhibit 2**. |
| | c. | the loan he incurred with Professional Bank was used for the "exact same thing" and "coordinated by Leon in order to pay off all the hard money loans that [he] had between those three banks." <u>See</u> Tr. 22:7-15, attached as part of **Exhibit 2**. |
| | d. | the loan he incurred from South River was to pay off a casino debt. <u>See</u> Tr. |

23:2-8, attached as part of **Exhibit 2**.

e.    the loan he incurred from Zions was to pay off hard money loans. <u>See</u> Tr. 23:13-19, attached as part of **Exhibit 2**.

11.    At the Initial 341 Meeting, I also had the opportunity to briefly examine Kane and asked him "what were those hard money loans that you paid off utilized for[]" to which Kane testified that he did not recall. A true and correct copy of cover page, page 78, and reporter's certificate are attached hereto as **Exhibit 3**.

12.    In addition to the Initial 341 Meeting, I attended and conducted the Rule 2004 Exam of Kane that occurred, via Zoom, on March 24, 2021.

13.    I also personally reviewed all of the documents produced by Kane on March 19, 2021, pursuant to the "Order Approving Stipulation Regarding Centennial Bank Rule 2004 Examination" dated March 17, 2021.

14.    At the 2004 Exam, I asked Kane a series of questions regarding his use of the loan proceeds he received from the Individual Loans. A true and correct copy of the cover page, pages 68-70, and reporter's certificate of the transcript are attached hereto as **Exhibit 4**. As it relates to each of the Individual Loans, Kane testified that:

a.    he borrowed the money from Davis Sanchez in order to "basically just be able to pay my bills" and that it was incurred "over the course of a number of years." <u>See</u> Tr. 68:14-23, attached as part of **Exhibit 4**.

b.    he borrowed the money from Hebron Shyng in order to "help pay off some debt that [he] had and also to stay current on [his] bills" and that the debt was "probably some credit card debt, some bills that [he] was behind on, so [he] can be able to pay [his] mortgages, rent at the time, food." <u>See</u> Tr. 69:5-14, attached as part of **Exhibit 4**.

c.    he borrowed the money from Mike Lispti to "help pay off some – some other people that [he] borrowed money from" and there is no documentation regarding it. <u>See</u> Tr. 69:17-70:2, attached as part of **Exhibit 4**.

d.    he borrowed the money from Pete Gianakas to "pay off some other people

| | |
|---|---|
| 1 | that [he] had borrowed money from in the past", could not recall who those |
| 2 | people were, and there is no documentation regarding the loan. <u>See</u> Tr. 70:3- |
| 3 | 15, attached as part of **Exhibit 4**. |
| 4 | e. he borrowed the money from Raj Bhangu because he "was behind on some |
| 5 | bills and needed – needed the cash to – stay current and make up some late |
| 6 | payments" and had no documentation regarding the loan. <u>See</u> Tr. 70:16- |
| 7 | 71:71, attached as part of **Exhibit 4**. |
| 8 | f. he borrowed the money from Tony Veltri to "pay off other people that [he] |
| 9 | had borrowed money from in the past", did not recall who those other people |
| 10 | were, and there is no written documentation regarding the loan. <u>See</u> Tr. 71:2- |
| 11 | 16, attached as part of **Exhibit 4**. |
| 12 | 15. Also at the 2004 Exam, Kane offered further testimony regarding his use of the Non- |
| 13 | Real Estate Loans. A true and correct copy of the cover page, pages 31-34, and 65-68, and reporter's |
| 14 | certificate are attached hereto as **Exhibit 5**. With respect to each of the Non-Real Estate Loans, |
| 15 | Kane testified that: |
| 16 | a. he did not use any of the loan proceeds received from Centennial to purchase |
| 17 | any properties, to purchase an operating business, to fund an operating |
| 18 | business, or to invest in any investments or business ventures. <u>See</u> Tr. 31:12- |
| 19 | 32:5, attached as part of **Exhibit 5**. |
| 20 | b. he could not recall if he ever owned or operated any businesses. <u>See</u> Tr. |
| 21 | 32:24-33:3, attached as part of **Exhibit 5**. |
| 22 | c. the great majority of the loan proceeds received from Professional Bank |
| 23 | "went to pay off preexisting loans", that he may have "received a small |
| 24 | portion of that amount, but [was] not sure", and did not use any of the loan |
| 25 | proceeds to purchase any property, invest in any ongoing business, or start a |
| 26 | new business. <u>See</u> Tr. 65:4-66:7, attached as part of **Exhibit 5** |
| 27 | d. the money received from the loan he took out with Zions was "used to pay |
| 28 | off preexisting loans" and not to purchase any property, invest in any ongoing |

business, or to start a new business. See Tr. 67:8-16, 22-68:11, attached as part of **Exhibit 5**.

However, Kane testified that he could not recall when he took out these prior loans or why he took them out in the first place. See Tr. 32:12-18 and 65:5-17, attached as part of **Exhibit 5**. He further testified that he did not maintain any books, records, or documents regarding these prior loans. See Tr. 34:3-5, attached as part of **Exhibit 5**.

16.     On or about January 14, 2022, Kane provided "Defendant's Responses to Plaintiff's First Request for Production of Document" (the "Initial Production Responses"), "Defendant's Responses to Plaintiff's First Request for Admission" (the "Initial Admissions"), and "Defendant's Responses to Plaintiff's First Set of Interrogatories" (the "Initial Interrogatory Responses"), collectively, the "Initial Discovery Responses." The Initial Interrogatory Responses were verified by Kane on January 12, 2022.

17.     A true and correct copy of the Initial Production Responses is attached hereto as **Exhibit 6**. A true and correct copy of the Initial Admissions is attached hereto as **Exhibit 7**. A true and correct copy of the Initial Interrogatory Responses is attached hereto as **Exhibit 8**.

18.     I have personally reviewed all of the documents produced by Kane on July 1, 2022, February 28, 2022, March 9, 2022, and March 14, 2022.

19.     On or about February 28, 2022, Kane provided "Defendant's Amended Responses to Plaintiff's First Request for Production of Document" (the "Amended Production Responses"), thereby amending Kane's response to Request for Production No. 10, 12, 13, 16, 17, 24, 26, 27, 28, 29, 30, 32, and 34, stating that "After a reasonable search, Kane did not locate any documents responsive to this request", and to Request for Production 57, stating that "Kane response that no responsive documents exist. A true and correct copy of the Amended Production Responses is attached hereto as **Exhibit 9**.

20.     On February 2, 2022, I sent correspondence to counsel for Kane in regards to his deficient discovery responses and production. On or about February 10, 2022, Kane's counsel of record, Stephen D. Finestone, Esquire, exchanged correspondence with me regarding Kane's objections and responses as set forth in the Initial Discovery Responses. As it relates specifically

to the Initial Admissions, Kane amended his answer to Request for Admission 20, due to a "scrivener's error" to reflect that Kane "Admitted" that "the debt obligation the Debtor owes to Raj Banghu, as listed in Section 4.18 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18] is a consumer debt as the term is defined above in Section I, paragraph 23. A true and correct copy of the foregoing correspondence from myself to Kane's counsel, along with the response correspondence from Kane's counsel to me, are attached hereto as **Exhibit 10**.

21. In its discovery request to Kane, Centennial requested that Kane produce "[c]opies of the Debtor's bank account statement, including any canceled checks, signature cards, wire transfers, withdrawals, debits and credits, cashier checks, and account closing documents, during the past twelve (12) years." See **Exhibit 9** at Request 53. In the Amended Production Response, Kane agreed to producing "non-privileged documents from the two years prior to the petition date that are responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search." See **Exhibit 9** at ¶¶39-40.

22. On January 21, 2022, and accompanying Kane's initial document production, counsel for Kane, Ryan Witthans, Esquire, conveyed that "[t]here are some instances where Mr. Kane agreed to produce any documents that were in his possession, custody, or control, but was unable to locate any documents." On March 1, 2022, I sent e-mail correspondence to Kane's counsel regarding (i) the lack of financial documentation contained in Kane's production to date, and (ii) the two (2) year lookback period Kane was purporting to limit discovery too. As to the latter, I first sought confirmation as to whether or not Kane maintained and preserved financial documentation responsive to Request 53 extending beyond January 2019 that Kane was withholding pursuant to his objection. As to the former, I communicated to counsel for Kane that my review of the documents produced thus far evidenced a lack of bank statements and other financial documentation pertaining to Kane's identified accounts listed on his bankruptcy schedules even for the time period Kane was agreeable to producing. Counsel for Kane responded that "I am in the process of verifying, but I do not believe that Mr. Kane has any statements dating prior to midway through 2019." A true and correct copy of the foregoing e-mail correspondence is attached hereto as **Exhibit 11**.

23.     On March 14, 2022, Kane's counsel "confirmed with Evander" that Kane "no longer has any access to the accounts at Bank of America and Wells Fargo, and cannot obtain statements electronically." See **Exhibit 11**.  On June 28, 2022, Kane's counsel "Confirmed that Mr. Kane has produced all responsive documents within his possession and control and that no further production is expected."  See **Exhibit 11**.

24.     I have personal reviewed Kane's amended Schedules A/B and note that Kane has identified eight (8) "[c]hecking, savings, or other financial accounts" as follows (collectively, the "Identified Accounts"):

      a.     Acct ending in 0171 – Checking Account: Bank of America;

      b.     Acct ending in 1607 – Checking Account: Wells Fargo;

      c.     Checking – Scotia Bank;

      d.     Savings account – Scotia Bank;

      e.     Checking – Royal Bank of Canada;

      f.     Account ending in 0532 – Royal Bank of Canada;

      g.     Acct. ending in 2824 – spouse's Wells Fargo account; and

      h.     Savings account ending in 5963 – Royal Bank of Canada.

In addition to the foregoing, Kane's Amended SOFA identifies three (3) credit cards that he utilized prior to the Petition Date, those being (i) American Express – Wells Fargo, (ii) American Express, and (iii) Royal Bank of Canada (collectively, the "Credit Cards").

25.     A review of the documents produced by Kane confirms that as to the Identified Accounts and Credit Cards, Kane has not produced bank statements or documents for:

      a.     his Bank of America account ending in -0171 predating August 22, 2019;

      b.     his Wells Fargo account ending in -1607 predating January 1, 2020;

      c.     his Scotia Bank account ending in -28 predating January 1, 2019;

      d.     his Scotia Bank account ending in -81 predating January 1, 2019;

      e.     his Royal Bank of Canada account ending in -5955 predating September 12, 2019;

      f.     his Royal Bank of Canada account ending in -0532 predating September 12,

2019;

g.     his Wells Fargo American Express account ending in 2-64004 predating September 5, 2020 or post dating December 7, 2020;

h.     his American Express credit card for any year; and

i.     his Royal Bank of Canada account ending in 4741 predating June 26, 2020.

26.     On July 6, 2022, I conducted the deposition of Kane (the "Deposition") in the Adversary Proceeding. I asked Kane a series of questions regarding the lack of bank statements and documentation associated with the Identified Accounts and Credit Cards. A true and correct of cover page, pages 34, 38, 84, 170, 174, 102, 186, 189, and 200-202, and reporter's certificate are attached hereto as **Exhibit 12**. In response to the questions posed by me, Kane testified that:

a.     he has no bank statements for his Wells Fargo account ending in -1607 for 2019, 2018, or any year prior to 2020. See Depo. Tr. 170:15-25, attached as part of **Exhibit 12**.

b.     he has no bank statements for his Royal Bank of Canada account ending in -4741 predating June 26, 2020. See Depo. Tr. 174:1-14, attached as part of **Exhibit 12**.

c.     he has no bank statements predating September 12, 2019, for his Royal Bank of Canada account ending in -5955. See Depo. Tr. 186:5-16, attached as part of **Exhibit 12**.

d.     he has no bank statements predating September 12, 2019, for his Royal Bank of Canada account ending in -0532. See Depo. Tr. 189:18-25, attached as part of **Exhibit 12**.

e.     he does not have any documents for any year associated with his American Express that is unaffiliated with any financial institution. See Depo. Tr. 200:11-23, attached as part of **Exhibit 12**.

f.     he does not have any documents predating September 2020 for his Wells Fargo American Express account ending in 2-64004. See Depo. Tr. 200:24-201:7, attached as part of **Exhibit 12**.

g.     he has no records regarding any of his bank statements or accounts predating 2019. See Depo. Tr 202:20-23, attached as part of **Exhibit 12**.

27.     In addition to the accounts identified by Kane on his Schedules, my review of the documents produced by Kane uncovered two additional accounts historically maintained by Kane: The first is an additional Royal Bank of Canada account ending in -0046 that was the recipient of large wire transfers stemming from multiple loans Kane incurred over the years.  At his deposition, Kane admitted that "[i]n terms of that account, no I wouldn't have any records today" as he closed the account three or four years prior to the Deposition – or within two years of the Petition Date. See Depo. Tr. 34:2-6, 69:25-70:6, and 84:5-21, attached as part of **Exhibit 12**.  The second was an account at East West Bank, ending in -4455, that Kane opened but never asked anybody at East West Bank for access to the account and therefore did not know what the funds associated with the same were used for. See Depo. Tr. 38:6-24 and 102:9-11, attached as part of **Exhibit 12**.

28.     On January 17, 2022, Kane served his "Notice of Subpoena (Sure Sports, LLC)" (the "Sure Sports Subpoena") pursuant to which Kane sought to subpoena certain documents from Sure Sports.  On February 17, 2022, Centennial served "Centennial Bank's Request for Copies" (the "Copy Request"), thereby formally requesting Kane produce a copy of any documents he received from Sure Sports pursuant to the Sure Sports Subpoena.  On March 2, 2022, Kane, through counsel, served upon Centennial a link to access copies of Sure Sports production (the "Sure Sports Production").

29.     I have personally accessed the link containing the Sure Sports Production and have downloaded and reviewed all documents contained therein.

30.     A review of the Sure Sports Production reveals that since 2014 Kane entered into at least twenty-four (24) separate lending arrangements with various third-party lenders, including Centennial.  At the Deposition, I questioned Kane extensively on his receipt and use of these various loan funds.  A true and correct copy of the cover page, pages 22, 51, 59-64, 67-69, 72-73, 77-78, 80-94, 102-119, 123-124, and 202-203, and reporter's certificate are attached hereto as **Exhibit 13**.  A true and correct copy of the closing statements associated with the foregoing loans incurred by Kane are attached hereto as **Exhibit 14**.  In response to my questions of Kane at the Deposition, Kane

testified that:

    a.    his "business" consisted of "[t]aking out other loans on top of other loans on top of other loans to avoid late payments or get out of late payments or high interest rates." <u>See</u> Depo. Tr. 51:7-12, attached as part of **Exhibit 13**.

    b.    it was "very rare where [he] received any of the proceeds - - if any it was very nominal, if you look at the loan documents, which I'm sure you have, where money came directly to [him]." <u>See</u> Depo. Tr. 22:11-17, attached as part of **Exhibit 13**.

    c.    "the money was used to pay off a preexisting loan for another entity. It was nominal money or very little if any went to me directly." <u>See</u> Depo. Tr. 51:13-16, attached as part of **Exhibit 13**.

However, despite testifying that it was "very rare" that the loan proceeds that he incurred "came directly" to him, the closing statements say otherwise. <u>See</u> **Exhibit 14**. As to each of these loans, Kane testified that:

    d.    he could not recall entering into a lending arrangement with Capital Financial Partners, LLC on or about May 14, 2014, for $600,000, out of which he directly received $562,500; did not recall the purpose of entering into the lending agreement with Capital Financial Partners, LLC; and has no records regarding his use of the loan funds received. <u>See</u> Depo. Tr. 59:5-60:9, 61:20-22, attached as part of **Exhibit 13**; **Exhibit 14** at 2-24.

    e.    he could not recall entering into a lending arrangement with American Bank on or about June 20, 2014, for $1,000,000, he received $261,429.36 directly from the loan proceeds; he could not recall what he utilized this portion of the loan proceeds for; and is not aware of any records that he has regarding his use of any of the loan proceeds that he directly received from American Bank. <u>See</u> Depo. Tr. 62:1-63:19, attached as part of **Exhibit 13**; **Exhibit** 14 at 25-31.

    f.    he entered into a lending arrangement with East West Bank on or about July

15, 2015, for $1,750,000, of which he was directly to receive $736,875; however; he has no recollection as to what he utilized the loan proceeds that he directly received for and has no records pertaining to his use of the specific loan proceeds that he received from East West Bank. See Depo. Tr. 63:20-64:13, 66:20-67:14, attached as part of **Exhibit 13**; **Exhibit 14** at 32-37.

g.   he could not recall entering into a loan agreement with Tenacity 7401 New Hampshire, LLC on or about August 28, 2015, for $500,000, but had no reason to dispute the same; he had no reason to dispute his receipt of $450,948.50 in the loan proceeds; could not recall what he used the $450,948.50 for; and had no documents relating to his use of these loan proceeds he received from Tenacity 7401 New Hampshire, LLC. See Depo. Tr. 67:15-69:16, attached as part of **Exhibit 13**; **Exhibit 14** at 38-43.

h.   he entered into a $3,300,000 lending agreement with Thrivest Specialty Funding, LLC, on or about January 23, 2016, of which he directly received $931,541 in net proceeds; he could not recall exactly what he utilized the loan proceeds for; and to his knowledge he had no records regarding his use of the $931,541 in net loan proceeds. See Depo. Tr. 72:8-73:24, attached as part of **Exhibit 13**; **Exhibit 14** at 44-50.

i.   he entered into a $50,000 loan agreement with Now Playing on or about July 6, 2016, of which he received approximately $42,000 in net loan proceeds; he could recall what he utilized these specific loan proceeds for; and he had no documentation regarding his use of these specific loan proceeds. See Depo. Tr. 73:25-75:4, attached as part of **Exhibit 13**; **Exhibit 14** at 51-52.

j.   he entered into a $200,000 lending arrangement with SCL-D, LLC, on or about July 7, 2016, of which he directly received approximately $149,500 in net loan proceeds; he could not recall what he utilized these specific loan proceeds for; did not recall why he needed a loan of this size at the time; and would not have any records regarding his use of these specific loan proceeds

1                  from SCL-D, LLC. <u>See</u> Depo. Tr. 75:5-16, 77:11-78:12, attached as part of

2                  **Exhibit 13**; **Exhibit 14** at 53-70.

3       k.      he entered into a $4,150,000 loan agreement with DeAngelo Vehicle

4                  Services, LLC, on or about October 6, 2016, of which he received $242,471

5                  in net loan proceeds; he could not recall what he used these specific loan

6                  proceeds for; he would not have any records of his use of these specific funds;

7                  and he is not aware of any records that would confirm the $3,507,500 of the

8                  $4,150,000 leant actually went to pay off preexisting loans. <u>See</u> Depo. Tr.

9                  80:5-83:12, attached as part of **Exhibit 13**; **Exhibit 14** at 71-82.

10      l.      he entered into a second loan with DeAngelo Vehicle Sales, LLC in the

11                 amount of $580,000 on or about December 23, 2016, of which he received

12                 approximately $505,912.53 in net loan proceeds; he could not recall what he

13                 utilized these specific loan funds for; and would not have any records

14                 regarding his use of these specific loan funds. <u>See</u> Depo. Tr. 84:22-86:12,

15                 87:13-17, attached as part of **Exhibit 13**; **Exhibit 14** at 83-93.

16      m.      he entered into a second loan with Thrivest Specialty Funding, LLC in the

17                 amount of $1,975,000 on or about March 3, 2017, of which he was to receive

18                 $748,600 to pay off various "personal loans" that he had incurred from people

19                 over the years; however, he was unable to identify these people, the one

20                 identified, "Vinny," was "a bookie, but that's not like his real name, it's just

21                 a name that was used," he would have no records to support what he owed to

22                 Vinny, and he had no other records to support his use of these specific funds

23                 "other than what [he] provided"; When asked to identify which documents

24                 he has provided to support paying off Vinny or these other personal loans,

25                 Kane testified that he "[does not] have reference to support paying off any".

26                 <u>See</u> Depo. Tr. 87:18-92:20, attached as part of **Exhibit 13**; **Exhibit 14** at 94-

27                 100.

28      n.      he entered into a third lending arrangement with Thrivest Specialty Funding,

1    LLC in the amount of $1,225,000 on or about April 6, 2017, of which he

2    directly received $610,830.40 in net loan proceeds; he could not recall what

3    he utilized these specific loan proceeds for; and he has no records to support

4    his use of these specific loan proceeds. See Depo. Tr. 93:4-94:22, attached as

5    part of **Exhibit 13**; **Exhibit 14** at 101-106.

6    o.    he entered into a lending arrangement with Seven Isles Capital, LLC in the

7    amount of $3,550,000 on or about July 5, 2017, of which he directly received

8    $859,987 in net loan proceeds; he did not know what he utilized these specific

9    loan proceeds for; and he has no documents to support his use of these

10    specific funds. See Depo. Tr. 102:23-106:7, attached as part of **Exhibit 13**;

11    **Exhibit 14** at 107-119.

12    p.    he entered into a fourth lending arrangement with Thrivest Specialty

13    Funding, LLC, in the amount of $3,000,000 on or about July 5, 2017, of

14    which he received $300,655 in net loan proceeds; he does not recall what he

15    utilized these specific loan proceeds for. See Depo. Tr. 106:8-109:7, attached

16    as part of **Exhibit 13**; **Exhibit 14** at 120-125.

17    q.    he entered into a fifth lending arrangement with Thrivest Specialty Funding,

18    LLC, in the amount of $4,850,000, on or about September 28, 2017, of which

19    he directly received $721,807.89 in net loan proceeds; he could not recall

20    what he utilized these loan proceeds for; and he has no personal records to

21    support his use of these funds. See Depo. Tr. 109:8-111:8, attached as part of

22    **Exhibit 13**; **Exhibit 14** at 126-133.

23    r.    he, through Kane Financial, LLC, entered into a $1,250,000 loan with

24    Democracy Capital Corporation on or about December 18, 2017, that he

25    personally guaranteed, of which he directly received $895,261.75 in net loan

26    proceeds; he did not know what these funds were used for. See Depo. Tr.

27    112:19-116:9, attached as part of **Exhibit 13**; **Exhibit 14** at 134-142.

28    s.    he entered into a $1,850,000 lending arrangement with South River Capital,

LLC on or about March 22, 2018, of which $163,000 was to pay off an Alex Jabori who he could not recall who he was or why he would be paying him $163,000; and an additional $554,675 was to be deposited in his account at East West Bank. See Depo. Tr. 116:10-119:16, attached as part of **Exhibit 13**; **Exhibit 14** at 143-150.

31.     A review of the testimony and documentation identified and referenced in the preceding paragraph confirms that Kane has admitted to directly receiving $8,574,994.43 in net loan proceeds that were deposited into various bank accounts in his name, of which $6,525,441.57 he incurred since 2016. Kane has admitted to not knowing and having no records to support his use of these funds.

32.     At the Deposition, Kane testified that to his knowledge he had no other documents regarding each of the various loans that I went through at his Deposition other than what we specifically identified. See Depo. Tr. 123:23-124:2, attached as part of **Exhibit 13**.

33.     At the Deposition, Kane admitted to not having any other documents that would support his use of any of the loan proceeds that he received from any of these loans other than the documents we went through at the Deposition. See Depo. Tr. 124:3-7, attached as part of **Exhibit 13**.

34.     At the Deposition, I asked Kane if he would have any records other than the bank statements or credit card statements regarding his use of any of the loan funds that we had discussed, to which Kane testified "Not to my knowledge, no." See Depo. Tr. 202:24-203:2, attached as part of **Exhibit 13**.

35.     At the Deposition, I asked Kane if he had any other records other than the bank statements or credit card statements, he had produced that would show his use of his earned wages and salary, to which Kane testified "Not that I know of, no." See Depo. Tr. 203:3-7, attached as part of **Exhibit 13**.

36.     At the Deposition, Kane admitted to not creating or maintaining a personal ledger documenting his receipt and use of the various loan proceeds he received. See Depo. Tr. 105:25-106:7, attached as part of **Exhibit 13**.

37.     On March 18, 2021, Kane executed the "Declaration of Evander Kane in Support of Debtor's Opposition to Motion to Convert and for Appointment of Chapter 11 Trustee", filed in the Bankruptcy Case at Docket 65-1, admitting that gambling "has been an issue in my past and it would be inaccurate to pretend it has not had a negative effect on my life, financially and otherwise." A true and correct copy of this declaration is attached hereto as **Exhibit 15**. Kane's bankruptcy schedules show that in the year preceding his Petition Date, he estimates gambling losses of $1,500,000.

38.     In Kane's Initial Interrogatory Responses, in response to a request of Kane to identify the extent of his gambling losses from January 1, 2016, to present, including (i) the casino, online service, and/or bookie at which said gambling losses were incurred, (ii) the date of said gambling losses, (iii) the amount of the gambling losses, and (iv) when applicable, the source of funds utilized by Kane to repay said gambling losses, Kane responded under oath that:

> Where appropriate, responsive facts are the gambling losses were primarily incurred with bookies and were a result of gambling on football, baseball, and basketball games. Occasionally, Kane gambled at casinos, which issued him markers representing line of credit with which to gamble. Typically, Kane would withdraw a sum of cash from his bank account for use in gambling. Typically, the gambling in casinos was on baccarat. The results of his bets were settled in cash. The amounts listed are Kane's best estimate of his losses. He did not keep a regular tally of his wins and losses.

See **Exhibit 8**, Interrogatory No. 16.

39.     During the Deposition, I examined Kane on his gambling losses. A true and correct copy of the cover page, pages 13-20, 58, 90 and the court reporter's certificate are attached hereto as **Exhibit 16**. In response to the questions I asked, Kane testified that:

a.     he "had a gambling problem." See Depo. Tr. 58:13, attached as part of **Exhibit 16**.

b.     he does not consider himself a professional gambler. See Depo. Tr. 58:10-23, attached as part of **Exhibit 16**.

c.     he "didn't keep a document and tally" of his wins and losses when it came to gambling. See Depo. Tr. 13:19-15:7, attached as part of **Exhibit 16**.

d.     he did not maintain any "documented" records relating to his dealings with

1    his bookies, but "would know what [he] owe[s] them in [his] head or what

2    would be up in [his] head". See Depo. Tr. 15:8-21, attached as part of **Exhibit**

3    **16**.

4    e.    he could not identify any of the bookies that he used. See Depo. Tr. 15:22-

5    23, attached as part of **Exhibit 16**.

6    f.    other than what is in his head, he has no records regarding what exactly the

7    bet was, when it took place, how much, how much he would have won or

8    how much he would have lost. See Depo. Tr. 15:24-16:3, attached as part of

9    **Exhibit 16**.

10   g.    other than the bank statements produced by Kane, he would have no other

11   records that would document from what bank account he would have

12   withdrawn funds or transferred funds for purposes of gambling. See Depo.

13   Tr. 16:22-17:19, attached as part of **Exhibit 16**.

14   h.    sometimes he would deposit his winnings into his bank accounts, sometimes

15   he would not. See Depo. Tr. 17:20-18:3, attached as part of **Exhibit 16**.

16   i.    other than what the bank statements produced by Kane, he would have no

17   other documents or records that would document winnings that would have

18   been deposited into specific accounts or not deposited at all. See Depo. Tr.

19   18:4-8, attached as part of **Exhibit 16**.

20   j.    he could not recall the name of any of the bookies or online bookies he used.

21   See Depo. Tr. 19:1-25, attached as part of **Exhibit 16**.

22   k.    he has no records that he could look at to verify any losses pertaining to

23   gambling for any year prior to 2020. See Depo. Tr. 20:1-16, attached as part

24   of **Exhibit 16**.

25   40.    Although Kane testified at the Deposition that the bank statements he provided would

26   be the only records he would have to account for funds withdrawn or transferred for purposes of

27   gambling, through my review of the bank statements produced by Kane for 2020, I have been unable

28   to substantiate Kane's $1,500,000 in gambling losses identified on his amended statement of

financial affairs. My review of the bank statements produced takes into consideration two entries to "Clark County District Attorney" which Kane testified at the 2004 Exam were used to pay off a casino marker, **Exhibit 17**, 2004 Tr. 85:1-12, as well as several entries that contain the identifier "Gigadat Inc.," which Kane testified at the Initial 341 Meeting was associated with gambling, **Exhibit 18**, 341 Tr. 27:17-28:8.

41.     Also at the Deposition, I had the opportunity to reexamine Kane on his use of the loan proceeds from the Individual Loans in light of the passage of time from the 2004 Exam. A true and correct copy of cover page, pages 143-152, and the court reporter's certificate are attached hereto as **Exhibit 19**. For each of the specific Individual Loans, Kane testified that:

a.     he incurred the loan from Hebron Shyng "not later than 2018" but was "not sure exactly when" and he is not aware of any documents that would support what he used the loan funds he received from Hebron Shyng for. See Depo. Tr. 147:7-149:8, attached as part of **Exhibit 19**.

b.     he is not aware of any documents that would support what he used the loan funds received from Raj Banghu for. See Depo. Tr. 149:9-12, attached as part of **Exhibit 19**.

c.     he has no documents that would support what he used the loan funds that he received from Tony Veltri for. See Depo. Tr. 149:18-150:11, attached as part of **Exhibit 19**.

d.     he has no documentation on the loan proceeds that he received from Pete Gianakas including documentation that would support what he used said loan proceeds for. See Depo. Tr. 150:12-151:1, attached as part of **Exhibit 19**.

e.     to his knowledge he has no documents that would support what he used the loan proceeds he received from Mike Lispti for and is unsure of the dates in which he incurred said debt. See Depo. Tr. 151:2-19, attached as part of **Exhibit 19**.

f.     he does not know the exact date in which he incurred the loan(s) with Davis Sanchez and has no documentation that would support what he used the loan

proceeds that he received from Davis Sanchez for. <u>See</u> Depo. Tr. 151:20-152:9, attached as part of **Exhibit 19**.

42. Also at the Deposition, I extensively walked Kane through the limited bank statements that he did produce for his identified accounts and proceeded to ask him several questions regarding certain transfers/withdrawals and deposits. A true and correct copy of the cover page, pages 154-200, and the court reporter's certificate are attached hereto as **Exhibit 20**.

43. As it relates specifically to Kane's Royal Bank of Canada 0532 account and 5955 account, there were many instances where money was withdrawn, and an "online transfer" is indicated. A true and correct copy of the relevant excerpts of the bank statements produced by Kane for the 0532 account are attached hereto as **Exhibit 21**. A true and correct copy of the relevant excerpts of the bank statements produced by Kane for the 5955 account are attached hereto as **Exhibit 22**. Where an "online transfer" is indicated, Kane testified that "to my knowledge I believe it had to stay within the RBC account somewhere or be paying off a credit card." <u>See</u> Depo. Tr. 172:10-15, attached as part of **Exhibit 20**. My review of the bank statements produced by Kane, and attached hereto as **Exhibits 21** and **22**, show that in some instances a reference number is provided and the same can be matched between the two accounts to confirm that the funds were transferred between Kane's 0532 and 5955 account. <u>See</u> Depo. Tr. 172:18-173:16, attached as **Exhibit 20**; <u>compare</u> **Exhibit 22** at January 17, 2020, Ref -4130 <u>with</u> **Exhibit 21** at January 17, 2020, Ref -4130. However, in many instances I was unable to perform this sort of tracing and match up the reference numbers that were provided on the bank statements produced by Kane. <u>Compare</u> **Exhibit 22** at January 17, 2020, Ref -8989, -1588, and -8760, <u>with</u> **Exhibit** 21 at January 17, 2020. When I questioned Kane regarding this, Kane testimony was that he did not know where the money was being transferred too. Specifically, as to each instance of an unexplained "Online Banking transfer" or "Cash withdrawal" out of the 5955 account, Kane testified that he did not know where the money was being transferred too for the following:

    a.    $48,500 online transfer out of the 5955 account on October 25, 2019. <u>See</u> Depo. Tr. 187:4-7, attached as part of **Exhibit 20**; **Exhibit 22** at 4.

    b.    $15,000 online banking transfer out of the 5955 account on January 3, 2020.

|     |     |     |
|-----|-----|-----|
| 1   |     | See Depo. Tr. 187:22-188:1, attached as part of **Exhibit 20**; **Exhibit 22** at 9. |
| 2   | c.  | $10,000 online banking transfer out of the 5955 account on January 8, 2020. |
| 3   |     | See Depo. Tr. 188:2-5, attached as part of **Exhibit 20**; **Exhibit 22** at 9. |
| 4   | d.  | three separate online banking transfers totaling $98,000 out of the 5955 |
| 5   |     | account on January 17, 2020. See Depo. Tr. 171:15-19, attached as part of |
| 6   |     | **Exhibit 20**; **Exhibit 22** at 10. |
| 7   | e.  | two separate online banking transfers totaling $8,617.56 out of the 5955 |
| 8   |     | account on March 23, 2020. See Depo. Tr. 177:9-16, attached as part of |
| 9   |     | **Exhibit 20**; **Exhibit 22** at 16-. |
| 10  | f.  | $1,000 online banking transfer out of the 5955 account on March 30, 2020. |
| 11  |     | See Depo. Tr. 177:21-24, attached as part of **Exhibit 20**; **Exhibit 22** at 16. |
| 12  | g.  | $25,000 online banking transfer out of the 5955 account on April 17, 2020. |
| 13  |     | See Depo. Tr. 180:10-13, attached as part of **Exhibit 20**; **Exhibit 22** at 19. |
| 14  | h.  | two separate "Cash withdrawal BR to BR" totaling $15,000 out of the 5955 |
| 15  |     | account on April 27, 2020. See Depo. Tr. 188:14-181:1, attached as part of |
| 16  |     | **Exhibit 20**; **Exhibit 22** at 19-20. |
| 17  | i.  | $65,258.22 online banking transfer out of the 5955 account on April 27, 2020. |
| 18  |     | See Depo. Tr. 181:2-7, attached as part of **Exhibit 20**; **Exhibit 22** at 20. |
| 19  | j.  | $1,196.09 online banking transfer out of the 5955 account on April 28, 2020. |
| 20  |     | See Depo. Tr. 181:8-11, attached as part of **Exhibit 20**; **Exhibit 22** at 20. |
| 21  | k.  | $45,000 "Cash withdrawal BR to BR" out of the 5955 account on May 14, |
| 22  |     | 2020. See Depo. Tr. 181:1-23, attached as part of **Exhibit 20**; **Exhibit 22** at |
| 23  |     | 23. |
| 24  | l.  | $6,674.90 online transfer out of the 5955 account on May 25, 2020. See |
| 25  |     | Depo. Tr. 181:24-182:4, attached as part of **Exhibit 20**; **Exhibit 22** at 24. |
| 26  | m.  | $30,000 "Cash withdrawal BR to BR" out of the 5955 account on July 10, |
| 27  |     | 2020. See Depo. Tr. 183:22-25, attached as part of **Exhibit 20**; **Exhibit 22** at |
| 28  |     | 28. |

| | n. | $57,216.73 withdrawal out of the 5955 account on August 20, 2020. <u>See</u> Depo. Tr. 184:8-11, attached as part of **Exhibit 20**; **Exhibit 22** at 31. |

n. $57,216.73 withdrawal out of the 5955 account on August 20, 2020. <u>See</u> Depo. Tr. 184:8-11, attached as part of **Exhibit 20**; **Exhibit 22** at 31.

o. $100,000 "Cash withdrawal BR to BR" out of the 5955 account on September 9, 2020. <u>See</u> Depo. Tr. 184:16-19, attached as part of **Exhibit 20**; **Exhibit 22** at 32.

Similarly, as to each instance of an unexplained "Online Banking transfer" or "Cash withdrawal" out of the 0532 account, Kane testified that he did not know where the money was being transferred too for the following:

p. $40,000 "funds transfer" out of the 0532 account on November 8, 2019. <u>See</u> Depo. Tr. 190:1-4, attached as part of **Exhibit 20**; **Exhibit 21** at 4.

q. $26,623.06 withdrawal out of the 0532 account on November 29, 2019. <u>See</u> Depo. Tr. 190:1-8, attached as part of **Exhibit 20**; **Exhibit 21** at 5.

r. three separate online banking foreign exchange transfers totaling $50,000 out of the 0532 account on January 17, 2020. <u>See</u> Depo. Tr. 188:6-12, attached as part of **Exhibit 20**; **Exhibit 21** at 9.

s. $38,977.71 withdrawal out of the 0532 account on October 14, 2020. <u>See</u> Depo. Tr. 189:8-11, attached as part of **Exhibit 20**; **Exhibit 21** at 24.

Based on the foregoing, Kane has admitted to not knowing and having no documentation regarding where $526,463.50 and $155,600.77 worth of funds out of the 5955 and 0532 Royal Bank of Canada accounts, respectively, was transferred too.

44. In addition to the unexplained "Online transfers" and "Cash withdrawals" identified in the preceding paragraph, my review of the bank statements produced by Kane for the 5955 and 0532 Royal Bank of Canada accounts revealed several instances of unexplained deposits. When I questioned Kane about these deposits at the Deposition, Kane's testimony was that he did not know what the source of these deposits were or had no documentation to support any speculative guess:

a. $50,000 deposit into the 5955 account on October 7, 2019. <u>See</u> Depo. Tr. 186:17-20, attached as part of **Exhibit 20**; **Exhibit 22** at 2.

b. $10,000 deposit into the 5955 account on October 16, 2019. <u>See</u> Depo. Tr.

|   |   |   |
|---|---|---|
| 1 |   | 186:21-24, attached as part of **Exhibit 20**; **Exhibit 22** at 4. |
| 2 | c. | $40,000 deposit into the 5955 account on October 18, 2019. <u>See</u> Depo. Tr. |
| 3 |   | 186:25-187:3, attached as part of **Exhibit 20**; **Exhibit 22** at 2. |
| 4 | d. | $35,000 deposit into he 5955 account on November 29, 2019. <u>See</u> Depo. Tr. |
| 5 |   | 187:12-15, attached as part of **Exhibit 20**; **Exhibit 22** at 6. |
| 6 | e. | $25,100 deposit into the 5955 account on February 4, 2020. <u>See</u> Depo. Tr. |
| 7 |   | 174:15-175:9, attached as part of **Exhibit 20**; **Exhibit 22** at 11. |
| 8 | f. | $30,000 deposit into the 5955 account on February 5, 2020. <u>See</u> Depo. Tr. |
| 9 |   | 175:10-14, attached as part of **Exhibit 20**; **Exhibit 22** at 11. |
| 10 | g. | $1,118.23 deposit into the 5955 account on March 26, 2020. <u>See</u> Depo. Tr. |
| 11 |   | 177:17-20, attached as part of **Exhibit 20**; **Exhibit 22** at 16. |
| 12 | h. | $100,000 deposit into the 5955 account on March 31, 2020. <u>See</u> Depo. Tr. |
| 13 |   | 177:25-180:1, attached as part of **Exhibit 20**; **Exhibit 22** at 17. |
| 14 | i. | $50,000 deposit into the 5955 account on May 14, 2020. <u>See</u> Depo. Tr. |
| 15 |   | 181:12-17, attached as part of **Exhibit 20**; **Exhibit 22** at 23. |
| 16 | j. | $9,694.90 deposit into the 5955 account on May 26, 2020. <u>See</u> Depo. Tr. |
| 17 |   | 182:5-8, attached as part of **Exhibit 20**; **Exhibit 22** at 24. |
| 18 | k. | $1,000 deposit into the 5955 account on June 30, 2020. <u>See</u> Depo. Tr. 182:9- |
| 19 |   | 12, attached as part of **Exhibit 20**; **Exhibit 22** at 26. |
| 20 | l. | $850 deposit into the 5955 account on July 3, 2020. <u>See</u> Depo. Tr. 182:13- |
| 21 |   | 15, attached as part of **Exhibit 20**; **Exhibit 22** at 26. |
| 22 | m. | $100,000 deposit into the 5955 account on July 9, 2020. <u>See</u> Depo. Tr. |
| 23 |   | 182:16-183:21, attached as part of **Exhibit 20**; **Exhibit 22** at 27. |
| 24 | n. | $144,664.71 deposit into the 5955 account on August 17, 2020. <u>See</u> Depo. |
| 25 |   | Tr. 184:1-4, attached as part of **Exhibit 20**; **Exhibit 22** at 31. |
| 26 | o. | $100,000 deposit into the 5955 account on August 20, 2020. <u>See</u> Depo. Tr. |
| 27 |   | 184:5-7, attached as part of **Exhibit 20**; **Exhibit 22** at 31. |
| 28 | p. | $88,070 deposit into the 5955 account on September 9, 2020. <u>See</u> Depo. Tr. |

| | | |
|---|---|---|
| 1 | | 184:12-15, attached as part of **Exhibit 20**; **Exhibit 22** at 32. |
| 2 | q. | $10,000 deposit into the 5955 account on September 16, 2020. <u>See</u> Depo. Tr. |
| 3 | | 184:20-25, attached as part of **Exhibit 20**; **Exhibit 22** at 34. |
| 4 | r. | $3,500 deposit into the 5955 account on October 5, 2020. <u>See</u> Depo. Tr. |
| 5 | | 185:1-4, attached as part of **Exhibit 20**; **Exhibit 22** at 36. |
| 6 | s. | $9,500 deposit into the 5955 account on October 5, 2020. <u>See</u> Depo. Tr. |
| 7 | | 185:5-8, attached as part of **Exhibit 20**; **Exhibit 22** at 36. |
| 8 | t. | two deposits in the amount of $131,000 into the 5955 account on October 14, |
| 9 | | 2020. <u>See</u> Depo. Tr. 185:9-13, attached as part of **Exhibit 20**; **Exhibit 22** at |
| 10 | | 38. |
| 11 | u. | $169,854.48 deposit into the 0532 account on December 31, 2019. <u>See</u> Depo. |
| 12 | | Tr. 190:9-12, attached as part of **Exhibit 20**; **Exhibit 21** at 7. |
| 13 | v. | $29,802.95 deposit into the 0532 account on February 14, 2020. <u>See</u> Depo. |
| 14 | | Tr. 188:17-20, attached as part of **Exhibit 20**; **Exhibit 21** at 11. |
| 15 | w. | $40,056.68 deposit into the 0532 account on August 20, 2020. <u>See</u> Depo. Tr. |
| 16 | | 188:21-189:7, attached as part of **Exhibit 20**; **Exhibit 21** at 21. |
| 17 | x. | $30,000 deposit into the 0532 account on December 1, 2020. <u>See</u> Depo. Tr. |
| 18 | | 189:12-15, attached as part of **Exhibit 20**; **Exhibit 21** at 26. |

19 Based on the foregoing, Kane has admitted to not knowing and having no documentation regarding

20 where $939,497.84 and $279,410.48 worth of deposits into the 5955 and 0532 Royal Bank of

21 Canada accounts, respectively, came from or for what purpose.

22         45.    In addition to the two Royal Bank of Canada accounts ending in 5955 and 0532, I

23 have personally reviewed the bank statements produced by Kane for his Wells Fargo account ending

24 in 1607. A true and correct copy of the relevant excerpts from the bank statements associated with

25 Kane's Wells Fargo account ending in 1607 are attached hereto as **Exhibit 23** At the Deposition,

26 I asked Kane several questions regarding certain deposits into his Wells Fargo 1607 account. A true

27 and correct copy of the cover page, pages 154, 156, 157, 159, 161, 163, and 166-169, and the court

28 reporter's certificate are attached hereto as **Exhibit 24** My review of the Wells Fargo 1607 account

statements produced by Kane revealed a total of $307,826.61 in deposits from unidentified sources. When I asked Kane questions regarding these deposits, his testimony was he could not recall:

    a.    $120,000 e-deposit on January 8, 2020. <u>See</u> Depo. Tr. 154:6-12, attached as part of **Exhibit 24**; **Exhibit 23** at 5.

    b.    $15,060 e-deposit on February 10, 2020. <u>See</u> Depo. Tr. 156:24-157:2, attached as part of **Exhibit 24**; **Exhibit 23** at 12.

    c.    $37,000 e-deposit on February 24, 2020. <u>See</u> Depo. Tr. 157:17-24, attached as part of **Exhibit 24**; **Exhibit 23** at 12.

    d.    $3,176.33 e-deposit on March 16, 2020. <u>See</u> Depo. Tr. 159:5-8, attached as part of **Exhibit 24**; **Exhibit 23** at 18.

    e.    $9,005.72 e-deposit on April 17, 2020. <u>See</u> Depo. Tr. 161:19-21, attached as part of **Exhibit 24**; **Exhibit 23** at 21.

    f.    $6,600 e-deposit on August 24, 2020. <u>See</u> Depo. Tr. 163:22-24, attached as part of **Exhibit 24**; **Exhibit 23** at 42.

    g.    $40,442.19 deposit on October 30, 2020. <u>See</u> Depo. Tr. 166:4-6, attached as part of **Exhibit 24**; **Exhibit 23** at 56.

    h.    $1,033 deposit on November 6, 2020. <u>See</u> Depo. Tr. 167:5-7, attached as part of **Exhibit 24**; **Exhibit 23** at 61.

    i.    $9,000 e-deposit on November 24, 2020. <u>See</u> Depo. Tr. 167:24-1, attached as part of **Exhibit 24**; **Exhibit 23** at 62.

    j.    two e-deposits totaling $6,000 on November 27, 2020. <u>See</u> Depo. Tr. 168:27, attached as part of **Exhibit 24**; **Exhibit 23** at 62.

    k.    $1,500 e-deposit on November 30, 2020. <u>See</u> Depo. Tr. 168:15-17, attached as part of **Exhibit 24**; **Exhibit 23** at 62.

    l.    $3,100 e-deposit on December 1, 2020. <u>See</u> Depo. Tr. 168:18-20, attached as part of **Exhibit 24**; **Exhibit 23** at 67.

    m.    $15,000 e-deposit on December 10, 2020. <u>See</u> Depo. Tr. 168:25-169:2, attached as part of **Exhibit 24**; **Exhibit 23** at 67.

n. $5,000 e-deposit on December 11, 2020. <u>See</u> Depo. Tr. 169:3-5, attached as part of **Exhibit 24**; **Exhibit 23** at 67.

o. $9,009.37 e-deposit on December 14, 2020. <u>See</u> Depo. Tr. 169:6-8, attached as part of **Exhibit 24**; **Exhibit 23** at 67.

p. $9,900 e-deposit on December 22, 2020. <u>See</u> Depo. Tr. 169:12-14, attached as part of **Exhibit 24**; **Exhibit 23** at 69.

q. $11,000 e-deposit on January 7, 2021. <u>See</u> Depo. Tr. 169:15-18, attached as part of **Exhibit 24**; **Exhibit 23** at 73.

46. The last bank statements I reviewed and examined Kane on at the Deposition were the bank statements that Kane produced associated with his two Scotia Bank accounts ending in 28 and 87. In many instances, these statements showed an entry identified as "MB-transfer to" or the equivalent thereof. Each time I asked Kane where these certain funds were being transferred too, Kane was unable to explain where the money was going. On one occasion, the bank statements showed a $123,000 deposit Kane received on March 7, 2020, from Alexandra Duggan. However, when asked about this deposit, Kane could not remember who Alexandra Duggan was. A true and correct copy of the cover page, pages 195-199, and the court reporter's certificate are attached hereto as **Exhibit 25**. A true and correct copy of the relevant excerpts of the bank statements produced by Kane for Scotia Bank account ending in 28 is attached hereto as **Exhibit 26**. A true and correct copy of the relevant excerpts of the bank statements produced by Kane for Scotia Bank account ending in 87 is attached hereto as **Exhibit 27**.

47. As part of the documents produced in advance of the 2004 Exam, Kane produced copies of his 2018 and 2019 U.S. Individual Income Tax Return forms, true and correct copies of which are attached hereto as **Exhibit 28**. Kane's 2018 Tax Return shows that his total income in 2018 was $8,424,166, or $2,000,000 more than what Kane identified on his amended statement of financial affairs. Kane's 2019 Tax Return shows that his total income in 2019 was $6,840,169. On his amended statement of financial affairs, Kane estimated that his 2020 gross income would be $7,000,000.

48. At the 2004 Exam, I asked Kane questions regarding his historic salary and wages

and use of the same. A true and correct copy of the cover page, pages 15-20, and 99-102, and the court reporter's certificate are attached hereto as **Exhibit 29**. Kane testified that:

  a. he has been employed as a professional ice hockey player since 2009. <u>See</u> 2004 Tr. 15:4-9, attached as part of **Exhibit 29**.

  b. at the time of initiating his bankruptcy, he was employed by the San Jose Sharks pursuant to "National Hockey League Standard Player's Contract" dated May 25, 2019. <u>See</u> 2004 Tr. 15:10-16:1, attached as part of **Exhibit 29**.

  c. under the terms of the Player's Contract, he was to receive base compensation in the amount of $37,000,000 over the course of seven seasons. <u>See</u> 2004 Tr. 16:2-8, attached as part of **Exhibit 29**.

  d. in addition to the base compensation, he was to receive a $12,000,000 signing bonus spread out across five years. <u>See</u> 2004 Tr. 16:9-24, attached as part of **Exhibit 29**.

  e. as of the date of initiating his bankruptcy case, he had received all sums owed to him under the Player's Contract at that time. <u>See</u> 2004 Tr. 19:8-21, attached as part of **Exhibit 29**.

  f. he does not recall exactly what he utilized the money he received under his Player's Contract for. <u>See</u> 2004 Tr. 20:10-12; 100:20-102:9, attached as part of **Exhibit 29**.

  g. prior to his current Player's Contract, he had a six year contract at $5,250,000 per year, for a total of $31,500,000. <u>See</u> 2004 Tr. 99:13-19.

Similarly, at the Initial 341 Exam, Kane testified that he "ha[s] no idea" what he has primarily utilized his salary and wages for. <u>See</u> 341 Tr. 79:19-80:3, attached as **Exhibit 30**.

  49. Based on Kane's Amended Discovery Responses as well as his testimony at the Initial 341 Meeting, 2004 Exam, and Deposition, as reflected in the attached **Exhibit 9, Exhibit 1, Exhibit 4**, and **Exhibit 19**, Kane has admitted that he did not provide any documents supporting disposition of funds totaling $2,150,000 that he received from creditors as follows: (i) $150,000 – Davis Sanchez, (ii) $430,000 – Hebron Shyng, (iii) $750,000 – Mike Lispti, (iv) $400,000 – Pete

Gianakas, (v) $100,000 – Raj Banghu, and (vi) $320,000 – Tony Veltri. <u>See</u> paragraphs 8, 14, 19, and 40.

50.     Based on Kane's testimony at the 2004 Exam and the Deposition, as reflected in the attached **Exhibit 5**, **Exhibit 13**, and **Exhibit 14**, Kane has admitted that he did not provide any documents supporting disposition of funds totaling approximately $8,574,994.43 that he received from various "private lenders" in the recent years leading up to his bankruptcy filing. <u>See</u> paragraphs 15, 29, and 30.

51.     Based on Kane's Initial Interrogatory Responses and his testimony at the Deposition, as reflected in the attached **Exhibit 8** and **Exhibit 16**, Kane has admitted to not maintaining any records or documentation supporting his gambling wins or loses, other than what is in his head, and cannot identify any bookies that he used. <u>See</u> paragraphs 37, 38, and 39.

52.     Based on representations made by Kane through his counsel as well as his testimony at the Deposition, as reflected in the attached **Exhibit 11** and **Exhibit 12**, Kane has admitted to not maintaining or preserving bank statements and other documentation associated with his various bank accounts and credit cards for any year prior to 2019 and only a minimal amount of bank statements and documentation for the year(s) 2020 and 2019. <u>See</u> paragraphs 24, 25, and 26.

53.     Based on Kane's testimony at the Initial 341 Meeting, 2004 Exam, and Deposition, as reflected in the attached **Exhibit 30**, **Exhibit 29**, and **Exhibit 13**, Kane admitted to not having documents and being unable to identify what he primarily spent his salary and wages on. <u>See</u> paragraphs 34, 46, and 47.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed on this 17th day of November, 2022, in Tampa, Florida.

*/s/ Andrew J. Ghekas*
Andrew J. Ghekas

## **LIST OF EXHIBITS**

| **Exhibit No.** | **Description of Exhibits** |
|---|---|
| 1. | Initial 341 Meeting Transcript, Pages 55-60 |
| 2. | Initial 341 Meeting Transcript, Pages 21-23 |
| 3. | Initial 341 Meeting Transcript, Page 78 |
| 4. | 2004 Exam Transcript, Pages 68-71 |
| 5. | 2004 Exam Transcript, Pages 31-34 and 65-68 |
| 6. | Initial Production Responses |
| 7. | Initial Admission Responses |
| 8. | Initial Interrogatory Responses |
| 9. | Defendant's Amended Responses to Plaintiff's First Request for Production of Documents, dated February 28, 2022 |
| 10. | February 2, 2022 and February 10, 2022, between Andrew J. Ghekas, Esquire and Stephen D. Finestone, Esquire |
| 11. | E-mails between Ryan A. Witthans, Esquire and Andrew J. Ghekas, Esquire, regarding Kane's documents responsive to request for production |
| 12. | Deposition Transcript, Pages 34, 38, 84, 102, 170, 174, 186, 189, and 200-202 |
| 13. | Deposition Transcript, Pages 22, 37, 51, 59-64, 67-69, 72-73, 77-78, 80-94, 102-119, 123-124, and 202-203 |
| 14. | Closing Statements |
| 15. | Declaration of Evander Kane in Support of Debtor's Opposition to Motion to Convert and for Appointment of Chapter 11 Trustee, filed in the Bankruptcy Case at Docket 65-1, dated March 18, 2021 |
| 16. | Deposition Transcript, Pages 13-20, 58, 90 |
| 17. | 2004 Exam Transcript, Page 85 |
| 18. | Initial 341 Meeting Transcript, Pages 27-28 |
| 19. | Deposition Transcript, Pages 143-152 |
| 20. | Deposition Transcript, Pages 154-200 |
| 21. | Bank Statements produced by Kane for the 0532 account |
| 22. | Bank Statements produced by Kane for the 5955 account |
| 23. | Excerpts from the Bank Statements associated with Kane's Wells Fargo account ending in 1607 |
| 24. | Deposition Transcript, Pages 154, 156, 157, 159, 161, 163, and 166-169 |
| 25. | Deposition Transcript, Pages 195-199 |
| 26. | Excerpts of the Bank Statements produced by Kane for Scotia Bank account ending in 28 |
| 27. | Excerpts of the Bank Statements produced by Kane for Scotia Bank account ending in 87 |
| 28. | 2018 and 2019 U.S. Individual Income Tax Return forms |
| 29. | 2004 Exam Transcript, Pages 15-20 and 99-102 |
| 30. | Initial 341 Meeting Transcript, Pages 79-80 |

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

_____
                                          )
In re:                                    )
                                          )
EVANDER FRANK KANE          CH: 7         )    21-50028
                                          )
        Debtor.                           )
_____ )

                          U.S. Trustee
                          P.O. Box 4188
                          Mountain View, CA 94040

                          February 3, 2021


          BEFORE FRODE S. HJELMESET Chapter 7 Trustee

<u>APPEARANCES</u>:

For the Debtor:             Stephen Finestone
                            Finestone Hayes LLP
                            456 Montgomery St. 20th Fl.
                            San Francisco, CA 94104

For Chapter 7 Trustee:      Gregg S. Kleiner
                            Rincon Law LLP
                            268 Bush St. #3335
                            San Francisco, CA 94104

For Sure Sports:            Alan Wilmot
                            Heitner Legal
                            215 Henricks Isle
                            Fort Lauderdale, FL 33301

For Centennial Bank, N.A.:  Andrew J. Ghekas
                            Anthony & Partners, LLC
                            100 S. Ashley Dr., #1600
                            Tampa, FL 33602

For Newport Management:     Arthur Yellin
                            Keith Banner
                            Greenberg Glusker, LLP
                            2049 Century Park E, Suite 2600
                            Los Angeles, CA 90067

*TheRecordXchange*
www.trxchange.com (800) 406-1290

APPERANCES:(Continued)

For South River Capital LLC:     David B. Rao
                                 Law Offices of Binder and Malter
                                 2775 Park Ave.
                                 Santa Clara, CA 95050

For Zions Bancorporation,        Gerrick Warrington
N.A:                             Frandzel Robins Bloom & Csato,
                                 LC.
                                 1000 Wilshire Blvd., 19th Fl
                                 Los Angeles, CA 90017

For Loan Shark, LLC:             Christopher Ribas

For Hope Parker:                 Jonathan Lewis

For the United States            Marta E. Villacorta
Trustee:

Proceedings recorded by electronic sound recording;
transcript produced by The Record Xchange.

1   Zions Bancorporation, also it looks like that this money was

2   incurred back in August of 2018, 4.25 million.  Do you

3   remember what these funds were used for?

4           MR. KANE:  Yeah.  The same thing, to pay off other

5   business debt.

6           MS. VILLACORTA:  Okay.  Also with this, if you could

7   also please provide a copy of the loan agreement.

8           MR. KANE:  Will do.

9           MS. VILLACORTA:  Thank you.  Okay.  So I am going to

10  now move to schedule E-F and just -- I have some question with

11  respect to some of these loans that were listed.  So David

12  Sanchez.  Who is Mr. Sanchez again?

13          MR. KANE:  He's one of the creditors that I've

14  listed.

15          MS. VILLACORTA:  Okay.  And is there any -- is he a

16  friend?  Does he have any -- what is -- is there any

17  relationship?  What is --

18          MR. KANE:  A person I met a few years ago.

19          MS. VILLACORTA:  Okay.  And so he -- so you borrowed

20  150,000 from him.  And just to confirm, it was -- you

21  previously testified it was a personal loan and that it was

22  informal, so you have nothing that was reduced to writing with

23  respect to this loan?

24          MR. KANE:  Yeah.  There's no written documentation.

25          MS. VILLACORTA:  Okay.  And what was the -- and so

1    the money -- do you remember what it was used for?

2                MR. KANE:  I don't recall at this time.

3                MS. VILLACORTA:  Okay, 4.7, Hebron Schoan

4    (phonetic).  It looks like he loaned you 430,000.  Do you

5    remember when this debt was incurred?

6                MR. KANE:  I don't recall exactly, no.

7                MS. VILLACORTA:  And do you remember what the funds

8    were used for?

9                MR. KANE:  To pay off bills.

10               MS. VILLACORTA:  To pay off bills.  Personal bills?

11               MR. KANE:  Probably mortgages and --

12               MS. VILLACORTA:  Your mortgages.  Okay.  Did you --

13   when was the last time you made a payment to Mr. Schoan in

14   connection with this debt?

15               MR. KANE:  Probably six, seven months ago.  Or

16   probably a little -- six months ago.

17               MS. VILLACORTA:  Did you memorialize this loan into

18   writing?  Was it reduced to writing?

19               MR. KANE:  There is some written documentation,

20   promissory note.

21               MS. VILLACORTA:  Okay.  Can you please provide that?

22               MR. KANE:  Yes.

23               MS. VILLACORTA:  Okay.  4.12 Mike Liske (phonetic).

24   He's listed holding a claim in the amount of 750,000 and this

25   debt is identified as a loan.  Who is Mr. Liske?

TheRecordXchange
www.trcx.com  (800) 406-1290

1          MR. KANE:  A person I met a few years ago as well.

2          MS. VILLACORTA:  Okay.  And do you recall when this

3    debt was incurred?

4          MR. KANE:  I don't, no.

5          MS. VILLACORTA:  And what were the funds used for?

6          MR. KANE:  To pay back other personal loans.

7          MS. VILLACORTA:  Okay.  Do you remember the last

8    time you made a payment to Mr. Liske in connection with this

9    debt?

10          MR. KANE:  I don't.

11          MS. VILLACORTA:  Do you have anything -- do you have

12    any written documentation with respect to this loan?

13          MR. KANE:  No.

14          MS. VILLACORTA:  So it was an informal agreement?

15          MR. KANE:  Yes.

16          MS. VILLACORTA:  Did he expect to get paid back like

17    by a certain date?  Do you remember the terms?

18          MR. KANE:  I don't recall the exact terms, no.

19          MS. VILLACORTA:  Okay.  4.13, the Newport Sports

20    Management, Inc.  They're listed holding a claim in the amount

21    of 528,730 incurred in 2020.  What's the nature of this debt?

22          MR. KANE:  I believe it's agent fees.

23          MS. VILLACORTA:  And what do you mean by agent fees?

24          MR. KANE:  So their fees to -- are taken out.  A

25    certain percentage is taken out on the contract.

TheRecordXchange
www.txrchg.com  (800) 406-1290

1             MS. VILLACORTA:  Okay.  Do you have a written

2    contract with respect to this?

3             MR. KANE:  I do.

4             MS. VILLACORTA:  Okay.  Can you also provide a copy

5    of the contract as well?

6             MR. KANE:  Of the contract with my agent or --

7             MS. VILLACORTA:  Yes.  Yes.  For the New -- yes.

8             MR. KANE:  Yeah.

9             MS. VILLACORTA:  So that we can review this.  Uh-

10   huh.

11            MR. KANE:  Yeah.

12            MS. VILLACORTA:  4.16 Pete Gianocus (phonetic) --

13            MR. KANE:  Yeah.

14            MS. VILLACORTA:  -- $400,000 loan.  Who is he?

15            MR. KANE:  A person I met a few years ago.

16            MS. VILLACORTA:  Okay.  And when was this debt

17   incurred?

18            MR. KANE:  I don't recall exactly when that was

19   incurred.

20            MS. VILLACORTA:  Do you recall what the funds were

21   used for?

22            MR. KANE:  I do not.

23            MS. VILLACORTA:  Okay.  And when is the last time

24   you made a payment to him in connection with this debt?

25            MR. KANE:  I'm unsure.

TheRecordXchange
www.trxchange.com (800) 406-1290

1          MS. VILLACORTA:  Okay.  Do you have any written

2  contract?

3          MR. KANE:  No, I don't.

4          MS. VILLACORTA:  Okay.  4.18, Raj Bangu (phonetic)

5  $100,000 loan.  Who -- is this your Ban-ju (phonetic)?  I

6  don't know.  I'm sorry.  I apologize if I'm butchering his

7  last name.

8          MR. KANE:  A person I know in Vancouver.

9          MS. VILLACORTA:  Okay.  Is he a friend?

10          MR. KANE:  Yeah.  I mean, I know him.  He knows me.

11          MS. VILLACORTA:  Okay.  And do you -- when was this

12  debt incurred?

13          MR. KANE:  Sometime, I want to say, in 2019, I

14  believe.

15          MS. VILLACORTA:  Okay.  And do you recall what the

16  funds were used for?

17          MR. KANE:  I do not.

18          MS. VILLACORTA:  And when was the last time you made

19  a payment to him?

20          MR. KANE:  I can't remember at this time.

21          MS. VILLACORTA:  Okay.  Do you have a written

22  contract or anything -- any documentation with respect to this

23  loan?

24          MR. KANE:  I don't, no.

25          MS. VILLACORTA:  Okay.  4.19, Sure Sports, LLC,

1    listed having a claim for a little over 1.282 million claim

2    for fees.  What's the nature of this debt?

3              MR. KANE:  They're claiming fees that I owe them, I

4    believe from a multitude of different loans.

5              MS. VILLACORTA:  Do you have any documentation

6    surrounding this?

7              MR. KANE:  I do.

8              MS. VILLACORTA:  Okay.  Can you also provide that as

9    well?

10             MR. KANE:  Yes.

11             MS. VILLACORTA:  4.20, Tony Giracosta.  I -- so this

12   is the person who, it sounds like was your accountant and so

13   he has -- he's listed having any unsecured claim in the amount

14   of 170,000.  Is that correct?

15             MR. KANE:  Yes.

16             MS. VILLACORTA:  Okay.  Do you have any

17   documentation to support this claim?

18             MR. KANE:  I'm not sure.

19             MS. VILLACORTA:  Can -- okay.  So if you do have

20   documentation, if you could provide that to our office,

21   please?

22             MR. KANE:  Yes.  I will.

23             MS. VILLACORTA:  And then the last part of that's

24   listed is Tony Veltri and he -- looks like he loaned you

25   320,000?

<u>C E R T I F I C A T E</u>

I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*John Buckley*
_____
John Buckley, CET-623
Digital Court Proofreader

# EXHIBIT "2"

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

_____
                                        )
In re:                                  )
                                        )
EVANDER FRANK KANE          CH: 7       )   21-50028
                                        )
        Debtor.                         )
_____ )

                              U.S. Trustee
                              P.O. Box 4188
                              Mountain View, CA 94040

                              February 3, 2021


        BEFORE FRODE S. HJELMESET Chapter 7 Trustee

APPEARANCES:

For the Debtor:             Stephen Finestone
                            Finestone Hayes LLP
                            456 Montgomery St. 20th Fl.
                            San Francisco, CA 94104

For Chapter 7 Trustee:      Gregg S. Kleiner
                            Rincon Law LLP
                            268 Bush St. #3335
                            San Francisco, CA 94104

For Sure Sports:            Alan Wilmot
                            Heitner Legal
                            215 Henricks Isle
                            Fort Lauderdale, FL 33301

For Centennial Bank, N.A.:  Andrew J. Ghekas
                            Anthony & Partners, LLC
                            100 S. Ashley Dr., #1600
                            Tampa, FL 33602

For Newport Management:     Arthur Yellin
                            Keith Banner
                            Greenberg Glusker, LLP
                            2049 Century Park E, Suite 2600
                            Los Angeles, CA 90067

*TheRecordXchange*
www.therecordxchange.com  (800) 406-1290

APPEARANCES:(Continued)

For South River Capital LLC:    David B. Rao
    Law Offices of Binder and Malter
    2775 Park Ave.
    Santa Clara, CA 95050

For Zions Bancorporation,    Gerrick Warrington
N.A:    Frandzel Robins Bloom & Csato,
    LC.
    1000 Wilshire Blvd., 19th Fl
    Los Angeles, CA 90017

For Loan Shark, LLC:    Christopher Ribas

For Hope Parker:    Jonathan Lewis

For the United States    Marta E. Villacorta
Trustee:

Proceedings recorded by electronic sound recording;
transcript produced by The Record Xchange.

1   an LLC just for -- just to have available to me for possible

2   use, but it was never used.

3          THE TRUSTEE:  All right.  Okay.  All right.  Okay.

4   Okay.  So let's -- I'm just going through the amended -- so

5   Mr. Finestone, I realize now that the Debtor has a credit card

6   with the Royal Bank of Canada.  Could we get credit card

7   statements for that account, going back five months?

8          MR. FINESTONE:  Sure.

9          THE TRUSTEE:  Thank you, sir.  All right.  All

10  right.  Okay.  Okay.  So amended -- okay.  So I'm just going

11  to ask you about some of the secured -- secured debt, okay,

12  Mr. Kane?  Let's see, so -- on your amended Schedule D,

13  there's some new -- there's some new secure debts listed.  So

14  one is for Centennial Bank for $8,360,000.  What was that loan

15  for?

16         MR. KANE:  That loan was to get me out of some of

17  the hard money loans I was in.

18         THE TRUSTEE:  Okay.

19         MR. KANE:  And pay them off.

20         THE TRUSTEE:  Oh, I see.  Okay.  So where did that

21  money go?  All of the one that you borrowed were used to pay

22  off these hard money loans?

23         MR. KANE:  Yes.

24         THE TRUSTEE:  Okay.  And what was -- why -- how --

25  why did you obtain those hard money loans in the first place?

1          MR. KANE:  There were many loans that were taken out

2    for a number of years.  I ended up just paying off loan after

3    loan.

4          THE TRUSTEE:  Okay.

5          MR. KANE:  With all the earned interest and fees,

6    that would get this number.

7          THE TRUSTEE:  I see.  Okay.  And then, apparently in

8    March 2019, there was a loan to Professional Bank for -- and I

9    guess the balance now is $1.3 million.  What was that loan

10   for?

11         MR. KANE:  The exact same thing.

12         THE TRUSTEE:  Okay.  To pay off hard money loans?

13         MR. KANE:  All three loans were basically

14   coordinated by Leon in order to pay off all the hard money

15   loans that I had between those three banks.

16         THE TRUSTEE:  Okay.  And so this was part of the

17   thing against McKenzie, the claim?  These are the loans

18   that -- some of the loans that he arranged in the -- so forth?

19   Okay.  And what about the loan from South River Capital, LLC,

20   balance about 1 million?  What was that money for?  I guess

21   that's May 2019 as well.

22         MR. KANE:  Yeah, that -- that -- the million, I

23   believe, is the judgment that they got.  That's not what was

24   borrowed from them.

25         THE TRUSTEE:  Okay.  And how much was originally

1   borrowed?

2            MR. KANE:  I believe it was 600- or 700,000.  I'm

3   not 100 percent sure on -- on that number, but I know it was

4   less than a million.

5            THE TRUSTEE:  Okay.  And why was that loan taken

6   out?

7            MR. KANE:  That loan was used to pay, I believe a

8   casino debt.

9            THE TRUSTEE:  Okay.  All right.  And then in August

10  2019, there was a loan from Zions Bancorporation, currently

11  balance, 4.2 million.  What was that money for?

12           MR. KANE:  Can you repeat that?

13           THE TRUSTEE:  Zions Bancorporation, $4.2 million

14  incurred in August 2018.

15           MR. KANE:  Yeah, that was one of the ones that Leon

16  McKenzie's.

17           THE TRUSTEE:  Okay.  And was that to pay off hard

18  money loans?

19           MR. KANE:  Yes.

20           THE TRUSTEE:  Okay.  All right.  Okay.  All right.

21  So you mentioned casino debt.  Now, so in your amended

22  schedules, it says that during the one year before you filed

23  for bankruptcy, you incurred losses of about 1.5 million,

24  gambling at casino and via bookie; is that correct?

25           MR. KANE:  Yes.

C E R T I F I C A T E

     I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


*John Buckley*
_____
John Buckley, CET-623
Digital Court Proofreader

# EXHIBIT "3"

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

_____
                                      )
In re:                                )
                                      )
EVANDER FRANK KANE          CH: 7     )   21-50028
                                      )
        Debtor.                       )
_____)

                         U.S. Trustee
                         P.O. Box 4188
                         Mountain View, CA 94040

                         February 3, 2021


          BEFORE FRODE S. HJELMESET Chapter 7 Trustee

<u>APPEARANCES</u>:

For the Debtor:              Stephen Finestone
                             Finestone Hayes LLP
                             456 Montgomery St. 20th Fl.
                             San Francisco, CA 94104

For Chapter 7 Trustee:       Gregg S. Kleiner
                             Rincon Law LLP
                             268 Bush St. #3335
                             San Francisco, CA 94104

For Sure Sports:             Alan Wilmot
                             Heitner Legal
                             215 Henricks Isle
                             Fort Lauderdale, FL 33301

For Centennial Bank, N.A.:   Andrew J. Ghekas
                             Anthony & Partners, LLC
                             100 S. Ashley Dr., #1600
                             Tampa, FL 33602

For Newport Management:      Arthur Yellin
                             Keith Banner
                             Greenberg Glusker, LLP
                             2049 Century Park E, Suite 2600
                             Los Angeles, CA 90067

*TheRecordXchange*
www.therecordxchange.com   (800) 406-1290

APPEARANCES:(Continued)

For South River Capital LLC:     David B. Rao
                                 Law Offices of Binder and Malter
                                 2775 Park Ave.
                                 Santa Clara, CA 95050

For Zions Bancorporation,        Gerrick Warrington
N.A:                             Frandzel Robins Bloom & Csato,
                                 LC.
                                 1000 Wilshire Blvd., 19th Fl
                                 Los Angeles, CA 90017

For Loan Shark, LLC:             Christopher Ribas

For Hope Parker:                 Jonathan Lewis

For the United States            Marta E. Villacorta
Trustee:

Proceedings recorded by electronic sound recording;
transcript produced by The Record Xchange.

1  okay.  Go ahead, Mr. Ghekan.

2          MR. GHEKAS:  Thank you, sir.

3          Good afternoon, Mr. Kane, my name is Andrew Ghekas,

4  I'm one of the attorneys for Centennial Bank.  I just have a

5  -- just a few follow-up questions; I know you've been here for

6  a while.  You list in your schedules, Schedule E, Item 2.3,

7  Centennial Bank having a secured claim in the amount

8  8,360,000, correct?

9          MR. KANE:  Yes.

10          MR. GHEKAS:  And you briefly testified that that

11  money was utilized to pay off other hard money loans, correct?

12          MR. KANE:  Yes.

13          MR. GHEKAS:  And what were those hard money loans

14  that you paid off utilized for?

15          MR. KANE:  I don't recall.

16          MR. GHEKAS:  Okay.  You also testified, that in

17  approximately sometime in July 2020 you received a payment

18  under your player's contract with the San Jose Sharks,

19  correct?

20          MR. KANE:  Yes.

21          MR. GHEKAS:  And what was the amount of that

22  payment?

23          MR. KANE:  Gross, it was three million.

24          MR. GHEKAS:  And that was -- that number net after

25  taxes and withholding?

## C E R T I F I C A T E

     I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


*John Buckley*
_____
John Buckley, CET-623
Digital Court Proofreader

# EXHIBIT "4"

1               UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF CALIFORNIA
2                 SAN JOSE DIVISION
             CASE NO.: 21-50028-SLJ
3                   Chapter 7

4   In re

5   EVANDER FRANK KANE,

6       Debtor.
   _____/
7

8

9

10  RULE 2004
    EXAMINATION AND
    DUCES TECUM
11  DEPOSITION OF:       **EVANDER FRANK KANE**

12  TAKEN:           Pursuant to Notice by
                     Counsel for Centennial Bank
13

    DATE:            March 24, 2021
14

    TIME:            2:01 p.m. to 5:14 p.m. (EST)
15

    LOCATION:       Zoom videoconference
16

    REPORTED BY:    Melanie Keefe, FPR
17                      Notary Public
                       State of Florida at Large
18

19

20

21

22

23

24

25

Case: 21-05016  Doc# 39-2  Filed: 11/17/22  Entered: 11/17/22 16:58:52  Page 53 of 455

```
1    APPEARANCES:       ANDREW J. GHEKAS, ESQUIRE
                        Anthony & Partners, LLC
2                       100 South Ashley Drive
                        Suite 1600
3                       Tampa, Florida  33602

4                            Attorney for Centennial Bank

5                       STEPHEN D. FINESTONE, ESQUIRE
                        Finestone Hayes LLP
6                       456 Montgomery Street
                        20th Floor
7                       San Francisco, California  94104

8                            Attorney for the Debtor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

REGENCY REPORTING SERVICE, INC. (813)224-0224

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 54 of 455

1      Professional Bank?

2           A.    Correct.

3           Q.    And so, again, to confirm, you didn't use any of

4      the Zions Bancorporation or California Bank & Trust loan to

5      buy any property?

6           A.    Correct.

7           Q.    You didn't use it to invest in any ongoing

8      business?

9           A.    Correct.

10          Q.    You didn't start a new business with it?

11          A.    Correct.

12          Q.    If we can skip to page 12 of this document and

13     there's a series of unsecured loans that you have listed

14     there.  I just want to briefly go through each one.  Davis

15     Sanchez you identify as a $150,000 loan.  Do you know what

16     that loan was for?

17          A.    Yeah.  It was money I borrowed from him.

18          Q.    And what was the purpose of borrowing the money?

19          A.    To basically just be able to pay my bills.

20          Q.    And do you know when you took out -- or sorry,

21     not took out.  Do you know when you borrowed this money?

22          A.    It wasn't all at the same time.  It was over the

23     course of a number of years.

24          Q.    Are there any payment terms to this loan?

25          A.    On paper or...

REGENCY REPORTING SERVICE, INC. (813)224-0224

```
1          Q.   Yes, on paper.

2          A.   No.

3          Q.   And who is Davis Sanchez to you?

4          A.   Just a friend of mine.

5          Q.   And going to page 13, the first one, Hebron

6    Shyng?

7          A.   Yep.

8          Q.   430,000, what was that loan for?

9          A.   Again, to help pay off some debt that I had and

10   also to stay current on my bills.

11         Q.   And do you know what debt you're referring to?

12         A.   There's probably some credit card debt, some

13   bills that I was behind on, so I can be able to pay my

14   mortgages, rent at the time, food.

15         Q.   And -- and who is Mr. Shyng?

16         A.   He's a friend of my parents.

17         Q.   And then the page 14, Mike Lispti?

18         A.   Um-hmm.

19         Q.   750,000, what was that loan for?

20         A.   That was some money that I had borrowed.

21         Q.   And what was the purpose of borrowing that money?

22         A.   Just to help pay off some -- some other people

23   that I borrowed money from.

24         Q.   And do you know when this loan was incurred?

25         A.   Not exactly, no.
```

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 56 of 455

1    Q.    Is there any documentation to it?

2    A.    No.

3    Q.    And continuing to page 15 -- I'm sorry.  Skip 15.

4    Page 16, Pete Gianakas?

5    A.    Um-hmm.

6    Q.    400,000, what was this loan for?

7    A.    Again, just to pay off some other people that I

8    had borrowed money from in the past.

9    Q.    Did you know who those people were?

10   A.    I don't recall at this time.

11   Q.    Do you know the date in which you took out -- or

12   took this loan?

13   A.    No, I do not.

14   Q.    Is there any documentation?

15   A.    No.

16   Q.    And then same page, Raj Bhangu?

17   A.    Bhangu, yeah.

18   Q.    Bhangu.  Sorry.  A hundred thousand, same

19   question, do you know why -- why this loan was taken out?

20   A.    Yeah.  He loaned me the money because I was

21   behind on some bills and needed -- needed the cash to -- to

22   stay current and make up some late payments.

23   Q.    And do you know when this loan was taken out?

24   A.    I don't recall, no.

25   Q.    And is it documented?

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 57 of 455

1          A.    It is not.

2          Q.    And then the last one I have on this, page 17 of

3    19, Tony Veltri?

4          A.    Yes.

5          Q.    320,000, again, do you know what this loan was

6    taken out for?

7          A.    Yes.  It was money used to pay off other people

8    that I had borrowed money from in the past.

9          Q.    And do you recall who those other people were?

10         A.    I do not.

11         Q.    And do you know the date in which you took out

12   this loan?

13         A.    No.  It was money pieced together over time.

14         Q.    And there's no written documentation regarding

15   it?

16         A.    No.

17         Q.    Okay.  So now I'm going to want to have you open

18   up a document entitled Wells Fargo 2020 Statements

19   Combined.

20         A.    Yep.

21         Q.    All right.  If you could, what -- what is -- what

22   is your Wells Fargo account primarily used for?

23         A.    There's nothing specific about what the account

24   is used for.

25         Q.    Okay.  And you just have seven accounts.  I

1                    CERTIFICATE OF REPORTER

2      STATE OF FLORIDA              )

3      COUNTY OF HILLSBOROUGH        )

4


5              I, Melanie Keefe, Court Reporter, certify that I
   was authorized to and did stenographically report remotely
6   the deposition of EVANDER FRANK KANE; that a review of the
   transcript was requested; and that the transcript, pages 5
7   through 102, inclusive, is a true and complete record of my
   stenographic notes.
8
               I further certify that I am not a relative,
9   employee, attorney, or counsel of any of the parties, nor am
   I a relative or employee of any of the parties' attorney or
10  counsel connected with the action, nor am I financially
   interested in the action.
11
                              *s/ Melanie Keefe*_____
12                            Melanie Keefe, FPR
                              Court Reporter
13  _____

14                    CERTIFICATE OF OATH

15     STATE OF FLORIDA              )

16     COUNTY OF HILLSBOROUGH        )

17             I, the undersigned authority, certify that
   EVANDER FRANK KANE personally appeared before me remotely
18  and was duly sworn.

19             WITNESS my hand and official seal this 8th day of
   April, 2021.

20

21                            *s/ Melanie Keefe*_____
                              Melanie Keefe, FPR
22                            Notary Public
                              State of Florida
23                            My Commission No.:  HH055410
                              Expires:  December 9, 2024
24

25


───REGENCY REPORTING SERVICE, INC. (813)224-0224───

# EXHIBIT "5"

1        UNITED STATES BANKRUPTCY COURT
         NORTHERN DISTRICT OF CALIFORNIA
2              SAN JOSE DIVISION
         CASE NO.: 21-50028-SLJ
3                  Chapter 7

4    In re

5    EVANDER FRANK KANE,

6         Debtor.
     _____/
7

8

9

RULE 2004
10   EXAMINATION AND
     DUCES TECUM
11   DEPOSITION OF:        **EVANDER FRANK KANE**

12   TAKEN:                Pursuant to Notice by
                           Counsel for Centennial Bank
13
     DATE:                 March 24, 2021
14
     TIME:                 2:01 p.m. to 5:14 p.m. (EST)
15
     LOCATION:             Zoom videoconference
16
     REPORTED BY:          Melanie Keefe, FPR
17                         Notary Public
                           State of Florida at Large
18

19

20

21

22

23

24

25

───REGENCY REPORTING SERVICE, INC. (813)224-0224───

```
 1   APPEARANCES:        ANDREW J. GHEKAS, ESQUIRE
                         Anthony & Partners, LLC
 2                       100 South Ashley Drive
                         Suite 1600
 3                       Tampa, Florida  33602

 4                            Attorney for Centennial Bank

 5                       STEPHEN D. FINESTONE, ESQUIRE
                         Finestone Hayes LLP
 6                       456 Montgomery Street
                         20th Floor
 7                       San Francisco, California  94104

 8                            Attorney for the Debtor

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

───── REGENCY REPORTING SERVICE, INC. (813)224-0224 ─────

```
 1              MR. GHEKAS:  For me it's page 3.

 2              MR. FINESTONE:  Yeah.  No, you're right.  My --

 3         sorry.  Sorry for the confusion.  My little page number

 4         indicator didn't turn over.  I apologize, Andrew.

 5              MR. GHEKAS:  Oh, no problem.

 6         Q.    So, Mr. Kane, if you open up D2, Third Amendment

 7    to Secured Financial Transaction and Security Agreement, do

 8    you recognize this document?

 9         A.    Yes.

10         Q.    And is that your signature on page 4?

11         A.    Yes.

12         Q.    Okay.  So, Mr. Kane, let me ask you, what did you

13    need the $8 million for?

14         A.    It was used to pay off other business debt and

15    loans that were previously taken.

16         Q.    Other business debt and loans, is that what you

17    said?

18         A.    Yes.

19         Q.    So you didn't use it to purchase any properties?

20         A.    No, not at all.

21         Q.    And you didn't use it to purchase any operating

22    business?

23         A.    No.

24         Q.    And you didn't use it to fund any operating

25    business?
```

―――――― REGENCY REPORTING SERVICE, INC. (813)224-0224 ――――――

```
1          A.    No.

2          Q.    And you didn't use it to invest in any

3    investments or other business ventures or anything like

4    that?

5          A.    No.

6          Q.    So you said you used it for other business debts

7    and loans.  What's the other business debts?

8          A.    What I meant when I said "debt," I meant loans.

9          Q.    Oh, okay.  You used it to pay off other loans?

10         A.    Other business loans and hard money loans and

11   private money loans that I had taken out, yes.

12         Q.    Okay.  All right.  When did you take out these

13   prior loans?

14         A.    I don't recall.

15         Q.    You don't recall.  Okay.

16               And do you know what the purpose of those prior

17   loans was for?

18         A.    I couldn't recall at this time.

19         Q.    Do you know why you referred to them as business

20   loans?

21         A.    Because that's what the documents said --

22         Q.    Okay.

23         A.    -- I believe.

24         Q.    You don't own or operate any businesses, do you?

25         A.    Not at this time, no.
```

REGENCY REPORTING SERVICE, INC. (813)224-0224

1    Q.    Have you ever?

2    A.    I don't recall.

3    Q.    You don't recall.  Okay.

4          Do you recall how much these other loans were,

5    the total amount?

6    A.    I do not, no.

7    Q.    Was it one loan, two loans, three?  Do you know?

8    A.    I don't know the number, but there were -- it was

9    more than one, multiple loans.

10         Q.    And you don't -- do you recall who you took them

11   out with?

12   A.    Not all of them, no.

13   Q.    Which ones do you remember?

14   A.    I know there is a loan with East West Bank, I

15   believe, and I -- I don't want to guess exactly what the

16   names of the other ones were.

17   Q.    That is perfectly fine.

18         But for these other loans that you used -- so did

19   you use the total $8 million lent from Centennial to pay off

20   or pay down these prior loans?

21   A.    I don't -- I'm not a hundred percent sure on

22   exactly where the totality of the 8 million went.  But to my

23   knowledge, a great majority of it, yes, was used to pay down

24   previous loans.

25   Q.    Okay.  And you can't recall right now what those

REGENCY REPORTING SERVICE, INC. (813)224-0224

1    prior loans were for; correct?

2         A.    Correct.

3         Q.    Okay.  Do you -- so do you maintain any books or

4    records or -- or documents regarding these prior loans?

5         A.    Personally, no.

6         Q.    You said "personally, no," so somebody else?

7         A.    I have an accountant or I had an accountant that

8    I've worked with for the last couple of years and kind of

9    coupled with Sure Sports lending, so they would have, I

10   believe, those documents, records.

11        Q.    And who -- who is the accountant you referred to?

12        A.    Tony is his name.

13        Q.    Does he have a last name?

14        A.    Chiricosta.

15             MR. FINESTONE:  Why don't you go ahead and spell

16        that for Melanie, Mr. Kane, if you could.

17             THE WITNESS:  One second here.  I'm not sure how

18        to spell it either.  It's C-h-i-r-i-c-o-s-t-a.

19        Q.    Okay.  All right.  Mr. Kane, if I could have you

20   go back to the petition that we were previously looking at.

21   If you closed it again, it's F. Voluntary Chapter 7

22   Petition.

23        A.    Yes.

24        Q.    And if you could, go to page 8 of that document

25   and at the bottom it will be in red, page 8 of 73.

REGENCY REPORTING SERVICE, INC. (813)224-0224

1    you were going to file bankruptcy at the time in which you

2    made this investment into Ascher Capital II and III?

3        A.    Yes, it is.

4        Q.    Okay.  So let's go to 2.6, Pacific Private Money,

5    the next one.  We already discussed that credit.  So if we

6    continue to page 5 of 19, at the top Professional Bank

7    listed at 1,364,000.  What -- what was this loan for?

8        A.    That loan was for the exact same reasons, and I

9    believe roughly around the same time when I took out the

10   loans -- or the additional loan with Centennial and the loan

11   with California Bank & Trust.

12       Q.    Okay.  Okay.  And again, you don't recall what

13   those other loans -- who those other loans were taken with?

14       A.    Correct.

15       Q.    And you don't recall what those other loans --

16   what the purpose of those other loans were for?

17       A.    Correct.

18       Q.    And so you didn't -- did you receive any of the

19   portion of the $1,354,000 lent by Professional Bank?

20       A.    I don't recall.  It would be, again, the same

21   answer.  A great majority of those funds went to pay off

22   preexisting loans.  I might've received a small portion of

23   that amount, but I'm not sure.

24       Q.    Okay.  So just to confirm briefly, you didn't use

25   the Professional Bank funds to buy any property; correct?

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 67 of 455

1          A.   Correct.

2          Q.   You didn't use it to invest in any ongoing

3     business; correct?

4          A.   Correct.

5          Q.   You didn't use it to start a new business;

6     correct?

7          A.   Correct.

8          Q.   All right.  Let's -- so the next two are Scotia

9     Bank, and these look to be first mortgages on the two

10    Canadian properties?

11         A.   Correct.

12         Q.   All right.  And are you current on those

13    mortgages?

14         A.   Yes.

15         Q.   And then -- so 2.10 on page 6 of 19, South River

16    Capital LLC, $1,074,494.87, what was this loan for?

17         A.   That number was not the loan amount.  I believe

18    that's a judgment that I was unaware of that even

19    transpired.  I just received something in the mail regarding

20    that.  I believe the original loan was 600,000, and that

21    loan, again, was to help pay off some debt.

22              I'm not exactly sure what that -- what it was at

23    the time.  And I don't believe I received any additional --

24    or extra funds outside of that, but again, not a hundred

25    percent.  If it would've been, it would've been, again,

1    small comparatively.

2         Q.    And so you said it was to help pay off debt.  Do

3    you -- do you know what debt that was?

4         A.    I'm not sure what that specific money was used to

5    pay off at the time.

6         Q.    Okay.  And so that was May 2019, it says here?

7         A.    Yeah.  Yeah, that would be correct.

8         Q.    Continuing to page 7 of 19, Zions Bancorporation,

9    which has a loan for 4,250,000, do you know what that loan

10   was for?

11        A.    For -- yeah.  For the exact same things I was

12   just talking about previously.  I believe I had mentioned

13   them.  I think Zions Bank is California Bank & Trust, as I

14   referred to earlier, or that's what it was known to me as.

15   So those -- that money was, again, used to pay off

16   preexisting loans.

17        Q.    And so when you say it is for the exact same

18   thing as you previously discussed, you mean it was the same

19   type of loan that you took out at both Centennial and

20   Professional Bank?

21        A.    Sorry --

22        Q.    Yes, that was a bad question.  You indicated that

23   the loan was taken out for the same kind of things that you

24   just previously discussed, and I just want to confirm that

25   you're referring to the loans taken out at Centennial and

```
 1        Professional Bank?

 2              A.    Correct.

 3              Q.    And so, again, to confirm, you didn't use any of

 4        the Zions Bancorporation or California Bank & Trust loan to

 5        buy any property?

 6              A.    Correct.

 7              Q.    You didn't use it to invest in any ongoing

 8        business?

 9              A.    Correct.

10              Q.    You didn't start a new business with it?

11              A.    Correct.

12              Q.    If we can skip to page 12 of this document and

13        there's a series of unsecured loans that you have listed

14        there.  I just want to briefly go through each one.  Davis

15        Sanchez you identify as a $150,000 loan.  Do you know what

16        that loan was for?

17              A.    Yeah.  It was money I borrowed from him.

18              Q.    And what was the purpose of borrowing the money?

19              A.    To basically just be able to pay my bills.

20              Q.    And do you know when you took out -- or sorry,

21        not took out.  Do you know when you borrowed this money?

22              A.    It wasn't all at the same time.  It was over the

23        course of a number of years.

24              Q.    Are there any payment terms to this loan?

25              A.    On paper or...
```

REGENCY REPORTING SERVICE, INC. (813)224-0224

1                    CERTIFICATE OF REPORTER

2       STATE OF FLORIDA              )

3       COUNTY OF HILLSBOROUGH        )

4

5               I, Melanie Keefe, Court Reporter, certify that I
   was authorized to and did stenographically report remotely
6  the deposition of EVANDER FRANK KANE; that a review of the
   transcript was requested; and that the transcript, pages 5
7  through 102, inclusive, is a true and complete record of my
   stenographic notes.

8
               I further certify that I am not a relative,
9  employee, attorney, or counsel of any of the parties, nor am
   I a relative or employee of any of the parties' attorney or
10 counsel connected with the action, nor am I financially
   interested in the action.

11
                          *s/ Melanie Keefe*_____
12                        Melanie Keefe, FPR
                          Court Reporter
13 _____

14                     CERTIFICATE OF OATH

15      STATE OF FLORIDA              )

16      COUNTY OF HILLSBOROUGH        )

17              I, the undersigned authority, certify that
   EVANDER FRANK KANE personally appeared before me remotely
18 and was duly sworn.

19              WITNESS my hand and official seal this 8th day of
   April, 2021.

20

21                        *s/ Melanie Keefe*_____
                          Melanie Keefe, FPR
22                        Notary Public
                          State of Florida
23                        My Commission No.:  HH055410
                          Expires:  December 9, 2024

24

25

        ──REGENCY REPORTING SERVICE, INC. (813)224-0224──

# EXHIBIT "6"

Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:    (415) 421-2624
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Evander Frank Kane,
Debtor and Defendant

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 21-50028-SLJ |
| | Chapter 7 |
| EVANDER FRANK KANE, | |
| Debtor. | |
| CENTENNIAL BANK, | Adv. Proc. No. 21-5016 |
| Plaintiff, | **DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT** |
| v. | |
| EVANDER FRANK KANE, | |
| Defendant. | |

**PROPOUNDING PARTY:** Centennial Bank

**RESPONDING PARTY:**    Evander Frank Kane

**SET NUMBER:**              One

Defendant Evander Frank Kane ("Kane"), by and through his counsel, hereby responds to the *First Request for Production of Document to the Debtor* (the "Requests") served by Centennial Bank ("Centennial").

//

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                1

## PRELIMINARY STATEMENT

Kane's responses to the Requests are based upon his current information, understanding, belief, and investigation to date. Kane has not completed his investigation, and his investigation and development of the facts and circumstances relating to this action are ongoing. Kane expressly reserves the right to supplement, clarify, revise, and/or correct any or all of the responses and objections herein, and to assert additional objections or limitations, in one or more subsequent supplemental response(s). Kane expressly reserves the right to conduct discovery with reference to, and offer into evidence at trial, any and all facts, documents, testimony, and evidence relating to the matters addressed in the Requests and the responses. Kane may discover additional facts, documents and evidence as its investigation is completed, and the responses given herein are made without prejudice to, and are not a waiver of, Kane's right to produce evidence of any other facts or documents at any time later in this proceeding.

Kane's responses are made only for the purposes of this action and are subject to the general objections, including without limitation competency, relevancy, materiality, propriety, admissibility, and privilege, which would require the exclusion thereof if such information were offered into evidence. Kane's responses and objections shall not be taken as an admission, implied or incidental, that Kane accepts or admits the existence of any fact set forth or presumed in the Requests, that the Requests are relevant or material to the subject matter of the action, or that the responses thereto constitute admissible evidence. By making the following responses to the Requests, Kane does not waive, and hereby expressly reserves its right to assert any and all objections in this action, or in any subsequent or related case, action, or proceeding.

Kane will produce copies of the responsive documents, or make the responsive documents available for inspection, subject to all objections and limitations herein. Documents and information that are publicly available, or that are equally or more accessible to Centennial will not be produced.

//

//

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

2

# GENERAL OBJECTIONS

All of Kane's responses to the Requests are made subject to, and incorporate, the following general objections and limitations. Kane objects to the Requests, as follows:

1.    Kane objects to the Requests to the extent that they do not comply with Rules 26 and 34 of the Federal Rules of Civil Procedure, and the applicable rules under the Federal Rules of Bankruptcy Procedure.

2.    Kane objects to each definition and instruction in the Requests and each Request to the extent that it purports to impose obligations on Kane that in any way differ from those expressly set forth in the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, any general or standing orders, and any other court order.

3.    Kane objects to the Requests to the extent that they seek documents that would disclose: (a) legal theories, legal opinions, mental impressions, or other information of Kane's counsel; (b) any information protected by privilege, including without limitation the attorney-client privilege, the joint-defense privilege, the trade secret or proprietary information privilege; or (c) any other available and valid grounds for withholding documents from production, including without limitation the attorney work product doctrine. Kane further objects to the extent the Requests require information collected, generated, or prepared in anticipation of litigation and for trial. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

4.    Kane objects to each and every Request to the extent that any such Request seeks information protected by constitutional, statutory, or judicial guarantees of privacy. Kane also objects to each and every Request to the extent that any such Request seeks information protected by third parties' constitutional, statutory, or judicial guarantees of privacy. Such

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

3

information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

5.      Kane objects to the Requests to the extent that they seek documents that would disclose information of a confidential and/or proprietary nature, or subject to a right to privacy protected under the United States Constitution, or other confidentiality provisions or regulations, whether the right of Kane or of a third party. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

6.      Kane objects to the Requests to the extent that they seek production of documents in Kane's possession, custody, or control that were produced by other entities, or concern other parties, and which may contain privileged, confidential, proprietary, and/or trade secret information, and are subject to all applicable privileges. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

7.      Kane objects to each and every Request to the extent that any such Request seeks expert witness information. Such information will not be provided at this time and will be provided during the time specified by, and as may be required by, the Federal Rules of Bankruptcy Procedure and the Federal Rule of Civil Procedure.

8.      Kane objects to the Requests to the extent that they seek documents that are readily or more accessible to Centennial from documents or information in Centennial's or its counsel's possession, custody, or control, or from other sources.

9.      Kane objects to the Requests to the extent that they seek documents that are publicly available. This objection encompasses, without limitation, the publicly available court records in this adversary proceeding, *Centennial Bank v. Evander Frank Kane*, Adversary Proceeding No. 21-05016; the underlying bankruptcy case, *In re Evander Frank Kane*, Case No. 21-50028-SLJ; and any related case, action, or proceeding.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT          4

10. Kane objects to each and every Request, including any instructions or definitions used therein, to the extent that any such Request is overbroad, burdensome and oppressive, and attempts to impermissibly expand the obligations of a responding party pursuant to Federal Rule of Civil Procedure 34.

11. With respect to the defined terms "Debtor," Kane objects to the inclusion of agents, attorneys, employees, accountants, assistants, or representatives, and all other persons acting or purporting to act on his behalf as violating the attorney-client privilege, attorney work produce doctrine, and any other applicable privileges. Kane also objects to the definition as vague, ambiguous, unduly burdensome, and seeking to encompass documents not relevant to the causes of action or defenses of any party to this action, and not reasonably proportional to the needs of the case. For the purposes of responding to the Requests, Kane will interpret these words as referring to himself.

12. Kane objects to each and every Request to the extent that any such Request contains undefined terms subject to subjective interpretation, rendering the Request vague and ambiguous, overbroad, and unintelligible.

13. Kane incorporates by reference each and every General Objection set forth above into each and every specific response set forth below. Kane does not waive, and hereby expressly reserves, its right to supplement, clarify, revise, and/or correct any or all of its responses.

14. Kane reserves the right to supplement his answers to any of these Request or to any part thereof.

## RESPONSES AND OBJECTIONS TO REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents substantiating, memorializing, confirming, or evidencing the Debtor's gambling losses from January 1, 2015, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine,

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

5

and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications relating to the incorporation, creation, or organization of the (i) Lions Properties LLC, (ii) EK9 Marketing, LLC, (iii) Evander Kane, LLC, and (iv) any other business entity in which the Debtor holds or has previously held any interest in.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all documents and communications" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all documents relating to the Thrivest Loan, including, without limitation, all loan documents evidencing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports LLC ("Sure Sports") and any and all

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

6

documents relating to the Thrivest Loan may be obtained from Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all documents relating to the DCC Loan, including, without limitation, all loan documents evidencing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and any and all documents relating to the DCC Loan may be obtained from Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all documents relating to the SIC Loan, including, without limitation, all loan documents evidencing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and any and all documents relating to the SIC Loan may be obtained from Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all documents relating to the South River Loan, including, without limitation, all loan documents evidencing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and any and all documents relating to the South River Loan may be obtained from Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane further objects to this Request to the extent it seeks information or documents

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                        8

in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all documents reflecting communications as between the Debtor and Thrivest relating to the Thrivest Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all documents reflecting communications as between the Debtor and DCC relating to the DCC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

9

not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all documents reflecting communications as between the Debtor and SIC relating to the SIC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all documents reflecting communication as between the Debtor and South River relating to the South River Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                10

not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 11:**

Any and all documents relating to the disbursement of any monies, funds, and/or proceeds from any lending arrangement as between the Debtor and Thrivest, including without limitation the Thrivest Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with Thrivest was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 12:**

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

11

Any and all documents relating to the disbursement of any monies, funds, and/or proceeds from any lending arrangement as between the Debtor and DCC, including without limitation the DCC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with DCC was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 13:**

Any and all documents relating to the disbursement of any monies, funds, and/or proceeds from any lending arrangement as between the Debtor and SIC, including without limitation the SIC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with SIC was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
12

protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all documents relating to the disbursement of any monies, funds, and/or proceeds from any lending arrangement as between the Debtor and South River, including without limitation the South River Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with South River was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information

or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all documents reflecting the recipient of any proceeds from any lending arrangement as between the Debtor and Thrivest, including without limitation the Thrivest Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Kane objects to this Request as vague, ambiguous, or unintelligible.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all documents reflecting the recipient of any proceeds from any lending arrangement as between the Debtor and DCC, including without limitation the DCC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Kane objects to this Request as vague, ambiguous, and unintelligible.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all documents reflecting the recipient of any proceeds from any lending arrangement as between the Debtor and SIC, including without limitation the SIC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Kane objects to this Request as vague, ambiguous, or unintelligible.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all documents reflecting the recipient of any proceeds from any lending arrangement as between the Debtor and South River, including without limitation the South River Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Kane objects to this Request as vague, ambiguous, or unintelligible.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all documents reflecting communications as between the Debtor and Sure Sports relating to the Debtor's financial affairs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all documents reflecting communications as between the Debtor and Sure Sports relating to (i) the Thrivest Loan, (ii) the DCC Loan, (iii) the SIC Loan, and (iv) the South River Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all documents reflecting communications as between the Debtor and his mother relating to the Bankruptcy Case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation. Kane further objects that this

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

15

1  Request is harassing and seeks documents that are not relevant, nor likely to lead to the

2  discovery of admissible evidence.

3  **REQUEST FOR PRODUCTION NO. 22:**

4  Any and all documents reflecting communications as between the Debtor and his father

5  relating to the Bankruptcy Case.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

7  Kane objects to this Request on the grounds that it seeks information relating to matters

8  that are neither relevant to any party's claim or defense nor proportional to the needs of this

9  litigation because the information is not important to this litigation. Kane further objects that this

10  Request is harassing and seeks documents that are not relevant, nor likely to lead to the

11  discovery of admissible evidence.

12  **REQUEST FOR PRODUCTION NO. 23:**

13  Any and all documents relating to the debt obligation the Debtor owes to Davis Sanchez,

14  as listed in Section 4.5 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured

15  Claims [Doc. 18].

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

17  In addition to the General Objections set forth above, Kane objects to this Request as

18  encompassing documents protected by the attorney-client privilege, work-product doctrine,

19  and/or any other applicable privileges.

20  Subject to and without waiving its objections, Kane agrees to produce non-privileged

21  documents responsive to this Request that are in Kane's possession, custody, and control, and

22  that can be located by a reasonable search.

23  **REQUEST FOR PRODUCTION NO. 24:**

24  Any and all documents reflecting communications as between the Debtor and Davis

25  Sanchez relating to the debt obligation the Debtor owes to Davis Sanchez, as listed in Section 4.5

26  of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

28

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENT                                                                                    16

1        In addition to the General Objections set forth above, Kane objects to this Request as

2    encompassing documents protected by the attorney-client privilege, work-product doctrine,

3    and/or any other applicable privileges.

4        Subject to and without waiving its objections, Kane agrees to produce non-privileged

5    documents responsive to this Request that are in Kane's possession, custody, and control, and

6    that can be located by a reasonable search.

7    **REQUEST FOR PRODUCTION NO. 25:**

8        Any and all documents relating to the debt obligation the Debtor owes to Hebron Shyng,

9    as listed in Section 4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured

10   Claims [Doc. 18].

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

12       In addition to the General Objections set forth above, Kane objects to this Request as

13   encompassing documents protected by the attorney-client privilege, work-product doctrine,

14   and/or any other applicable privileges.

15       Subject to and without waiving its objections, Kane agrees to produce non-privileged

16   documents responsive to this Request that are in Kane's possession, custody, and control, and

17   that can be located by a reasonable search.

18   **REQUEST FOR PRODUCTION NO. 26:**

19       Any and all documents reflecting communications as between the Debtor and Hebron

20   Shyng relating to the debt obligation the Debtor owes to Hebron Shyng, as listed in Section 4.7

21   of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

23       In addition to the General Objections set forth above, Kane objects to this Request as

24   encompassing documents protected by the attorney-client privilege, work-product doctrine,

25   and/or any other applicable privileges.

26

27

28

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENT                                                                                      17

1    Subject to and without waiving its objections, Kane agrees to produce non-privileged

2    documents responsive to this Request that are in Kane's possession, custody, and control, and

3    that can be located by a reasonable search.

4    **REQUEST FOR PRODUCTION NO. 27:**

5    Any and all documents relating to the debt obligation the Debtor owes to Mike Lispti, as

6    listed in Section 4.12 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured

7    Claims [Doc. 18].

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

9    In addition to the General Objections set forth above, Kane objects to this Request as

10    encompassing documents protected by the attorney-client privilege, work-product doctrine,

11    and/or any other applicable privileges.

12    Subject to and without waiving its objections, Kane agrees to produce non-privileged

13    documents responsive to this Request that are in Kane's possession, custody, and control, and

14    that can be located by a reasonable search.

15    **REQUEST FOR PRODUCTION NO. 28:**

16    Any and all documents reflecting communications as between the Debtor and Mike Lispti

17    relating to the debt obligation the Debtor owes to Mike Lispti, as listed in Section 4.7 of the

18    Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

19    **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

20    In addition to the General Objections set forth above, Kane objects to this Request as

21    encompassing documents protected by the attorney-client privilege, work-product doctrine,

22    and/or any other applicable privileges.

23    Subject to and without waiving its objections, Kane agrees to produce non-privileged

24    documents responsive to this Request that are in Kane's possession, custody, and control, and

25    that can be located by a reasonable search.

26    **REQUEST FOR PRODUCTION NO. 29:**

27

28

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENT    18

Any and all documents relating to the debt obligation the Debtor owes to Pete Gianakas, as listed in Section 4.16 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving its objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 30:**

Any and all documents reflecting communications as between the Debtor and Pete Gianakas relating to the debt obligation the Debtor owes to Pete Gianakas, as listed in Section 4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving its objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all documents relating to the debt obligation the Debtor owes to Raj Banghu, as listed in Section 4.18 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. In addition, Kane directs Centennial to Raj Banghu's proof of claim (Claim 6) filed in the underlying bankruptcy case.

Subject to and without waiving its objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 32:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving its objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 33:**

Any and all documents relating to the debt obligation the Debtor owes to Tony Veltri, as listed in Section 4.21 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving its objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 34:**

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

20

1   Any and all documents reflecting communications as between the Debtor and Tony Veltri

2   relating to the debt obligation the Debtor owes to Tony Veltri, as listed in Section 4.7 of the

3   Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

5   In addition to the General Objections set forth above, Kane objects to this Request as

6   encompassing documents protected by the attorney-client privilege, work-product doctrine,

7   and/or any other applicable privileges.

8   Subject to and without waiving its objections, Kane agrees to produce non-privileged

9   documents responsive to this Request that are in Kane's possession, custody, and control, and

10  that can be located by a reasonable search.

11  **REQUEST FOR PRODUCTION NO. 35:**

12  All documents that evidence or constitute invoices that constitute bank account records

13  for any account utilized by the Debtor at any point in time during the last seven (7) years

14  preceding the date of the Debtor's initiation of the Liquidation.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

16  Kane objects to the extent that this Request for "all documents . . . at any point in time

17  during the last seven (7) years" is overly broad, harassing, seeks irrelevant documents, is not

18  reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an

19  unduly burdensome search or to produce documents that are not reasonably accessible. Kane

20  further objects to this Request on the ground that it is vague and compound, particularly in

21  regard to documents that "constitute invoices that constitute bank account records." Kane objects

22  to this Request as ambiguous because it is unclear whether the term "invoices that constitute

23  bank account records" expands or narrows the scope of this Request. Kane also objects that the

24  term "Liquidation" is not a defined term.

25  Kane further objects to this Request on the grounds that it appears to seek disclosure of

26  his privileged, highly confidential and proprietary financial information, protected from

27  compelled disclosure in this action arising from California law by statutory, constitutional and

28

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENT                                                                          21

judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege. Finally, Kane objects as he has already provided considerable bank records to Centennial as part of its Rule 2004 examination.

**REQUEST FOR PRODUCTION NO. 36:**

All documents evidencing the financial status of the Debtor at any point in time within the last seven (7) years, including all balance sheets, income statements, financial statements, and accounting documents or communications relating in any way to the assets, liabilities, income, or expenses of the Debtor at any time, whether actual or projected, whether prepared by an accountant, a bookkeeper, or any other person, and whether audited, reviewed, or compilation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all documents . . . at any point in time during the last seven (7) years" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

22

burdensome, and less expensive. Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege.

**REQUEST FOR PRODUCTION NO. 37:**

All demand letters, pleadings, and other documentation reflecting efforts by any creditor to collect a debt as against the Debtor, to the extent generated during the twelve (12) months preceding the date of the Debtor's initiation of the Bankruptcy Case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving its objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 38:**

All documents relating to the federal tax history of the Debtor, during the last seven (7) years, including federal tax returns, schedules, any correspondence or evidence of

communications with the accountant or tax preparer for the same, and any audit materials or other related communications by and between either the Debtor and any federal taxing authority representative, whether within the United States or within Canada.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all documents . . . during the last seven (7) years" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Kane also objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege.

Kane further objects to this Request to the extent that it seeks disclosure of information that is duplicative of the information provided pursuant to the Court's *Order Approving*

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

24

*Stipulation Regarding Centennial Bank Rule 2004 Examination* (see bankruptcy case docket at ECF 61), particularly the "documents [Kane] previously produced to the Chapter 7 Trustee and United States Trustee."

**REQUEST FOR PRODUCTION NO. 39:**

All official documents for any business entity, including without limitation any limited company, limited liability company. corporation, limited partnership or joint venture that the Debtor has any direct or indirect interest in, and all other evidences of the ownership, management, or control of such business entity, and the formal business and financial decisions making authority of such business entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all official documents" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and compound. Kane objects that the term "official" is not a defined term. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive. Kane further objects to the extent the Request seeks production from a third party as Kane is not the third party, cannot produce documents on behalf of a third party and is not a proper respondent to such a request. Lastly, Kane objects that this discovery is unreasonably duplicative of Request for Production No. 2.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 40:**

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                    25

All documents constituting financial statements, credit reports, loan applications, or other summary presentation to any potential lender that the Debtor consulted with prior to the initiation of the Bankruptcy Case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not limited in time and duplicative of previous Requests regarding specific lenders, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane also objects to the Request as not being limited as to time or vague as to time.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

26

**REQUEST FOR PRODUCTION NO. 41:**

All documents evidencing the value of any component of any property, tangible or intangible, real or personal, owned by the Debtor within the last seven (7) years, including, without limitation, appraisals, purchase offers, letters of intent, listing agreements, balance sheets, pro formas, or other documents pertaining to all or any portion of such property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane also objects to this Request as also vague, ambiguous, or unintelligible.

Kane further objects to this Request on the grounds that Kane has already provided information sufficient to identify and determine the value of all property owned by Kane in documents on file in the underlying bankruptcy case.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Please see documents previously produced, and any supplements thereto. Please also see documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto.

**REQUEST FOR PRODUCTION NO. 42:**

All documents evidencing any transfer in ownership of any business entity, including without limitation any limited company, limited liability company, limited partnership, general partnership, joint venture, or corporation, to or from the Debtor.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

27

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Please see documents previously produced, and any supplements thereto. Please also see documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto. Beyond these documents, Kane is not aware of any other documents that are covered by this Request.

**REQUEST FOR PRODUCTION NO. 43:**

All documents reflecting any form of communication between the Debtor and any financial services provider, relating to any funding, transfer of funds, debt obligations, service agreements, or other transactions or financial services being provided to the Debtor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not limited in time, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim.

**REQUEST FOR PRODUCTION NO. 44:**

All documents reflecting any form of communication between the Debtor and Sure Sports relating to the Debtor or any financial institution.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 45:**

All documents tending to confirm, rebut, or otherwise relate to any valuation of any asset identified in the Schedules.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim.

Kane further objects to this Request on the grounds that Kane has already provided information sufficient to identify and determine the value of all property owned by Kane in documents on file in the underlying bankruptcy case.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Please see documents previously produced, and any supplements thereto. Please also see

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

29

documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto.

**REQUEST FOR PRODUCTION NO. 46:**

All documents that constitute evidence of financial activity on any account of the Debtor, including without limitation, account statements, checks and copies of checks, advice of wire transfer, information pertaining to deposits and withdrawals, signature cards, and any other condition of account activity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Kane objects to the extent that this Request for "all documents" is overly broad, harassing, seeks irrelevant documents, is not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and compound, particularly in regard to documents that constitute evidence of "financial activity" on any account of the Debtor.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege. Finally, Kane has previously produced financial records to Centennial in connection with its Rule 2004

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

30

examination and he therefore objects to this Request to the extent it requires him to reproduce those documents previously provided.

**REQUEST FOR PRODUCTION NO. 47:**

All documents evidencing the fixed assets of the Debtor at any point in time during which the Centennial Obligation has been outstanding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane further objects to this Request on the ground that it is vague and compound, and the term "fixed assets" is not a defined term, nor is it intelligible.

**REQUEST FOR PRODUCTION NO. 48:**

All applications for a loan, or financial statements, together with any documents supporting or qualifying the same, presented by or prepared for the Debtor at any point in time during which the Centennial Obligation has been outstanding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane further objects to this Request on the ground that it is vague and compound. Kane objects to this Request on the grounds that it seeks information relating to

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

31

matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim.

**REQUEST FOR PRODUCTION NO. 49:**

All documents reflecting any form of communication by and between the Debtor and the Sharks regarding any issues stemming from the Debtor's gambling.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane objects to this Request on the grounds that it is harassing, seeks documents related to his employment relationship, and seeks documents that are not relevant.

**REQUEST FOR PRODUCTION NO. 50:**

All documents that evidence the liquidation, transfer, or abandonment by the Debtor of real or personal property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

32

documents" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Kane further objects to this Request on the grounds that Kane has already provided substantial information about the liquidation, transfer, or abandonment of any real or personal property by Kane in documents on file in the underlying bankruptcy case.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Please see documents previously produced, and any supplements thereto. Please also see documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto. To the extent Kane has any other documents covered by this Request, he will produce those in his possession, custody or control.

**REQUEST FOR PRODUCTION NO. 51:**

All documents reflecting the existence and activity of any account on which the Debtor is an authorized signatory, owner, or beneficiary, including without limitation any checking account, deposit account, securities account, loans, or other financial relationship, including all corresponding statements and other evidence of account activity during the past twelve (12) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Kane objects to the extent that this Request for "all documents . . . during the past twelve (12) years" is overly broad, harassing, seeks irrelevant documents, is not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and compound, particularly in regard to documents reflecting the "existence and activity" of any account on which the Debtor is an authorized signatory, owner, or beneficiary. Kane objects to this Request to the extent it seeks information

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                  33

or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege.

Kane also objects to this Request on the grounds that Kane has already provided substantial information about accounts in which Kane has an interest in documents on file in the underlying bankruptcy case and in documents produced to Centennial in connection with its Rule 2004 examination.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Please see documents previously produced, and any supplements thereto. Please also see documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto.

**REQUEST FOR PRODUCTION NO. 52:**

All documents reflecting any transfers originating from any account on which the Debtor is the authorized signatory, owner, or beneficiary, including without limitation any checking account, deposit account, or securities account by or for the Debtor's benefit activity during the past twelve (12) years.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

34

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Kane objects to the extent that this Request for "all documents . . . during the past twelve (12) years" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege. Kane also objects to this Request on the grounds that Kane has already provided substantial information about accounts in which Kane has an interest in documents on file in the underlying bankruptcy case and in documents produced to Centennial in connection with its Rule 2004 examination.

**REQUEST FOR PRODUCTION NO. 53:**

Copies of the Debtor's bank account statements, including any canceled checks, signature cards, wire transfers, withdrawals, debits and credits, cashier checks, and account closing documents, during the past twelve (12) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Kane objects to the extent that this Request for documents "during the past twelve (12) years" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege. Kane also objects to this Request on the grounds that Kane has already provided substantial information about accounts in which Kane has an interest in documents on file in the underlying bankruptcy case and in documents produced to Centennial in connection with its Rule 2004 examination.

**REQUEST FOR PRODUCTION NO. 54:**

Copies of all deeds, leases, mortgages, or any other written instrument evidencing the Debtor's direct or indirect interest or ownership in any real property at any time, including but not limited to real properties located at: 2301 Richland Ave., San Jose, California 95125; 3457 W. 35th Ave., Vancouver, British Columbia, Canada, 8447 Isabel Place; and Vancouver, British Columbia, Canada.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 55:**

All bills of sale or other written evidence of any personal or real property purchased, sold, or otherwise transferred by you during the past twelve (12) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request documents "during the past twelve (12) years" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

**REQUEST FOR PRODUCTION NO. 56:**

All documents evidencing any gambling, either formal at a casino or informal, together with any sports betting, conducted by the Debtor within the last seven (7) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

37

admissible evidence, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane objects to this Request on the grounds that it is harassing and seeks documents that are not relevant.

**REQUEST FOR PRODUCTION NO. 57:**

All documents evidencing any direct or indirect interest in any publicly traded company, including stock certificates and related valuation of such certificates.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and ambiguous, particularly in regard to its request for documents "evidencing any direct or indirect interest" without reference to whose interest. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the

allowance or disallowance of Centennial's claim. Notwithstanding these objections, Kane is not aware of any other documents that are covered by this Request.

**REQUEST FOR PRODUCTION NO. 58:**

All documents evidencing any direct or indirect interest in any non-publicly traded company, partnership, or joint venture, including any stock certificates, member shares, partnership agreements or joint venture agreements, and any related documents evidencing valuation of such interest.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and ambiguous, particularly in regard to its request for documents "evidencing any direct or indirect interest" without reference to whose interest. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim.

Kane further objects to this Request on the grounds that Kane has already provided information sufficient to identify any interest in property owned by Kane in documents on file in the underlying bankruptcy case.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

39

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Please see documents previously produced, and any supplements thereto. Please also see documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto.

**REQUEST FOR PRODUCTION NO. 59:**

All documents evidencing the Debtor's ability or inability to pay the liabilities as listed on the Schedules.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all documents" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague, compound, and unintelligible, particularly in regard to documents evidencing the debtor's "ability or inability to pay." Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

**REQUEST FOR PRODUCTION NO. 60:**

Copies of any and all titles or registration statements for motor vehicles, aircraft, boats, golf carts, or any such other vehicle in which the Debtor has a direct or indirect interest in.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time or scope, and purports to impose an

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

40

obligation on Kane to perform. Also vague and ambiguous concerning the phrase "indirect interest in. To the extent the Request seeks information about the described assets as of the time Kane filed his bankruptcy case, he will produce responsive documents in his possession, custody or control.

**REQUEST FOR PRODUCTION NO. 61:**

All documents evidencing the manner in which the Debtor has utilized, gifted, invested, or otherwise disposed of any compensation, salary, signing bonuses, or other monies received by the Debtor from the Sharks or any other professional team within the National Hockey League for services rendered by the Debtor on behalf of the same during the past twelve (12) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane objects to this Request on the grounds that it is harassing and seeks documents that are not relevant.

Dated: January 14, 2022                     FINESTONE HAYES LLP


                                             /s/ Stephen D. Finestone
                                            Stephen D. Finestone
                                            Attorneys for Evander Frank Kane,
                                            Debtor and Defendant

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                41

**PROOF OF SERVICE**

I, the undersigned, declare that I am over the age of eighteen years and not a party to this action. My business address is 456 Montgomery Street, Floor 20, San Francisco, California 94104. I caused a true and correct copy of the following documents:

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT**

to be served in the manner stated below.

**<u>SERVED BY EMAIL</u>**
On January 14, 2022, I served the following persons and/or entities by email.

John A. Anthony
janthony@anthonyandpartners.com

Andrew J. Gekhas
aghekas@anthonyandpartners.com

Peter C. Califano
pcalifano@cwclaw.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 14, 2022, in San Francisco, California.

*/s/ Stephen D. Finestone*
Stephen D. Finestone

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT

42

# EXHIBIT "7"

Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:    (415) 421-2624
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Evander Frank Kane,
Debtor and Defendant

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 21-50028-SLJ |
| EVANDER FRANK KANE, | Chapter 7 |
| Debtor. | |
| CENTENNIAL BANK, | Adv. Proc. No. 21-5016 |
| Plaintiff, | **DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION** |
| v. | |
| EVANDER FRANK KANE, | |
| Defendant. | |

**PROPOUNDING PARTY:** Centennial Bank

**RESPONDING PARTY:**    Evander Frank Kane

**SET NUMBER:**        One

Defendant Evander Frank Kane ("Kane"), by and through his counsel, hereby responds to the *First Request for Admission to the Debtor* (the "Requests") served by Centennial Bank ("Centennial").

//

//

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION                    1

## PRELIMINARY STATEMENT

Kane's responses to the Requests are based upon his current information, understanding, belief, and investigation to date. Kane has not completed his investigation, and his investigation and development of the facts and circumstances relating to this action are ongoing. Kane expressly reserves the right to supplement, clarify, revise, and/or correct any or all of the responses and objections herein, and to assert additional objections or limitations, in one or more subsequent supplemental response(s). Kane expressly reserves the right to conduct discovery with reference to, and offer into evidence at trial, any and all facts, documents, testimony, and evidence relating to the matters addressed in the Requests and the responses. Kane may discover additional facts, documents and evidence as his investigation is completed, and the responses given herein are made without prejudice to, and are not a waiver of, Kane's right to produce evidence of any other facts or documents at any time later in this proceeding.

Kane's responses are made only for the purposes of this action and are subject to the general objections, including without limitation competency, relevancy, materiality, propriety, admissibility, and privilege, which would require the exclusion thereof if such information were offered into evidence. Kane's responses and objections shall not be taken as an admission, implied or incidental, that Kane accepts or admits the existence of any fact set forth or presumed in the Requests, that the Requests are relevant or material to the subject matter of the action, or that the responses thereto constitute admissible evidence. By making the following responses to the Requests, Kane does not waive, and hereby expressly reserves its right to assert any and all objections in this action, or in any subsequent or related case, action, or proceeding.

## GENERAL OBJECTIONS

All of Kane's responses to the Requests are made subject to, and incorporates, the following general objections and limitations. Kane objects to the Requests, as follows:

1.     Kane objects to the Requests to the extent that they do not comply with Rules 26 and 36 of the Federal Rules of Civil Procedure, and the applicable rules under the Federal Rules of Bankruptcy Procedure.

//

2. Kane objects to each definition and instruction in the Requests and each Request to the extent that it purports to impose obligations on Kane that in any way differ from those expressly set forth in the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, any general or standing orders, and any other court order.

3. Kane objects to the Requests to the extent that they seek documents that would disclose: (a) legal theories, legal opinions, mental impressions, or other information of Kane's counsel; (b) any information protected by privilege, including without limitation the attorney-client privilege, the joint-defense privilege, the trade secret or proprietary information privilege; or (c) any other available and valid grounds for withholding information, including without limitation the attorney work product doctrine. Kane further objects to the extent the Requests require information collected, generated, or prepared in anticipation of litigation and for trial. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

4. Kane objects to each and every Request to the extent that any such Request seeks information protected by constitutional, statutory, or judicial guarantees of privacy. Kane also objects to each and every Request to the extent that any such Request seeks information protected by third parties' constitutional, statutory, or judicial guarantees of privacy. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

5. Kane objects to the Requests to the extent that they seek documents that would disclose information of a confidential and/or proprietary nature, or subject to a right to privacy protected under the United States Constitution, or other confidentiality provisions or regulations, whether the right of Kane or of a third party. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

6. Kane objects to the Requests to the extent that they seek production of documents in Kane's possession, custody, or control that were produced by other entities, or concern other parties, and which may contain privileged, confidential, proprietary, and/or trade secret information, and are subject to all applicable privileges. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

7. Kane objects to each and every Request to the extent that any such Request seeks expert witness information. Such information will not be provided at this time and will be provided during the time specified by, and as may be required by, the Federal Rules of Bankruptcy Procedure and the Federal Rule of Civil Procedure.

8. Kane objects to the Requests to the extent that they seek documents that are readily or more accessible to Centennial from documents or information in Centennial's or its counsel's possession, custody, or control, or from other sources.

9. Kane objects to the Requests to the extent that they seek documents that are publicly available. This objection encompasses, without limitation, the publicly available court records in this adversary proceeding, *Centennial Bank v. Evander Frank Kane*, Adversary Proceeding No. 21-05016; the underlying bankruptcy case, *In re Evander Frank Kane*, Case No. 21-50028-SLJ; and any related case, action, or proceeding.

10. Kane objects to each and every Request, including any instructions or definitions used therein, to the extent that any such Request is overbroad, burdensome and oppressive, and attempts to impermissibly expand the obligations of a responding party pursuant to Federal Rule of Civil Procedure 36.

11. With respect to the defined term "Debtor," Kane objects to the inclusion of agents, attorneys, employees, accountants, assistants, or representatives, and all other persons acting or purporting to act on his behalf as violating the attorney-client privilege, attorney work produce doctrine, and any other applicable privileges. Kane also objects to the definition as vague, ambiguous, unduly burdensome, and seeking to encompass documents not relevant to the causes of action or defenses of any party to this action, and not reasonably proportional to the

needs of the case. For the purposes of responding to the Requests, Kane will interpret these words as referring to himself.

12. Kane incorporates by reference each and every General Objection set forth above into each and every specific response set forth below. Kane does not waive, and hereby expressly reserves, its right to supplement, clarify, revise, and/or correct any or all of its responses.

13. Kane reserves the right to supplement his answers to any of these Request or to any part thereof.

## RESPONSES AND OBJECTIONS TO REQUEST FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the Debtor's debts as listed in the Schedules are not primarily business debts as that term is defined above in Section I, paragraph 24.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Debtor's debts as listed in the Schedules are primarily consumer debts as that term is defined above in Section I, paragraph 23.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the primary purpose in the Debtor incurring the Centennial Obligation was not for a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION                    5

objections, Kane admits that the Centennial Obligation was primarily incurred to pay off existing debt as set forth in the relevant closing statements.

**REQUEST FOR ADMISSION NO. 4:**

Admit that the primary purpose in the Debtor incurring the Centennial Obligation was not for the operation of a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the Centennial Obligation was primarily incurred to pay off existing debt as set forth in the relevant closing statements.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the primary purpose in the Debtor incurring the Zions Obligation was not for a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the Zions Obligation was primarily incurred to pay off existing debt as set forth in the relevant closing statements.

**REQUEST FOR ADMISSION NO. 6:**

Admit that the primary purpose in the Debtor incurring the Zions Obligation was not for the operation of a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the Zions Obligation was primarily incurred to pay off existing debt as set forth in the relevant closing statements.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the primary purpose in the Debtor incurring the Professional Bank Obligation

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION          6

was not for a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the Professional Bank Obligation was primarily incurred to pay off existing debt as set forth in the relevant closing statements.

**REQUEST FOR ADMISSION NO. 8:**

Admit that the primary purpose in the Debtor incurring the Professional Bank Obligation was not for the operation of a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the Professional Obligation was primarily incurred to pay off existing debt as set forth in the relevant closing statements.

**REQUEST FOR ADMISSION NO. 9:**

Admit that the primary purpose in the Debtor incurring the South River Obligation was not for a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the South River Obligation was primarily incurred to pay off existing debt and meet various expenses.

**REQUEST FOR ADMISSION NO. 10:**

Admit that the primary purpose in the Debtor incurring the South River Obligation was not for the operation of a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any

objections, Kane admits that the South River Obligation was primarily incurred to pay off existing debt and meet various expenses.

**REQUEST FOR ADMISSION NO. 11:**

Admit that the South River Obligation stems from a judgment entered against the Debtor relating to a loan the Debtor incurred in order to pay a casino debt.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Kane also objects that this Request is compound and conjunctive. Subject to and without waiving any objections, Kane responds as follows: Admitted.

**REQUEST FOR ADMISSION NO. 12:**

Admit that within one year before the Debtor initiated the Bankruptcy Case the Debtor made payments on account of a debt that benefited his mother.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague and ambiguous and calling for a legal conclusion. Kane also objects that this Request is compound and conjunctive. Subject to and without waiving any objections, Kane admits that he provided financial support to his mother and other relatives in the year prior to his bankruptcy filing.

**REQUEST FOR ADMISSION NO. 13:**

Admit that within one year before the Debtor initiated the Bankruptcy Case the Debtor made payments on account of a debt that benefited his father.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague and ambiguous and calling for a legal conclusion. Kane also objects that this Request is compound and conjunctive. Subject to and without waiving any objections, Kane admits that he provided financial support to his father and other relatives in the year prior to his bankruptcy filing.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION          8

**REQUEST FOR ADMISSION NO. 14:**

Admit that within one year before the Debtor initiated the Bankruptcy Case the Debtor made payments on account of debt(s) owed by other family members of the Debtor other than his mother and/or father.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague and ambiguous and calling for a legal conclusion. Kane also objects that this Request is compound and conjunctive. Subject to and without waiving any objections, Kane admits that he provided financial support to his mother, father and other relatives in the year prior to his bankruptcy filing.

**REQUEST FOR ADMISSION NO. 15:**

Admit that within two years before the Debtor initiated the Bankruptcy Case the Debtor frequently gifted one or more of his family members sums of money in excess of $600 per person.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague and ambiguous and calling for a legal conclusion. Kane also objects that this Request is compound and conjunctive. Subject to and without waiving any objections, Kane admits that he provided financial support to his mother, father and other relatives prior to his bankruptcy filing.

**REQUEST FOR ADMISSION NO. 16:**

Admit that the debt obligation the Debtor owes to Davis Sanchez, as listed in Section 4.5 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18] is a consumer debt as the term is defined above in Section I, paragraph 23.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-

client communications and attorney work product. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the debt obligation the Debtor owes to Hebron Shyng, as listed in Section 4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18] is a consumer debt as the term is defined above in Section I, paragraph 23.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-client communications and attorney work product. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the debt obligation the Debtor owes to Mike Lispti, as listed in Section 4.12 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18] is a consumer debt as the term is defined above in Section I, paragraph 23.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-client communications and attorney work product. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the debt obligation the Debtor owes to Pete Gianakas, as listed in Section 4.16 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18] is a consumer debt as the term is defined above in Section I, paragraph 23.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-

1 client communications and attorney work product. Subject to and without waiving any
2 objections, Kane responds as follows: Denied.
3 **REQUEST FOR ADMISSION NO. 20:**
4     Admit that the debt obligation the Debtor owes to Raj Banghu, as listed in Section 4.18 of
5 the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18] is a
6 consumer debt as the term is defined above in Section I, paragraph 23.
7 **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**
8     In addition to the General Objections set forth above, Kane objects to this Request on the
9 grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-
10 client communications and attorney work product. Subject to and without waiving any
11 objections, Kane responds as follows: Denied.
12 **REQUEST FOR ADMISSION NO. 21:**
13     Admit that the debt obligation the Debtor owes to Tony Veltri, as listed in Section 4.21 of
14 the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18] is a
15 consumer debt as the term is defined above in Section I, paragraph 23.
16 **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**
17     In addition to the General Objections set forth above, Kane objects to this Request on the
18 grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-
19 client communications and attorney work product. Subject to and without waiving any
20 objections, Kane responds as follows: Denied.
21 **REQUEST FOR ADMISSION NO. 22:**
22     Admit that the Debtor's primary purpose in purchasing the Isabel Place Property was to
23 provide a residential property for his mother and father to reside in.
24 **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**
25     In addition to the General Objections set forth above, Kane objects to this Request on the
26 grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any
27 objections, Kane admits that the Isabel Place Property was purchased primarily to provide a
28 residence for members of his family and himself.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION      11

**REQUEST FOR ADMISSION NO. 23:**

Admit that the Isabel Place Property has never been rented.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane responds as follows: Admitted.

**REQUEST FOR ADMISSION NO. 24:**

Admit that the Debtor's primary purpose in incurring the obligation with Thrivest was not for a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the Thrivest obligation was primarily incurred to pay off existing debt and meet various expenses.

**REQUEST FOR ADMISSION NO. 25:**

Admit that the Debtor's primary purpose in incurring the obligation with Thrivest was not for the operation of a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the Thrivest obligation was primarily incurred to pay off existing debt and meet various expenses.

**REQUEST FOR ADMISSION NO. 26:**

Admit that the Debtor's primary purpose in incurring the obligation with DCC was not for a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION        12

objections, Kane admits that the DCC obligation was primarily incurred to pay off existing debt and meet various expenses.

**REQUEST FOR ADMISSION NO. 27:**

Admit that the Debtor's primary purpose in incurring the obligation with DCC was not for the operation of a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the DCC obligation was primarily incurred to pay off existing debt and meet various expenses.

**REQUEST FOR ADMISSION NO. 28:**

Admit that the Debtor's primary purpose in incurring the obligation with SIC was not for a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the SIC obligation was primarily incurred to pay off existing debt and meet various expenses.

**REQUEST FOR ADMISSION NO. 29:**

Admit that the Debtor's primary purpose in incurring the obligation with SIC was not for the operation of a business or investment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane admits that the SIC obligation was primarily incurred to pay off existing debt and meet various expenses.

**REQUEST FOR ADMISSION NO. 30:**

Admit that the Debtor is a highly compensated professional ice hockey player.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION                    13

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous, irrelevant, and misleading, particularly its use of the relative term "highly compensated" is subject to subjective interpretation. Kane also objects that this Request is compound and conjunctive. Kane objects to this Request on the grounds that it is overbroad, as to time and subject matter, and seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation.

Subject to and without waiving any objections, Kane admits that he is a professional hockey player. Kane was under contract with the San Jose Sharks (a contract which is in Plaintiff's possession), which the Sharks terminated on or about January 9, 2022.

**REQUEST FOR ADMISSION NO. 31:**

Admit that over the course of the Debtor's career as a professional ice hockey player he has received an aggregate gross salary of $40,000,000.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane responds as follows: Admitted.

**REQUEST FOR ADMISSION NO. 32:**

Admit that the Debtor does not maintain adequate records regarding the disposition of his assets including his salary and proceeds from various loans he has incurred.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous, and misleading, particularly its use of the term "adequate" is not defined and subject to subjective interpretation. Kane also objects that this Request is compound and conjunctive. Kane objects to this Request on the grounds that it is overbroad, as to time and subject matter, and seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation. Subject to and without waiving any objections, Kane responds as follows: Denied.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION          14

**REQUEST FOR ADMISSION NO. 33:**

Admit that the Debtor has failed to keep or preserve sufficient recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous, and misleading, particularly its use of the term "sufficient" is not defined and subject to subjective interpretation. Kane also objects that this Request is compound and conjunctive. Kane objects to this Request on the grounds that it is overbroad, as to time and subject matter, and seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 34:**

Admit that the Debtor is unable to adequately explain the loss of his assets including his salary.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous, and misleading, particularly its use of the term "adequately" is not defined and subject to subjective interpretation. Kane also objects that this Request is compound and conjunctive. Kane objects to this Request on the grounds that it is overbroad, as to time and subject matter, and seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 35**

Admit that the Debtor is unable to adequately explain for what purpose the obligation he incurred from Thrivest was used for.

//

//

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION            15

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant, particularly its use of the term "adequately" is not defined and subject to subjective interpretation. Kane also objects that this Request is compound and conjunctive. Kane objects to this Request on the grounds that it is overbroad, as to time and subject matter, and seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 36:**

Admit that the Debtor is unable to adequately explain for what purpose the obligation he incurred from DCC was used for.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous, and irrelevant, particularly its use of the term "adequately" is not defined and subject to subjective interpretation. Kane also objects that this Request is compound and conjunctive. Kane objects to this Request on the grounds that it is overbroad, as to time and subject matter, and seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation. Subject to and without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 37:**

Admit that the Debtor is unable to adequately explain for what purpose the obligation he incurred from SIC was used for.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant, particularly its use of the term "adequately" is not defined and subject to subjective interpretation. Kane also objects that this Request is compound and conjunctive. Kane objects to this Request on the grounds that it is overbroad, as to time and subject matter, and seeks information relating to matters that are neither relevant to

any party's claim or defense nor proportional to the needs of this litigation. Subject to and

without waiving any objections, Kane responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 38:**

Admit that the Debtor is unable to adequately explain for what purpose the obligations he

incurred from South River were used for.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

In addition to the General Objections set forth above, Kane objects to this Request on the

grounds that it is vague, ambiguous and irrelevant, particularly its use of the term "adequately" is

not defined and subject to subjective interpretation. Kane also objects that this Request is

compound and conjunctive. Kane objects to this Request on the grounds that it is overbroad, as

to time and subject matter, and seeks information relating to matters that are neither relevant to

any party's claim or defense nor proportional to the needs of this litigation. Subject to and

without waiving any objections, Kane responds as follows: Denied.

Dated: January 14, 2022            FINESTONE HAYES LLP

_/s/ Stephen D. Finestone_
Stephen D. Finestone
Attorneys for Evander Frank Kane,
Debtor and Defendant

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION     17

# PROOF OF SERVICE

I, the undersigned, declare that I am over the age of eighteen years and not a party to this action. My business address is 456 Montgomery Street, Floor 20, San Francisco, California 94104. I caused a true and correct copy of the following documents:

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION**

to be served in the manner stated below.

**<u>SERVED BY EMAIL</u>**
On January 14, 2022, I served the following persons and/or entities by email.

John A. Anthony
janthony@anthonyandpartners.com

Andrew J. Gekhas
aghekas@anthonyandpartners.com

Peter C. Califano
pcalifano@cwclaw.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 14, 2022, in San Francisco, California.

*/s/ Stephen D. Finestone*
Stephen D. Finestone

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION          18

# EXHIBIT "8"

Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:    (415) 421-2624
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Evander Frank Kane,
Debtor and Defendant

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-50028-SLJ<br>Chapter 7 |
| CENTENNIAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>EVANDER FRANK KANE,<br><br>Defendant. | Adv. Proc. No. 21-5016<br><br>**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:** Centennial Bank

**RESPONDING PARTY:**    Evander Frank Kane

**SET NUMBER:**            One

Defendant Evander Frank Kane ("Kane"), by and through his counsel, hereby responds to the *First Set of Interrogatories to the Debtor* (the "Interrogatories") served by Centennial Bank ("Centennial").

//

//

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES                    1

## PRELIMINARY STATEMENT

Kane's responses to the Interrogatories are based upon his current information, understanding, belief, and investigation to date. Kane has not completed his investigation, and his investigation and development of the facts and circumstances relating to this action are ongoing. Kane expressly reserves the right to supplement, clarify, revise, and/or correct any or all of the responses and objections herein, and to assert additional objections or limitations, in one or more subsequent supplemental response(s). Kane expressly reserves the right to conduct discovery with reference to, and offer into evidence at trial, any and all facts, documents, testimony, and evidence relating to the matters addressed in the Interrogatories and the responses. Kane may discover additional facts, documents and evidence as his investigation is completed, and the responses given herein are made without prejudice to, and are not a waiver of, Kane's right to produce evidence of any other facts or documents at any time later in this proceeding.

Kane's responses are made only for the purposes of this action and are subject to the general objections, including without limitation competency, relevancy, materiality, propriety, admissibility, and privilege, which would require the exclusion thereof if such information were offered into evidence. Kane's responses and objections shall not be taken as an admission, implied or incidental, that Kane accepts or admits the existence of any fact set forth or presumed in the Interrogatories, that the Interrogatories are relevant or material to the subject matter of the action, or that the responses thereto constitute admissible evidence. By making the following responses to the Interrogatories, Kane does not waive, and hereby expressly reserves his right to assert any and all objections in this action, or in any subsequent or related case, action, or proceeding.

## GENERAL OBJECTIONS

All of Kane's responses to the Interrogatories are made subject to, and incorporates, the following general objections and limitations. Kane objects to the Interrogatories, as follows:

1.      Kane objects to the Interrogatories to the extent that they do not comply with Rules 26 and 33 of the Federal Rules of Civil Procedure, and the applicable rules under the Federal Rules of Bankruptcy Procedure.

2.      Kane objects to each definition and instruction in the Interrogatories and each Interrogatory to the extent that it purports to impose obligations on Kane that in any way differ from those expressly set forth in the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, any general or standing orders, and any other court order.

3.      Kane objects to the Interrogatories to the extent that they seek information that would disclose: (a) legal theories, legal opinions, mental impressions, or other information of Kane's counsel; (b) any information protected by privilege, including without limitation the attorney-client privilege, the joint-defense privilege, the trade secret or proprietary information privilege; or (c) any other available and valid grounds for withholding information, including without limitation the attorney work product doctrine. Kane further objects to the extent the Interrogatories require information collected, generated, or prepared in anticipation of litigation and for trial. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

4.      Kane objects to each and every Interrogatory to the extent that any such Interrogatory seeks information protected by constitutional, statutory, or judicial guarantees of privacy. Kane also objects to each and every Interrogatory to the extent that any such Interrogatory seeks information protected by third parties' constitutional, statutory, or judicial guarantees of privacy. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

5.      Kane objects to the Interrogatories to the extent that they seek documents that would disclose information of a confidential and/or proprietary nature, or subject to a right to

privacy protected under the United States Constitution, or other confidentiality provisions or regulations, whether the right of Kane or of a third party. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

6. Kane objects to the Interrogatories to the extent that they seek production of documents in Kane's possession, custody, or control that were produced by other entities, or concern other parties, and which may contain privileged, confidential, proprietary, and/or trade secret information, and are subject to all applicable privileges. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

7. Kane objects to each and every Interrogatories to the extent that any such Interrogatory seeks expert witness information. Such information will not be provided at this time and will be provided during the time specified by, and as may be required by, the Federal Rules of Bankruptcy Procedure and the Federal Rule of Civil Procedure.

8. Kane objects to the Interrogatories to the extent that they seek documents that are readily or more accessible to Centennial from documents or information in Centennial's or its counsel's possession, custody, or control, or from other sources.

9. Kane objects to the Interrogatory to the extent that they seek information that are publicly available. This objection encompasses, without limitation, the publicly available court records in this adversary proceeding, *Centennial Bank v. Evander Frank Kane*, Adversary Proceeding No. 21-05016; the underlying bankruptcy case, *In re Evander Frank Kane*, Case No. 21-50028-SLJ; and any related case, action, or proceeding.

10. Kane objects to each and every Interrogatory, including any instructions or definitions used therein, to the extent that any such Interrogatory is overbroad, burdensome and oppressive, and attempts to impermissibly expand the obligations of a responding party pursuant to Federal Rule of Civil Procedure 33.

11. With respect to the defined terms "Debtor," Kane objects to the inclusion of agents, attorneys, employees, accountants, assistants, or representatives, and all other persons

acting or purporting to act on his behalf as violating the attorney-client privilege, attorney work produce doctrine, and any other applicable privileges. Kane also objects to the definition as vague, ambiguous, unduly burdensome, and seeking to encompass information not relevant to the causes of action or defenses of any party to this action, and not reasonably proportional to the needs of the case. For the purposes of responding to the Interrogatories, Kane will interpret these words as referring to himself.

12.     Kane objects to each and every Interrogatory to the extent that any such Interrogatory contains undefined terms subject to subjective interpretation, rendering the Interrogatory vague and ambiguous, overbroad, and unintelligible.

13.     Kane incorporates by reference each and every General Objection set forth above into each and every specific response set forth below. Kane does not waive, and hereby expressly reserves, his right to supplement, clarify, revise, and/or correct any or all of his responses.

14.     Kane reserves the right to supplement his answers to any of these Interrogatories or to any part thereof.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all individuals participating or assisting in the preparation of responses to these Interrogatories or the Requests for Admission, or who are in possession of documents described in the Request for Production, taking care to specify the capacity of each.

**ANSWER:**

Kane objects to this Interrogatory on the ground that Centennial has styled it as one interrogatory, but it includes two discreet subparts. *See* Fed. R. Civ. P. 33(a)(1). Accordingly, Kane shall consider this a response to two separate interrogatories.

Subject to and without waiving any of the foregoing objections, Kane responds as follows:

With respect to the first part: Stephen D. Finestone, Finestone Hayes LLP, 456 Montgomery Street, Floor 20, San Francisco, CA 94104, (415) 421-2624, Attorneys for Evander Frank Kane.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES          5

With respect to the second question: Kane objects as the referenced Request for Production includes 61 Requests and it would be burdensome for Kane to go through each Request and identify persons who might have documents responsive to each, which itself would be speculation on Kane's part. Kane further responds in general as follows: (i) counterparties to any loan transaction would presumably have documents related to the loans; (ii) his former business advisor/accountant, Tony Chiracosta, may have documents covered by some of the Requests; (iv) his former counsel, John Fiero, may have documents covered by some of the Requests; (v) banks and other financial institutions with which Kane has done business would have documents covered by some of the Requests; (vi) Leon C. McKenzie, President of Sure Sports LLC ("Sure Sports").

**INTERROGATORY NO. 2:**

Identify each person whom you know or believe has knowledge concerning any event, transaction, or allegation set forth in the Complaint and, for each such person, state with specificity the knowledge you believe him, her, or it to have.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Where appropriate, responsive facts are included in Kane's responses to Centennial's Requests for Admission. The names, addresses, and telephone numbers of persons with

knowledge of those facts include those set forth in Kane's *Defendant's Initial Disclosures*, which was served on Centennial's counsel on or about December 6, 2021.

**INTERROGATORY NO. 3:**

Identify (a) all facts supporting your assertion that your debt, as scheduled on the Petition, constitutes "primarily business debts" as defined in Part 6 of the Petition as "debts that you incurred to obtain money for a business or investment or through the operation of the business or investment," (b) all documents that support those facts, and (c) every person who has knowledge of those facts.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing (including declarations) in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Kane objects to this Interrogatory on the ground that Centennial has styled it as one interrogatory, but it includes three discreet subparts. *See* Fed. R. Civ. P. 33(a)(1). Accordingly, Kane shall consider this a response to three separate interrogatories.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Where appropriate, responsive facts are included in the (1) *Chapter 7 Petition*, ECF 1; (2) *Amended Schedules D and E/F*, ECF 18; (3) *Debtor's Opposition to Centennial Bank's Motion to Dismiss Liquidation*, ECF 120; (4) *Declaration of Evander Kane in Support of Debtor's Opposition to Motion to Dismiss*, ECF 121; (5) the Court's *Amended Order Denying Motion to Dismiss*, ECF 152; and other briefing in the above-referenced actions, and previous discovery. The names, addresses, and telephone numbers of persons with knowledge of those

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES        7

facts include those set forth in Kane's *Defendant's Initial Disclosures*, which was served on Centennial's counsel on or about December 6, 2021. Documents supporting these responses include those previously provided in this and other actions, the documents and information provided concurrently with Kane's *Defendant's Initial Disclosures*, and the documents and information provided concurrently with Kane's responses to these Interrogatories. Kane also notes that the designations on the Petition and related documents were the function of or done in consultation with counsel.

**INTERROGATORY NO. 4:**

Identify (a) all facts supports your assertion that the Centennial Obligation does not constitute consumer debt as defined in 11 U.S.C. § 101(a) as "incurred by an individual primarily for a personal, family, or household purpose," (b) all documents that support those facts, and (c) every person who has knowledge of those facts.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Kane objects to this Interrogatory on the ground that Centennial has styled it as one interrogatory, but it includes three discreet subparts. *See* Fed. R. Civ. P. 33(a)(1). Accordingly, Kane shall consider this a response to three separate interrogatories.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Where appropriate, responsive facts are included in the (1) *Chapter 7 Petition*, ECF 1; (2) *Amended Schedules D and E/F*, ECF 18; (3) *Debtor's Opposition to Centennial Bank's*

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES          8

1  *Motion to Dismiss Liquidation*, ECF 120; (4) *Declaration of Evander Kane in Support of*

2  *Debtor's Opposition to Motion to Dismiss*, ECF 121; (5) the Court's *Amended Order Denying*

3  *Motion to Dismiss*, ECF 152; and other briefing in the above-referenced actions, and previous

4  discovery. The names, addresses, and telephone numbers of persons with knowledge of those

5  facts include those set forth in Kane's *Defendant's Initial Disclosures*, which was served on

6  Centennial's counsel on or about December 6, 2021. Documents supporting these responses

7  include those previously provided in this and other actions, the documents and information

8  provided concurrently with Kane's *Defendant's Initial Disclosures*, and the documents and

9  information provided concurrently with Kane's responses to these Interrogatories.

10  **INTERROGATORY NO. 5:**

11      Identify (a) all facts supports your assertion that the Professional Bank Obligation does

12  not constitute consumer debt as defined in 11 U.S.C. § 101(a) as "incurred by an individual

13  primarily for a personal, family, or household purpose," (b) all documents that support those

14  facts, and (c) every person who has knowledge of those facts.

15  **ANSWER:**

16      In addition to the General Objections set forth above, Kane objects to this Interrogatory

17  on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably

18  calculated to lead to the discovery of admissible evidence, and that it seeks privileged

19  information. Kane further objects to this Interrogatory as duplicative of prior discovery and

20  briefing in this adversary proceeding, the underlying bankruptcy case, and the state court

21  lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167;

22  and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of

23  Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings

24  in these cases, actions, or proceedings.

25      Kane objects to this Interrogatory on the ground that Centennial has styled it as one

26  interrogatory, but it includes three discreet subparts. *See* Fed. R. Civ. P. 33(a)(1). Accordingly,

27  Kane shall consider this a response to three separate interrogatories.

28

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Where appropriate, responsive facts are included in the (1) *Chapter 7 Petition*, ECF 1; (2) *Amended Schedules D and E/F*, ECF 18; (3) *Debtor's Opposition to Centennial Bank's Motion to Dismiss Liquidation*, ECF 120; (4) *Declaration of Evander Kane in Support of Debtor's Opposition to Motion to Dismiss*, ECF 121; (5) the Court's *Amended Order Denying Motion to Dismiss*, ECF 152; and other briefing in the above-referenced actions, and previous discovery. The names, addresses, and telephone numbers of persons with knowledge of those facts include those set forth in Kane's *Defendant's Initial Disclosures*, which was served on Centennial's counsel on or about December 6, 2021. Documents supporting these responses include those previously provided in this and other actions, the documents and information provided concurrently with Kane's *Defendant's Initial Disclosures*, and the documents and information provided concurrently with Kane's responses to these Interrogatories.

**INTERROGATORY NO. 6:**

Identify (a) all facts supports your assertion that the Zions Obligation does not constitute consumer debt as defined in 11 U.S.C. § 101(a) as "incurred by an individual primarily for a personal, family, or household purpose," (b) all documents that support those facts, and (c) every person who has knowledge of those facts.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Kane objects to this Interrogatory on the ground that Centennial has styled it as one interrogatory, but it includes three discreet subparts. *See* Fed. R. Civ. P. 33(a)(1). Accordingly, Kane shall consider this a response to three separate interrogatories.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Where appropriate, responsive facts are included in the (1) *Chapter 7 Petition*, ECF 1; (2) *Amended Schedules D and E/F*, ECF 18; (3) *Debtor's Opposition to Centennial Bank's Motion to Dismiss Liquidation*, ECF 120; (4) *Declaration of Evander Kane in Support of Debtor's Opposition to Motion to Dismiss*, ECF 121; (5) the Court's *Amended Order Denying Motion to Dismiss*, ECF 152; and other briefing in the above-referenced actions, and previous discovery. The names, addresses, and telephone numbers of persons with knowledge of those facts include those set forth in Kane's *Defendant's Initial Disclosures*, which was served on Centennial's counsel on or about December 6, 2021. Documents supporting these responses include those previously provided in this and other actions, the documents and information provided concurrently with Kane's *Defendant's Initial Disclosures*, and the documents and information provided concurrently with Kane's responses to these Interrogatories.

**INTERROGATORY NO. 7:**

Identify (a) all facts supports your assertion that the South River Obligation does not constitute consumer debt as defined in 11 U.S.C. § 101(a) as "incurred by an individual primarily for a personal, family, or household purpose," (b) all documents that support those facts, and (c) every person who has knowledge of those facts.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of

Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Kane objects to this Interrogatory on the ground that Centennial has styled it as one interrogatory, but it includes three discreet subparts. *See* Fed. R. Civ. P. 33(a)(1). Accordingly, Kane shall consider this a response to three separate interrogatories.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Where appropriate, responsive facts are included in the (1) *Chapter 7 Petition*, ECF 1; (2) *Amended Schedules D and E/F*, ECF 18; (3) *Debtor's Opposition to Centennial Bank's Motion to Dismiss Liquidation*, ECF 120; (4) *Declaration of Evander Kane in Support of Debtor's Opposition to Motion to Dismiss*, ECF 121; (5) the Court's *Amended Order Denying Motion to Dismiss*, ECF 152; and other briefing in the above-referenced actions, and previous discovery. The names, addresses, and telephone numbers of persons with knowledge of those facts include those set forth in Kane's *Defendant's Initial Disclosures*, which was served on Centennial's counsel on or about December 6, 2021. Documents supporting these responses include those previously provided in this and other actions, the documents and information provided concurrently with Kane's *Defendant's Initial Disclosures*, and the documents and information provided concurrently with Kane's responses to these Interrogatories.

**INTERROGATORY NO. 8:**

Identify every piece of real property, whether it be classified as residential or commercial, that Kane currently or every has held a legal or equitable interest in, either in his own name or through an affiliated business entity, taking care to identify the address of each piece of real property and the corresponding date range Kane maintained such an interest in each.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane objects to the temporal terms "currently or every has held" as unclear and not reasonably limited in time or scope. Kane further objects to this Interrogatory as duplicative of

1  prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and

2  the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No.

3  20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern

4  District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and

5  pleadings in these cases, actions, or proceedings.

6      Subject to and without waiving any of the foregoing objections, Kane responds as

7  follows:

8      8447 Isabel Pl, Vancouver, BC V6P6R8, July 4, 2011 – Present

9      3457 W. 35th Ave, Vancouver, BC V6N2N3, April 5, 2016 – Present

10     2301 Richland Ave, San Jose, California, August 21, 2020 – October 6, 2021

11  **INTERROGATORY NO. 9:**

12      Identify all motor vehicles, boats, aircrafts, recreational vehicles, golf carts, or any such

13  other vehicle in which Kane currently or previously held a direct or indirect interest in, taking

14  care to identify the make, model, type, and year of such vehicle as well as corresponding date

15  range Kane owned such a vehicle.

16  **ANSWER:**

17      In addition to the General Objections set forth above, Kane objects to this Interrogatory

18  on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably

19  calculated to lead to the discovery of admissible evidence, and that it seeks privileged

20  information. Kane objects to the temporal terms "currently or previously held" as not reasonably

21  limited in time or scope, and he objects to the terms "held a direct or indirect interest in" as

22  vague and ambiguous. Kane further objects to this Interrogatory as duplicative of prior discovery

23  and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court

24  lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167;

25  and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of

26  Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings

27  in these cases, actions, or proceedings.

28

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES          13

Subject to and without waiving any of the foregoing objections, Kane responds as follows: At the time of filing, Kane leased two Mercedes-Benz G6 vehicles as disclosed in the schedules and statement of financial affairs. In the approximately three years prior to the filing, Kane leased a Mercedes-Benz G Wagon, and a Mercedes-Benz S 63.

**INTERROGATORY NO. 10:**

Identify the full extent of the Debtor's lending relationship with Thrivest, taking care to identify (i) any and all loans the Debtor entered into with Thrivest, (ii) the date that each loan was entered into by the Debtor, (iii) the purpose for which the Debtor incurred each said loan, (iv) what the Debtor utilized the loan funds for, (v) the date each obligation the Debtor owed to Thrivest was repaid, and (vi) the source of funds for such repayment.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Kane objects to this Interrogatory on the ground that Centennial has styled it as one interrogatory, but it includes three discreet subparts. *See* Fed. R. Civ. P. 33(a)(1). Accordingly, Kane shall consider this a response to three separate interrogatories.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Any and all loan(s) between Kane and Thrivest were arranged and underwritten by Sure Sports. The Thrivest loan was primarily incurred and used to pay off existing debt. Kane is informed and believes that Centennial has subpoenaed documents from Thrivest, which should provide answers to this Interrogatory.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES          14

Documents supporting these responses include those previously provided in this and other actions; the documents and information provided concurrently with Kane's responses to these Interrogatories; the documents being sought by Centennial's subpoena to Thrivest served on or about December 3, 2021; and the documents in the possession, custody, or control of Sure Sports.

**INTERROGATORY NO. 11:**

Identify the full extent of the Debtor's lending relationship with DCC, taking care to identify (i) any and all loans the Debtor entered into with DCC, (ii) the date that each loan was entered into by the Debtor, (iii) the purpose for which the Debtor incurred each said loan, (iv) what the Debtor utilized the loan funds for, (v) the date each obligation the Debtor owed to DCC was repaid, and (vi) the source of funds for such repayment.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Any and all loan(s) between Kane and DCC was arranged and underwritten by Sure Sports. The DCC loan was primarily incurred and used to pay off existing debt. Kane is informed and believes that Centennial has subpoenaed documents from DCC, which should provide answers to this Interrogatory.

DCC does business at 4800 Montgomery Ln, 10th Fl., Bethesda, MD 20814.

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 149 of 455

DCC filed UCC-1 financing statement number 201712208545272 with the New York Secretary of State on February 20, 2017, asserting a security interest in certain of Kane's assets, accounts, and negotiable instruments. DCC filed termination statement number 201903268133024 on March 26, 2019.

According to the Loan Closing Statement for loan number 1203704-3 from Professional Bank with a closing date of March 20, 2019, a payment of $1,237,222 from the Professional Bank loan was disbursed to pay off the DCC loan dated December 18, 2017.

Documents supporting these responses include those previously provided in this and other actions; the documents and information provided concurrently with Kane's responses to these Interrogatories; the documents being sought by Centennial's subpoena to DCC served on or about December 3, 2021; and the documents in the possession, custody, or control of Sure Sports.

**INTERROGATORY NO. 12:**

Identify the full extent of the Debtor's lending relationship with SIC, taking care to identify (i) any and all loans the Debtor entered into with SIC, (ii) the date that each loan was entered into by the Debtor, (iii) the purpose for which the Debtor incurred each said loan, (iv) what the Debtor utilized the loan funds for, (v) the date each obligation the Debtor owed to SIC was repaid, and (vi) the source of funds for such repayment.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES        16

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Any and all loan(s) between Kane and SIC was arranged and underwritten by Sure Sports. The SIC loan was primarily incurred and used to pay off existing debt. Kane is informed and believes that Centennial has subpoenaed documents from SIC, which should provide answers to this Interrogatory.

SIC does business at 1328 Aqua Vista Blvd, Fort Lauderdale, FL 33301.

DCC filed UCC-1 financing statement number 201804260192260 with the New York Secretary of State on April 26, 2018, asserting a security interest in certain of Kane's assets, notes receivable, accounts, negotiable instruments, contracts, and general intangibles. DCC filed termination statement number 201808208379703 on August 20, 2018.

A payment of $3,660,395 from the Zions Bancorporation loan was disbursed on or about August 17, 2018 to pay off the SIC loan.

Documents supporting these responses include those previously provided in this and other actions; the documents and information provided concurrently with Kane's responses to these Interrogatories; the documents being sought by Centennial's subpoena to SIC served on or about December 3, 2021; and the documents in the possession, custody, or control of Sure Sports.

**INTERROGATORY NO. 13:**

Identify the full extent of the Debtor's lending relationship with South River, taking care to identify (i) any and all loans the Debtor entered into with South River, (ii) the date that each loan was entered into by the Debtor, (iii) the purpose for which the Debtor incurred each said loan, (iv) what the Debtor utilized the loan funds for, (v) the date each obligation the Debtor owed to South River was repaid, and (vi) the source of funds for such repayment.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES                    17

briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Any and all loan(s) between Kane and South River was arranged and underwritten by Sure Sports. The South River loan(s) was primarily incurred and used to pay off existing debt.

South River does business at 2661 Riva Rd Ste 1000, Annapolis, MD 21401.

On May 11, 2019, Kane entered into a promissory note to borrow the principal sum of $600,000 from South River, with monthly payments to commence November 30, 2019, at 15% interest per annum, until the loan was paid in full with a maturity date of April 30, 2020. South River filed UCC-1 financing statement number 19-7704042105 with the California Secretary of State on March 26, 2019. Kane defaulted on his Note payments to South River.

On November 5, 2020, South River filed a complaint for judgment by confession against Kane in the Circuit Court for Baltimore County, Maryland, entitled *South River Capital, LLC vs. Evander Kane*, case number C-03-CV-20-003992. On November 9, 2020, a judgment in the state court action was entered against Kane and in favor of South River in the amount of $1,074,494.87.

Documents supporting these responses include those previously provided in this and the above-referenced actions; the documents and information provided concurrently with Kane's responses to these Interrogatories; and the documents in the possession, custody, or control of Sure Sports.

**INTERROGATORY NO. 14:**

1.      Identify all transfers of real property from the Debtor to another person or entity occurring from the time period January 1, 2016, to the present, taking care to identify (i) the description/location of the property, (ii) the identify of each and every owner of the property prior to the transfer, (iii) the date of the transfer, (iv) the percent of interest acquired or owned by

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 152 of 455

the Debtor, (v) the identify of the record title holder after the transfer, (vi) the purchase price paid by the Debtor for each property, and (vii) the sale price received by the Debtor for each transfer.

**ANSWER:**

None.

**INTERROGATORY NO. 15:**

Identify all transfers of personal property from the Debtor to another person or entity occurring from the time period January 1, 2016, to the present, taking care to identify (i) the description/location of the property, (ii) the name of the title holder before the transfer, (iii) the date of the transfer, (iv) the market value of the property at the time of the transfer, (v) the purchase price paid by the Debtor, (vi) the sale price received by the Debtor, and (vi) the title holder after the transfer.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, not limited to a reasonable period of time, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Where appropriate, responsive facts are included in the *Statement of Financial Affairs*, ECF 1, *e.g.*, pp. 47-48, 50-52; amendments to Kane's schedules and statements; and the transcripts of the meetings of creditors and Rule 2004 examination taken by Centennial. As noted in the filings and in his prior testimony, on occasion Kane purchased personal property or transferred personal property.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES          19

**INTERROGATORY NO. 16:**

Identify the full extent of the Debtor's gambling losses from January 1, 2016, to present, including (i) the casino, online service, and/or bookie at which said gambling losses were incurred, (ii) the date of said gambling losses, (iii) the amount of the gambling losses, and (iv) when applicable, the source of funds utilized by the Debtor to repay said gambling losses.

**ANSWER:**

In addition to the General Objections set forth above, Kane objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information. Kane further objects to this Interrogatory as duplicative of prior discovery and briefing in this adversary proceeding, the underlying bankruptcy case, and the state court lawsuits *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, U.S. District Court for the Southern District of Florida, Case No. 21-cv-60045. Kane directs Centennial to all previous discovery and pleadings in these cases, actions, or proceedings, including the *Statement of Financial Affairs*, ECF 1, p. 51, which states Kane incurred losses of approximately $1.5 million gambling at casino and via bookie (sports betting)..

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Where appropriate, responsive facts are the gambling losses were primarily incurred with bookies and were a result of gambling on football, baseball, and basketball games. Occasionally, Kane gambled at casinos, which issued him markers representing a line of credit with which to gamble. Typically, Kane would withdraw a sum of cash from his bank account for use in gambling. Typically, the gambling in casinos was on baccarat. The results of his bets were settled in cash. The amounts listed are Kane's best estimate of his losses. He did not keep a regular tally of his wins and losses.

///

///

///

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES                    20

Dated: January 12, 2022                    FINESTONE HAYES LLP

                                           /s/ Stephen D. Finestone
                                           _____
                                           Stephen D. Finestone
                                           Attorneys for Evander Frank Kane,
                                           Debtor and Defendant


## **VERIFICATION**

I, Evander Frank Kane, believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.

Dated: January 12, 2022

                                           _____
                                           Evander Frank Kane

# PROOF OF SERVICE

I, the undersigned, declare that I am over the age of eighteen years and not a party to this action. My business address is 456 Montgomery Street, Floor 20, San Francisco, California 94104. I caused a true and correct copy of the following documents:

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

to be served in the manner stated below.

**<u>SERVED BY EMAIL</u>**

On January 14, 2022, I served the following persons and/or entities by email.

John A. Anthony
janthony@anthonyandpartners.com

Andrew J. Gekhas
aghekas@anthonyandpartners.com

Peter C. Califano
pcalifano@cwclaw.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 14, 2022, in San Francisco, California.

_/s/ Stephen D. Finestone_
Stephen D. Finestone

# EXHIBIT "9"

1  Stephen D. Finestone (125675)
   Ryan A. Witthans (301432)
2  FINESTONE HAYES LLP
   456 Montgomery Street, Floor 20
3  San Francisco, CA 94104
   Tel.:   (415) 421-2624
4  Fax:    (415) 398-2820
   Email: sfinestone@fhlawllp.com
5  Email: rwitthans@fhlawllp.com

6  Attorneys for Evander Frank Kane,
   Debtor and Defendant

7

8              **UNITED STATES BANKRUPTCY COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                    **SAN JOSE DIVISION**

| | |
|---|---|
| 11  In re | Case No. 21-50028-SLJ |
| 12  EVANDER FRANK KANE, | Chapter 7 |
| 13          Debtor. | |
| 14 | |
| 15  CENTENNIAL BANK, | Adv. Proc. No. 21-5016 |
| 16          Plaintiff, | **DEFENDANT'S AMENDED** |
| 17          v. | **RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT** |
| 18  EVANDER FRANK KANE, | |
| 19          Defendant. | |
| 20 | |

21     **PROPOUNDING PARTY:** Centennial Bank

22     **RESPONDING PARTY:**    Evander Frank Kane

23     **SET NUMBER:**          One

24          Defendant Evander Frank Kane ("Kane"), by and through his counsel, hereby responds to

25  the *First Request for Production of Document to the Debtor* (the "Requests") served by Centennial

26  Bank ("Centennial").

27  //

28

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENT                                                                          1

## PRELIMINARY STATEMENT

Kane's responses to the Requests are based upon his current information, understanding, belief, and investigation to date. Kane has not completed his investigation, and his investigation and development of the facts and circumstances relating to this action are ongoing. Kane expressly reserves the right to supplement, clarify, revise, and/or correct any or all of the responses and objections herein, and to assert additional objections or limitations, in one or more subsequent supplemental response(s). Kane expressly reserves the right to conduct discovery with reference to, and offer into evidence at trial, any and all facts, documents, testimony, and evidence relating to the matters addressed in the Requests and the responses. Kane may discover additional facts, documents and evidence as its investigation is completed, and the responses given herein are made without prejudice to, and are not a waiver of, Kane's right to produce evidence of any other facts or documents at any time later in this proceeding.

Kane's responses are made only for the purposes of this action and are subject to the general objections, including without limitation competency, relevancy, materiality, propriety, admissibility, and privilege, which would require the exclusion thereof if such information were offered into evidence. Kane's responses and objections shall not be taken as an admission, implied or incidental, that Kane accepts or admits the existence of any fact set forth or presumed in the Requests, that the Requests are relevant or material to the subject matter of the action, or that the responses thereto constitute admissible evidence. By making the following responses to the Requests, Kane does not waive, and hereby expressly reserves its right to assert any and all objections in this action, or in any subsequent or related case, action, or proceeding.

Kane will produce copies of the responsive documents, or make the responsive documents available for inspection, subject to all objections and limitations herein. Documents and information that are publicly available, or that are equally or more accessible to Centennial will not be produced.

//

//

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                          2

## **GENERAL OBJECTIONS**

All of Kane's responses to the Requests are made subject to, and incorporate, the following general objections and limitations. Kane objects to the Requests, as follows:

1.    Kane objects to the Requests to the extent that they do not comply with Rules 26 and 34 of the Federal Rules of Civil Procedure, and the applicable rules under the Federal Rules of Bankruptcy Procedure.

2.    Kane objects to each definition and instruction in the Requests and each Request to the extent that it purports to impose obligations on Kane that in any way differ from those expressly set forth in the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, any general or standing orders, and any other court order.

3.    Kane objects to the Requests to the extent that they seek documents that would disclose: (a) legal theories, legal opinions, mental impressions, or other information of Kane's counsel; (b) any information protected by privilege, including without limitation the attorney-client privilege, the joint-defense privilege, the trade secret or proprietary information privilege; or (c) any other available and valid grounds for withholding documents from production, including without limitation the attorney work product doctrine. Kane further objects to the extent the Requests require information collected, generated, or prepared in anticipation of litigation and for trial. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

4.    Kane objects to each and every Request to the extent that any such Request seeks information protected by constitutional, statutory, or judicial guarantees of privacy. Kane also objects to each and every Request to the extent that any such Request seeks information protected by third parties' constitutional, statutory, or judicial guarantees of privacy. Such

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                    3

information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

5.     Kane objects to the Requests to the extent that they seek documents that would disclose information of a confidential and/or proprietary nature, or subject to a right to privacy protected under the United States Constitution, or other confidentiality provisions or regulations, whether the right of Kane or of a third party. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

6.     Kane objects to the Requests to the extent that they seek production of documents in Kane's possession, custody, or control that were produced by other entities, or concern other parties, and which may contain privileged, confidential, proprietary, and/or trade secret information, and are subject to all applicable privileges. Such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

7.     Kane objects to each and every Request to the extent that any such Request seeks expert witness information. Such information will not be provided at this time and will be provided during the time specified by, and as may be required by, the Federal Rules of Bankruptcy Procedure and the Federal Rule of Civil Procedure.

8.     Kane objects to the Requests to the extent that they seek documents that are readily or more accessible to Centennial from documents or information in Centennial's or its counsel's possession, custody, or control, or from other sources.

9.     Kane objects to the Requests to the extent that they seek documents that are publicly available. This objection encompasses, without limitation, the publicly available court records in this adversary proceeding, *Centennial Bank v. Evander Frank Kane*, Adversary Proceeding No. 21-05016; the underlying bankruptcy case, *In re Evander Frank Kane*, Case No. 21-50028-SLJ; and any related case, action, or proceeding.

10.     Kane objects to each and every Request, including any instructions or definitions used therein, to the extent that any such Request is overbroad, burdensome and oppressive, and attempts to impermissibly expand the obligations of a responding party pursuant to Federal Rule of Civil Procedure 34.

11.     With respect to the defined terms "Debtor," Kane objects to the inclusion of agents, attorneys, employees, accountants, assistants, or representatives, and all other persons acting or purporting to act on his behalf as violating the attorney-client privilege, attorney work produce doctrine, and any other applicable privileges. Kane also objects to the definition as vague, ambiguous, unduly burdensome, and seeking to encompass documents not relevant to the causes of action or defenses of any party to this action, and not reasonably proportional to the needs of the case. For the purposes of responding to the Requests, Kane will interpret these words as referring to himself.

12.     Kane objects to each and every Request to the extent that any such Request contains undefined terms subject to subjective interpretation, rendering the Request vague and ambiguous, overbroad, and unintelligible.

13.     Kane incorporates by reference each and every General Objection set forth above into each and every specific response set forth below. Kane does not waive, and hereby expressly reserves, its right to supplement, clarify, revise, and/or correct any or all of its responses.

14.     Kane reserves the right to supplement his answers to any of these Request or to any part thereof.

## RESPONSES AND OBJECTIONS TO REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents substantiating, memorializing, confirming, or evidencing the Debtor's gambling losses from January 1, 2015, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine,

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                          5

and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications relating to the incorporation, creation, or organization of the (i) Lions Properties LLC, (ii) EK9 Marketing, LLC, (iii) Evander Kane, LLC, and (iv) any other business entity in which the Debtor holds or has previously held any interest in.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all documents and communications" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all documents relating to the Thrivest Loan, including, without limitation, all loan documents evidencing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports LLC ("Sure Sports") and any and all

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                    6

documents relating to the Thrivest Loan may be obtained from Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all documents relating to the DCC Loan, including, without limitation, all loan documents evidencing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and any and all documents relating to the DCC Loan may be obtained from Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 5:**

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
7

Any and all documents relating to the SIC Loan, including, without limitation, all loan documents evidencing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and any and all documents relating to the SIC Loan may be obtained from Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all documents relating to the South River Loan, including, without limitation, all loan documents evidencing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and any and all documents relating to the South River Loan may be obtained from Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane further objects to this Request to the extent it seeks information or documents

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                           8

in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all documents reflecting communications as between the Debtor and Thrivest relating to the Thrivest Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all documents reflecting communications as between the Debtor and DCC relating to the DCC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will

not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all documents reflecting communications as between the Debtor and SIC relating to the SIC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all documents reflecting communication as between the Debtor and South River relating to the South River Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that this loan was arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
10

not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 11:**

Any and all documents relating to the disbursement of any monies, funds, and/or proceeds from any lending arrangement as between the Debtor and Thrivest, including without limitation the Thrivest Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with Thrivest were arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 12:**

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                11

Any and all documents relating to the disbursement of any monies, funds, and/or proceeds from any lending arrangement as between the Debtor and DCC, including without limitation the DCC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with DCC were arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 13:**

Any and all documents relating to the disbursement of any monies, funds, and/or proceeds from any lending arrangement as between the Debtor and SIC, including without limitation the SIC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with SIC were arranged by Sure Sports and all

communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all documents relating to the disbursement of any monies, funds, and/or proceeds from any lending arrangement as between the Debtor and South River, including without limitation the South River Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with South River were arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                                13

obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all documents reflecting the recipient of any proceeds from any lending arrangement as between the Debtor and Thrivest, including without limitation the Thrivest Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Following discussions between the parties and clarifications provided by Centennial, Kane withdraws his objection to this Request as vague, ambiguous, or unintelligible. In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with Thrivest were arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all documents reflecting the recipient of any proceeds from any lending arrangement as between the Debtor and DCC, including without limitation the DCC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Following discussions between the parties and clarifications provided by Centennial, Kane withdraws his objection to this Request as vague, ambiguous, or unintelligible. In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with DCC were arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 17:**

1  Any and all documents reflecting the recipient of any proceeds from any lending
2  arrangement as between the Debtor and SIC, including without limitation the SIC Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Following discussions between the parties and clarifications provided by Centennial, Kane withdraws his objection to this Request as vague, ambiguous, or unintelligible. In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with SIC were arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all documents reflecting the recipient of any proceeds from any lending arrangement as between the Debtor and South River, including without limitation the South River Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                         16

Following discussions between the parties and clarifications provided by Centennial, Kane withdraws his objection to this Request as vague, ambiguous, or unintelligible. In addition to the General Objections set forth above, Kane objects to this Request on the ground that any and all transactions with South River were arranged by Sure Sports and all communications were through Sure Sports. To the extent this Request encompasses documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges, such information will not be disclosed and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or documents. Kane also objects to the extent that this Request for "[a]ny and all documents" and "from any lending arrangement" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all documents reflecting communications as between the Debtor and Sure Sports relating to the Debtor's financial affairs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                   17

**REQUEST FOR PRODUCTION NO. 20:**

Any and all documents reflecting communications as between the Debtor and Sure Sports relating to (i) the Thrivest Loan, (ii) the DCC Loan, (iii) the SIC Loan, and (iv) the South River Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all documents reflecting communications as between the Debtor and his mother relating to the Bankruptcy Case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation. Kane further objects that this Request is harassing and seeks documents that are not relevant, nor likely to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all documents reflecting communications as between the Debtor and his father relating to the Bankruptcy Case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation. Kane further objects that this

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                    18

Request is harassing and seeks documents that are not relevant, nor likely to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all documents relating to the debt obligation the Debtor owes to Davis Sanchez, as listed in Section 4.5 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all documents reflecting communications as between the Debtor and Davis Sanchez relating to the debt obligation the Debtor owes to Davis Sanchez, as listed in Section 4.5 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 25:**

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                 19

Any and all documents relating to the debt obligation the Debtor owes to Hebron Shyng, as listed in Section 4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all documents reflecting communications as between the Debtor and Hebron Shyng relating to the debt obligation the Debtor owes to Hebron Shyng, as listed in Section 4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 27:**

Any and all documents relating to the debt obligation the Debtor owes to Mike Lispti, as listed in Section 4.12 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                    20

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all documents reflecting communications as between the Debtor and Mike Lispti relating to the debt obligation the Debtor owes to Mike Lispti, as listed in Section 4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 29:**

Any and all documents relating to the debt obligation the Debtor owes to Pete Gianakas, as listed in Section 4.16 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                 21

1  Subject to and without waiving his objections, Kane agrees to produce non-privileged

2  documents responsive to this Request that are in Kane's possession, custody, and control, and

3  that can be located by a reasonable search. After a reasonable search, Kane did not locate any

4  documents responsive to this request.

5  **REQUEST FOR PRODUCTION NO. 30:**

6  Any and all documents reflecting communications as between the Debtor and Pete

7  Gianakas relating to the debt obligation the Debtor owes to Pete Gianakas, as listed in Section

8  4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

10  In addition to the General Objections set forth above, Kane objects to this Request as

11  encompassing documents protected by the attorney-client privilege, work-product doctrine,

12  and/or any other applicable privileges.

13  Subject to and without waiving his objections, Kane agrees to produce non-privileged

14  documents responsive to this Request that are in Kane's possession, custody, and control, and

15  that can be located by a reasonable search. After a reasonable search, Kane did not locate any

16  documents responsive to this request.

17  **REQUEST FOR PRODUCTION NO. 31:**

18  Any and all documents relating to the debt obligation the Debtor owes to Raj Banghu, as

19  listed in Section 4.18 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured

20  Claims [Doc. 18].

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

22  In addition to the General Objections set forth above, Kane objects to this Request as

23  encompassing documents protected by the attorney-client privilege, work-product doctrine,

24  and/or any other applicable privileges. In addition, Kane directs Centennial to Raj Banghu's

25  proof of claim (Claim 6) filed in the underlying bankruptcy case.

26

27

28

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENT                                                                          22

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 32:**

Any and all documents reflecting communications as between the Debtor and Raj Banghu relating to the debt obligation the Debtor owes to Raj Banghu, as listed in Section 4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 33:**

Any and all documents relating to the debt obligation the Debtor owes to Tony Veltri, as listed in Section 4.21 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 34:**

Any and all documents reflecting communications as between the Debtor and Tony Veltri relating to the debt obligation the Debtor owes to Tony Veltri, as listed in Section 4.7 of the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims [Doc. 18].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search. After a reasonable search, Kane did not locate any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 35:**

All documents that evidence or constitute invoices that constitute bank account records for any account utilized by the Debtor at any point in time during the last seven (7) years preceding the date of the Debtor's initiation of the Liquidation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Kane objects to the extent that this Request for "all documents . . . at any point in time during the last seven (7) years" is overly broad, harassing, seeks irrelevant documents, is not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and compound, particularly in regard to documents that "constitute invoices that constitute bank account records." Kane objects to this Request as ambiguous because it is unclear whether the term "invoices that constitute bank account records" expands or narrows the scope of this Request. Kane also objects that the term "Liquidation" is not a defined term.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
24

compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege. Finally, Kane objects as he has already provided considerable bank records to Centennial as part of its Rule 2004 examination.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents from the two years prior to the petition date that are responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 36:**

All documents evidencing the financial status of the Debtor at any point in time within the last seven (7) years, including all balance sheets, income statements, financial statements, and accounting documents or communications relating in any way to the assets, liabilities, income, or expenses of the Debtor at any time, whether actual or projected, whether prepared by an accountant, a bookkeeper, or any other person, and whether audited, reviewed, or compilation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all documents . . . at any point in time during the last seven (7) years" is overly broad, not

reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive. Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege.

**REQUEST FOR PRODUCTION NO. 37:**

All demand letters, pleadings, and other documentation reflecting efforts by any creditor to collect a debt as against the Debtor, to the extent generated during the twelve (12) months preceding the date of the Debtor's initiation of the Bankruptcy Case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
26

1    Subject to and without waiving his objections, Kane agrees to produce non-privileged

2    documents responsive to this Request that are in Kane's possession, custody, and control, and

3    that can be located by a reasonable search.

4    **REQUEST FOR PRODUCTION NO. 38:**

5    All documents relating to the federal tax history of the Debtor, during the last seven (7)

6    years, including federal tax returns, schedules, any correspondence or evidence of

7    communications with the accountant or tax preparer for the same, and any audit materials or

8    other related communications by and between either the Debtor and any federal taxing authority

9    representative, whether within the United States or within Canada.

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

11   In addition to the General Objections set forth above, Kane objects to this Request as

12   encompassing documents protected by the attorney-client privilege, work-product doctrine,

13   and/or any other applicable privileges. Kane objects to the extent that this Request for "all

14   documents . . . during the last seven (7) years" is overly broad, not reasonably limited in time or

15   scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or

16   to produce documents that are not reasonably accessible. Kane objects to this Request to the

17   extent it seeks information or documents in the debtor's possession, as such information or

18   documents are available from another source that is more convenient, less burdensome, and less

19   expensive.

20   Kane also objects to this Request on the grounds that it appears to seek disclosure of his

21   privileged, highly confidential and proprietary financial information, protected from compelled

22   disclosure in this action arising from California law by statutory, constitutional and judicial

23   guarantees of privacy, including but not limited to the California Constitution and Code of Civil

24   Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid

25   objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or

26   defense for which state law supplies the rule of decision"). The privilege afforded bank records is

27   well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover

28

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENT                                                                          27

relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege.

Kane further objects to this Request to the extent that it seeks disclosure of information that is duplicative of the information provided pursuant to the Court's *Order Approving Stipulation Regarding Centennial Bank Rule 2004 Examination* (see bankruptcy case docket at ECF 61), particularly the "documents [Kane] previously produced to the Chapter 7 Trustee and United States Trustee."

Subject to and without waiving his objections, Kane agrees to produce his income tax returns from 2018 and 2019.

**REQUEST FOR PRODUCTION NO. 39:**

All official documents for any business entity, including without limitation any limited company, limited liability company. corporation, limited partnership or joint venture that the Debtor has any direct or indirect interest in, and all other evidences of the ownership, management, or control of such business entity, and the formal business and financial decisions making authority of such business entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all official documents" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and compound. Kane objects that the term "official" is not a defined term. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
28

burdensome, and less expensive. Kane further objects to the extent the Request seeks production from a third party as Kane is not the third party, cannot produce documents on behalf of a third party and is not a proper respondent to such a request. Lastly, Kane objects that this discovery is unreasonably duplicative of Request for Production No. 2.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 40:**

All documents constituting financial statements, credit reports, loan applications, or other summary presentation to any potential lender that the Debtor consulted with prior to the initiation of the Bankruptcy Case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not limited in time and duplicative of previous Requests regarding specific lenders, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane also objects to the Request as not being limited as to time or vague as to time.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
29

of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege.

Subject to and without waiving his objections, to the extent that Kane has possession, custody, and control of non-privileged documents responsive to this Request, they will be produced with copies of the Sure Sports documents requested by Centennial.

**REQUEST FOR PRODUCTION NO. 41:**

All documents evidencing the value of any component of any property, tangible or intangible, real or personal, owned by the Debtor within the last seven (7) years, including, without limitation, appraisals, purchase offers, letters of intent, listing agreements, balance sheets, pro formas, or other documents pertaining to all or any portion of such property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane also objects to this Request as also vague, ambiguous, or unintelligible.

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                           30

1    Kane further objects to this Request on the grounds that Kane has already provided

2    information sufficient to identify and determine the value of all property owned by Kane in

3    documents on file in the underlying bankruptcy case.

4        Subject to and without waiving any of the foregoing objections, Kane responds as

5    follows: Please see documents previously produced, and any supplements thereto. Please also see

6    documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement

7    of Financial Affairs, and any amendments thereto.

8    **REQUEST FOR PRODUCTION NO. 42:**

9        All documents evidencing any transfer in ownership of any business entity, including

10   without limitation any limited company, limited liability company, limited partnership, general

11   partnership, joint venture, or corporation, to or from the Debtor.

12   **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

13       In addition to the General Objections set forth above, Kane objects to this Request as

14   encompassing documents protected by the attorney-client privilege, work-product doctrine,

15   and/or any other applicable privileges.

16       Subject to and without waiving any of the foregoing objections, Kane responds as

17   follows: Please see documents previously produced, and any supplements thereto. Please also see

18   documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement

19   of Financial Affairs, and any amendments thereto. Beyond these documents, Kane is not aware

20   of any other documents that are covered by this Request.

21   **REQUEST FOR PRODUCTION NO. 43:**

22       All documents reflecting any form of communication between the Debtor and any

23   financial services provider, relating to any funding, transfer of funds, debt obligations, service

24   agreements, or other transactions or financial services being provided to the Debtor.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

26       In addition to the General Objections set forth above, Kane objects to this Request as

27   encompassing documents protected by the attorney-client privilege, work-product doctrine,

28

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENT                                                                      31

and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not limited in time, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim.

**REQUEST FOR PRODUCTION NO. 44:**

All documents reflecting any form of communication between the Debtor and Sure Sports relating to the Debtor or any financial institution.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 45:**

All documents tending to confirm, rebut, or otherwise relate to any valuation of any asset identified in the Schedules.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
32

relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim.

Kane further objects to this Request on the grounds that Kane has already provided information sufficient to identify and determine the value of all property owned by Kane in documents on file in the underlying bankruptcy case.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Please see documents previously produced, and any supplements thereto. Please also see documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto.

**REQUEST FOR PRODUCTION NO. 46:**

All documents that constitute evidence of financial activity on any account of the Debtor, including without limitation, account statements, checks and copies of checks, advice of wire transfer, information pertaining to deposits and withdrawals, signature cards, and any other condition of account activity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Kane objects to the extent that this Request for "all documents" is overly broad, harassing, seeks irrelevant documents, is not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and compound, particularly in regard to documents that constitute evidence of "financial activity" on any account of the Debtor.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
33

judicial guarantees of privacy, including but not limited to the California Constitution and Code

of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a

valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim

or defense for which state law supplies the rule of decision"). The privilege afforded bank

records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to

discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable

privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*,

15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested

information or of a compelling need sufficient to outweigh Kane's privilege. Finally, Kane has

previously produced financial records to Centennial in connection with its Rule 2004

examination and he therefore objects to this Request to the extent it requires him to reproduce

those documents previously provided.

Subject to and without waiving his objections, Kane agrees to produce non-privileged

documents from the two years prior to the petition date that are responsive to this Request that

are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 47:**

All documents evidencing the fixed assets of the Debtor at any point in time during

which the Centennial Obligation has been outstanding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

In addition to the General Objections set forth above, Kane objects to this Request on the

grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the

discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks

information relating to matters that are neither relevant to any party's claim or defense nor

proportional to the needs of this litigation because the information is not important to this

litigation; any relevant information can be discovered through alternative less invasive sources.

These documents are irrelevant to the administration of the bankruptcy estate and to the

allowance or disallowance of Centennial's claim. Kane further objects to this Request on the

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENT

34

ground that it is vague and compound, and the term "fixed assets" is not a defined term, nor is it intelligible.

**REQUEST FOR PRODUCTION NO. 48:**

All applications for a loan, or financial statements, together with any documents supporting or qualifying the same, presented by or prepared for the Debtor at any point in time during which the Centennial Obligation has been outstanding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane further objects to this Request on the ground that it is vague and compound. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim.

**REQUEST FOR PRODUCTION NO. 49:**

All documents reflecting any form of communication by and between the Debtor and the Sharks regarding any issues stemming from the Debtor's gambling.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Kane objects to this Request on the grounds that it seeks information

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                          35

relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane objects to this Request on the grounds that it is harassing, seeks documents related to his employment relationship, and seeks documents that are not relevant.

**REQUEST FOR PRODUCTION NO. 50:**

All documents that evidence the liquidation, transfer, or abandonment by the Debtor of real or personal property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all documents" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Kane further objects to this Request on the grounds that Kane has already provided substantial information about the liquidation, transfer, or abandonment of any real or personal property by Kane in documents on file in the underlying bankruptcy case.

Subject to and without waiving any of the foregoing objections, Kane responds as follows: Please see documents previously produced, and any supplements thereto. Please also see documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto. To the extent Kane has any other documents covered by this Request, he will produce those in his possession, custody or control.

**REQUEST FOR PRODUCTION NO. 51:**

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                              36

All documents reflecting the existence and activity of any account on which the Debtor is an authorized signatory, owner, or beneficiary, including without limitation any checking account, deposit account, securities account, loans, or other financial relationship, including all corresponding statements and other evidence of account activity during the past twelve (12) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Kane objects to the extent that this Request for "all documents . . . during the past twelve (12) years" is overly broad, harassing, seeks irrelevant documents, is not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and compound, particularly in regard to documents reflecting the "existence and activity" of any account on which the Debtor is an authorized signatory, owner, or beneficiary. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege.

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                                    37

1   Kane also objects to this Request on the grounds that Kane has already provided

2   substantial information about accounts in which Kane has an interest in documents on file in the

3   underlying bankruptcy case and in documents produced to Centennial in connection with its Rule

4   2004 examination.

5   Subject to and without waiving his objections, Kane agrees to produce non-privileged

6   documents from the two years prior to the petition date that are responsive to this Request that

7   are in Kane's possession, custody, and control, and that can be located by a reasonable search.

8   Please see documents previously produced, and any supplements thereto. Please also see

9   documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement

10  of Financial Affairs, and any amendments thereto.

11  **REQUEST FOR PRODUCTION NO. 52:**

12  All documents reflecting any transfers originating from any account on which the Debtor

13  is the authorized signatory, owner, or beneficiary, including without limitation any checking

14  account, deposit account, or securities account by or for the Debtor's benefit activity during the

15  past twelve (12) years.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

17  Kane objects to the extent that this Request for "all documents . . . during the past twelve

18  (12) years" is overly broad, not reasonably limited in time or scope, and purports to impose an

19  obligation on Kane to perform an unduly burdensome search or to produce documents that are

20  not reasonably accessible. Kane objects to this Request to the extent it seeks information or

21  documents in the debtor's possession, as such information or documents are available from

22  another source that is more convenient, less burdensome, and less expensive.

23  Kane further objects to this Request on the grounds that it appears to seek disclosure of

24  his privileged, highly confidential and proprietary financial information, protected from

25  compelled disclosure in this action arising from California law by statutory, constitutional and

26  judicial guarantees of privacy, including but not limited to the California Constitution and Code

27  of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a

28

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENT                                                                    38

valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege. Kane also objects to this Request on the grounds that Kane has already provided substantial information about accounts in which Kane has an interest in documents on file in the underlying bankruptcy case and in documents produced to Centennial in connection with its Rule 2004 examination.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents from the two years prior to the petition date that are responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 53:**

Copies of the Debtor's bank account statements, including any canceled checks, signature cards, wire transfers, withdrawals, debits and credits, cashier checks, and account closing documents, during the past twelve (12) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Kane objects to the extent that this Request for documents "during the past twelve (12) years" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Kane further objects to this Request on the grounds that it appears to seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT 39

judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6. *See* Fed. R. Civ. P. 26(b)(5) (privilege is a valid objection to discovery); Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The privilege afforded bank records is well settled: "[Courts] indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975). Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh Kane's privilege. Kane also objects to this Request on the grounds that Kane has already provided substantial information about accounts in which Kane has an interest in documents on file in the underlying bankruptcy case and in documents produced to Centennial in connection with its Rule 2004 examination.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents from the two years prior to the petition date that are responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 54:**

Copies of all deeds, leases, mortgages, or any other written instrument evidencing the Debtor's direct or indirect interest or ownership in any real property at any time, including but not limited to real properties located at: 2301 Richland Ave., San Jose, California 95125; 3457 W. 35th Ave., Vancouver, British Columbia, Canada, 8447 Isabel Place; and Vancouver, British Columbia, Canada.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 55:**

All bills of sale or other written evidence of any personal or real property purchased, sold, or otherwise transferred by you during the past twelve (12) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request documents "during the past twelve (12) years" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

**REQUEST FOR PRODUCTION NO. 56:**

All documents evidencing any gambling, either formal at a casino or informal, together with any sports betting, conducted by the Debtor within the last seven (7) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the

needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane objects to this Request on the grounds that it is harassing and seeks documents that are not relevant.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 57:**

All documents evidencing any direct or indirect interest in any publicly traded company, including stock certificates and related valuation of such certificates.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague and ambiguous, particularly in regard to its request for documents "evidencing any direct or indirect interest" without reference to whose interest. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Notwithstanding these objections, Kane is not aware of any other documents that are covered by this Request.

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
42

1  Subject to and without waiving his objections, Kane responds that no responsive

2  documents exist.

3  **REQUEST FOR PRODUCTION NO. 58:**

4  All documents evidencing any direct or indirect interest in any non-publicly traded

5  company, partnership, or joint venture, including any stock certificates, member shares,

6  partnership agreements or joint venture agreements, and any related documents evidencing

7  valuation of such interest.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

9  In addition to the General Objections set forth above, Kane objects to this Request as

10  encompassing documents protected by the attorney-client privilege, work-product doctrine,

11  and/or any other applicable privileges. Kane objects to this Request on the grounds that it is

12  overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of

13  admissible evidence, not reasonably limited in time or scope, and purports to impose an

14  obligation on Kane to perform an unduly burdensome search or to produce documents that are

15  not reasonably accessible. Kane further objects to this Request on the ground that it is vague and

16  ambiguous, particularly in regard to its request for documents "evidencing any direct or indirect

17  interest" without reference to whose interest. Kane objects to this Request on the grounds that it

18  seeks information relating to matters that are neither relevant to any party's claim or defense nor

19  proportional to the needs of this litigation because the information is not important to this

20  litigation; any relevant information can be discovered through alternative less invasive sources.

21  These documents are irrelevant to the administration of the bankruptcy estate and to the

22  allowance or disallowance of Centennial's claim.

23  Kane further objects to this Request on the grounds that Kane has already provided

24  information sufficient to identify any interest in property owned by Kane in documents on file in

25  the underlying bankruptcy case.

26  Subject to and without waiving his objections, Kane agrees to produce non-privileged

27  documents responsive to this Request that are in Kane's possession, custody, and control, and

28

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENT                                                                                43

that can be located by a reasonable search. Please see documents previously produced, and any supplements thereto. Please also see documents on file in the bankruptcy case, including the Chapter 7 petition, Schedules, Statement of Financial Affairs, and any amendments thereto.

**REQUEST FOR PRODUCTION NO. 59:**

All documents evidencing the Debtor's ability or inability to pay the liabilities as listed on the Schedules.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to the extent that this Request for "all documents" is overly broad, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane further objects to this Request on the ground that it is vague, compound, and unintelligible, particularly in regard to documents evidencing the debtor's "ability or inability to pay." Kane objects to this Request to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving his objections, Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 60:**

Copies of any and all titles or registration statements for motor vehicles, aircraft, boats, golf carts, or any such other vehicle in which the Debtor has a direct or indirect interest in.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
44

overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform. Also vague and ambiguous concerning the phrase "indirect interest in. To the extent the Request seeks information about the described assets as of the time Kane filed his bankruptcy case, he will produce responsive documents in his possession, custody or control.

**REQUEST FOR PRODUCTION NO. 61:**

All documents evidencing the manner in which the Debtor has utilized, gifted, invested, or otherwise disposed of any compensation, salary, signing bonuses, or other monies received by the Debtor from the Sharks or any other professional team within the National Hockey League for services rendered by the Debtor on behalf of the same during the past twelve (12) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

In addition to the General Objections set forth above, Kane objects to this Request as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. Kane objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time or scope, and purports to impose an obligation on Kane to perform an unduly burdensome search or to produce documents that are not reasonably accessible. Kane objects to this Request on the grounds that it seeks information relating to matters that are neither relevant to any party's claim or defense nor proportional to the needs of this litigation because the information is not important to this litigation; any relevant information can be discovered through alternative less invasive sources. These documents are irrelevant to the administration of the bankruptcy estate and to the allowance or disallowance of Centennial's claim. Kane objects to this Request on the grounds that it is harassing and seeks documents that are not relevant.

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT                                                                                             45

Dated: February 28, 2022                    FINESTONE HAYES LLP

                                             */s/ Ryan A. Witthans*
                                            Ryan A. Witthans
                                            Attorneys for Evander Frank Kane,
                                            Debtor and Defendant

## PROOF OF SERVICE

I, the undersigned, declare that I am over the age of eighteen years and not a party to this action. My business address is 456 Montgomery Street, Floor 20, San Francisco, California 94104. I caused a true and correct copy of the following documents:

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT**

to be served in the manner stated below.

**SERVED BY EMAIL**
On February 28, 2022, I served the following persons and/or entities by email.

John A. Anthony
janthony@anthonyandpartners.com

Andrew J. Gekhas
aghekas@anthonyandpartners.com

Peter C. Califano
pcalifano@cwclaw.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 28, 2022, in San Francisco, California.

                                             */s/ Ryan A. Witthans*
                                            Ryan A. Witthans

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENT
46

# EXHIBIT "10"

# ANTHONY & PARTNERS

## ATTORNEYS AT LAW

aghekas@anthonyandpartners.com

100 S. ASHLEY DRIVE
SUITE 1600
*Please reply to:* TAMPA, FL 33602
Main: 813.273.5616
FAX: 813.221.4113

February 2, 2022

**VIA EMAIL sfinestone@fhlawllp.com**

Stephen D. Finestone, Esquire
Finestone Hayes LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104

> **Re:** **Centennial Bank v. Evander Frank Kane**
> **United States Bankruptcy Court, Northern District of California**
> **Case Number: 21-5016 (the "Adversary Proceeding")**
>
> **In re Evander Frank Kane**
> **United States Bankruptcy Court, Northern District of California**
> **Case Number: 8:21-50028-SLJ (the "Bankruptcy Case")**

Dear Steve:

This letter details the various deficiencies in your client's, Evander Frank Kane ("Kane"), responses to "Centennial Bank's First Request for Admission to the Debtor" (the "Admissions Request"), "Centennial Bank's First Set of Interrogatories to the Debtor" (the "Interrogatories"), and "Centennial Bank's First Request for Production of Document to the Debtor" (the "Production Request"), all of which is collectively referred to here as the "Outstanding Discovery" and all of which was served on Kane on December 3, 2021. We hope to resolve these issues through the meet and confer process in compliance with Federal Rule of Civil Procedure 37(a) and Bankruptcy Rule 7037.

## I.    Kane's Evasive Responses to Individual Admissions Request and Deficient Objections

As you know, the purpose of requesting admissions "is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." In re Heritage Bond Litig., 220 F.R.D. 624, 626 (C.D. Cal. 2004); see also Rule 36 Advisory Committee Notes (1970 Amendment) ("Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issue that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."). Rule 36(a)(4) provides:

> Answer. If a matter is not admitted, the answer must specifically deny it or state in **detail** why the answering party cannot truthfully admit it or deny it. A denial must fairly respond to the substance of the matter, and when good faith requires that a party **qualify an answer or** deny only a part of a matter, the answer must specific the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny

only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4) (emphasis added). Responses that are insufficient and evasive do not meet the requirements of Rule 36(a)(4) and are a basis to compel better answers. Kane's responses to the Admissions Request are insufficient and evidence a lack of good faith on Kane's part. For example, in response to **Request for Admission No. 1**, Kane responded as follows:

> **Response to Request for Admission No. 1:** Admit that the Debtor's debts as listed in the Schedules are not primarily business debts as that term is defined above in Section I, paragraph 24.

> **Response to Request for Admission No. 1:** In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane response as follows: Denied.

For starters, Kane's boilerplate objection is entirely inappropriate. The assertion that the request is "irrelevant" is devoid of merit. Such a request ties directly into Centennial's claims as alleged in the Adversary Complaint, and clearly fall within the broad definition of relevancy for discovery purposes. Kane's other objections that the request is "vague" and "ambiguous" are equally fallacious. There is nothing confusing about seeking an admission on whether Kane's scheduled debts are not primarily business debts as that term is defined in paragraph 24 of the definitions – i.e. debts that Kane incurred to obtain money for a business or investment or through the operation of the business or investment. Given that Kane indicated on his Petition, under penalty of perjury, that his debts were "primarily business debts," Kane obviously understands the request. Moreover, objecting in this manner and then answering "[s]ubject to and without waiving any objection" only acts to further compound the issue. Now Centennial is left questioning whether Kane truly understood the question, or was the boilerplate objection posed simply to waste time? See Burke v. Basil, 2020 WL 7872965 at *3 (C.D. Cal. Nov. 16, 2020) (overruling "vague and ambiguous" objections noting that a "party responding to discovery has an obligation to use reasonable, common sense, and ordinary definitions to terms in discovery requests"); King Hardy v. Bloomfield Bd. of Educ., 2002 WL 32506294, *5 (D. Conn. Dec. 8, 2002) (finding the responding party must give discovery requests a reasonable construction rather than strain to find ambiguity). Regardless, it is obvious that the response is insufficient and requires amendment by Kane. The same argument applies to Kane's responses to **Request for Admission No. 2**.

In responding to **Request for Admissions No. 3 through 10** and **24 through 29**, Kane objected on the same "vague, ambiguous and irrelevant" grounds that are insufficient as discussed above. Additionally, Kane failed to actually admit or deny the specific request at issue, and instead, offered an evasive answer that "Kane admits that the Centennial Obligation was primarily incurred to pay off existing debt as set forth in the relevant closing statements." This is not proper. Each of these requests asks a straightforward question about Kane's scheduled debt in an effort to streamline the issues for trial. Although Kane admits that the loan proceeds were used for a particular purpose, he refuses to provide a clear response as to whether

he admits or denies that such purpose constitutes a business debt. Instead, Kane attempts to avoid admitting or denying the request at issue by inserting unnecessary explanation that only makes the issue more confusing. This practice contradicts the essence of Rule 36, which requires a good faith response and does not permit evasive or convoluted answers. In the end, it is impossible to discern whether Kane admits or denies these requests. As such, Kane's is requested to amend his answers to each of the foregoing.

Additionally, **Request for Admissions No. 16 through 21** similarly requested that Kane admit or deny that the obligations Kane owed to certain unsecured creditors, as listed on Kane's schedules, is a consumer debt as the term is defined in Section I, paragraph 23 of the RFAs. Kane responded to each as follows:

> In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-client communications and attorney work product. Subject to and without waiving any objections, Kane responds as follows: Denied.

For starters, Kane's specific denial to **Request for Admission No. 20** – pertaining to Raj Banghu – is puzzling. In opposing the Centennial's 707(b) dismissal motion [Doc. 83], Kane identified the debt owed to Raj Bhangu as "[c]onsumer." [Doc. 120 at ¶8]. It would appear that Kane is now taking the complete opposite approach. We would request explanation for this discrepancy.

Moving past that particular issue, Kane's argument that these requests seek "legal conclusions" and are therefore objectionable is misplaced. The express language of Rule 36 provides a party may properly propound RFAs relating to "facts, **the application of law to fact**, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A) (emphasis added). These requests are not requests for pure matters of law, but rather seek to apply the law to the facts of the case. See, e.g. Byard v. City & Cty. Of S.F., 2017 WL 988497, at *2 (N.D. Cal. Mar. 15, 2017) (finding RFA asking a party to "[a]dmit that [the] defendant is a 'person' within the meaning of 42 U.S.C. § 1983" asks the responding party "to apply law to fact"); Watterson v. Garfield Beach CVS LLC, 2015 WL 2156857, at *4 (N.D. Cal May 7, 2015) (finding RFAs on whether a program is a "wellness program" as defined in a federal regulation ask the plaintiff "to admit or deny a certain application of the law to the facts"); cf. Bos v. ClubCorp USA, Inc., 2019 WL 1873293, at *4 (C.D. Cal. Mar. 11, 2019) (directing a party to respond to RFAs "without further objection" if it "believes that the definition of 'debt collector' under [specified] statutes is undisputed," because asking a party "to admit whether it satisfies the criteria of a 'debt collector' under an undisputed definition [in the statutes] … would arguably constitute a mixed question of law and fact"). For the foregoing reasons, Kane's qualified responses to these requests are insufficient and we would request immediate services of amended answers.

## II.  Kane's Insufficient Interrogatory Responses

As you know, Rule 33 governs the use of interrogatories as a discovery device in federal courts, and is made appliable to this Advisory Proceedings under Bankruptcy Rule 7033. Much like the use of admissions request, the purpose of interrogatories is to limit and clarify the issues

for the parties in preparation for further trial proceedings. See Soria v. Oxnard School DIst. Bd. of Trustees, 488 F.2d 579, 587 (9th Cir. 1973). In these regards, "[a]n interrogatory may relate to any matter that may be inquired into under Ruel 26(b), and an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Lanier v. San Joaquin Valley Officials Assoc., 2016 WL 4764669, at *3 (E.D. Cal. Sept. 12, 2016). A responding party – such as Kane – **must** respond to interrogatories under oath to the fullest extent possible, Fed. R. Civ. P. 33(b)(3), and any objections **must** be stated with specificity. Fed. R. Civ. P. 33(b)(4); Lanier, 2016 WL 4764669, at *3 (citing Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981)). Kane's responses fail to meet this standard. For example:

> **Interrogatory No. 3:** Identify (a) all facts supporting your assertion that your debt, as scheduled on the Petition, constitutes "primarily business debts" as defined in Part 6 of the Petition as "debts that you incurred to obtain money for a business or investment or through the operation of the business or investment," (b) all documents that support those facts, and (c) every person who has knowledge of those facts.

Kane's response begins with incorporating "General Objections" and then adding additional boilerplate objections that the request is "vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information." As you are aware, "[g]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections." Guadalupe Morales v. Allstate Northbook Indemnity Co., et al., 2021 WL 6618614 at *6 (C.D. Cal. Dec. 20, 2021) (quoting A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (faulting defendant for making "boilerplate objections to almost every single request for production, including broad relevancy objections, objections of 'overly burdensome and harassing,' 'assumes facts not in evidence,' privacy, and attorney-client privilege/work product protection")). Similarly, "boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper." A. Farber, 234 F.R.D. at 188. Each of the "[n]onspecific boilerplate objections to [Interrogatory No. 3] are 'inadequate under Federal Rule of Civil Procedure 33 and 34.'" Alfaro v. City of San Diego, 2018 WL 4562240, at *1 (S.D. Cal. Sep. 21, 2018) (quoting Solomon v. Jacobson, 2016 WL 6039184, at *2 (C.D. Cal. Apr. 1, 2016)); see also Romero v. Securus Techs., Inc., 2017 WL 4621223, at *2 (S.D. Cal. Oct. 16, 2017) (explaining that defendant repeatedly recited "disfavored boilerplate objections" in responding to five interrogatories). As such, Centennial requests you withdraw these objections and fully respond to this interrogatory in an amended response.

In addition to the frivolous objections noted above, Kane then proceeded to direct Centennial to "all previous discovery and pleadings" in, inter alia, the case styled Centennial Bank v. Evander Kane et al, Case No.: 21-cv-60045, pending in the United States District Court of the Southern District of Florida. For starters, because Kane responded after objecting, all of his objections are waived. See Spitznagel v. R & D Italia, LLC, 2011 WL 13143144, at *3 (M.D. Fla. Apr. 14, 2011) ("because Plaintiff objected to this Request, but then responded by providing responsive documents, it has waived any objection to producing documents responsive to this Request and if any further documents are in Plaintiff's possession, they are due to be produced").

Moreover, and as you are well aware, Kane initiated the Bankruptcy Case a mere two (2) days after the Federal Litigation was filed, and thus, there is no discovery or responsive pleading from Kane. As for the previously pending state court litigation, Centennial Bank v. Evander Kane, Case No. 20CV364167 (the "California Action"), while Kane did respond to certain discovery prior to initiating the Bankruptcy Case, Kane's answers were again evasive, insufficient, and constituted nothing more than the same boilerplate objections that are present here.

In addition to the foregoing, Kane also objected to **Interrogatory No. 3** based upon the misconception that the same included "three discreet subparts" and that Kane "shall consider this a response to three separate interrogatories." Obviously, this is not accurate. Although Rule 33 does not define the term "discrete subparts," courts have construed it to mean that "interrogatory subparts are to be counted as one interrogatory … if they are logically and factually subsumed within and necessarily related to the primary question." Nelson v. City of Los Angeles, 2016 WL 11605673, at *1 (C.D. Cal. Dec. 16, 2016) (quoting Safeco Am. V. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998)). "'[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Id.; see Synopsys, Inc. v. AtopTech, Inc., 2016 WL 6782028, at *1 (N.D. Cal. Nov. 16, 2016) ("[I]t would appear that an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question[.]" (citation omitted)). **Interrogatory No. 3** requests specific information regarding Kane's factual contention that his debts as scheduled constitute "primarily business debts," and then further requests that Kane identify all documents that support those facts, as well as those individuals who have knowledge regarding the same. Clearly these subparts are not "discrete" but directly relate to a single common theme, i.e. Kane's misrepresentation that his debts are "debts that [he] incurred to obtain money for a business or investment or through the operation of the business or investment." Thus, Kane's objection lacks merit.

After setting forth Kane's objections that are themselves objectionable and have been waived, Kane then responds "subject to and without waiving any of the foregoing objections" which is entirely verboten for the reasons set forth above. Nevertheless, the response that actually follows does not do anything to explain or identify the facts that would support Kane's assertion that his debts are "primarily business debts." Instead, and in lieu of actually responding to the request by identifying said facts, Kane blindly directs Centennial "[w]here appropriate" to "the (1) Chapter 7 Petition, ECF 1; (2) Amended Schedules D and E/F, ECF 18; (3) Debtor's Opposition to Centennial Bank's Motion to Dismiss Liquidation, ECF 120; (4) Declaration of Evander Kane in Support of Debtor's Opposition to Motion to Dismiss, ECF 121; (5) the Court's Amended Order Denying Motion to Dismiss, ECF 152; and other briefing in the above-referenced actions and previous discovery" where responsive facts are included. Kane then provides that "[d]ocuments supporting these responses include those previously provided in this and other actions, the documents and information provided concurrently with Kane's Defendant's Initial Disclosures, and the documents and information provided concurrently with Kane's responses to these Interrogatories."

First, a responding party is only excused from providing a narrative "when the burden of collecting the information sought by an interrogatory is substantially the same for the requesting

and responding parties," then and only then may a party "answer an interrogatory by specifying records from which the answers may be obtained and by making the records available for inspection." Scanlon v. Curtis International, Ltd., 2020 WL 7360543, at *6 (E.D. Cal. Dec. 15, 2020) (quoting Rainbow Pioner No. 44-18-04A v. Hawaii-Nevada Inv. Corp., 711 F.2d 902, 906 (9th Cir. 1983)). The five (5) documents Kane has specifically identified are not **business records** of Kane, but are instead court filings. Moreover, the **burden** of collecting the information sought by Interrogatory No. 3 is **not** substantially the same for Centennial and Kane. As you know, the key factor in determining whether a debt is consumer debt lies in the debtor's purpose in incurring it. In re Cherett, 523 B.R. 660 (9th Cir. BAP 2014). And "[c]ourts determine the debtor's purpose as of the time the debt was incurred," In re Cherrett, 873 F.3d 1060, 1067 (9th Cir. 2017). Obviously, Kane, as the debtor incurring the loans, is in a substantially better position to know and explain what his purpose was in incurring his debt obligations, both current and old. Because of this, citing to court documents, that are not even business records of Kane, in lieu of providing a narrative to the interrogatory is highly inappropriate. See id. E&J Gallo Winery v. Cantine Rallo, S.p.A., 2006 WL 3251830, at *2 (E.D. Cal. Nov. 8, 2006) ("A party that knows or had access to an interrogatory response, may not use Rule 33(d) to avoid furnishing a response to the interrogatory where the answer is not apparent from the face of the documents.").

Additionally, your reference to these documents do not even address the issue, which is that Kane has sworn under penalty of perjury that his debts are "primarily business debts," in that they are "debts that [Kane] incurred to obtain money for a business or investment or through the operation of the business or investment." At no point does Kane, in any of the filings you have identified, attempt to explain what business or investment he purchased or operated with the use of these funds. In fact, in the Dismissal Opposition [Doc. 120], you state that "[t]he vast majority of these loans were used to pay off existing lenders and proceeds were disbursed directly from escrow to the existing lenders." The balance of the Dismissal Opposition, instead of addressing the fact that Kane identified his debts as "primarily business debts" only talks about "non-consumer debts" and argue that the "[t]he Lenders' loans are clearly non-consumer in nature…" The Dismissal Opposition in no way attempts to identify the facts that would support Kane's assertion that his debts are primarily business debts, which is what Kane swore they were in filing the Petition. To be sure, and as you are aware, when provided the option in Part 6 of the Petition [Doc. 1] to state that his debts were not "business debts" and to then "[s]tate the type of debts you owe that are not consumer debts or business debts," Kane declined such opportunity and left it blank.

Moreover, and while Rule 33(d) provides that when an answer can be determined by examining a party's **business records**, and where the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by "**specifying** the records that must be reviewed, in **sufficient detail** to enable the interrogating party to locate and identify them as readily as the responding party could," Kane's response fails to meet this requirement. Fed. R. Civ. P. 33(d)(1); Walt Disney Co. v. DeFabiis, 168 F.R.D. 281, 284 (C.D. Cal. 1996) (specification of records must be in sufficient detail to allow party to locate and identify documents from which the interrogatory answer may be ascertained, as readily as the party served); see also State of Colorado v. Schmidt – Tiago Construction Co., 108 F.R.D. 731, 735 (D. Colo. 1985) ("The appropriate answer when documents are to be used [under Rule

33(d)] is to list the specific document provided the other party and indicat[e] the page or paragraphs that are responsive to the interrogatory."). Instead, Kane simply directs Centennial to documents already produced in this action and other actions, without actually **specifying** in **sufficient detail** which specific documents support Kane's response. "If [Kane] cannot identify which specific documents contain the answer to the interrogatories, [he] must completely answer the interrogatories without referring to the documents." In re Fresh and Process Potatoes Antitrust Litig., 2014 WL 356220, at *2 (D. Idaho Jan. 31, 2014) (citing Cambridge Electronics Corp. v. MGA Electronics, Inc., 227 F.R.D. 313, 323 (C.D. Cal. 2004); see also Pulsecard, Inc. v. Discovery Card Servs., 168 F.R.D. 295, 305 (D. Kan. 1996) ("Under the guise of Fed. R. Civ. P. 33(d)[,] defendants may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories **specifically which documents contain the answer**. Otherwise, they must completely answer the interrogatories without referring to the documents") (emphasis added)). Although violative of the rules, it is obvious why Kane would choose to respond in this manner, because he has no facts that would support his prior sworn contention that his debts are "primarily business debts," and in lieu of simply admitting as such, has opted to force Centennial to review thousands of pages of documents and subpoena various third parties, incurring substantial costs. But if Kane is **unable** to identify the specific documents sufficient to respond to the question asked in Interrogatory No. 3, a narrative response is "both more practical and required by the Rules." Kaneka Corporation v. Zhejiang Medicine Co., Ltd., 2016 WL 11266869, at *9 (C.D. Cal. Oct. 18, 2016).

Lastly, Kane's "note" that "the designation on the Petition and related documents were the function of or done in consultation with counsel" is puzzling to say the least. Is Kane agreeing to waive the attorney-client privilege as to your law firm – as he already has as it relates to Mr. John Fiero and his firm – by putting his reliance on counsel at issue in this Adversary Proceeding? Please confirm so that we may proceed accordingly. Regardless, simply relying upon counsel is not a defense to Kane certifying that:

| Part 7: | Sign Below | |
|---|---|---|
| For you | I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct. | |
| | If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7. | |
| | If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b). | |
| | I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | |
| | I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both, 18 U.S.C, §§ 152, 1341, 1519, and 3571. | |
| | **/s/ Evander Frank Kane** | |
| | Evander Frank Kane | Signature of Debtor 2 |
| | Signature of Debtor 1 | |
| | Executed on **January 9, 2021** | Executed on |
| | MM / DD / YYYY | MM / DD / YYYY |

Such a statement is even more astounding when one simply refers to Kane deficient Admission Responses, in which Kane denied that his debts were not "primarily business debts," thereby confirming that Kane still believes that his debts are primarily "incurred to obtain money for a business or investment or through the operation of the business or investment." Thus, supplementation is clearly required.

In supplementing Kane's answer to **Interrogatory No. 3**, we would also request, in light of the impermissible boilerplate objections, the vague reference to "privileged information," and the verboten manner of objecting and then answering "subject to and without waiving" the objections, that Kane identify whether information is withheld from the interrogatory response based on any objections. See Scanlon, 2020 WL 7360543 at *9 (citing Grodzitsky v. Am. Honda Motor Co., 2017 WL 2616917, at *5 (C.D. Cal. June 13, 2017) (ordering responding party to indicate in its interrogatory response whether it is withholding information on the basis of an objection despite the absence of such a requirement in Rule 33) and Stiles v. Walmart, Inc., 2020 WL 264420, at *11 (E.D. Cal. Jan. 17, 2020) ("[B]ecause Walmart is entitled to a formal response to its interrogatories, set one, indicating that no information is being withheld on the basis of privilege, Walmart's motion will be granted and plaintiffs will be required to serve a supplemental response indicating that no information is being withheld in response to Walmart's interrogatories, set one, on the basis of privilege. To the extent any privilege is being asserted, plaintiff shall identify the specific privilege, and shall serve a privilege log as required by statute.").

It is now time to Kane to set forth the facts that support such an assertion. We would request that you amend **Interrogatory No. 3** accordingly. In providing supplemental responses, we will remind you that Kane "ha[s] a duty to provide true, explicit, responsive, complete and candid answers to interrogatories." Chubb Integrated Systems Ltd. V. National Bank of Washington, 103 F.R.D. 52, 61 (D.D.C. 1984).

In addition to Interrogatory No. 3, Kane's objections and responses to **Interrogatory No. 4, 5, 6, 7, 10, 11, 12, 13, and 15**, are also deficient for all of the same reasons addressed above. Accordingly, we would request that Kane supplement his responses as required under the Rules and applicable law.

### III.    Kane's Inappropriate Objections to the Production Requests

Pursuant to Rule 34, any party may serve on any other party a request for the production or inspection of documents within the scope of Rule 26(b), which are in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a). Documents are deemed to be within a party's possession, custody or control if the party has actual possession, custody or control thereof or the legal right to obtain the property on demand. In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995), cert. dismissed, 517 U.S. 1205 (1996). Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of its responses to discovery, and based on that inquiry, a party responding to Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control. A. Farber and Partners, Inc. 234 F.R.D. at 189 (citations omitted and internal quotation marks omitted). "Control" is defined as the legal right to obtain documents upon demand. Id. "Following a reasonable investigation to locate responsive materials, a responding party must serve a written response to each request either (1) stating that the materials requested will be produced, in whole or in part; (2) affirming that no responsive documents exist in the party's possession, custody or control, or (3) posing an objection to the request, including the reasons." Bragel International, Inc. v. Kohl's Department Stores, 2018 WL

7890682, at \*10 (C.D. Cal. Nov. 14, 2018) (citing Fed. R. Civ. P. 34(b)(2)). With the foregoing having been noted, we now address some of the more general objections Kane has posed to each Production Request.

As a threshold observation, Kane objected to each and every Production Request, and then in response to a vast majority of the Production Request proceeded to state that "Kane agrees to produce non-privileged documents responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search" '[s]ubject and without waiving his objections." Pursuant to the 2015 Amendments, if an objection is posed, the "objection must state **whether any responsive materials are being withheld** on the basis of that objection." Rule 34(b)(2)(C) (emphasis added). Centennial is unsure at this time whether or not Kane has withheld the production of documents based upon any of the boilerplate objections Kane has raised. Please amend Kane's responses to the Production Requests to confirm.

Additionally, and as part of Kane's objections to nearly every Production Request, Kane objected "as encompassing documents protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privileges. As you are aware, "[t]he party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications…. [T]he party asserting the privilege must make a prima facie showing that the privilege protects the information the party intends to withhold." In re Grand Jury Investigation, 974 F.2d 1068, 1070-71 (9th Cir. 1992) (citations and footnotes omitted). To meet this burden, the objecting party may not rely upon "generalized, boilerplate objection[s]." Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005), cert. denied, 546 U.S. 939 (2005). Instead, the objecting party must produce a privilege log that "expressly make[s] the claim" and "describe[s] the nature of the documents" being withheld with enough information to "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i), (ii). At this time, we have no privilege log from Kane and no ability to assess whether the "attorney-client privilege, work-product doctrine, and/or any other applicable privileges" have been properly invoked. We would venture to guess that they have not been, given that Kane is unable to actually identify the "other applicable privileges." Regardless, either provide a privilege log as required by the Rules and applicable law or withdraw your objections.

As a third threshold observation, while Ryan Witthans's e-mail dated January 21, 2022, indicates that "[t]here are some instances where Mr. Kane agreed to produce any documents that were in his possession, custody, or control, but was unable to locate any documents," the e-mail does nothing to identify exactly which request(s) Kane was unable to locate said documents, and therefore Centennial is left guessing as to whether full compliance has been forthcoming. This is obviously contrary to Rule 34, which requires Kane to "affirm[] that no responsive documents exist in the party's possession, custody or control." Moreover, Centennial is further left to guess as to what Kane did in order to conduct an adequate investigation for responsive materials. "A proper written response should [ ] provide sufficient information for the requesting party, and the court, to be satisfied that the responding party conducted an adequate investigation for responsive materials. As one court has explained:

In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence. If responsive documents do exist but the responsive party claims lack of possession, control, or custody, the party must so state with sufficient specificity to allow the Court (1) to conclude that the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response. As with previously discussed forms of discovery, boilerplate objections do not suffice.

Bragel International, 2018 WL 7890683, at *11 (quoting Atcherley v. Clark, 2014 WL 4660842, at *1 (E.D. Cal. Sept. 14, 2014)). On this basis alone Kane should supplement his prior responses to the Production Requests.

Having addressed some of the more general issues, we now focus on more specific issues with Kane's response to individual requests within the larger Production Request.

In response to **Requests 3 through 6**, Kane, in addition to all of the foregoing, objected on the grounds that the loans in questions were "arranged by Sure Sports LLC ("Sure Sports") and any and all documents relating to [said loan] may be obtained from Sure Sports." Kane then further objects to each request "to the extent it seeks information or documents in the debtor's possession, as such information or documents are available from another source that is more convenient, less burdensome, and less expensive." Obviously, this is not a basis for Kane to withhold documents. See Ochoa v. Empresas ICA, S.A.B. de C.V., 2012 WL 3260324, at *5 (S.D. Fla. Aug. 8, 2012) ("whether the documents are available to Plaintiffs through due diligence does not control whether [Defendant] should be compelled to produce them."). Moreover, Sure Sports was acting at the direction of Kane and as Kane's agent/loan broker, and therefore, Kane still "controls" the documents as he has legal right to obtain documents upon demand. A. Farber and Partners, Inc. 234 F.R.D. at 189. Moreover, to the extent documents that are responsive are in the Kane's – the debtor – possession, he is obligated to produce them.

Similarly, in response to **Request 7 through 14**, and in addition to all of the objections posed as to **Requests 3 through 6**, Kane objected to each request "on the ground that [said loan] was arranged by Sure Sports and all communications were through Sure Sports." This of course is not a proper objection. The fact that communications may have been through a third party does not obviate the need for Kane to comply with basic discovery and produce those documents that are responsive if they are within his possession, custody, or control as the Rules and applicable law require. As for the "overbroad" objection additionally asserted as to **Requests 11 through 14**, none of the requests are "overbroad" as you state, but instead are uniquely tailored to each third-party lender Kane obtained financial assistance from. This is information that Kane should readily have available, and it is difficult to conceive how it would create such an undue burden for Kane to produce the same. The only reason why said documents would not be "reasonably accessible" is if Kane failed to retain adequate records of his financing arrangements and disposal of assets. Which of course is what Centennial is claiming.

**Requests 15 through 18** sought basic relevant information regarding documentation identifying were the loan proceeds from Kane's various lending arrangements with the identified third-party lenders were distributed to, whether it be Kane personally or another third-party. Kane objected to each of these requests as "vague, ambiguous, or unintelligible" with nothing more. As discussed above, such boilerplate, nonspecific objections are insufficient. A. Farber, 234 F.R.D. at 188 (faulting defendant for making "boilerplate objections to almost every single request for production, including broad relevancy objections, objections of 'overly burdensome and harassing,' 'assumes facts not in evidence,' privacy, and attorney-client privilege/work product protection"). Produce all documents that are responsive.

**Requests 21 and 22** seek documents reflecting communication as between Kane and his parents relating to the Bankruptcy Case. Kane objected by arguing that the information sough is not relevant and that the request is harassing. First, it is difficult to comprehend how a request that seeks communications – regardless of who that communication is with – relating to this Bankruptcy Case would not be relevant to this Bankruptcy Case. Second, the nonspecific "harassing" objection is meritless. See A. Farber, 234 F.R.D. at 188. Withdraw the objections and produce the requested documents.

**Requests 35, 36, 38, 40, 46, 51, 52, and 53** all seek basic documentation regarding Kane's various bank accounts and finances. Kane has objected to each of the foregoing requests on the basis that they "seek disclosure of his privileged, highly confidential and proprietary financial information, protected from compelled disclosure in this action arising from California law by statutory, constitutional and judicial guarantees of privacy, including but not limited to the California Constitution and Code of Civil Procedure Section 1985.3 and/or 1985.6." The requested documents are plainly relevant to the Adversary Proceeding and Kane's specific "privilege" objection is meritless. To be sure, "[a]lthough the right to privacy may extend to personal financial information, it is 'subject to balancing the needs of the litigation with the sensitivity of the information/records sought.'" Inland Empire Waterkeeper v. Columbia Steel Inc., 2021 WL 4295138 (C.D. Cal. May 6, 2021) (quoting Davis v. Leal, 43 F.Supp.2d 1102, 1110 (E.D. Cal. 1999)). As such the right to privacy is not an "absolute bar to discovery," and "may be subject to invasion." Id. (quoting E.E.O.C. v. California Psychiatric Transitions, 258 F.R.D. 391, 395 (E.D. Cal. 2009)). Here, the requested financial information is plainly relevant to the claims and issues within the Adversary Proceeding. In addition, Kane has only provided a generic objection based on privacy concerns but provides no factual basis to indicate the sensitivity of information or records sought would outweigh the need for the information. Moreover, as part of Kane's objection, Kane objected "on the grounds that Kane has **already provided** substantial information about accounts in which Kane has an interest in documents on file in the underlying bankruptcy case and in documents produced to Centennial in connection with its Rule 2004 examination." The fact that Kane has "already provided" certain documents responsive to these requests belies Kane's new argument that they are somehow irrelevant or privileged. Thus, Kane has failed to show that the right to privacy should insulate him from producing the requested information.

**Requests 56 and 61** seek documentation regarding Kane's dissipation of assets – primarily his compensation as a professional hockey player – related to gambling or otherwise

and is directly relevant to Centennial's § 727 claims. Kane's objections to the contrary are meritless and troubling to say the least.

In light of all of the foregoing, Centennial requests that all of Kane's insufficient objections be withdrawn and the requested documents be produced in the short order, absent which Centennial will be forced to seek judicial intervention.

_____

I hope that Kane will provide a timely response on these issues and that we can resolve them without resorting to the Court's intervention. Please let me know your availability to meet and confer regarding these matters.

Sincerely,

Andrew J. Ghekas

cc:    Centennial Bank
       John A. Anthony, Esquire
       Peter C. Califano, Esquire
       Ryan A. Witthans, Esquire



**FINESTONE HAYES LLP**

February 10, 2022

<span class="smallcaps">Via E-mail</span>

Andrew J. Ghekas
<span class="smallcaps">Anthony & Partners, Attorneys at Law</span>
100 S. Ashley Drive, Suite 1600
Tampa, FL 33602
Email: aghekas@anthonyandpartners.com

> **Re:** ***Centennial Bank v. Evander Frank Kane*, Adv. Proc. No. 21-05016**
> ***In re Evander Frank Kane*, Case No. 21-50028**

Dear Andrew:

This letter responds to your letter dated February 2, 2022, alleging various deficiencies in Evander Frank Kane's ("Kane") responses to the requests for admissions ("RFAs"), interrogatories ("Rogs"), and requests for production of documents ("RFPs") served by Centennial Bank ("Centennial") on December 3, 2021.

**Kane's Responses to the RFAs Are Appropriate**

As a preliminary matter, Centennial does not object to Kane's responses to RFAs 11–15, 22–23, and 30–38. Instead, Centennial makes three broad objections as follows:

1. Centennial alleges Kane's responses to RFAs 1 and 2 are "insufficient and evasive" and contain improper objections.
2. Centennial alleges Kane's responses to RFAs 3–10 and 24–29 contain improper objections and do not admit or deny the question.
3. Centennial alleges Kane's responses to RFAs 16–21 contain improper objections, calling special attention to RFA 20 regarding the classification of Kane's debt to Raj Bhanghu.

<u>Kane's Responses to RFAs 1 and 2 Are Proper</u>

As Centennial correctly points out, Federal Rule of Civil Procedure ("Rule") 36(a)(4) provides:

> *Answer.* If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must

fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Furthermore, except for a minor typo, Centennial correctly recites Kane's response to RFA 1:

> *Request for Admission No. 1:* Admit that the Debtor's debts as listed in the Schedules are not primarily business debts as that term is defined above in Section I, paragraph 24.

> *Response to Request for Admission No. 1:* In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it is vague, ambiguous and irrelevant. Subject to and without waiving any objections, Kane responds as follows: Denied.

Centennial's characterization of this response as "insufficient and evasive" is unfounded. After succinctly stating his objections, Kane responded "Denied" to RFAs 1 and 2. As required by Rule 36(a)(4), Kane fairly responds to, and specifically denies, RFAs 1 and 2.

Centennial's primary objection seems to be with Kane's "boilerplate objection," which it considers to be "entirely inappropriate." Specifically, Centennial argues that RFAs 1 and 2 are not irrelevant because they relate to Centennial's allegation that Kane misrepresented the classification of his debts to avoid the means test of § 707(b). Centennial also argues that RFAs 1 and 2 are not vague or ambiguous.

Kane maintains his objections. The relevant distinction that RFAs 1 and 2 are getting at is between "consumer debts," as defined by 11 U.S.C. § 101(8), and non-consumer debts. *See* 11 U.S.C. § 707(b)(1). "Business debts" is a term not defined by the Bankruptcy Code. While the bankruptcy petition forms state that business debts "are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment," relevant case law holds that consumer debts may instead be contrasted against a broader class of debts "incurred for business ventures or other profit-seeking activities" (which may include the debtor's "investment in herself or himself") *Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 873 F.3d 1060, 1067 (9th Cir. 2017) (internal citations omitted).

Regardless of Kane's objections, he sufficiently answered RFAs 1 and 2 with denials. As such, his responses are proper.

Kane's Responses to RFAs 3–10 and 24–29 Are Proper

Centennial reiterates its arguments concerning Kane's objections, and Kane's response above may be imported here. Centennial's main objection is that Kane admits that the loan proceeds referenced in RFAs 3–10 and 24–29 were used for specific purposes, rather than answering whether the funds were used for "a business or investment" or "operation of a business or investment."

In addition to the discussion on the subject above, Kane's responses advance the spirit of Rule 36 because they "expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *See In re Heritage Bond Litig.*, 220 F.R.D. 624, 626 (C.D. Cal. 2004) (internal citations omitted). At this point, it is established that Kane used the proceeds from several loans to pay down existing debt. Kane's contention is that the loans were not consumer debts. Regardless, Kane's responses admit his specific use of the funds, which is a sufficient response to Centennial's requests for admission.

Kane's Responses to RFAs 16–21 Are Proper and Kane's Response to RFA 20 Is Amended

Centennial correctly recites Kane's responses to RFAs 16–21:

> In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-client communications and attorney work product. Subject to and without waiving any objections, Kane responds as follows: Denied.

Centennial begins with Kane's denial of RFA 20, which pertains to the debt owed to Raj Bhangu. This is a scrivener's error and Kane hereby amends his answer to RFA 20 as follows:

> In addition to the General Objections set forth above, Kane objects to this Request on the grounds that it seeks a legal conclusion, which would be based, among other things, on attorney-client communications and attorney work product. Subject to and without waiving any objections, Kane responds as follows: **<u>Admitted</u>**.

The remainder of Centennial's contention seems to be that Kane objected to the RFAs as seeking legal conclusions, which Centennial asserts is improper. However, Centennial's contention is imprecise, as Kane's objection was that RFAs 16–21 sought legal conclusions "which would be based, among other things, on attorney-client communications and attorney work product." Kane's objection was made out of an abundance of caution merely to preserve privilege that applies to matters discussed with counsel. Moreover, after succinctly stating his objections, Kane responded "Denied" to each of the RFAs (except for his amended response to RFA 20 as noted above). Centennial may disagree with Kane's responses, but that disagreement does not change the fact that Kane's responses fairly respond to RFAs 16–21.

**Kane's Responses to the Interrogatories Are Appropriate**

Centennial's discussion centers on Kane's response to Rog 3 and later states that Rogs 4–7, 10–13, and 15 "are also deficient for all of the same reasons addressed above." This letter will track the Centennial's discussion of Rog 3, which discussion may also be applied to the additional Rogs identified by Centennial.

Kane's Objections Are Proper

Centennial protests Kane's objections that Rog 3 is "vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks privileged information." These objections are proper. Rog 3 is vague, ambiguous, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence because it is

premised on a faulty distinction between consumer debts and "business debts," where the actual distinction is between consumer debts and non-consumer debts. The Rog is unduly burdensome because it is duplicative of existing discovery and pleading. The Rog seeks privileged information to the extent that it seeks information subject to the attorney-client privilege and/or the work product doctrine.[1, 2]

Centennial's cited cases are of no help to its position. First, many of the cases deal with respondents that refused to provide any discovery responses whatsoever. *E.g., Morales v. Allstate Northbrook Indem. Co.*, No. 5:20-cv-02577-ODW-SHK, 2021 U.S. Dist. LEXIS 251956 (C.D. Cal. Dec. 20, 2021). This is not the case here, where Kane responded subject to and without waiving his objections. Second, many of the cases involve responses to requests for production of documents, rather than interrogatories. *E.g., A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006). Third, Centennial attempts to make Kane's limited objections appear broader than they are, by arguing against objections based on relevancy, harassment, and assuming facts not in evidence. Kane did not object to Rog 3 on those grounds.[3]

Additionally, Kane's maintains his objection that Rog 3 contains three discreet subparts. Centennial cites *Safeco Ins. Co. of Am. v. Rawstron* for the proposition that a question about communications of a particular type should be considered a single interrogatory even though the request asks for the time, place, persons present, and contents to be stated separately. 181 F.R.D. 441 (C.D. Cal. 1998). It also cites *Synopsys, Inc. v. Atoptech, Inc.* for the proposition that an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question. 319 F.R.D. 293, 294 (N.D. Cal. 2016). However, neither of these cases advance its position. First, Rog 3 does not ask for details about communications of a particular type. Rather it asks for three separate types of information: (1) facts; (2) documents; and (3) people. Second, Centennial's citation to *Synopsys* is misleadingly incomplete. The quote continues: "On the other hand, an interrogatory with subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation." *Id.* at 294. Because Rog 3 is directed to three discrete areas of information (not to mention that those three discrete areas are themselves targeted towards the separate classification of myriad individual debts), it should properly be considered as having at least three discreet subparts. Regardless, Centennial's contention is immaterial, as Kane responded to each of Centennial's Rogs regardless of (but subject to and without waiving) his objection regarding numerosity.

Finally, Kane's responses, which are subject to and without waiving his objections, do not result in a waiver of his objections. Kane's responses fulfill Rule 33(b)(3)–(4), which require that:

---

[1] Despite Centennial's argument to the contrary, Kane has not waived any privilege with respect to these responses or previous matters in the bankruptcy proceedings.

[2] Centennial is not entitled to discover privileged documents and information. Rule 26(b)(1) only allows parties to obtain discovery regarding any nonprivileged matter that is relevant to the case.

[3] Kane properly objected to Rogs 10 and 12 as irrelevant. Kane's relationships with Thrivest and DCC are irrelevant. The issue is the characterization of Kane's debts when he declared bankruptcy, and the loans to those entities were repaid prior to Kane's bankruptcy.

(3) *Answering Each Interrogatory.* Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

(4) *Objections.* The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

Kane stated his grounds for objection to each Rog with specificity. After doing so, he answered each separately and fully in writing under oath. As such, his objections and responses are proper under Rule 33.

Kane's Responses Property Incorporated Existing Discovery and Pleadings

Kane's response to Rog 3 incorporates the following documents and information, which includes parentheticals describing the significance of each:

1. *Chapter 7 Petition*, ECF 1 (provides a listing of Kane's debts);

2. *Amended Schedules D and E/F*, ECF 18 (same);

3. *Debtor's Opposition to Centennial's Bank's Motion to Dismiss Liquidation* and the supporting declaration of Kane, ECF 120–121 (containing facts and argument pertaining to the classification of Kane's debts as consumer or non-consumer);

4. *Amended Order Denying Motion to Dismiss*, ECF 152 (containing the Bankruptcy Court's findings of fact and conclusions of law regarding the classification o Kane's debts as consumer or non-consumer); and

5. To the extent that it contains additional information, other discovery and briefing (including declarations) in this adversary proceeding; the underlying bankruptcy case; *Centennial Bank v. Evander Kane*, Santa Clara Superior Court, Case No. 20CV364167; and *Centennial Bank v. Evander Kane et al.*, United States District Court for the Southern District of Florida, Case No. 21-cv-60045.

Note that these documents include copies of the loan agreements with several lenders, including Centennial. ECF 121-1. These documents also include *Defendant's Initial Disclosures* served on December 6, 2021, which contains lists of individuals likely to have discoverable information and documents that Kane may use to support his claims or defenses.

Centennial complains that it is burdened by parsing through these documents in a way that Kane would not be. This is not a complicated case wherein Centennial must find a needle in a haystack—the factual issues are relatively simple and well-known to both parties. To be clear, the only burden facing Centennial is having to read the referenced documents, which sufficiently respond to the questions in full, and which Kane has described in sufficient detail.

Centennial also argues that Kane should produce "business records," which the referenced documents are not. Again, this relies on Centennial's incorrect belief that any non-consumer debt must be directly traceable to the operation of a business or an investment. Again, the distinction is between consumer and non-consumer debt, not between consumer and business debt.

<u>Kane's Reponses Are Complete and Advance the Spirit of Rule 33</u>

Kane's responses provide complete and sufficient answers to each of Centennial's Rogs. They advance the parties in preparation for further trial proceedings by limiting and clarifying the issues. *See Soria v. Oxnard Sch. Dist. Bd. of Trs.*, 488 F.2d 579, 587 (9th Cir. 1973). As such, Kane's responses to Centennial's Rogs are proper.

<u>Kane's Responses to Rogs 4–7, 10–13, and 15 Are Proper</u>

Centennial applies the same arguments discussed above to Rogs 4–7, 10–13, and 15, which arguments also fail for the reasons set forth above.

**Kane's Responses to the Requests for Production Are Appropriate**

Centennial does not object to Kane's responses to RFPs 1–2, 19–20, 23–34, 37, 39, 41–45, 47–50, 54–55, and 57–60.

<u>Centennial's Threshold Arguments Are Unavailing</u>

Centennial asks that Kane make a prima facie showing that privilege protects certain information. Briefly, Kane's assertions of privilege include the following, none of which are or have been waived:

1. Communications between Kane and his legal counsel are protected by the attorney-client privilege.

2. Materials prepared by Kane's legal counsel in anticipation of litigation are protected by the work product doctrine.

3. Centennial makes myriad requests for Kane's financial documents. In many cases these are overbroad, both in respect to time and scope. For example, RFPs 35–36, 38, 41, and 56 request records from the past seven years; RFPs 37, 51–53, and 55 request records from the past twelve years; and RFPs 40 and 46 request financial documents from without any time limitation. Centennial's RFPs seek disclosure of private, confidential, and privileged information that is protected from compelled disclosure in this action arising from constitutional, statutory, and judicial guarantees of privacy. Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh such privilege.

Centennial also asserts that a privilege log is required. However, Rule 26(b)(5) only requires the following:

(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Kane has expressly made his claims of privilege and has described the nature of the materials not produced in a manner that allows Centennial to assess his claim. Thus, Kane has fulfilled the requirements of the Rule.

Centennial also complains that Ryan A. Witthans' email dated January 21, 2022 (which noted that "[t]here are some instances where Mr. Kane agreed to produce any documents that were in his possession, custody, or control, but was unable to locate any documents") is contrary to Rule 34. It then cites language not found in Rule 34 and asserts that Kane is required to describe the manner in which he searched for documents and to affirm that no responsive documents exist within his possession, custody, or control. To alleviate Centennial's concerns regarding Kane's searches for responsive documents, Kane searched his computer and email account by performing text searches containing the relevant names of the financial institutions, lenders, and/or entities implicated in each RFP. When required, Kane specified in his responses that he is unaware of responsive documents that exist.

Kane's Responses to RFPs 3–6 Are Proper

Kane stated in his responses that certain loans were arranged through Sure Sports, from which responsive documents could be obtained. Centennial complains that Kane could demand the referenced documents because Sure Sports is his agent. *See A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006). However, Centennial overlooks the fact that while Kane and Sure Sports once had an ongoing relationship, that relationship has since ceased and is the subject of litigation. Kane does not have any present legal right to obtain the documents by demand, and Centennial is free to issue discovery to Sure Sports to obtain the documents that it seeks. Regardless, as noted in Kane's responses, he agreed to produce all "non-privileged documents responsive to this request that are in [his] possession, custody, and control, and that can be located by a reasonable search."

Kane's Responses to RFPs 7–14 Are Proper

In addition to the discussion regarding RFPs 3–6 above, Centennial protests Kane's objection that the referenced loans were "arranged by Sure Sports and all communications were through Sure Sports." This statement merely points out that Sure Sports conducted and controlled the communications with the referenced lenders, and that as a general matter Kane did not interface with the lenders directly. As set forth above, Centennial may issue discovery to Sure Sports to obtain the requested documents.

Centennial additionally criticizes Kane's objection to RFPs 11–14 as overbroad. These RFPs ask for "[a]ny and all documents" related to various lending arrangements. While Centennial targets these requests to specific lenders, it does not narrow the scope of documents to those that could be relevant to the pending litigation, and so Kane stands by his objection.

Regardless of the above objections, Centennial's arguments are moot because Kane agreed to produce documents responsive to these RFPs.

<u>Kane's Responses to RFPs 15–18 Are Proper</u>

These RFPs are poorly worded, hence Kane's objection that they are vague, ambiguous, and unintelligible. To the extent that Centennial clarified its request by its discovery dispute letter to mean distribution of the loan proceeds, Kane has turned over any documents in his possession and control concerning the loans with Thrivest, DCC, SIC, and South River.

<u>Kane's Responses to RFPs 21–22 Are Proper</u>

RFPs 21–22 seek Kane's communications with his parents, to which Kane objected to as irrelevant, disproportionate to the needs of litigation, harassing, and unlikely to lead to the discovery of admissible evidence.

Kane maintains his objections. To begin with, the RFPs are irrelevant. Besides a few bare allegations that Kane made certain payments to support his family members, which Kane properly disclosed in his bankruptcy filings, Kane's parents do not feature in Centennial's complaint or its allegations. Centennial's requests are nothing more than a blatant attempt to harass Kane and his family by injecting themselves into private family conversations that do not have any bearing on Centennial's lawsuit.

<u>Kane's Responses to RFPs 35–36, 38, 40, 46, and 51–53 Are Proper</u>

These RFPs seek certain financial documents from broad (and in some cases unbounded) time periods. Kane has objected to these RFPs because, among other things, they are overbroad, seek disclosure of privileged, confidential, and private information that is protected from disclosure, and that Centennial made no showing of relevance or compelling need sufficient to outweigh Kane's privilege.

RFPs 35–36 and 38 request documents from the past seven years, RFPs 40 and 46 request documents without any time limitation, and RFPs 51–53 request documents from the past twelve years. Centennial's RFPs seek disclosure of private, confidential, and privileged information that is protected from compelled disclosure in this action arising from constitutional, statutory, and judicial guarantees of privacy. Centennial has made no showing of either relevance of the requested information or of a compelling need sufficient to outweigh such privilege. In short, Centennial has no basis to seek such a wide-ranging array of documents from such an expansive time period.

Furthermore, Centennial's argument that Kane's provision of certain documents belies his present objections is absurd. Kane provided recent documents that are relevant and proportionate to the instant litigation, which does nothing to contradict his valid objection to the overbroad scope of documents sought in Centennial's RFPs.

<u>Kane's Responses to RFPs 56 and 61 Are Proper</u>

RFP 56 seeks seven years of documents related to Kane's gambling and RFP 61 seeks twelve years of documents evidencing Kane's expenditure of his compensation as a professional hockey player. Kane objected to these RFPs on a number of grounds. Instead of discussing the individual grounds, Centennial merely states that the requests are "relevant to Centennial's § 727 claims" and that "Kane's objections to the contrary are meritless and troubling to say the least."

Kane stands by his objections. Similar to the RFPs discussed directly above, these requests are overbroad, both in terms of time and the scope of documents sought. The requests are not reasonably limited in time or scope and are disproportionate to the needs of litigation. Due to the overbreadth of these requests, they are unduly burdensome, seek information that is irrelevant and unimportant to Centennial's complaint, and is not reasonably calculated to lead to admissible evidence.

**Conclusion**

As you can discern from the above, Kane contends that Centennial's discovery is far too broad, intrusive, and objectionable on a number of other grounds. Regarding your request for available deposition dates for Kane in late March, we are consulting with him about his schedule and will get back to you. We will do similarly regarding the request to depose his parents.

Sincerely,

*Stephen D. Finestone*

Stephen D. Finestone

cc:     John A. Anthony
        Peter C. Califano

# EXHIBIT "11"

| | |
|---|---|
| **From:** | Ryan Witthans |
| **To:** | John Anthony; Andrew Ghekas; "Peter Califano" |
| **Cc:** | Stephen Finestone |
| **Subject:** | Kane: Documents responsive to Centennial RFP |
| **Date:** | Friday, January 21, 2022 9:00:07 PM |

---

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel:

This email provides a link to the documents produced by Evander Frank Kane in response to Centennial Bank's request for production of documents.

 Link: https://www.dropbox.com/sh/2x0ui7ojgmmem2w/AAD8dpdSAvayl-gPgTtg6I1Aa?dl=0
 Password: SnowRing77

We are not producing documents again that were produced to Centennial as part of the Rule 2004 examination, though some of those documents are responsive to the requests, as you already have the documents (e.g., bank statements). There are some instances where Mr. Kane agreed to produce any documents that were in his possession, custody, or control, but was unable to locate any documents.

Let us know if you have any problems accessing the documents.

Sincerely,

**Ryan A. Witthans**
Finestone Hayes LLP
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
(415) 481-5481
rwitthans@fhlawllp.com
www.fhlawllp.com

NOTICE: This message is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution of the confidential and privileged information contained herein is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

| From: | Ryan Witthans |
| To: | Andrew Ghekas; Stephen Finestone |
| Cc: | John Anthony; "Peter Califano" |
| Subject: | RE: Kane: Amended/supplemented response to Centennial RFP |
| Date: | Wednesday, March 9, 2022 10:21:30 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Andrew,

Following up on this—we have found RBC -5963 statements from February to July of 2020 that we will be producing. We may also have a few statements from late 2019 for RBC -0532 and -5955 that I am looking into. We are attempting to gain access to the other statements (and will produce those on a rolling basis if found). Otherwise, we will confirm that Mr. Kane no longer has access to the accounts.

Thank you,

**Ryan A. Witthans**
Finestone Hayes LLP
(415) 481-5481

---

**From:** Ryan Witthans
**Sent:** Thursday, March 3, 2022 5:47 PM
**To:** Andrew Ghekas <AGhekas@anthonyandpartners.com>; Stephen Finestone <sfinestone@fhlawllp.com>
**Cc:** John Anthony <janthony@anthonyandpartners.com>; 'Peter Califano' <PCalifano@cwclaw.com>
**Subject:** RE: Kane: Amended/supplemented response to Centennial RFP

Hi Andrew,

I am undertaking a comparison of all statements produced to you against all statements that Mr. Kane has in his possession or control. If I find any missing statements within the 2-year time period, then we will produce them to you promptly. For what it's worth (and we can discuss this later in detail), non-production of statements within the 2-year window is due to them not being in Mr. Kane's possession or control, rather than withholding them on privilege or other grounds. I am in the process of verifying, but I do not believe that Mr. Kane has any statements dating prior to midway through 2019.

I am tied up for most of the day tomorrow, but I will try to get you any missing documents as quickly as possible—I'm aiming for sometime early next week.

**Ryan A. Witthans**

Finestone Hayes LLP

(415) 481-5481

---

**From:** Andrew Ghekas <AGhekas@anthonyandpartners.com>
**Sent:** Tuesday, March 1, 2022 5:10 PM
**To:** Stephen Finestone <sfinestone@fhlawllp.com>; Ryan Witthans <RWitthans@fhlawllp.com>
**Cc:** John Anthony <janthony@anthonyandpartners.com>; 'Peter Califano' <PCalifano@cwclaw.com>
**Subject:** RE: Kane: Amended/supplemented response to Centennial RFP

Steve and Ryan:

We are in receipt of Mr. Kane's amended responses to Centennial First Request for Production as well as the supplemental production you provided.  I note that in response to Requests 35, 45, 51, 52, and 53, and despite the objections that Mr. Kane has raised, Mr. Kane has nonetheless agreed to "produce non-privileged documents from the **two years** prior to the petition date that are responsive to this Request that are in Kane's possession, custody, and control, and that can be located by a reasonable search."  Bracketing for the moment that we do not agree with restricting the request and production to a two-year lookback, it would appear that Mr. Kane is indeed agreeable to producing documents from January 2019 to January 9, 2021 – that being the date of the Petition.  However, in the supplemental production produced at the same time as the amended responses, we note that we only received financial documents dating back to 2019 for **three** of Mr. Kane's accounts:  Bank of America Account, ending in *0171; ScotiaBank account, ending in *28; and ScotiaBank account, ending in *87.

Additionally, the 2019 financial documents produced for these three accounts were themselves limited.  For BOA, we only received bank statements for Aug 22 to Sep 19; Sep 20 to Oct 22; Oct 23 to Nov 19; and Dec 20 to Jan 22, 2020.  For the two ScotiaBank accounts, we only received bank statements for Sep, Oct, Nov, and Dec.  Thus, we are missing the majority of financial records for each account for 2019.

This also confirms that  we are missing **all** 2019 financial records for Mr. Kane's WellsFargo *1607 account, WellsFargo credit card *2528, Royal Bank of Canada *0532, Royal Bank of Canada *5955, Royal Bank of Canada credit card *4741, and Mr. Kane's American Express Platinum Card *004.  As for Mr. Kane's American Express Platinum Card *004, we only received statements for Sep 28 to Oct 7, 2020; Oct 10 to Nov 6, 2020; and Nov 8 to Dec 7, 2020.

Can you confirm whether Mr. Kane has completed his search for responsive documents as it relates to the foregoing accounts?  If so, is the basis for the nonproduction because Mr. Kane does not have such records, or are they being withheld on some privileged grounds?  If they are being withheld for any reason, that is obviously something we will need to address.

Of course, these also only represent the accounts that Mr. Kane has identified on his Schedules.  To the extent there are additional accounts that Mr. Kane once maintained within the two years that he has agreed to produce, those too have not been produced.  Can you confirm whether or not there are additional accounts that Mr. Kane may have maintained at other institutions and whether or not

he has records for said accounts?

As for the two years that Mr. Kane has agreed to produce documents, we do not agree that that is a reasonable limitation.  For starters, even the Centennial Bank and Zions' loans that are identified on Mr. Kane's schedules date back to 2018.  Moreover, it appears to have Mr. Kane regularly took out various loans to pay off other loans, dating back to well over two years prepetition.  Understanding where this money came from and where it went, is obviously relevant to Mr. Kane's bankruptcy and the adversary.  However, before bringing this issue before the Court, are you able to confirm whether or not Mr. Kane has financial records for not only each of the accounts and credit cards identified on his schedules, but for also those not identified, dating back to January 2015 – or 6 years prepetition – or any time longer than January 2019 - the two years Mr. Kane has agreed to produce for?  If Mr. Kane does not have any financial documents for the time period we are looking for than that is one thing.  But if Mr. Kane is holding back any documents either under a claim of privilege or because they are dated pre-January 2019, then we need to address this with the Court.

Thank you,
Andrew

**Andrew Ghekas, Esq.**
Anthony & Partners, LLC
100 South Ashley Drive, Suite 1600
Tampa, FL  33602
Direct 813.712.1237
Office 813.273.5616
Fax 813.221.4113
anthonyandpartners.com



This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Disclaimer under Circular 230: Any statements regarding tax matters made herein, including any attachments, are not formal tax opinions by this firm, cannot be relied upon or used by any person to avoid tax penalties, and are not intended to be used or referred to in any marketing or promotional materials.

**From:** Ryan Witthans <RWitthans@fhlawllp.com>
**Sent:** Monday, February 28, 2022 9:09 PM
**To:** John Anthony <janthony@anthonyandpartners.com>; Andrew Ghekas <AGhekas@anthonyandpartners.com>; 'Peter Califano' <PCalifano@cwclaw.com>

**Cc:** Stephen Finestone <sfinestone@fhlawllp.com>
**Subject:** Kane: Amended/supplemented response to Centennial RFP

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel:

Evander Kane's amended responses to Centennial Bank's requests for production are attached. Supplemental documents are available as follows:

> Link: https://www.dropbox.com/sh/x372gjqa0l1br3v/AACl2ZBEwRrN3ZAMgEOy5i2ba?dl=0
> Password: SnowRing77

I will send a separate email regarding the Sure Sports document production.

Sincerely,

**Ryan A. Witthans**
Finestone Hayes LLP
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
(415) 481-5481
rwitthans@fhlawllp.com
www.fhlawllp.com

NOTICE: This message is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution of the confidential and privileged information contained herein is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

| From: | Ryan Witthans |
|---|---|
| To: | John Anthony; Andrew Ghekas; "Peter Califano" |
| Cc: | Stephen Finestone |
| Subject: | RE: Kane: Document production |
| Date: | Monday, March 14, 2022 10:37:56 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

In addition, I have confirmed with Evander that he no longer has any access to the accounts at Bank of America and Wells Fargo, and cannot obtain statements electronically.

**Ryan A. Witthans**
Finestone Hayes LLP
(415) 481-5481

---

**From:** Ryan Witthans
**Sent:** Monday, March 14, 2022 9:35 PM
**To:** John Anthony <janthony@anthonyandpartners.com>; Andrew Ghekas <AGhekas@anthonyandpartners.com>; 'Peter Califano' <PCalifano@cwclaw.com>
**Cc:** Stephen Finestone <sfinestone@fhlawllp.com>
**Subject:** Kane: Document production

Counsel:

Additional documents responsive to Centennial Bank's request for production are available at the following link:

> Link: https://www.dropbox.com/sh/4r3y3f7e9k6d389/AADrIFOYWuFbgQ5XcqT0Aup2a?dl=0
> Password: **BottleSound16**

Sincerely,

**Ryan A. Witthans**
Finestone Hayes LLP
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
(415) 481-5481
rwitthans@fhlawllp.com
www.fhlawllp.com

NOTICE: This message is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution of the confidential and privileged information contained herein is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

| | |
|---|---|
| **From:** | Ryan Witthans |
| **To:** | John Anthony; Andrew Ghekas; "Peter Califano" |
| **Cc:** | Stephen Finestone |
| **Subject:** | RE: Kane: Document production |
| **Date:** | Monday, March 14, 2022 10:37:56 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

In addition, I have confirmed with Evander that he no longer has any access to the accounts at Bank of America and Wells Fargo, and cannot obtain statements electronically.

**Ryan A. Witthans**

Finestone Hayes LLP

(415) 481-5481

---

**From:** Ryan Witthans
**Sent:** Monday, March 14, 2022 9:35 PM
**To:** John Anthony <janthony@anthonyandpartners.com>; Andrew Ghekas <AGhekas@anthonyandpartners.com>; 'Peter Califano' <PCalifano@cwclaw.com>
**Cc:** Stephen Finestone <sfinestone@fhlawllp.com>
**Subject:** Kane: Document production

Counsel:

Additional documents responsive to Centennial Bank's request for production are available at the following link:

      Link: https://www.dropbox.com/sh/4r3y3f7e9k6d389/AADrIFOYWuFbgQ5XcqT0Aup2a?dl=0
      Password: **BottleSound16**

Sincerely,

**Ryan A. Witthans**

Finestone Hayes LLP

456 Montgomery Street, 20th Floor

San Francisco, CA 94104

(415) 481-5481

rwitthans@fhlawllp.com

www.fhlawllp.com

NOTICE: This message is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution of the confidential and privileged information contained herein is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT "12"

1          UNITED STATES BANKRUPTCY COURT
          NORTHERN DISTRICT OF CALIFORNIA
2               (San Jose Division)

3

4

In re:
5                                    CASE NO:
EVANDER FRANK KANE,                  21-50028-SLJ
6
    Debtor.                          Chapter 7
7  _____/

8  CENTENNIAL BANK, an Arkansas
   State chartered bank,
9                                    Adv. No. 21-05016
    Plaintiff,
10
Vs.
11
EVANDER FRANK KANE,
12
    Defendant.
13 _____/

14

15

16     DEPOSITION OF:        **EVANDER FRANK KANE**

17     TAKEN:                Pursuant to Notice by
                             Counsel for Plaintiff
18
       DATE:                 July 6, 2022
19
       TIME:                 12:30 p.m. to 8:05 p.m.
20
       STENOGRAPHICALLY
21     REPORTED BY:          CHERE J. BARTON, FPR

22     LOCATION:             **ALL PARTIES ATTENDED
                             VIA VIDEOCONFERENCE**

23

24

25

——— REGENCY REPORTING SERVICE, INC. (813) 244-5296 ———

```
1    APPEARANCES:

2

         ANDREW J. GHEKAS, ESQUIRE
3        Anthony & Partners, LLC
         100 South Ashley Drive
4        Suite 1600
         Tampa, Florida  33602
5
             Appeared for Plaintiff
6

7

8        STEPHEN D. FINESTONE, ESQUIRE
         Finestone Hayes LLP
9        456 Montgomery Street
         20th Floor
10       San Francisco, California  94104

11           Appeared for Debtor

12

13

         JONATHAN J. LEWIS, ESQUIRE
14       J. Lewis & Associates, APLC
         555 Corporate Drive
15       Suite 150
         Ladera Ranch, California  92694
16

17           Appeared for Hope Parker

18

19

20

21

22

23

24

25
```

REGENCY REPORTING SERVICE, INC. (813) 244-5296

1  not.

2  Q.  You testified you had a U.S. RBC checking

3  account?

4  A.  Yeah, it was part of just the RBC Bank, but I

5  haven't had that I'd say in at least three or four

6  years.

7  Q.  So other than those that are listed here and the

8  savings account at RBC, in 2020 did you maintain any

9  other checking or savings accounts or any other

10 financial accounts?

11 A.  No.

12 Q.  Mr. Kane, would you agree that you incurred

13 several loans with Centennial Bank?

14 A.  Pardon me?

15 Q.  Would you agree that you incurred several loans

16 from Centennial Bank?

17 A.  I don't necessarily understand that question.

18 Q.  Did you enter into several lending arrangements

19 with Centennial Bank?

20 A.  Yes.

21 Q.  And you've listed Centennial Bank as a secured

22 creditor on your schedules; correct?

23 A.  Correct.

24 Q.  And you've identified Centennial Bank's secured

25 claim as being approximately $8,360,000; is that

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 237 of 455

1    Q.  (By Mr. Ghekas)  And if we continue to look at

2  this document it looks as though out of the loan funds

3  from the $2,460,000 loan increase with Centennial Bank

4  $399,014.22 was to go to you directly; is that accurate?

5    A.  Yes.

6    Q.  And it went to you at an account that you

7  maintained at East West Bank; is that accurate?

8    A.  Yes.

9    Q.  And what account -- at East West Bank what was

10  that account used for?

11    A.  I don't really know.  I never had access to the

12  account.  I never had a bank card at that bank.  It was

13  when I had originally taken out a loan from East West

14  Bank I had no account there and had to keep a certain

15  amount of money in there, I don't exactly know for what

16  reason, but it was something -- it was an account that I

17  didn't have access to.

18      It was the banker there and my business manager

19  that they had recommended I hire Tony Chiricosta, so I

20  can't say I know what that account was or what those

21  funds went into the account for.

22    Q.  So you don't know what the funds in that account

23  were actually used for?

24    A.  Sitting here today, no.

25    Q.  Is that account still open?

1    A.   Yes.

2    Q.   Then SCL-D, LLC is to receive $207,500.  Do you

3    see that?

4    A.   Yes.

5    Q.   And then it looks as though any remaining funds

6    would have gone to your RBC Royal Bank account ending in

7    0046.  Do you see that?

8    A.   Yes.

9    Q.   Do you have any records from your bank account at

10   RBC Royal Bank ending in 0046?

11   A.   I don't recognize that, no.

12   Q.   You don't recognize that account?

13   A.   In terms from that account, no, I wouldn't have

14   any records today.

15   Q.   Just to clarify, when you say you don't recognize

16   that account, what do you mean by that?

17   A.   Meaning I don't remember my account number --

18   Q.   Okay.

19   A.   -- of the bank, so I don't -- when you read off

20   the 0046 I just don't recognize those numbers, but I'm

21   sure that was my account.

22   Q.   Okay.  Mr. Kane, I'll show you what we'll have

23   marked as Exhibit 22.

24        (Plaintiff's Exhibit No. 22 was marked.)

25   Q.   Do you see this document?

1  into your account at East West Bank.  Do you see that?

2     A.  Yes.

3     Q.  Were there any remaining funds that were wired to

4  your account?

5     A.  Again, I'm not sure because I never had access to

6  that account or saw a statement or account balance, so I

7  guess if you did the numbers and out of the total versus

8  the two million there might be some.

9     Q.  Did you ever ask anybody at East West Bank for

10  access to the account?

11     A.  No.  I asked my business manager Tony a couple of

12  times like how it all worked, and he said that --

13  because he was signed on the account, he would move

14  money in and out of that account.  I never really got a

15  straight answer, I guess.

16     Q.  Do you know what he would be moving money in and

17  out of that account for?

18     A.  He was using -- there was like -- I feel there

19  were some payments like monthly payments he was using

20  like they would go to East West and they would pay out

21  of that account.  I'm not a hundred percent sure again

22  because I had zero control over it, so I don't know.

23     Q.  Let me bring up what we'll mark as Exhibit 26.

24       (Plaintiff's Exhibit No. 26 was marked.)

25     Q.  Do you see this document, Mr. Kane?

1 2019?

2          MR. FINESTONE:  Sorry, you broke up,

3   counsel.

4          MR. GHEKAS:  Sorry.

5          MR. FINESTONE:  The problem was as Mr. Kane

6   testified is that his account was closed at some

7   point and he couldn't go back and get older

8   statements.  I think that was --

9 A.  Yeah, like there was -- I didn't understand --

10 well, I understood your question, no, there's no reason

11 why there wasn't anything provided.  It's just when it

12 was asked if there was any statements prior to that

13 they'd kind of already been closed and I couldn't go

14 back and gather those statements.

15 Q.  (By Mr. Ghekas)  So you have no statements

16 related to your Wells Fargo account for 2019; correct?

17 A.  Correct, yeah.

18 Q.  And you have no statements for your Wells Fargo

19 account for 2018; correct?

20 A.  Correct.

21 Q.  Would that be true for any year prior to 2020?

22 A.  For that account?

23 Q.  For that account, yes, for the Wells Fargo

24 account?

25 A.  Yes.

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 241 of 455

1    Q.  (By Mr. Ghekas)  I don't believe we received any

2   credit card statements for your RBC account other than,

3   I believe, there were some statements June 26, 2020 and

4   later.  I don't believe we received anything earlier

5   than June 26th.  Is there a reason for that?

6    A.  June 26th?

7    Q.  Yes.

8        MR. FINESTONE:  June 2020 you mean?

9    Q.  No, sorry, I meant June 26, 2020.  I apologize.

10  That's the account statement started on June 26, 2020.

11   A.  Okay.

12   Q.  We didn't receive anything earlier than that.

13   A.  Yeah, it might have been because I didn't have

14  access to it.  I'm honestly not sure.

15   Q.  Then if we were to continue on, February 4

16  there's an a deposit for $25,100 BR to BR.  Do you see

17  that?

18   A.  Yeah.

19   Q.  Do you know where the deposit came from?

20   A.  I don't.  I mean -- I don't -- branch to branch,

21  but I don't understand necessarily what that means.

22   Q.  Would this have been money you deposited?

23   A.  I believe so, yeah.

24   Q.  And then the $25,100 that you believe you would

25  have deposited and where would that have come from?

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 242 of 455

1          THE COURT REPORTER:  Are you sure it's 40?

2          MR. GHEKAS:  No.

3          THE COURT REPORTER:  I think it's 39.

4          (Plaintiff's Exhibit No. 39 was marked.)

5     Q.  (By Mr. Ghekas)  So Exhibit 39, this is for the

6  same account 5955 at RBC starting at September 12, 2019.

7  Do you see that?

8     A.  Yes.

9     Q.  So Mr. Kane, we didn't receive any bank

10 statements for your RBC Bank account ending in 5955.  Is

11 that because you don't have any bank statements earlier

12 than that?

13    A.  I'm not sure.

14    Q.  So you may have bank statements predating

15 September 12, 2019 for your RBC account ending in 5955?

16    A.  No, actually I don't believe so.

17    Q.  And if we look on October 7th here of 2019

18 there's a deposit for $50,000, again the description if

19 BR to BR.  Do you know where that was coming from?

20    A.  I don't.

21    Q.  And then on October 16th there's another deposit

22 for $10,000 BR to BR.  Do you know where that was coming

23 from?

24    A.  I don't, no.

25    Q.  And then October 18th we see there's another

1   house on Richland.

2      Q.   But you don't know where the money came from?

3      A.   I don't know, I guess, where it came from, no.

4      Q.   And then on September 6 there's another deposit

5   for $6,696.37 described as BR to BR.  Do you where that

6   came from?

7      A.   No.

8      Q.   Then if we look at October 14 there's a

9   withdrawal for $38,977.71 described as a debit memo.  Do

10  you know where that was going?

11     A.   I don't.

12     Q.   Then on December 1 there's a deposit for $30,000

13  described as BR to BR.  Do you know where that money

14  came from?

15     A.   I do not.

16     Q.   Let's look at what we will now mark as Exhibit

17  40.

18          (Plaintiff's Exhibit No. 40 was marked.)

19     Q.   These are your bank statements for that same

20  account 0532, and again we only received account

21  statements for the period September 12, 2019 and

22  forward, so we didn't receive any account statements

23  predating September 12, 2019.  Is that because you no

24  longer have records predating September 12, 2019?

25     A.   I don't believe so.

1   money for?  Do you know if it was a loan?

2     A.  It looks like I made some payments shortly after

3   that, a week later with that money, transfers, but I'm

4   just trying to figure out who Alexandra Duggan is.  You

5   can try to Google them.  I don't know.

6     Q.  Okay.  That speeds up that document.

7     I believe we identified this document before and

8   now I just forget what it was, but early on this was the

9   Statement of Financial Affairs.  I believe it was

10   Exhibit 2, but it might have been 3.

11     But I just want to focus on -- sorry, that's not

12   even the right document.  It's your amended -- no, yeah

13   it is.  Okay.  Right here, yes.  So in Part 3 of the

14   Statement of Financial Affairs you have listed two

15   credit cards with American Express, one of them is

16   designated as American Express with Wells Fargo, which I

17   believe you testified about earlier.  Did you have a

18   second American Express card?

19     A.  Yes.

20     Q.  Do you have any documents associated with this

21   specific American Express card?

22     A.  I don't.  That card was shut down along with the

23   Wells Fargo American Express too.

24     Q.  Okay.  And then for the Wells Fargo American

25   Express we did receive some documents, I believe the

```
 1  statements that we received started on September 2020,
 2  so we didn't receive any documents predating September
 3  2020.  Is that because you don't have any documents
 4  related to the American Express Wells Fargo card
 5  predating September 2020?
 6      A.  That's correct, yes.
 7      Q.  Okay.
 8              MR. GHEKAS:  Can you guys give me about a
 9      few minutes?  I may be finishing up here.
10              MR. FINESTONE:  Sure.  And, Mr. Lewis, do
11      you think you're -- are you going to have questions
12      or how long of questioning do you anticipate?
13              MR. LEWIS:  I don't think I'll have any
14      questions to be completely honest.  Mr. Ghekas was
15      pretty thorough, so I don't think I have anything.
16              MR. FINESTONE:  Okay.  Thanks.
17              MR. LEWIS:  Sure.
18          (There was a break in the proceedings.)
19      Q.  (By Mr. Ghekas)  Just a few more questions, not
20  much more.  I want to stick with the Amended Statement
21  of Financial Affairs, Part 2 here, Mr. Kane, it
22  requested that you identify income for the last three
23  years, and you have listed here, it appears to be your
24  gross income from your wages for the years 2018, 2019
25  and 2020; correct?
```

1    A.  Correct.

2    Q.  What would be -- so this is gross income.  Do you

3  know what the net income you would have received for any

4  of these years?

5    A.  I mean, I could guess and give you a decently

6  close number, on six million, you know, I'm probably

7  netting 2.8, 2.7; on 7 million I'm probably netting 3.1,

8  give or take.

9    Q.  What would you primarily use your wages on?  Were

10  they to pay your everyday living expenses?

11    A.  Paying down the loans that I had taken out,

12  paying attorneys, living obviously, bills, mortgages.  I

13  mean, primarily those three years specifically like a

14  lot of my money was getting taken by -- you know, it was

15  already getting pre-deposited into those loans.

16    Q.  What loans would those be?

17    A.  The ones that I had previously before and during

18  the Centennial, California Bank & Trust and Professional

19  Bank.

20    Q.  And then just to confirm, you have no records

21  regarding any of your bank statements or accounts

22  predating 2019; correct?

23    A.  Correct.

24    Q.  Would you have any records other than bank

25  statements or credit card statements regarding the use

1                    <u>CERTIFICATE OF REPORTER</u>

2

STATE OF FLORIDA        :

3

COUNTY OF HILLSBOROUGH :

4

5          I, CHERE J. BARTON, FPR, a Notary Public in and

6    for the State of Florida at Large, certify that I was

7    authorized to and did stenographically report the

8    foregoing proceedings; and that the transcript is a true

9    record of the testimony given by the witness.

10          I further certify that I am not a relative,

11   employee, attorney or counsel of any of the parties, nor

12   am I a relative or employee of any of the parties'

13   attorney or counsel connected with the action, nor am I

14   financially interested in the action.

15          Dated this 19th day of July, 2022.

16

17

18

19                   /s/ Chere J. Barton, FPR

20                   _____
                     CHERE J. BARTON, FPR
                     Notary Public

21                   State of Florida at Large
                     My Commission No:  #HH 033431

22                   My Commission Expires:  12/17/24

23

24

25

# EXHIBIT "13"

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
(San Jose Division)

In re:                                        CASE NO:

EVANDER FRANK KANE,                            21-50028-SLJ

    Debtor.                                    Chapter 7
_____/

CENTENNIAL BANK, an Arkansas
State chartered bank,
                                  Adv. No. 21-05016

    Plaintiff,

Vs.

EVANDER FRANK KANE,

    Defendant.
_____/


DEPOSITION OF:          **EVANDER FRANK KANE**

TAKEN:                  Pursuant to Notice by
                        Counsel for Plaintiff

DATE:                   July 6, 2022

TIME:                   12:30 p.m. to 8:05 p.m.

STENOGRAPHICALLY
REPORTED BY:            CHERE J. BARTON, FPR

LOCATION:               **ALL PARTIES ATTENDED
                        VIA VIDEOCONFERENCE**


REGENCY REPORTING SERVICE, INC. (813) 244-5296

```
1    APPEARANCES:

2

3         ANDREW J. GHEKAS, ESQUIRE
          Anthony & Partners, LLC
          100 South Ashley Drive
4         Suite 1600
          Tampa, Florida  33602
5
              Appeared for Plaintiff
6

7

8         STEPHEN D. FINESTONE, ESQUIRE
          Finestone Hayes LLP
9         456 Montgomery Street
          20th Floor
10        San Francisco, California  94104

11            Appeared for Debtor

12

13

14        JONATHAN J. LEWIS, ESQUIRE
          J. Lewis & Associates, APLC
15        555 Corporate Drive
          Suite 150
16        Ladera Ranch, California  92694

17            Appeared for Hope Parker

18

19

20

21

22

23

24

25
```

REGENCY REPORTING SERVICE, INC. (813) 244-5296

took out multiple loans from various creditors. What
was the purpose for all these loans?

    A.  They were paying off loans that I had previously
taken out.

    Q.  Did you take out any of these loans to cover any
gambling losses?

    A.  Part of some of the loan proceeds were to pay off
gambling losses, yes.

    Q.  Would you be able to identify which ones?

    A.  Not that I can remember.

    Q.  Did you take out any of these loans in order to
meet monthly expenses?

    A.  I can't say no a hundred percent, but it's very
rare where I received any of the proceeds -- if any it
was very nominal, if you look at the loan documents,
which I'm sure you have, where money came directly to
me.

    Q.  Prior to 2019 had you ever had a judgment entered
against you?

    A.  I don't believe so.

    Q.  So none of these loans that you have taken out
would have been used to satisfy a judgment, would they?

    A.  Not that I can recall, no.

    Q.  Did you incur any of these loans to purchase any
real property?

1     Q.   Do you recall the loan with South River Capital,

2   what the proceeds for that loan was used for?

3     A.   To pay off existing debt.

4     Q.   Was that debt associated with the purchase of any

5   real property?

6     A.   I don't believe so, no.

7     Q.   Do you know what that debt was associated with?

8     A.   To purchase or to -- pardon me, to pay off

9   existing debt.  I mean, it was a cycle of just taking

10  out new loans to pay off existing loans.

11         Sure Sports were the ones that were seeking these

12  loans out for me, they were the ones that sought out the

13  loan with you and Centennial Bank, and it was just a

14  vicious cycle of loan after loan that they were able to

15  get me into -- got me into.

16    Q.   No one forced you to enter into the loan with

17  Centennial Bank, did they?

18    A.   Nobody had a gun to my head, no.

19    Q.   And you entered into the loan with Centennial

20  bank volitionally?

21    A.   Pardon me?

22    Q.   You entered into the loan with Centennial Bank

23  volitionally; correct?

24         MR. FINESTONE:  Voluntarily?

25    A.   Yes.

1    A.  No.

2    Q.  No, you don't believe it was a consumer loan?

3    A.  That's correct.

4    Q.  Why do you believe it was not a consumer loan?

5    A.  Because it was going to pay off preexisting

6  business debt that I had.

7    Q.  What preexisting business debt did you have?

8    A.  Taking out other loans.

9    Q.  What business were those loans related to?

10   A.  Taking out other loans on top of other loans on

11  top of other loans to avoid late payments or get out of

12  late payments or high interest rates.  That was, I

13  believe, what I think on the closing statement you can

14  see the money was used to pay off a preexisting loan for

15  another entity.  It was nominal money or very little if

16  any went to me directly.

17   Q.  And so did any of the prior loans that you took

18  out to pay off other loans to pay off other loans, were

19  any of those loans actually associated with a business

20  purpose?

21       MR. FINESTONE:  Same objection.  It calls

22    for a legal conclusion.  You can answer to your

23    understanding.

24   A.  Sorry.  Can you repeat the question?

25   Q.  (By Mr. Ghekas)  Sure.  You said that you did not

1  A.  Correct.

2  Q.  Mr. Kane, are you familiar with an institution by

3  the name of Capital Financial Partners, LLC?

4  A.  No, it doesn't ring a bell.

5  Q.  I'll put up what we'll have marked as Exhibit 13.

6     (Plaintiff's Exhibit No. 13 was marked.)

7  Q.  Are you familiar with this document?

8  A.  I'm looking at it.  I'm not familiar with it, no.

9  Q.  Did you enter into a loan lending arrangement

10  with Capital Financial Partners, LLC?

11  A.  It looks like it.

12  Q.  But you don't recall other than looking at this

13  document?

14  A.  Correct.

15  Q.  Mr. Kane, is that your signature?

16  A.  Yes.

17  Q.  Do you recall the purpose of entering into this

18  lending agreement with Capital Financial Partners, LLC?

19  A.  I don't.

20  Q.  We'll go to page 23 of this document and we come

21  to a familiar style of document with the Sure Sports

22  letterhead on it.  Do you see that?

23  A.  Yep.  Yes.

24  Q.  Dated May 14, 2014?

25  A.  Yes.

1     Q.   Is that your signature on this document?

2     A.   Yes.

3     Q.   Okay.  And it looks as though other than the

4     $24,000 that you agreed to have disbursed to Sure Sports

5     Lending the remaining of the funds were to be wired to

6     your personal account.  Do you see that?

7     A.   Yes.  I'm sorry, what was the date on this?

8     Q.   May 14, 2014.

9     A.   Okay.  Yes.

10    Q.   Does that date ring any bells as to you -- are

11    you remembering taking out this loan?

12    A.   Yes.

13    Q.   Do you know what the purpose of this loan was

14    for?

15    A.   Yes, it was to help -- it was part of a down

16    payment on the West 35th home in Vancouver.

17    Q.   And what was the full down payment for the West

18    35th home?

19    A.   I believe it was roughly a million dollars.

20    Q.   And when did you purchase that home?

21    A.   Right around the date that the loan was taken

22    out.  I believe I secured the home in late April and

23    closed sometime in mid to late May, I believe.

24    Q.   May of 2014?

25    A.   Yes.

1    Q.   And was the West 35th home residential property?

2    A.   Yes.

3    Q.   Did you live there?

4    A.   No.

5    Q.   Did anybody live there?

6    A.   At times it was rented out, yes.

7    Q.   So what was your purpose in purchasing the West

8    35th home?

9    A.   We thought it was a good real estate investment.

10   Q.   When you say "we" who are you referring to?

11   A.   Because my mom, she was also on title of that

12   house.

13   Q.   Have you paid this loan back?

14   A.   Pardon me?

15   Q.   Have you paid this loan back?

16   A.   Which loan?

17   Q.   The loan you incurred from Capital Financial

18   Partners?

19   A.   Yes.

20   Q.   Do you have any records regarding your use of

21   those loan funds?

22   A.   No.

23   Q.   Now, this loan dated 2014, would this be the

24   first loan you've ever taken out?

25   A.   I don't recall.

1    Q.  And are you familiar with an institution by the

2  name of American Bank?

3    A.  It rings a bell.

4    Q.  I'll show you what we'll mark as Exhibit 14.

5        (Plaintiff's Exhibit No. 14 was marked.)

6    Q.  Are you familiar with this document?

7    A.  I'm not familiar with it but I've seen it.

8    Q.  Is this your signature?

9    A.  Yes.

10    Q.  So this is titled Memorandum of Settlement, and

11  it looks to be a closing statement with a date of June

12  20, 2014.  Do you agree with that?

13    A.  That's what it says.

14    Q.  And it has you identified as the borrower and

15  American Bank as the lender.  Do you see that?

16    A.  Yes.

17    Q.  So did you incur a million dollar loan from

18  American Bank?

19    A.  Yes.

20    Q.  Do you remember incurring that loan other than

21  looking at this document?

22    A.  No, other than by looking at the document.

23    Q.  Do you know what the purpose of this loan was

24  for?

25    A.  It looks like to pay off Capital Financial

REGENCY REPORTING SERVICE, INC. (813) 244-5296

1　Partners, LLC.

2　　Q.　Are you saying that because that's what it says

3　right here on the closing statement or memorandum

4　fulfillment?

5　　A.　Correct.

6　　Q.　And it also shows that out of the million dollars

7　$261,429.36 was to go to you as borrower.  Do you see

8　that?

9　　A.　Yes.

10　　Q.　Did you actually receive those funds?

11　　A.　It looks like it, yes.

12　　Q.　Do you recall what you utilized those funds for?

13　　A.　No.

14　　Q.　Do you have any records regarding any loan

15　proceeds that you received from American Bank?

16　　A.　Not that I'm aware of, no.

17　　Q.　Do you have any reason to dispute that you

18　entered into a lending arrangement with American Bank?

19　　A.　No.

20　　Q.　Mr. Kane, do you recall incurring any loan with

21　East West Bank?

22　　A.　Yes.

23　　Q.　I'm going to put up what we'll mark as Exhibit

24　15.

25　　　　　　(Plaintiff's Exhibit No. 15 was marked.)

1    Q.   Have you seen this document before?

2    A.   Yes.

3    Q.   So this document appears to be dated July 15th,

4    2015.  Do you see that?

5    A.   Yes.

6    Q.   Are those your initials on the bottom right-hand

7    corner?

8    A.   Yes.

9    Q.   And is that your signature?

10   A.   Yes.

11   Q.   Do you agree that you took out a $1,750,000 loan

12   with East West Bank on July 15th, 2015?

13   A.   Yes.

14   Q.   On page 30 of this document do you see this

15   Disbursement Request and Authorization form, Mr. Kane?

16   A.   Yes.

17   Q.   And is that your signature?

18   A.   Yes.

19   Q.   Mr. Kane, what address in 115 North Crescent

20   Street, Beverly Hills, California?

21   A.   It was an address I lived at.

22   Q.   Did you rent there?

23   A.   Yes.

24   Q.   At what point in time did you live at that

25   address?

```
 1    described as miscellaneous other expenses.  Do you see
 2    that?
 3        A.  Yeah, it's an estimate.
 4        Q.  Do you recall what those expenses were?
 5        A.  I do not.
 6        Q.  Was that money that you actually received?
 7        A.  I'm not sure.
 8        Q.  Do you have any recollection as to what you
 9    utilized those loan proceeds for?
10        A.  I do not, no.
11        Q.  Would you have any records pertaining to your use
12    of these specific loan proceeds that you received from
13    East West Bank?
14        A.  I do not, no.
15        Q.  I'll put up what we will have marked as Exhibit
16    16.
17            (Plaintiff's Exhibit No. 16 was marked.)
18        Q.  And this is how it was produced to us, but I see
19    right here there's a To Jim Plack.  Do you see that?
20        A.  Yeah.
21        Q.  Who again was Jim Plack?
22        A.  To my knowledge he was the head of a couple of
23    these entities or at least one of these entities that I
24    borrowed from.
25        Q.  And if we scroll down to page 4 are you familiar
```

1  with this document?

2      A.  Not familiar, no.

3      Q.  Have you seen it before?

4      A.  I assume but it doesn't ring a bell.

5      Q.  Are you familiar with the entity known as

6  Tenacity 7401 New Hampshire, LLC?

7      A.  I am not, no.

8      Q.  Do you recall entering into a loan agreement with

9  Tenacity 7401 New Hampshire, LLC on August 28, 2015?

10     A.  I don't, no, but I can see I did.

11     Q.  Do you have any reason to dispute that?

12     A.  No.

13     Q.  And is that your signature?

14     A.  Yes.

15     Q.  If we go back to page 4, terms of the loan, it

16 looks as though Tenacity 7401 agreed to lend you

17 $500,000?

18     A.  Yes, I see that.

19     Q.  Do you recall actually receiving these funds from

20 Tenacity 7401?

21     A.  I don't recall, no.

22     Q.  Do you know what the purpose of this loan was?

23     A.  I don't recall what the purpose of the loan was.

24 I'd be guessing.

25     Q.  If we go to page 25 of this document, memo of

1    settlement, do you see this page?

2        A.    Yes.

3        Q.    Is that your signature at the bottom?

4        A.    Yes.

5        Q.    And it looks as though out of the $500,000 in

6    loan proceeds you were to receive $450,948.50.  Is that

7    accurate?

8        A.    That's what it says, yes.

9        Q.    Do you have any reason to dispute that?

10       A.    No.

11       Q.    Do you know what you used the $450,948.50 in loan

12   proceeds for?

13       A.    I don't recall.

14       Q.    Would you have any documents relating to your use

15   of those loan proceeds?

16       A.    No.

17       Q.    If we go to page 30 of this document again we see

18   a similar letter or document on Sure Sports letterhead,

19   and is that your signature there, Mr. Kane?

20       A.    Yes.

21       Q.    And it looks as though you are authorizing

22   Tenacity 7401 to disburse the loan proceeds into your --

23   what's labeled here as RBC USA.  Do you see that?

24       A.    Yes.

25       Q.    What account is RBC USA?

1   Tenacity.

2       Q.   And was the Tenacity loan used to purchase any

3   real estate?

4       A.   As I said I don't recall what that was for.

5       Q.   Do you believe you purchased any real estate in

6   2015?

7       A.   Probably not, no.

8       Q.   I'll show you what we'll mark as Exhibit 18.

9           (Plaintiff's Exhibit No. 18 was marked.)

10      Q.   Are you familiar with this document, Mr. Kane?

11      A.   No, I'm not familiar with it.

12      Q.   Do you recall entering into a Secure Financial

13  Transaction Agreement with Thrivest Specialty Funding,

14  LLC for the amount of $3,300,000?

15      A.   Yeah, I entered into that agreement.

16      Q.   If you look on page 2 of this document is that

17  your initial at the bottom right-hand corner?

18      A.   Yes.

19      Q.   It's a disclosure statement and it appears that

20  out of the $3,300,000 you receiving from Thrivest

21  Specialty Funding $2,082,551.30 was to pay off East West

22  Bank.  Do you see that?

23      A.   Yes.

24      Q.   And in addition to that $931,549 in net proceeds

25  were to be disbursed to you.  Do you see that?

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 264 of 455

1    A.  Yes.

2    Q.  Is that your signature right there -- sorry, are

3  those your initials right there?

4    A.  Yes.

5    Q.  Is that your signature, Mr. Kane?

6    A.  Yes.

7    Q.  Okay.  Then if we go to page 18 of this document

8  again we have a document on Sure Sports letterhead dated

9  January 23rd, 2016.  Are those your initials at the

10  bottom, Mr. Kane?

11    A.  Yes.

12    Q.  And is that your signature?

13    A.  Yes.

14    Q.  And do you recall receiving the net proceeds of

15  approximately $900,000 in relation to this loan?

16    A.  I don't necessarily recall it; I'm not denying

17  it.

18    Q.  Do you recall what you used those loan proceeds

19  for?

20    A.  I don't recall exactly what they were used for,

21  no.

22    Q.  Would you have any records regarding your use of

23  those loan proceeds?

24    A.  Not to my knowledge.

25    Q.  We'll put up what we'll have marked as Exhibit

1  Q.  That was going to be one of my questions, why did

2  you incur a loan to pay off a loan that you had just

3  taken out?

4  A.  That's, yeah, the question that I'm asking myself

5  today.

6  Q.  And it appears just by looking at this document

7  -- and just quickly are those your initials?

8  A.  Yes.

9  Q.  And is that your signature?

10  A.  Yes.

11  Q.  And other than -- it looks as though out of the

12  $200,000 loan you were to receive from SCL-D, LLC

13  $50,500 was to pay off the Now Playing loan that you had

14  just taken out the day before; is that correct?

15  A.  Yes.

16  Q.  So $500 of interest in one day it appears, but

17  they had two other payments to Sure Sports Lending;

18  correct?

19  A.  Correct.

20  Q.  And then the bulk of the $200,000 loan was to be

21  disbursed to your RBC Royal Bank account; is that

22  accurate?

23  A.  Yes.

24  Q.  Did you actually receive those funds?

25  A.  It says I did, so I believe so, yeah.

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 266 of 455

1    Q.  Do you have any reason to dispute that you

2  didn't?

3    A.  No.

4    Q.  Do you recall what you utilized the loan funds

5  for?

6    A.  I do not.

7    Q.  Do you recall why you needed a loan of this size

8  at this time?

9    A.  I don't recall, no.

10    Q.  So would you have any record regarding your use

11  of these loan proceeds?

12    A.  No.

13    Q.  Let's go to page 26 of this document, it's

14  another document entitled Business Entity Affidavit.  Do

15  you see that?

16    A.  Yes.

17    Q.  And is that your signature at the bottom?

18    A.  Yes.

19    Q.  And this again says that I hereby certify that

20  I'm engaged in the following type of business,

21  professional hockey player is listed; correct?

22    A.  I see that.

23    Q.  And I hereby further certify that the proceeds of

24  this credit will be used for the following business

25  purpose and no other, and off season training expenses,

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 267 of 455

```
 1    A.  Absolutely it does.

 2          MR. FINESTONE:  Have you ever watched a

 3    game?

 4    A.  I always think of it more as conditioning.

 5    Q.  I'll pull up what we'll mark as Exhibit 21.

 6          (Plaintiff's Exhibit No. 21 was marked.)

 7    Q.  Can you see this document, Mr. Kane?

 8    A.  Yes.

 9    Q.  Do you recall it at all?

10    A.  No.

11    Q.  Is that your signature?

12    A.  Yes.

13    Q.  This is dated October 6, 2016.  Do you see that?

14    A.  Yes.

15    Q.  And if we look at paragraph 4 of this document

16    entitled Affidavit, paragraph 4 states or provides that

17    you entered into a loan with DeAngelo Vehicle Services,

18    LLC in the principal amount of $4,150,000; is that

19    accurate?

20    A.  Yes.

21    Q.  Do you recall that you entered into that loan?

22    A.  Yes.

23    Q.  Do you recall what the purpose of that loan was

24    for?

25    A.  I believe it was to pay off a big chunk of debt
```

1   based on the number I'm looking at -- other loans,

2   pardon me, that I acquired meaning debt, yeah.

3       Q.  Page 10 of this document has a loan and security

4   agreement that appears to be the loan and security

5   agreement as between you and DeAngelo Vehicle Sales, LLC

6   dated October 6, 2016 in the amount of $4,150,000; is

7   that accurate?

8       A.  Yes.

9       Q.  And is that your signature?

10      A.  Yes.

11      Q.  Do you know who Paul DeAngelo is?

12      A.  No, I don't.

13      Q.  You had never met him before prior to entering

14  into this loan?

15      A.  No.

16      Q.  What address is 35 Ojibwa Circle?

17      A.  That was the address I lived at when I played for

18  Buffalo.

19      Q.  As we're going to continue on, the document

20  attached to the loan and security agreement that we just

21  looked at there are two exhibits, Exhibit A is

22  identified as Loan Proceeds Distribution Schedule.  Do

23  you see that?

24      A.  Yes.

25      Q.  And if we were to go to that Exhibit A, to page

1   22 of this document, it appears that out of the

2   $4,150,000 in gross loan proceeds you were to receive

3   $3,300,000 was to be used to pay off TSF Loan.  Do you

4   see that?

5       A.  Yes.

6       Q.  Do you know what that refers to?

7       A.  I don't know what that stands for.

8       Q.  Would that be Thrivest Specialty Funding maybe?

9       A.  That sounds correct.

10      Q.  And in addition to the $3,300,000, $207,500 was

11  to pay off SCL Loan.  Do you see that?

12      A.  Yes.

13      Q.  And do you know what SCL Loan refers to?

14      A.  No, but I'm sure you're going to tell me.

15      Q.  Actually that one I don't know.

16      A.  Neither do I.

17      Q.  And then at the bottom, net to the borrower is

18  $242,471.  Do you see that?

19      A.  Yes.

20      Q.  Did you actually receive those funds?

21      A.  I believe so.

22      Q.  Do you know what account those funds were

23  disbursed into?

24      A.  I do not recall, no.

25      Q.  Do you recall what you utilized those funds for?

1    A.  What was the date on this, October?

2    Q.  October 2016.

3    A.  I don't recall, no.

4    Q.  So would you have any records of your use of

5    those funds?

6    A.  No.

7    Q.  Would you have any records that would confirm

8    that the $3,300,000 went to pay off the TSF loan?

9    A.  Not that I'm aware of, no.

10   Q.  Similarly would you have any records that would

11   confirm that $207,500 went to pay off the SCL loan?

12   A.  Not that I'm aware of.

13   Q.  And would SCL perhaps be referring to that SCL-D,

14   LLC loan?

15   A.  That could make a lot of sense, yeah.

16   Q.  Let's go to page 39 of this document, it's

17   another document on Sure Sports letterhead and it's

18   dated October 6, 2016.  Are those your initials at the

19   bottom right-hand corner?

20   A.  Yes.

21   Q.  And is that your signature?

22   A.  Yes.

23   Q.  So it looks like you might have been correct

24   here, Thrivest Specialty Funding is identified as

25   receiving -- as to receive $3,300,000.  Do you see that?

1    A.  Yes.

2    Q.  Then SCL-D, LLC is to receive $207,500.  Do you

3  see that?

4    A.  Yes.

5    Q.  And then it looks as though any remaining funds

6  would have gone to your RBC Royal Bank account ending in

7  0046.  Do you see that?

8    A.  Yes.

9    Q.  Do you have any records from your bank account at

10  RBC Royal Bank ending in 0046?

11    A.  I don't recognize that, no.

12    Q.  You don't recognize that account?

13    A.  In terms from that account, no, I wouldn't have

14  any records today.

15    Q.  Just to clarify, when you say you don't recognize

16  that account, what do you mean by that?

17    A.  Meaning I don't remember my account number --

18    Q.  Okay.

19    A.  -- of the bank, so I don't -- when you read off

20  the 0046 I just don't recognize those numbers, but I'm

21  sure that was my account.

22    Q.  Okay.  Mr. Kane, I'll show you what we'll have

23  marked as Exhibit 22.

24        (Plaintiff's Exhibit No. 22 was marked.)

25    Q.  Do you see this document?

```
1      A.  Yes.

2      Q.  And are those your initials on the bottom

3   right-hand corner?

4      A.  Yes.

5      Q.  And is that your signature?

6      A.  Yes.

7      Q.  This is dated December 23, 2016.  Do you see

8   that?  Do you see that?

9      A.  Yes.

10     Q.  Oh, I'm sorry, I didn't hear you.  This looks to

11  be a similar affidavit as the one we had just looked at,

12  and again in paragraph 4 of this affidavit it appears

13  that you're entering into a second loan of $580,000 with

14  the same DeAngelo Vehicle Sales, LLC.  Do you see that?

15     A.  Yes.

16     Q.  Do you know what the need was for this extra

17  $580,000?

18     A.  I don't recall at this time.

19     Q.  Go to page 3 again.  This is another document

20  with Sure Sports letterhead on it that we've seen now

21  with almost every loan, dated December 23, 2016.  Are

22  those your initials at the bottom?

23     A.  Yes.

24     Q.  And is that your signature?

25     A.  Yes.
```

1    Q.  It appears just looking at this document out of

2  the $580,000 you were to receive from DeAngelo Vehicle

3  Sales in association with this loan approximately

4  $27,000, and $28,000 of the $580,000 was to go to these

5  three entities.  Do you see that?

6    A.  Yes.

7    Q.  And so the remaining funds were to be wired to

8  your account listed below which is identified as your

9  0532 account at RBC Wealth Management.  Do you see that?

10   A.  Yes.

11   Q.  So did you actually receive these funds?

12   A.  Yes.

13   Q.  And what's the reason -- strike that.  Is there a

14  reason why you changed -- previously we've been looking

15  at these prior loans and any net proceeds were going to

16  a different RBC account, sometimes it was RBC USA and

17  other times it was the 0046 account.  Was there a reason

18  for the change to the 0532 account?

19   A.  I don't -- there wasn't any particular reason, I

20  believe.  Sitting here today I can't speak why it was

21  changed or why I decided to send it to -- have it sent

22  to that specific account.  Nothing jumps out at me in

23  terms of a reasoning.

24   Q.  Let me go to page 23 of this document -- well,

25  first page 22, is this your signature?

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 274 of 455

 1    A.   Yes.

 2    Q.   And again we see the signature of Paul DeAngelo.

 3  Do you see that?

 4    A.   Yes.

 5    Q.   And it's a similar document identifying two

 6  exhibits to the loan and security agreement, and if you

 7  look at Exhibit A Loan Proceeds Distribution Schedule,

 8  it looks as though you were to receive $505,912.53.  Do

 9  you see that?

10    A.   Yes.

11    Q.   Is there any reason to dispute that?

12    A.   No.

13    Q.   Do you recall what you utilized those funds for?

14    A.   I don't.

15    Q.   Would you have any records regarding the use of

16  those funds?

17    A.   No.

18    Q.   Let's go to what we'll mark as Exhibit 23.

19         (Plaintiff's Exhibit No. 23 was marked.)

20         MR. FINESTONE:  Counsel, after this exhibit

21     can we take ourselves a lunch break?  It's just

22     hitting noon here on the west coast.

23         MR. GHEKAS:  Yes, that's fine.  This

24     exhibit shouldn't take too long.

25         MR. FINESTONE:  Thanks.

1    Q.  (By Mr. Ghekas)  Mr. Kane, do you recognize this
2    document?
3    A.  I do not, no.
4    Q.  And this is titled a Secured Financial
5    Transaction and Security Agreement No. 2.  Did I read
6    that correctly?
7    A.  Yes.
8    Q.  And if we read the first whereas it appears to be
9    a secured financial transaction and security agreement
10   as between yourself and Thrivest Specialty Funding, LLC.
11   Do you see that?
12   A.  Yes.
13   Q.  And the second whereas relates to a loan Thrivest
14   has agreed to lend to you in the amount of $1,975,000.
15   Do you see that?
16   A.  Yes.
17   Q.  Do you dispute taking out this loan?
18   A.  No.
19   Q.  Let's go to page 11, is that your signature?
20   A.  Yes.
21   Q.  Do you see the date of March 3rd, 2017?
22   A.  Yes.
23   Q.  Go back up to page 2 of this document titled
24   Disclosure Statement.  Do you see that?
25   A.  Yes.

1    Q.  And are those your initials at the bottom?

2    A.  Yes.

3    Q.  And it looks as though from the $1,975,000 you

4    would receive from this loan $1,562,800 was to be used

5    as an estimated personal payoff.  Do you see that?

6    A.  Yes.

7    Q.  And it directs us to Exhibit D for the breakdown.

8    Do you see that?

9    A.  Yes.

10   Q.  We're going to go to Exhibit D of this agreement

11   titled Outstanding Debt; correct?

12   A.  Yes.

13   Q.  And if we look here it shows that out of the

14   $1,975,000 you were to receive from this loan with

15   Thrivest Specialty Funding $574,200 was to be used to

16   pay off DeAngelo Vehicle Sales, LLC; correct?

17   A.  Correct.

18   Q.  And then $100,000 was used to pay off a casino

19   debt.  Do you see that?

20   A.  Yes.

21   Q.  Do you know what casino that was?

22   A.  I'm not sure.

23   Q.  Do you know what date you incurred that date or

24   dates?

25   A.  I do not, no.

1    Q.  Do you have any records to support this casino

2  debt?

3    A.  I don't have any records of it, no.

4    Q.  In addition to the pay off to DeAngelo Vehicle

5  Sales and the pay off of the casino debt $748,600 was to

6  be used to pay off a personal loan.  Do you see that?

7    A.  Yes.

8    Q.  Do you know what personal loan this is referring

9  to?

10   A.  I think there were a few people that had loaned

11  me money over the years and I was paying them back.  It

12  wasn't just one specific person.

13   Q.  Are you able to identify those people?

14   A.  No.

15   Q.  So they were loaning you money over the years,

16  for what purpose were they loaning you money?

17   A.  I don't recall.  I don't recall.

18   Q.  Then in addition to those three it's identified

19  that $140,000 was to pay off to Vinny.  Do you see that?

20   A.  Yes.

21   Q.  And who is Vinny?

22   A.  He's a bookie, but that's not like his real name,

23  it's just a name that was used.

24   Q.  Oh, Vinny is not his real name?

25   A.  I don't believe so.

1    Q.  Is that a name you used to identify him or --

2    A.  It was a name I was given to use to identify him.

3    Q.  So would you have any records to support whatever

4    was owed to Vinny?

5    A.  No.

6    Q.  And are those your initials down there in the

7    right-hand corner?

8    A.  Yes.

9    Q.  If we go to the next page, a document again with

10   Sure Sports letterhead dated March 3rd, 2017, are those

11   your initials in the bottom right-hand?

12   A.  Yes.

13   Q.  And are those your initials in the bottom

14   right-hand of the second page?

15   A.  Yes.

16   Q.  And is that your signature?

17   A.  Yes.

18   Q.  So here the $100,000 casino debt appears to be

19   going to Seneca Gaming Corporation.  Do you see that?

20   A.  Yes.

21   Q.  Do you know what casino that relates to?

22   A.  I think it's the one in Niagra Falls now that I'm

23   seeing it.

24   Q.  Do you know which one that is?

25   A.  I think there's only one on the other side.

REGENCY REPORTING SERVICE, INC. (813) 244-5296

1     Q.  And then again we see $574,200 was to be

2  disbursed to DeAngelo Vehicle Sales, LLC.  Do you see

3  that?

4     A.  Yes.

5     Q.  And I don't see any disbursements to be directed

6  to Vinny; correct?

7     A.  Correct.

8     Q.  So did you receive all of the remaining funds

9  including those that were identified as going to Vinny

10  and to pay a personal loan?

11     A.  I'm not a hundred percent, but I would assume.

12     Q.  And did you in fact use that money to pay off

13  Vinny and to pay off the other personal loan?

14     A.  Yes.

15     Q.  Do you have any records to support that?

16     A.  No other records other than what I've provided.

17     Q.  Do you know what documents you provided to

18  support paying off Vinny or these other personal loans?

19     A.  I don't have reference to support paying off any,

20  but just all the documents that I have that pertain to

21  any of this I've provided.  Vinny, I would have paid him

22  in cash, so --

23          MR. GHEKAS:  Well, we are done with that

24      document, so I guess we'll take a lunch break here.

25      How much time do you think you need?

```
 1            MR. FINESTONE:  Let's just say until 1:00
 2     if that's okay.
 3            (There was a break in the proceedings.)
 4     Q.  (By Mr. Ghekas)  I'm going to share with you what
 5  we'll mark as Exhibit 24.
 6            (Plaintiff's Exhibit No. 24 was marked.)
 7     Q.  And have you seen this document, Mr. Kane?
 8     A.  Yes.
 9     Q.  Are you familiar with this document at all?
10     A.  No.
11     Q.  So this is titled Secured Financial Transaction
12  and Security Agreement No. 3, and if you look at the
13  whereas clause it reflects an agreement as to between
14  you and Thrivest Specialty Funding, LLC.  Do you see
15  that?
16     A.  Yes.
17     Q.  And it's dated April 6, 201.  Do you see that?
18     A.  Yes.
19     Q.  And the second whereas clause, this relates to an
20  agreement for Thrivest Specialty Funding to lend you
21  $1,225,000; correct?
22     A.  Yes.
23     Q.  And are those your initials on page 1?
24     A.  Yes.
25     Q.  And if we go to page 2 there's a disclosure
```

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 281 of 455

1    statement identified here.  Are these your initials on

2    the bottom of this page?

3        A.  Yes.

4        Q.  All right.  In the disclosure statement we see

5    identified that out of the $1,225,000 in the gross loan

6    amount $449,913.60 is identified as to the estimated

7    payoff -- personal payoff.  Do you see that?

8        A.  Yes.

9        Q.  And it directs us to Exhibit D for further

10   breakdown, and in addition it shows that $610,830.40 in

11   net is to be disbursed to you; correct?

12       A.  Yes.

13       Q.  So did you actually receive the $610,830.40?

14       A.  No reason to believe I didn't.

15       Q.  Do you recall what you utilized these loan

16   proceeds for?

17       A.  I don't to the best of my knowledge, no.

18       Q.  Do you have any records to support your use of

19   these loan proceeds?

20       A.  No, other than, you know, they'd be in the bank

21   statements, but that I don't have access to right now,

22   so those would be the records, but I don't have any.

23       Q.  If we go to Exhibit D for the breakdown on page

24   18, again it's titled Outstanding Debt, and it looks as

25   though $150,000 is to pay off U.S. credit cards.  Do you

1   into your account at East West Bank.  Do you see that?

2     A.  Yes.

3     Q.  Were there any remaining funds that were wired to

4   your account?

5     A.  Again, I'm not sure because I never had access to

6   that account or saw a statement or account balance, so I

7   guess if you did the numbers and out of the total versus

8   the two million there might be some.

9     Q.  Did you ever ask anybody at East West Bank for

10   access to the account?

11     A.  No.  I asked my business manager Tony a couple of

12   times like how it all worked, and he said that --

13   because he was signed on the account, he would move

14   money in and out of that account.  I never really got a

15   straight answer, I guess.

16     Q.  Do you know what he would be moving money in and

17   out of that account for?

18     A.  He was using -- there was like -- I feel there

19   were some payments like monthly payments he was using

20   like they would go to East West and they would pay out

21   of that account.  I'm not a hundred percent sure again

22   because I had zero control over it, so I don't know.

23     Q.  Let me bring up what we'll mark as Exhibit 26.

24        (Plaintiff's Exhibit No. 26 was marked.)

25     Q.  Do you see this document, Mr. Kane?

1    A.   Yes.

2    Q.   This is identified as a promissory note as

3  between yourself and Seven Isles Capital, LLC as lender.

4  Do you see that?

5    A.   Yes.

6    Q.   And it's dated July 5th, 2017?

7    A.   Yes.

8    Q.   And it's in the amount of $3,550,000?

9    A.   Yes.

10    Q.   Do you have any reason to dispute that number?

11    A.   No.

12    Q.   And this is your signature?

13    A.   Yes.

14    Q.   And Paul DeAngelo, is this an entity that he

15  owns?

16    A.   It looks like it.

17    Q.   Did you know that Seven Isles Capital, LLC was

18  owned by the same person as DeAngelo Vehicle Sales, LLC?

19    A.   I did not know.  I had no relationship with any

20  of these lenders or personal conversations outside of

21  Jim Plack maybe once or twice.

22    Q.   Do you know what your purpose of this loan was,

23  in taking out this loan was?

24    A.   I believe it was to repay existing loans.

25    Q.   Let's go to page 29 of this document, Exhibit to

1  Loan and Security Agreement, Exhibit A identifies the

2  Loan Proceeds Distribution Schedule.  Go to Exhibit A,

3  do you see this page?

4      A.  Yes.

5      Q.  Are those your initials at the bottom?

6      A.  Yes.

7      Q.  So we see here that as to Exhibit A -- it's a

8  little hard to make out, but out of the loan proceeds

9  you were to receive of this $3,550,000 loan $2,534,638

10 was to pay DVS loan -- or retire DVS loan.  Do you see

11 that?

12     A.  Yes.

13     Q.  Would that be referring to the DeAngelo Vehicle

14 Sales loan?

15     A.  I would assume, yes.

16     Q.  Did that actually occur?

17     A.  I believe so to the best of my knowledge, yes.

18     Q.  Go to page 34 of this document.  Do you see that

19 document dated July 5th, 2017, are these your initials

20 at the bottom?

21     A.  Yes.

22     Q.  And is that your signature?

23     A.  Yes.

24     Q.  It looks as though outside of the payment to

25 DeAngelo Vehicle Sales, LLC there was an additional

REGENCY REPORTING SERVICE, INC. (813) 244-5296

1   $40,000 that was to go to Hanleigh Management, Inc.

2   Premium Trust; correct?

3       A.   That's what it says, yeah.

4       Q.   Do you know what that entity is?

5       A.   I've never seen that entity, but I definitely

6   don't recall it, no.

7       Q.   Then other than the $115,375 to Sure Sports the

8   remainder of any loan proceeds were to be wired into

9   your RBC Wealth Management account ending in 0532?

10      A.   Yes.

11      Q.   Did you in fact receive funds into this account

12  associated with this loan?

13      A.   I believe so, if there were -- whatever the

14  remaining funds would have been.

15      Q.   Do you know what you would have utilized those

16  loan proceeds for?

17      A.   I don't.  I don't even know what the number would

18  have been.

19      Q.   Do you have any records showing that any of these

20  loan proceeds were deposited into your account ending in

21  0532 at RBC?

22      A.   I mean, obviously I'd have statements through

23  your bank account, but that's the only way I would have

24  documented -- or they would have been documented.

25      Q.   You wouldn't have documented your receipt of

REGENCY REPORTING SERVICE, INC. (813) 244-5296

1  these funds in a personal ledger that you received or

2  just handwritten notes?

3      A.  No.

4      Q.  And when I said in a personal ledger you would

5  have received I meant a personal ledger you would have

6  created yourself.  Sorry.

7      A.  No.  Yeah, I understood.  No.

8      Q.  Let's go to what we'll mark as Exhibit 27.

9          (Plaintiff's Exhibit No. 27 was marked.)

10     Q.  Do you see this document, Mr. Kane?

11     A.  Yes.

12     Q.  This is a document dated July 5th, 2017.  It

13  appears to be related to a $3,000,000 loan as between

14  yourself and Thrivest Specialty Funding, LLC.  Do you

15  see that?

16     A.  Yes.

17     Q.  And are those your initials at the bottom?

18     A.  Yes.

19     Q.  And is that your signature?

20     A.  Yes.

21     Q.  And it looks as though out of the $3,000,000

22  associated with this loan $1,955,250 was to pay off

23  Thrivest Specialty Funding, LLC.  Do you see that?

24     A.  Yes.

25     Q.  And then there's another $104,427 that's directed

1  to Now Playing, LLC.  Do you see that?

2      A.  Yes.

3      Q.  We previously saw that you did incur a $50,000

4  loan from Now Playing.  Do you recall incurring a second

5  loan from Now Playing, LLC?

6      A.  I do not, no.

7      Q.  Do you know what that loan would have been for,

8  and by this loan I mean the loan that's represented here

9  as between you and Now Playing, LLC?

10     A.  I do not.

11     Q.  In addition to these other payments to these

12  third party it looks like the balance of the $3,000,000

13  loan was to be deposited in your RBC Wealth Management

14  account ending in 0532; correct?

15     A.  Yes, that's what it says.

16     Q.  Did you in fact receive any funds deposited into

17  your RBC account from this loan?

18     A.  I mean, that's what it says.  I don't -- I can't

19  recall, but I assume I did.

20     Q.  Do you have any reason to dispute that?

21     A.  No.

22     Q.  Do you have any documents that would show whether

23  or not you received any funds related to this loan?

24     A.  I don't have any documents other than bank

25  statements that everybody would have.

1    Q.  Do you know what you utilized those loan proceeds

2  for?

3    A.  I don't recall again because I didn't have any

4  idea how much there would have been to say specifically,

5  so I'm not sure.

6    Q.  If we go to page 3 it's similar to some of the

7  other agreements we've seen with Thrivest Specialty

8  Funding, this one is titled Secured Financial

9  Transaction and Security Agreement No. 4.  Do you see

10  that?

11    A.  Yes.

12    Q.  And is that your signature?

13    A.  Yes.

14    Q.  Go back up to page 4, which is the second page of

15  the Secured Financial Transaction Security Agreement No.

16  4, and we see the disclosure statement, and it

17  identifies that out of the $3,000,000 loan amount

18  $2,059,677 was to pay off outstanding debt.  Do you see

19  that?

20    A.  Yes.

21    Q.  And Exhibit D for a further breakdown, but in

22  addition to that $300,655 would have been disbursed to

23  you as the borrower; correct?

24    A.  Yes, I see that.

25    Q.  Let's go to Exhibit D quickly and we get to the

what's titled Outstanding Debt, and this shows that out

of that amount $1,955,250 was to pay off prior agreement

No. 2 with Thrivest Specialty Funding.  Do you see that?

A.  Yes.

Q.  And $104,427 was to pay off the Now Playing loan.

Do you see that?

A.  Yes.

Q.  Let's go to what we'll mark as Exhibit 28.

(Plaintiff's Exhibit No. 28 was marked.)

Q.  Do you recognize this document, Mr. Kane?

A.  I see it now, the past four times I'm recognizing

it, yes.

Q.  This is titled Secured Financial Transaction and

Security Agreement #5; correct?

A.  Yes.

Q.  And the first whereas clause represents that this

is an agreement as between you and Thrivest Specialty

Funding, LLC; correct?

A.  Yes.

Q.  It's dated September 28, 2017?

A.  Yes.

Q.  And the second whereas clause, Thrivest Specialty

Funding has agreed to loan you as borrower the sum of

$4,850,000?

A.  Yes.

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 290 of 455

1    Q.  And is that your signature at the bottom of the

2  page?

3    A.  Initial, yes.

4    Q.  Sorry, initials.  I apologize.  Thank you.

5        On page 2 is the disclosure statement, and it

6  appears that out of the $4,850,000 loan funds $3,200,000

7  were to pay off outstanding debt.  Do you see that?

8    A.  Yes.

9    Q.  And then $721,807.89 was to go to you.  Do you

10  see that?

11    A.  Yes.

12    Q.  Did you in fact receive those loan funds?

13    A.  It says I did.

14    Q.  Do you have any reason to dispute that?

15    A.  No.

16    Q.  Do you know what you utilized those loan funds

17  for?

18    A.  What was the date again?  September?

19    Q.  September 28, 2017.

20    A.  I can't recall, no.

21    Q.  Do you have any records of your use of these

22  funds?

23    A.  Bank statements.  I don't have any personal

24  records, no.

25    Q.  When you say you have bank statements that you've

1  provided do you believe that you've provided bank

2  statements for 2017?

3      A.  I don't know if I have access to those now, just

4  what -- everything I provided, that's what I had.

5      Q.  And you said you have no other -- other than the

6  bank statements that you have access to, you have no

7  other records to support your use of these funds?

8      A.  Correct.

9      Q.  Go to page 11, is that your signature?

10     A.  Yes.

11     Q.  If we go to Exhibit D the disclosure statement

12 directed us to titled Outstanding Debt it looks as

13 though $2,700,000 of this loan was to pay off the prior

14 agreement No. 4 with Thrivest Specialty Funding, LLC.

15 Do you see that?

16     A.  Yes.

17     Q.  And then $500,000 was to pay off the

18 Cosmopolitan.  Do you see that?

19     A.  Yes.

20     Q.  Was the $500,000 for Cosmopolitan associated with

21 gambling?

22     A.  Yes.

23     Q.  Do you know when you would have incurred that

24 debt?

25     A.  Probably the summer.

1      Q.   Would you have any records regarding this
2  specific debt, the $500,00 to the Cosmopolitan?
3      A.   No.  No specific records.
4      Q.   Is that your initial at the bottom of the page?
5      A.   Yes.
6      Q.   If we go to this document dated October 2, 2017
7  are these your initials at the bottom?
8      A.   Yes.
9      Q.   And are these your initials at the bottom of page
10  2 of this document?
11      A.   Yes.
12      Q.   And is this your signature?
13      A.   Yes.
14      Q.   And here, are these your initials?
15      A.   Yes.
16      Q.   And so did you direct $721,807.89 to be disbursed
17  in your account ending in 0532 at RBC Wealth Management?
18      A.   Yes.
19      Q.   We'll go to what we'll mark as Exhibit 29.
20           (Plaintiff's Exhibit No. 29 was marked.)
21      Q.   Do you recognize this document, Mr. Kane?
22      A.   Yes.
23      Q.   This is titled Limited Liability Company
24  Authority Certificate and Agreement.  Do you see that?
25      A.   Yes.

1    Q.   Are those your initials at the bottom?

2    A.   Yes.

3    Q.   So this is a document related to Kane Financial,

4  LLC.  Do you see that?

5    A.   Yes.

6    Q.   This is the entity that you indicated you had no

7  knowledge of until recently?

8    A.   Correct.

9    Q.   And paragraph one, sole member, says the

10  undersigned is the sole member of the company.  Do you

11  see that?

12    A.   Yes.

13    Q.   And if we scroll down is that your signature?

14    A.   Yes.

15    Q.   It's dated December 18, 2017?

16    A.   Yes.

17    Q.   So it looks as though Kane Financial, LLC entered

18  into a $1,250,000 loan with Democracy Capital

19  Corporation?

20    A.   Yes.

21    Q.   And you guaranteed that debt?

22    A.   That's what it says, yeah.

23    Q.   If we go to page 31 of the document, it's not

24  titled but is that your signature at the bottom?

25    A.   Yes.

1    Q.  This relates to the $1,250,000 that Kane

2    Financial, LLC received from Democracy Capital

3    Corporation; correct?

4    A.  Yes.

5              MR. FINESTONE:  I'm just going to stop you

6         for a second, counsel, to object.  The question

7         assumes Kane Financial -- he actually received any

8         funds.  That's who the loan documents were made out

9         to, but I don't think we can go past that

10        assumption.

11   Q.  (By Mr. Ghekas)  Mr. Kane, do you dispute in any

12   way whether or not Kane Financial, LLC entered into a

13   lending arrangement with Democracy Capital Corporation?

14   A.  I don't dispute that.  That's what the paperwork

15   states.  No.

16   Q.  And do you see this document, Mr. Kane --

17   A.  Yes.

18   Q.  -- titled Loan and Security Agreement; correct?

19   A.  Yes.

20   Q.  This is actually between you as guarantor,

21   Evander F. Kane, and Democracy Capital Corporation;

22   correct?

23   A.  Yes.

24   Q.  Is that your signature as guarantor?

25   A.  Yes.

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 295 of 455

1    Q.  If we go back to this document with your

2  signature, out of the $1,250,000 that was to be lent

3  from Democracy Capital Corporation it appears as though

4  $895,261.75 was to go to Playing.  Do you see that?

5    A.  Yes.

6    Q.  Do you know what that refers to?

7    A.  No idea.  Maybe Now Playing, but I don't know.

8    Q.  On page 41 of this document dated December 18,

9  2017 are those your initials at the bottom, Mr. Kane?

10   A.  Yes.

11   Q.  And is that your signature on page 2?

12   A.  Yes.

13   Q.  It looks as though on this document out of the

14  $1,250,000 that Democracy Capital Corporation was

15  agreeing to lend to Kane Financial, LLC $659,775 was to

16  be directed to an East West Bank account number in your

17  name ending in 4455.  Do you see that?

18   A.  Yes.

19   Q.  And another $235,486.75 was to be disbursed into

20  an account you held at East West Bank ending in 5783.

21  Do you see that?

22   A.  Yes.

23   Q.  Do you know what you utilized those loan funds

24  for?

25   A.  I didn't utilize those loan funds.  I don't know

1  what I utilized the loan funds for because I, again, had

2  no access to those accounts.

3      Q.  So you don't have access to either one of these

4  East West Bank accounts?

5      A.  Correct.  Never saw them.  Never used them

6  personally.

7      Q.  So you don't have any -- you don't have any

8  records regarding either one of these accounts?

9      A.  No, I do not.

10     Q.  Let me pull up what we're going to mark as

11  Exhibit 30.

12          (Plaintiff's Exhibit No. 30 was marked.)

13     Q.  Do you see this document, Mr. Kane?

14     A.  Yes.

15     Q.  This is titled Business Entity Affidavit.  Is

16  that your signature right here?

17     A.  Yes.

18     Q.  It's dated March 22, 2018, and it appears -- it

19  states that I, Evander Kane, have applied for a loan, or

20  a series of loans, or for other financial accommodations

21  defined as the credit with South River Capital, LLC

22  defined as the lender.  Do you see that?

23     A.  Yes.

24     Q.  And again it goes on to say I hereby certify that

25  I am engaged in the following type of business, and

1  professional hockey player is identified; correct?

2      A.  Yes.

3      Q.  And it further goes on to state that I hereby

4  further certify the proceeds of the credit will be used

5  for the following business purpose and no other, and

6  business related expenses is identified; correct?

7      A.  That's what it says, yes.

8      Q.  Do you know what business related expenses it's

9  referring to here?

10      A.  I don't recall, no, probably to pay off existing

11  debt and loans.

12      Q.  Page 6 of this document -- do you recognize this

13  document, Mr. Kane?

14      A.  I don't recognize it, no.

15      Q.  Are those your initials on the bottom of this

16  page?

17      A.  Yes.

18      Q.  So this is titled a promissory note dated March

19  22, 2018.  It appears to be as between you and South

20  River Capital, LLC in the amount of $1,850,000.  Do you

21  see that?

22      A.  Yes.

23      Q.  And is that your signature?

24      A.  Yes.

25      Q.  Any reason to dispute that you entered into a

1  promissory note with South River Capital for $1,850,000?

2    A.  No.

3    Q.  If we go to page 29 of this document it's titled

4  Memo of Settlement, and is that your signature at the

5  bottom, Mr. Kane?

6    A.  Yes.

7    Q.  It appears that out of the $1,850,000 loan

8  proceeds $413,000 was to be directed to an EWB payoff.

9  Do you see that?

10   A.  Yes.

11   Q.  Do you know what debt that's referring to?

12   A.  I'm assuming it's East West Bank.

13   Q.  Additionally it shows $300,000 was to go to a

14  Cosmo payoff.  Do you see that?

15   A.  Yes.

16   Q.  And is that referring to the Cosmopolitan?

17   A.  Yes.

18   Q.  Do you know when you would have incurred that

19  debt?

20   A.  I don't recall, no.

21   Q.  And would you have any documents associated with

22  that debt?

23   A.  No.

24   Q.  And then it appears that $163,000 was to go to an

25  Alex Jabori.  Do you see that?

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 299 of 455

1    A.   I do.

2    Q.   Do you know who Alex Jabori is?

3    A.   It rings a bell, but I really don't.

4    Q.   Would you know why you would be paying him

5    $163,000?

6    A.   No, that's why I don't know what that was for.

7    Q.   And then last it shows $554,675 was to go to EWB

8    Kane.  Do you see that?

9    A.   Yes.

10   Q.   And do you know what that refers to?

11   A.   It refers to East West Bank.  And, again, I don't

12   know why that was being deposited there, what that money

13   was used for in that account.  I have no statements, no

14   statements from East West Bank, so I can't tell you what

15   that was for because I never controlled that account or

16   any of the accounts at East West Bank.

17            MS. FINESTONE:  Counsel, we need to take a

18      break.  Mr. Kane needs to attend to his other thing

19      and we'll just log back in -- not log back in, but

20      turn on the video when he's done so you'll know

21      we're done.

22            MR. GHEKAS:  Do you estimate any time it's

23      going to take?

24            THE WITNESS:  I would say no more than --

25      it could be as long as 45 minutes, it could be as

1    Q.  But each loan nonetheless was a loan made

2   personally to you?

3    A.  Yes.

4    Q.  Thank you for that.  And if we go to the next

5   page, a document on Sure Sports letterhead again dated

6   December 30, 2018, are those your initials at the bottom

7   of the page?

8    A.  Yes.

9    Q.  And is that your signature?

10   A.  Yes.

11   Q.  At the top it shows that $263,000 was to go to

12   pay down Democracy Capital Corp which would be

13   consistent with Exhibit E.  It's not showing here in the

14   body of the document, but it is your understanding that

15   $263,000 went to pay down Democracy Capital Corp?

16   A.  Yes.

17   Q.  Do you know if there were any remaining funds

18   that were disbursed to you into any of your bank

19   accounts?

20   A.  I don't know.

21   Q.  You don't know or there wasn't?

22   A.  I don't know.

23   Q.  Besides all of the documents that we just went

24   through today regarding each of these various loans from

25   these entities, would you have any other documents

1    relating to each loan?

2    A.   Not to my knowledge, no.

3    Q.   And besides the documents that we've looked at

4    here today regarding these loans, would you have any

5    other records regarding your use of any proceeds that

6    you may have received from any of these loans?

7    A.   No.

8    Q.   Do you own any real property?

9    A.   Yes.

10   Q.   Where is it located?

11   A.   Vancouver.

12   Q.   And what's the address?

13   A.   8447 Isabel Place, Vancouver BC.

14   Q.   And is that the only real property that you own?

15   A.   Yes.

16   Q.   Have you ever owned any additional property?

17   A.   Yes.

18   Q.   And what were those addresses?

19   A.   3457 West 35th Avenue, Vancouver, BC and 2301

20   Richland Avenue, San Jose, California.

21   Q.   The 3457 West 35th Avenue, that was property that

22   you owned at the time in which you filed your petition;

23   correct?

24   A.   Correct.

25   Q.   So you've since sold that property?

1    A.   Correct.

2    Q.   What would be -- so this is gross income.  Do you

3    know what the net income you would have received for any

4    of these years?

5    A.   I mean, I could guess and give you a decently

6    close number, on six million, you know, I'm probably

7    netting 2.8, 2.7; on 7 million I'm probably netting 3.1,

8    give or take.

9    Q.   What would you primarily use your wages on?  Were

10   they to pay your everyday living expenses?

11   A.   Paying down the loans that I had taken out,

12   paying attorneys, living obviously, bills, mortgages.  I

13   mean, primarily those three years specifically like a

14   lot of my money was getting taken by -- you know, it was

15   already getting pre-deposited into those loans.

16   Q.   What loans would those be?

17   A.   The ones that I had previously before and during

18   the Centennial, California Bank & Trust and Professional

19   Bank.

20   Q.   And then just to confirm, you have no records

21   regarding any of your bank statements or accounts

22   predating 2019; correct?

23   A.   Correct.

24   Q.   Would you have any records other than bank

25   statements or credit card statements regarding the use

REGENCY REPORTING SERVICE, INC. (813) 244-5296

1    of any of the loan funds that we went through today?

2        A.   Not to my knowledge, no.

3        Q.   And then would you have any other records other

4    than the bank statements or credit card statements that

5    we've gone through regarding the use of your wages and

6    salary?

7        A.   Not that I know of, no.

8        Q.   All right.

9             MR. FINESTONE:  I'm sorry to interrupt,

10            just to clarify, when you talk about use of the

11            loan funds you're talking about whatever portion of

12            those funds went to Mr. Kane, not direct payments

13            that came out of various loans; correct?

14            MR. GHEKAS:  Yes, correct, any of the loan

15            funds that went to him personally and any documents

16            that actually verify that the loan proceeds went to

17            where they said they were going to go.

18       A.   Yeah, all those documents are -- I believe my

19   business managers, Leon and specifically Tony would have

20   had, and like I said specifically to East West Bank, you

21   know.  My payroll for the majority of the term of those

22   three years listed there were going directly to -- I

23   believe it was East West at a certain point in time and

24   then it was California Bank & Trust getting disbursed to

25   repayments of loans, so just to make that clear as well.

<u>CERTIFICATE OF REPORTER</u>

STATE OF FLORIDA        :

COUNTY OF HILLSBOROUGH  :

    I, CHERE J. BARTON, FPR, a Notary Public in and for the State of Florida at Large, certify that I was authorized to and did stenographically report the foregoing proceedings; and that the transcript is a true record of the testimony given by the witness.

    I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

    Dated this 19th day of July, 2022.




_/s/ Chere J. Barton, FPR_____
CHERE J. BARTON, FPR
Notary Public
State of Florida at Large
My Commission No:  #HH 033431
My Commission Expires:  12/17/24

REGENCY REPORTING SERVICE, INC. (813) 244-5296

# EXHIBIT "14"

## LOAN AGREEMENT

This Loan Agreement (the "Agreement") dated as of May __, 2014, is by and between **CAPITAL FINANCIAL PARTNERS, LLC**, a Massachusetts (USA) limited liability company ("Lender"), and **EVANDER KANE**, a resident of Vancouver, B.C., Canada ("Borrower").

WHEREAS, Borrower desires to obtain a loan from Lender in the principal amount of **Six Hundred Thousand and 00/100 United States Dollars (US $600,000.00)** (the "Loan"); and

WHEREAS, Lender is willing to advance the Loan to Borrower upon and subject to the terms and conditions of this Agreement and the other Loan Documents described herein.

NOW THEREFORE, in consideration of the Loan and the mutual covenants and agreements contained herein, and intending to be legally bound hereby, Lender and Borrower agree as follows:

1.     Governing Law, Venue, Jurisdiction. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS (WITHOUT GIVING EFFECT TO ANY OTHERWISE APPLICABLE CONFLICT OF LAWS PRINCIPLES). MAKER HEREBY AGREES AND ACKNOWLEDGES THAT THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY HAVE A SUBSTANTIAL RELATIONSHIP TO THE COMMONWEALTH OF MASSACHUSETTS. Any action, suit or proceeding arising out of under or in connection with this Agreement whether, brought for equitable relief or money damages shall be brought in the courts of the Commonwealth of Massachusetts or the State of Florida or of the United States of America for the District of Massachusetts or the Southern District of Florida, and no other forum. The Borrower irrevocably and unconditionally submits to the exclusive jurisdiction and venue of such courts and agrees to take any and all future action necessary to submit to the jurisdiction of such courts. The Borrower irrevocably waives any objection that he now has or hereafter may have to the laying of venue of any suit, action or proceeding brought in any such court and further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Borrower hereby accepts, for Borrower and in respect of Borrower's property, generally and unconditionally, the jurisdiction of the aforesaid courts. Borrower hereby knowingly, voluntarily, intentionally and irrevocably waives, in connection with any such action or proceeding, to the maximum extent not prohibited by law, the right to interpose any setoff, non-compulsory counterclaim or cross claim. Borrower irrevocably consents to the service of process of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to Borrower at Borrower's address set forth herein. Nothing herein shall affect the right of Lender to serve process in any other manner permitted by law. Final judgment against the Borrower in any such suit shall be conclusive and may be enforced in other jurisdictions by suit on the judgment, a certified or true copy of which shall be conclusive evidence of the fact and the amount of any liability of the Borrower therein described, or by appropriate proceedings under any applicable treaty or otherwise.

2.     Definitions. In addition to any other terms defined herein, the following terms shall have the meaning set forth with respect thereto:

"Applicable Law" means all laws, statutes, regulations, rulings, orders, codes, ordinances, interpretive guidance, rules, treaties or other requirements of any governmental or

quasi-governmental authority with jurisdiction over Borrower or any of Borrower's activities or assets.

"Borrower" has the meaning set forth in the preamble.

"Borrower's Employer" means Winnipeg Jets Hockey Club Limited Partnership and its successors and assigns with respect to the SPC.

"Closing" means the funding of the Loan and the consummation of the other transactions contemplated by this Agreement.

"Direct Deposit Agreement" means an agreement among Lender, Borrower and Borrower's Employer in substantially the form attached hereto as *Exhibit "A"*.

"Funding Account" means the Lender-owned bank account described in the Direct Deposit Agreement.

"Hazardous Materials" means all materials defined as hazardous materials or substances under any local, state or federal environmental laws, rules or regulations, and petroleum, petroleum products, oil and asbestos.

"Lender" has the meaning set forth in the preamble.

"Loan" has the meaning set forth in the recitals.

"Loan Application" means that certain loan application executed and delivered by Borrower and attached hereto as *Exhibit "B"*.

"Loan Documents" means this Agreement, the Loan Application, the Note, the Direct Deposit Agreement and all other documents, instruments, and agreements executed and/or delivered by Borrower, or any third party for the benefit of Lender, in connection with the Loan.

"Note" means that certain Note, in the form attached hereto as *Exhibit "C"*, to be executed and delivered by Borrower in favor of Lender at the Closing, together with all renewals, extensions or rearrangements thereof.

"Obligations" means the obligations evidenced by the Note or any other Loan Document, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Loan Documents.

"SPC" means the National Hockey League Standard Player's Contract, dated as of September 15, 2012, between Borrower and Borrower's Employer, together with all applicable provisions of the related collective bargaining agreement and all rules promulgated by Borrower's Employer or the National Hockey League in accordance therewith.

2

3.     Funding and Repayment of the Loan.

(a)     Funding Account. Lender will designate a Lender-owned bank account to serve as the Funding Account. In addition to the other purposes described in this Section 3, funds in the Funding Account may be used by Lender to pay any bank fees incurred by Lender in connection with the Funding Account.

(b)     Closing; Distribution of Loan Proceeds. Upon delivery by Borrower to Lender of this Agreement (duly executed by Borrower), the Note (duly executed by Borrower), the Direct Deposit Agreement (duly executed by Borrower and Borrower's Employer), and such other documents and agreements as Borrower may reasonably require in connection with the Loan, Lender shall fund the Loan and distribute the proceeds thereof in accordance with *Schedule "1"* attached hereto (the "Loan Proceeds Distribution Schedule").

(c)     Direct Deposits. Pursuant to the Direct Deposit Agreement, each paycheck earned by Borrower shall be direct deposited by Borrower's Employer into the Funding Account (the "Direct Deposits").

(d)     Use of Funds in the Funding Account Prior to Event of Default. The Note requires that certain payments of principal and interest ("Loan Payments") be made by Borrower to Lender in accordance with a repayment schedule attached to the Note. *Schedule "2"* attached hereto (the "Funding Account Payments Schedule") identifies the amounts of such Loan Payments which are to be funded and paid from Direct Deposits. In the event that the amount of any Direct Deposit exceeds the amount of the corresponding Loan Payment, then, so long as there has been no Event of Default, the excess balance of such Direct Deposit ("Borrower's Share of the Direct Deposit") shall be paid by Lender to Borrower promptly following the availability in the Funding Account of such Direct Deposit. So long as Borrower causes all Direct Deposits to be deposited into the Funding Account in accordance with this Agreement and so long as there has been no Event of Default, Lender shall cause all payments required by the Funding Account Payments Schedule to be paid in accordance with the Funding Account Payments Schedule.

(e)     Interest. So long as there has been no Event of Default, any interest earned on funds deposited in the Funding Account shall accrue to Borrower, and, if the amount of such interest exceeds the bank fees incurred by Lender for the Funding Account, Lender shall pay such excess to Borrower on an annual basis ("Unspent Interest Income"). Borrower agrees that Lender shall have no obligation to use an interest-bearing account as the Funding Account and shall not be liable to Borrower or any other person for failure to earn interest or to maximize the amount of interest earned on such funds.

(f)     Use of Funds in the Funding Account Following an Event of Default Notwithstanding anything to the contrary elsewhere herein, upon and following an Event of Default, Lender may, without notice to Borrower, apply any or all funds in the Funding Account toward the amount of any unpaid Obligations which are then due and payable.

(g)     Committed Funds. Borrower acknowledges and agrees that all deposits into the Funding Account shall, when made, be irrevocably committed to the uses provided for in

3

this Section 3. Borrower shall not assert or permit anyone acting by, through or under Borrower to assert any claim to the contrary. The parties agree that, subject to Borrower's right to receive Borrower's Share of Direct Deposits and Unspent Interest Income (if any) so long as there is no Event of Default, all funds in the Funding Account will, at some time in the future (if there is no Event of Default, then in accordance with the Payment Schedule; or, if there is an Event of Default, then at such time or times as may be determined by Lender in its sole discretion), be transferred to a separate account of Lender and retained by Lender free and clear of any further restriction or obligation under this Agreement. Lender's right to use and retain the funds in the Funding Account in accordance with this Section is independent of all other covenants and conditions, and Lender's interest in such funds shall not be subject to any setoff, reduction or counterclaim.

4.      Representations and Warranties. Borrower hereby represents and warrants to Lender as follows:

(a)      Compliance with Applicable Law. Borrower and Borrower's assets are in full compliance with all Applicable Law. The execution and delivery of the Loan Documents by Borrower, and the performance by Borrower of its obligations under the Loan Documents, will not violate any Applicable Law.

(b)      Binding Agreement. This Agreement and the other Loan Documents executed by Borrower constitute valid and legally binding obligations of Borrower, enforceable against Borrower in accordance with their terms.

(c)      Litigation. There is no proceeding involving Borrower pending or, to the knowledge of Borrower, threatened before any court or governmental authority, agency or arbitration authority.

(d)      No Conflicting Agreements. There is no agreement or other document binding on Borrower or affecting Borrower's rights, assets or properties which would conflict with or in any way prevent the execution, delivery or carrying out of the terms of this Agreement and the other Loan Documents.

(e)      Ownership of Assets. Borrower has good title to Borrower's assets described in the Loan Application.

(f)      Taxes. All taxes and assessments of any nature due and payable by Borrower have been paid and the Borrower has filed all tax returns which Borrower is required to file.

(g)      Accuracy and Completeness of Information. Borrower has furnished Lender with a true, accurate and complete copy of the SPC. The Loan Application fairly presents Borrower's financial condition as of the date of such Loan Application, and there has been no material adverse change in Borrower's financial condition, debts or earnings since the date thereof. All factual information furnished by Borrower to Lender in connection with this Agreement and the other Loan Documents is and will be accurate and complete on the date as of which such information is delivered to Lender and is not and will not be incomplete by the omission of any material fact necessary to make such information not misleading.

4

(h)     Liabilities. Upon consummation of the transactions contemplated herein at the Closing, except for the Obligations evidenced and secured by the Loan Documents, obligations described in the Loan Application and unpaid payroll taxes withheld by Borrower's Employer: (i) Borrower will have no individual liability, fixed or contingent, in excess of Fifty Thousand Dollars ($50,000.00) and (ii) Borrower's aggregate accrued liabilities (including without limitation, accrued utility bills, insurance premiums, taxes, subscriptions, rents and service fees), whether or not then due and payable, will not be greater than One Hundred Thousand Dollars ($100,000.00). Borrower is not a guarantor or co-signer with respect to, and is not otherwise directly or indirectly responsible for, the financial obligations, indebtedness or liabilities of any third party. Except as provided in the Loan Documents and the Loan Application, Borrower has not agreed to indemnify, defend or hold harmless any person or entity. Borrower has not engaged in any wrongful conduct which could give rise to any future material liability under any agreement or Applicable Law.

(i)     Citizenship, Residency and Principal Dwelling. Borrower is a *Canadian* citizen and a legal resident of *British Columbia*. The principal dwelling of Borrower is located at *8447 Isabel Place, Vancouver, British Columbia*.

(j)     Environmental. The condition of Borrower's property does not and will not violate any federal laws, rules or ordinances for environmental protection, regulations of the Environmental Protection Agency, any applicable local or state law, rule, regulation or rule of common law or any judicial interpretation thereof relating primarily to the environment or Hazardous Materials.

(k)     Ability to Perform. To the best of Borrower's knowledge, Borrower is not suffering from any mental or physical condition that will materially adversely affect, or could reasonably be expected to materially adversely affect, Borrower's ability to perform as a *professional hockey player*, at a level consistent with his past performance, at all times while the Obligations remain outstanding.

(l)     No Breach. Neither Borrower, nor to Borrower's knowledge, Borrower's Employer, is in breach of any term or condition of the SPC. Borrower is not in default of any material obligation under any other instrument or agreement.

(m)     Continuation of Representations and Warranties. All representations and warranties made under this Agreement shall be deemed to be made at and as of the date hereof and at and as of the Closing.

5.     Affirmative Covenants. Until full payment and performance of all of the Obligations, Borrower will, unless Lender consents otherwise in writing (and without limiting any requirement of any other Loan Document):

(a)     Compliance with Applicable Law. Strictly comply, and cause his property to strictly comply, with all Applicable Law.

(b)     Adverse Conditions or Events. Within a reasonable time (and in no event later than seven (7) days following the occurrence of any event described herein) advise Lender in writing of (i) any injury, illness or other medical condition that has materially adversely

5

**Schedule "1"**
**Loan Proceeds Distribution Schedule**

| Loan Amount: | | | $ 600,000 |
|---|---|---|---|
| Origination fee: | $ | 18,000 | |
| DDD Insurance: | $ | 12,000 | |
| Legal Fees and Expenses: | $ | 7,500 | |
| Total Disbursements: | | | $ 562,500 |

2. Interest; Payments.

(a) Interest shall be due and payable at the times and in the amounts set forth on or determined in accordance with the Repayment Schedule. Maker hereby acknowledges that the Repayment Schedule may provide for the payment of interest prior to such interest accruing.

(b) Each payment described in, or otherwise required by, this Note is sometimes referred to herein as a "Note Payment". The minimum amount to be paid by Borrower under this Note with respect to a Note Payment is sometimes referred to herein as the "Scheduled Amount" of such Note Payment; and the date by which this Note requires payment of a Note Payment is sometimes referred to herein as the "Due Date" of such Note Payment.

(c) Upon the occurrence of an Event of Default (as defined herein), this Note shall, at the option of Holder, bear interest on the outstanding Principal Amount at the rate of eighteen percent (18%).

(d) The parties hereto intend to conform strictly to all applicable usury laws. In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the Holder hereunder or otherwise exceed the maximum amount permissible under applicable law. If from any circumstance whatsoever interest would otherwise be payable to the Holder in excess of the maximum lawful amount, the interest payable to the Holder shall be reduced automatically to the maximum amount permitted by applicable law. If the Holder shall ever receive anything of value deemed interest under applicable law which would apart from this provision be in excess of the maximum lawful amount, an amount equal to any amount which would have been excessive interest shall be applied to the reduction of the principal amount owing hereunder in the inverse order of its maturity and not to the payment of interest, or if such amount which would have been excessive interest exceeds the unpaid balance of principal hereof, such excess shall be refunded to Maker. All interest paid or agreed to be paid to the Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term (including any renewal or extension) of such indebtedness so that the amount of interest on account of such indebtedness does not exceed the maximum permitted by applicable law.

3. No Prepayment. Notwithstanding anything to the contrary elsewhere herein: (i) no portion of the Principal Amount or interest thereon may be prepaid. In the event that any Note Payment (or portion thereof) is received by Holder in advance of the applicable Due Date, such Note Payment (or portion thereof) shall not be credited against the obligations of Maker under the Loan Documents ("Obligations") until the applicable Due Date; and (ii) in the event that Lender receives sums hereunder in excess of the Scheduled Amount of a Note Payment, such excess shall be allocated to future Note Payments (up to the otherwise unpaid Scheduled Amounts thereof) and credited against the Obligations on the applicable Due Dates of such future Note Payments as they become due.

4. Other Loan Documents; Funding Account; Direct Deposit Agreement. This Note is being delivered pursuant to a Loan Agreement between Maker and Holder dated as of even date herewith ("Loan Agreement"). Pursuant a Direct Deposit Agreement dated as of even date herewith ("Direct Deposit Agreement") among Maker, Lender and Winnipeg Jets Hockey Club Limited Partnership (together with its successors and assigns ("Maker's Employer"), Maker has instructed Maker's Employer to direct deposit into a bank account maintained by Lender (the

2

"Funding Account") certain amounts earned by and payable to Maker under the National Hockey League Standard Player's Contract, dated as of September 15, 2012, between Maker's Employer and Maker (the "SPC"). The Direct Deposit Agreement, this Note, the Loan Agreement, and the Loan Application, are sometimes referred to herein collectively as the "Loan Documents". Upon and subject to the terms and conditions of the Loan Agreement, Lender has agreed to apply funds in the Funding Account to certain payment obligations of Maker hereunder. Maker shall indemnify and hold harmless Holder, its affiliates and its directors, officers, agents and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including without limitation, any and all court costs and reasonable attorneys' fees, in any way related to or arising out of or in connection with the Direct Deposit Agreement, except as may result solely from the gross negligence or willful misconduct of Holder. Maker's obligation to make all payments required by the this Note in accordance with the Repayment Schedule is independent of any obligation of Maker's Employer or under the Direct Deposit Agreement and any obligation of Lender under any other Loan Document. Under no circumstances shall the failure of Maker's Employer to comply with its obligations under the Direct Deposit Agreement or the failure of Lender to comply with its obligations under any Loan Document in any manner limit, reduce or otherwise affect the obligations of Maker under this Note or serve as a defense to the nonpayment of any amounts due hereunder.

5.      Events of Default.

(a)     The occurrence of any of the following events shall constitute an "Event of Default" under this Note:

(i)     any failure of Maker to pay or otherwise satisfy, or cause to be paid or otherwise satisfied, the principal of and accrued and unpaid interest on this Note as and when due in accordance with the terms hereof;

(ii)    any voluntary filing by the Maker of a petition in bankruptcy or other action by the Maker seeking the protection from the Maker's creditors under bankruptcy or insolvency laws (each a "Voluntary Petition" and collectively "Voluntary Petitions");

(iii)   any filing of an involuntary bankruptcy petition by creditors of the Maker and the failure of such petition to be dismissed, rescinded or otherwise rendered of no further legal effect within sixty (60) days (each an "Involuntary Petition" and collectively "Involuntary Petitions" and together with the Voluntary Petitions "Insolvency Petitions");

(iv)    any breach or violation by Maker of Maker's representations, warranties, covenants, agreements or obligations under this Note or any other Loan Document (Maker acknowledges that all such representations, warranties, covenants, agreements and obligations are fundamental and that any breach, regardless of degree or nature, shall be considered material and shall constitute an Event of Default hereunder) or the occurrence of any other event which constitutes an "Event of Default" under the Loan Agreement;

(v)     any voluntarily alteration by Maker of the withholdings or deductions made from time to time by Maker's Employer from sums due and owing to Maker under the SPC in any manner that is materially inconsistent with Maker's prior withholdings or

3

deductions, or that materially reduces the net amount of any payment to be made by Maker's Employer under the SPC;

(viii) in the event of the assignment of the SPC by Maker's Employer, any failure by such assignee to execute and deliver to Lender, within seven (7) days following to the effectiveness of such assignment, a duly executed written undertaking evidencing such assignee's agreement to perform and be bound by the obligations of the assignor under the Direct Deposit Agreement for so long as this Note shall remain outstanding; and/or

(ix) the unenforceability of any material term or condition of this Note or any other Loan Document.

(b) In the event the Holder or any holder hereof shall refer this Note to an attorney for collection, the Maker agrees to pay, in addition to unpaid principal and interest, all of the reasonable costs and expenses incurred in attempting or effecting collection hereunder, including reasonable attorney's fees and costs, whether or not suit is instituted.

(c) Upon the occurrence of an Insolvency Petition, all indebtedness evidenced hereby (including unpaid principal, any unpaid interest and other amounts due hereunder) shall be automatically accelerated without notice and shall become immediately due and payable. Upon the occurrence of an Event of Default other than an Insolvency Petition, all indebtedness evidenced hereby (including unpaid principal, any unpaid interest and other amounts due hereunder) may be accelerated and become immediately due and payable at the election of the Holder or any holder hereof. Holder shall have the right to exercise any other right or remedy allowed to Holder under applicable law.

6. Waivers by Maker.

(a) Presentment, notice of dishonor, notice of default, notice of acceleration and protest are hereby waived by Maker.

(b) MAKER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT MAKER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONJUNCTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

7. Amendment, Waiver. No failure to accelerate the indebtedness evidenced by this Note by reason of an Event of Default hereunder, acceptance of a partial or past due payment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced by this Note or as a waiver of such right of acceleration or of the right of Lender thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted under this Note, under any of the other Loan Documents or by any applicable laws. No provision hereof shall be modified, altered or limited except by a written instrument expressly referring to this Note and to such provision, and executed by the Maker and the Holder.

4

8. Successors. This Note and all obligations evidenced hereby shall be binding upon the heirs, executors, administrators, successors and assigns of the Maker and shall, together with the rights and remedies of the Holder hereunder, inure to the benefit of the Holder, its successors, endorsees and assigns.

9. Severability. Any term or provision of this Note that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

This Note is hereby executed and delivered as a sealed instrument as of the first date written above.

MAKER:

EVANDER KANE

STATE OF _____ )
                        ) SS:
COUNTY OF _____ )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by EVANDER KANE, who is personally known to me or who has produced _____ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this _____
day of _____, 2014.

See CA Ack

Notary Public

Typed, printed or stamped name of Notary Public

5

# CERTIFICATE OF ACKNOWLEDGMENT

State of California )
County of Los Angeles )

On May 15, 2014 before me, Rose K. Ragan, Notary Public ,
Date                              (here insert name and title of the officer)
personally appeared Evander Kane
Name(s) of Signer(s)
who proved to me on the basis of satisfactory evidence to be
the person (s) whose name (s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity (ies), and that by
his/her/their signature (s) on the instrument the person (s),
or the entity upon behalf of which the person (s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

ROSE K. RAGAN
COMM. #2040951
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. OCT. 8, 2017

Signature _____     Place Notary Seal Above
Signature of Notary Public

## SCHEDULE "A" TO NOTE -- REPAYMENT SCHEDULE FOR NOTE

| Payment Number: | Payment Date: | Payment Amount: |
|---|---|---|
| 1 | 10/15/2014 | $53,076.92 |
| 2 | 11/1/2014 | $53,076.92 |
| 3 | 11/15/2014 | $53,076.92 |
| 4 | 12/1/2014 | $53,076.92 |
| 5 | 12/15/2014 | $53,076.92 |
| 6 | 1/1/2015 | $53,076.92 |
| 7 | 1/15/2015 | $53,076.92 |
| 8 | 2/1/2015 | $53,076.92 |
| 9 | 2/15/2015 | $53,076.92 |
| 10 | 3/1/2015 | $53,076.92 |
| 11 | 3/15/2015 | $53,076.92 |
| 12 | 4/1/2015 | $53,076.92 |
| 13 | 4/15/2015 | $53,076.92 |
| TOTAL | | $690,000.00 |

6

affected, or could reasonably be expected to materially adversely affect, Borrower's ability to continue to perform his obligations under the SPC at a level consistent with his past performance, (ii) any other condition, event or act that has materially adversely affected, or could reasonably be expected to materially adversely affect, Borrower's mental or physical health, assets, liabilities, financial condition, reputation or ability to perform and comply with the Loan Documents, or Lender's rights under the Loan Documents, (iii) any failure or alleged failure of Borrower to comply with the SPC or any claim by Borrower's Employer or the National Football League or any of their respective representatives that Borrower's compensation under the SPC will or may be suspended, terminated, set off or reduced, or that Borrower is or may be obligated repay any such compensation or pay any fine or penalty, (iv) any material change in Borrower's obligations thereunder, (v) any actual or pending loan or trade of Borrower to another team, any buyout or assignment of the SPC, or other material change in the terms, location or requirements of Borrower's employment, (vi) any amendment or proposed amendment to the SPC, (vii) any litigation is filed by or against Borrower, and (viii) the occurrence of any event that would constitute an event of default under any of the Loan Documents.

(c)     Taxes and Other Obligations. Pay all of Borrower's taxes, assessments and other obligations, including, but not limited to, taxes, costs or other expenses arising out of this transaction, as the same become due and payable.

(d)     Environmental Matters. Immediately advise Lender in writing of (i) any and all enforcement, cleanup, remedial, removal, or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state, or local laws, ordinances or regulations relating to any Hazardous Materials affecting Borrower's properties; and (ii) all claims made or threatened by any third party against Borrower relating to damages, contribution, cost recovery, compensation, loss or injury resulting from any Hazardous Materials. Borrower shall immediately notify Lender of any remedial action taken by Borrower with respect to Borrower's properties. Borrower will not use or permit any other party to use any Hazardous Materials at any property owned or leased by Borrower except normal household cleaning and maintenance products which are handled in compliance with all applicable environmental laws.

(e)     Performance under SPC. Strictly observe, perform and comply with all of Borrower's obligations under the SPC, and take and use best efforts to cause Borrower's Employer to pay Borrower the maximum compensation contemplated by the SPC.

(f)     Access to Information and Documents. Borrower shall promptly furnish or cause to be furnished to Lender such information and documents as Lender may at any time request for the purpose of monitoring Borrower's assets, liabilities, property, financial condition and compliance with the requirements of the Loan Documents. Borrower hereby authorizes Lender to obtain from third parties such information as Lender may at any time desire to review for the purpose of monitoring Borrower's assets, liabilities, property, financial condition and/or compliance with the requirements of the Loan Documents. At the Closing, Borrower shall execute and deliver to Lender the consent forms attached hereto as **_Exhibit "D-1"_** (General Authorization for Release of Financial Information) and **_Exhibit "D-2"_** (IRS Form 8821 and CRA Form t1013).

6

(g)     Insurance.   Maintain in full force and effect at all times the following insurance policies, in each case naming Lender listed as an additional insured and requiring that the insurance company provide Lender with not less than thirty (30) days prior notice of any modification, cancellation or non-renewal:

> (i)     insurance covering the liability of Borrower to third parties for any bodily injury, death, property damage or economic damage resulting from the acts or omissions of Borrower or his agents or representatives, with limits of not less than One Million Dollars ($1,000,000.00); and

> (ii)     all disability policies maintained by or for the benefit of Borrower on the date hereof.

(h)     Further Assurances.   At and following the Closing, execute such further documents and instruments and take such further actions that are consistent with the terms of this Agreement as may reasonably be requested by Lender.

6.     Negative Covenants.   Until full payment and performance of all obligations of Borrower under the Loan Documents, Borrower will not, without the prior written consent of Lender (and without limiting any requirement of any other Loan Documents):

(a)     No Material Increase in Liabilities.   Incur more than $500,000.00 of additional liabilities, fixed or contingent; or guarantee, co-sign or otherwise directly or indirectly assume or otherwise accept responsibility for, the financial obligations, indebtedness or liabilities of any third party; or agree to indemnify, defend or hold harmless any person or entity; or engage in any wrongful conduct which could give rise to any material liability under any agreement or Applicable Law;

(b)     No Amendment, Assignment, Termination or Waiver.   Amend, assign or terminate, or consent to any amendment, assignment or termination of, the SPC; or waive, compromise, settle or forebear the exercise of any right or remedy, or the receipt of any compensation or benefit, under the SPC;

(c)     No Breach of SPC.   Fail to strictly observe and perform any of Borrower's obligations under the SPC, or otherwise fail to use best efforts to cause Borrower's Employer to pay Borrower the maximum compensation contemplated by the SPC.   Without limiting the foregoing, Borrower shall not do or fail to do anything that could result in a claim by Borrower's Employer or the **_National Hockey League_** that Borrower's Employer has the right to suspend, terminate, setoff or reduce the compensation payable to Borrower under the SPC, or require repayment by Borrower of any such compensation;

(d)     No Withdrawal of Consent to Access Information.   Revoke, modify or suspend any consent given pursuant to Section 5(f) of this Agreement or otherwise with respect to Borrower's access to information; or

(e)     No Change to Direct Deposit Agreement.   Revoke, modify or suspend, threaten to revoke, modify or suspend, or take any action that could be construed by Borrower's Employer as an expression of intent by Borrower to revoke, modify or suspend, the obligation of Borrower's Employer to make the deposits described in the Direct Deposit Agreement; or, in the

7

event of the assignment of the SPC by Borrower's Employer, failure to cause such assignee to execute and deliver to Lender, within five (5) days following the effectiveness of such assignment, a duly executed written undertaking evidencing such assignee's agreement to perform and be bound by the obligations of the assignor under the Direct Deposit Agreement for so long as the Loan shall remain outstanding.

7. Default.

(a) Events of Default. For purposes of this Agreement, each of the following shall be considered an immediate "Event of Default" under this Agreement:

(i) The occurrence of an event of default under the Note; or

(ii) The breach by Borrower of any representation, warranty, covenant or agreement of Borrower set forth in this Agreement.

(b) Interpretation. Each representation, warranty, covenant and agreement of Borrower set forth in this Agreement is fundamental and material to this Agreement, and has been specifically negotiated and relied upon by Lender as a material inducement to make the Loan and consummate the other transactions contemplated hereby. All such representations, warranties, covenants and agreements shall be strictly construed such that anything less than full, complete and strict truthfulness, accuracy, completeness and compliance shall be considered a material breach, notwithstanding any lack of knowledge, control or culpability on the part of Borrower and without regard to any mitigating factors. Under no circumstances shall Borrower be entitled to receive any notice of, or opportunity to cure, any breach of this Agreement, it being understood that the occurrence of such breach shall constitute an immediate Event of Default under this Agreement.

8. Remedies Upon Default. If an Event of Default shall occur, Lender shall have all rights, powers and remedies available under each of the Loan Documents as well as all rights and remedies available at law or in equity including, without limitation, the right to accelerate and demand immediate payment of all Obligations and remove and retain for its own account all funds in the Funding Account.

9. Notices. All notices, demands and communications given or made hereunder or pursuant hereto shall be in writing and shall be delivered by Federal Express, UPS or other national courier via overnight delivery, addressed in each case as follows and shall be deemed to have been given or made when so delivered:

Borrower: Evander Kane
8447 Isabel Place
Vancouver, British Columbia (CA)

8

| Lender: | Capital Financial Partners, LLC |
| | 470 Atlantic Ave., 4th Floor |
| | Boston, MA (USA) 02210 |

Lender:         Capital Financial Partners, LLC
                470 Atlantic Ave., 4th Floor
                Boston, MA (USA) 02210

with copy to:   Tobin & Reyes, P.A.
                225 N.E. Mizner Boulevard, Suite 510
                Boca Raton, FL (USA) 33431
                Attention: J. Robert Joines, Esq.

or to such other address as any party may designate by written notice to the other party. Each such notice, request and demand shall be deemed given or made upon delivery or refusal of delivery.

10.     Costs, Expenses and Attorneys Fees. Borrower shall pay to Lender immediately upon demand the full amount of all costs and expenses, including reasonable attorneys' fees incurred by Lender in connection with (a) negotiation and preparation of this Agreement and each of the Loan Documents, and (b) all other costs and attorneys' fees incurred by Lender for which Borrower is obligated to reimburse Lender in accordance with the terms of the Loan Documents.

11.     Miscellaneous. Borrower and Lender further covenant and agree as follows, without limiting any requirement of any other Loan Document:

(a)     Cumulative Rights and No Waiver. Each and every right granted to Lender under any Loan Document, or allowed it by law or equity shall be cumulative of each other and may be exercised in addition to any and all other rights of Lender, and no delay in exercising any right shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right preclude any other or future exercise thereof or the exercise of any other right. Borrower expressly waives any presentment, demand, protest or other notice of any kind, including but not limited to notice of intent to accelerate and notice of acceleration. No notice to or demand on Borrower in any case shall, of itself, entitle Borrower to any other or future notice or demand in similar or other circumstances.

(b)     Amendment. No modification, consent, amendment or waiver of any provision of this Loan Agreement, nor consent to any departure by Borrower therefrom, shall be effective unless the same shall be in writing and signed by a duly authorized representative of Lender, and then shall be effective only in the specified instance and for the purpose for which given. This Agreement is binding upon Borrower, its successors and assigns, and inures to the benefit of Lender, its successors and assigns; however, no assignment or other transfer of Borrower's rights or obligations hereunder shall be made or be effective without Lender's prior written consent, nor shall it relieve Borrower of any obligations hereunder. There is no third party beneficiary of this Agreement or any other Loan Document.

(c)     Documents. All documents, certificates and other items required under this Agreement to be executed and/or delivered to Lender shall be in form and content satisfactory to Lender and its counsel.

9

(d)     Partial Invalidity.  The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of any Loan Document to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(e)     Indemnification.  Notwithstanding anything to the contrary contained herein, Borrower shall indemnify, defend and hold Lender and its successors and assigns harmless from and against any and all claims, demands, suits, losses, damages, assessments, fines, penalties, costs or other expenses (including reasonable attorneys' fees and court costs) arising from or in any way related to any of the transactions contemplated hereby, unless caused by the Lender's gross negligence or willful misconduct.

(f)     Survivability.  All covenants, agreements, representations and warranties made herein or in the other Loan Documents shall survive the making of the Loan and shall continue in full force and effect so long as the Loan is outstanding or the obligation of the Lender to make any Advances under the Line shall not have expired.

(g)     Entire Agreement.  This Agreement and the Direct Deposit Agreement represent the final Agreement between the parties and, together with the Note, set forth all of the terms of the Loan. None of the terms and conditions set forth in this Agreement, the Direct Deposit Agreement and/or the Note may be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties.

(h)     USA PATRIOT ACT.  LENDER HEREBY NOTIFIES BORROWER THAT PURSUANT TO THE REQUIREMENTS OF THE USA PATRIOT ACT (TITLE III OF PUB. L. 107-56 (SIGNED INTO LAW OCTOBER 26, 2001) (THE "ACT"), LENDER IS REQUIRED TO OBTAIN, VERIFY AND RECORD INFORMATION THAT IDENTIFIES BORROWER, WHICH INFORMATION INCLUDES THE NAME AND ADDRESS OF BORROWER AND OTHER INFORMATION THAT WILL ALLOW LENDER TO IDENTIFY BORROWER IN ACCORDANCE WITH THE ACT.

(i)     WAIVER OF JURY TRIAL.  THE PARTIES IRREVOCABLY AND VOLUNTARILY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM.

(j)     No Oral Agreement.  This written Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties.

[SIGNATURE PAGE FOLLOWS]

10

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

WITNESSES AS TO BORROWER:

**Witness #1:**

Signature: _____

Printed Name: Rosek. Ragan

**Witness #2:**

Signature: _____

Printed Name: Megan Broadway

BORROWER:

_____

Evander Kane

LENDER:

CAPITAL FINANCIAL PARTNERS, LLC

By: _____

Name: _____

Title: _____

11

**EXHIBIT "D-1" TO LOAN AGREEMENT**
**FORM OF GENERAL AUTHORIZATION**

See attached form.

## GENERAL AUTHORIZATION

I, **EVANDER KANE**, hereby authorize **CAPITAL FINANCIAL PARTNERS, LLC** and its representatives (collectively, the "***Authorized Recipient***") to receive, copy and discuss with all Information Holders (as defined below) any or all of information requested by the Authorized Recipient concerning my assets, liabilities, financial condition and/or employment status, including without limitation, information that is or may be protected by a confidentiality agreements or applicable laws, rules, policies and/or professional standards (collectively, "***Confidential Information***").

I understand, and it is my express intention, that this document may be used by the Authorized Recipient to gain full access to any and all Confidential Information in the possession or under control of any third party, including without limitation, any of my current or former employers, employees, agents, managers, consultants, lenders, banks, physicians, attorneys, accountants and governmental agencies (collectively, "***Information Holders***").

I hereby unconditionally authorize all Information Holders and their representatives to disclose my Confidential Information to the Authorized Recipient, to discuss my Confidential Information with the Authorized Recipient and to cooperate with all requests of the Authorized Recipient in connection therewith, including without limitation, transmitting or furnishing copies and/or allowing the Authorized Recipient to make copies of documents or electronic files containing my Confidential Information. This document shall operate as an expression of my consent for all purposes under any applicable agreement and/or law, rule or regulation, whether now existing or hereinafter entered into, promulgated or enacted. On behalf of myself and my successor, heirs, personal representatives and assigns, I hereby release all Information Holders from all liability for any and all actions taken by them in good faith pursuant to or in reliance upon this document.

It is my intent that copies of this document shall have the same effect and power as an original. The authorization herein contained, as it relates to the sharing of Confidential Information in the possession or under the control of any Information Holder, shall remain in full force and effect until the earlier of (i) the fifth anniversary of the date hereof or (ii) receipt by such Information Holder of a signed writing from me expressly terminating the authorization provided herein. Information Holders are under no obligation to request or obtain the return of any Confidential Information disclosed to the Authorized Recipient.

_____     _____
**EVANDER KANE**                     **Date**



STATE OF _____)
                                )SS:
COUNTY OF _____)

On _____, 2014, **EVANDER KANE,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

                                   SeeCAAck
_____
Notary Public

2

# CERTIFICATE OF ACKNOWLEDGMENT

State of California )
County of _Los Angeles_ )

On _May 15, 2014_ before me, _Rose K. Ragan, Notary Public_ ,
<sub>Date</sub> (here insert name and title of the officer)
personally appeared _Evander Kane_
Name(s) of Signer(s)
who proved to me on the basis of satisfactory evidence to be
the person (s) whose name (s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity (ies), and that by
his/her/their signature (s) on the instrument the person (s),
or the entity upon behalf of which the person (s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

ROSE K. RAGAN
COMM. #2040951
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. OCT. 8, 2017

Signature_____ Place Notary Seal Above
Signature of Notary Public

## EXHIBIT "D-2" TO LOAN AGREEMENT
## IRS FORM 8821 AND CRA FORM T1013

See attached forms.

[PRINT BOTH OF THE ATTACHED EMBEDDED PDF FORMS, COMPLETE AND SIGN]



IRS Form 8821.pdf



KANE'S FORM
t1013.pdf

 **SURESPORTS** LENDING

Evander Kane
8447 Isabel Place
Vancouver, BC

May, 14th 2014

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires released/transferred from my funds through CFP (account information listed below) for the following:

- $24,000: SSL Service/Underwriting Fee

**Sure Sports Lending - $24,000**

Wells Fargo Bank, NA
Account #: 873 624 4040
Routing #: 121 000 248
Ref: Sure Sports Lending Fee

Please have the remaining funds wired to my personal account listed below:

**Evander Kane**

Intermediary Bank CHASUS30
FED/ABA: 021000021
JP Morgan Chase, N.A.
4 New York Plaza
New York, NY

Bene Bank RBCBUS33
FED /ABA: 063216608
RBC Bank Georgia, N.A.
8081 Arco Corporate Drive
Raleigh NC
Account 100050046

Sincerely,

Evander Kane

$1,000,000.00

Greenbelt, Maryland<br>June 20, 2014

## PROMISSORY NOTE

FOR VALUE RECEIVED, **EVANDER F. KANE** ("Borrower"), promises to pay to the order of **AMERICAN BANK** ("Lender"), during regular business hours at Lender's office at 9001 Edmonston Road, Suite 100, Greenbelt, Maryland 20770, or such other place as Lender may from time to time designate, the principal sum of One Million Dollars ($1,000,000.00) ("Loan"), with interest thereon at the rate or rates specified below until paid in full, and any and all other sums which may be owing to Lender by Borrower pursuant to this Promissory Note ("Note"), in accordance with the provisions set forth herein. This Note is made pursuant to and in accordance with the Loan and Security Agreement of even dated herewith between Borrower and Lender (as amended from time to time, "Loan Agreement"). Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the Loan is made, the terms of which are hereby incorporated herein by reference. Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

## 1. PRIMARY BUSINESS TERMS

1.1. *Maturity Date*. The final and absolute maturity date of this Note ("Maturity Date") shall be April 1, 2017.

1.2. *Interest Rate*. From the date of this Note until all sums owed on this Note are paid in full, interest shall accrue on the principal balance outstanding under this Note at the rate of 10.99% *per annum*. Interest shall be calculated on the basis of a 360 days per year factor applied to the actual days on which there exists a principal balance outstanding under this Note.

1.3. *Payment*. Beginning on August 1, 2014, and continuing on the first day of each month thereafter, Borrower shall make a monthly payment to Lender in an amount equal to the "Total" for such date as set forth in the schedule attached hereto as Exhibit A ("Payment Schedule"). At Lender's option, all payments due under this Note may be automatically debited by Lender from any of Borrower's accounts maintained with Lender. All payments made under this Note shall be made by such form of check, draft or other instrument as may be approved from time to time by Lender, and shall be payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. All payments made under this Note shall be applied first to late charges or other sums owed to Lender, next to accrued interest, and then to principal, or in such other order or proportion as Lender, in Lender's sole discretion, may elect from time to time.

1.4. *Late Charge*. If any payment due under this Note is not received by Lender within 10 calendar days after its due date, Borrower shall pay a late charge equal to 5% of the amount then due.

1.5. *Prepayment*. Borrower may prepay this Note in whole or in part at any time or from time to time without premium or additional interest. All prepayments shall be applied to principal in the inverse order of scheduled maturities.

## 2. DEFAULT AND REMEDIES

2.1. *Events of Default*. Each of the following shall constitute an event of default under this Note ("Event of Default"):

    a.    A default in the payment of any sum due under this Note.

    b.    A default in the performance of any of the covenants, conditions or terms of the Loan Agreement or any other agreement or document executed by Borrower or any other person for the benefit of Lender or any holder in connection with the Loan (collectively with the Loan Agreement, "Loan Documents").

2.2.   _Remedies_. Upon the occurrence of an Event of Default, in addition to all other rights and remedies available to Lender under the Loan Documents and applicable law, Lender shall have the following rights and remedies:

a.   Acceleration. Lender, in Lender's sole discretion and without notice or demand, may declare the entire principal balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable; reference is made to the Loan Documents for further and additional rights on the part of Lender to declare the entire balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable.

b.   Default Interest Rate. Lender, in Lender's sole discretion and without notice or demand, may raise the rate of interest accruing on the principal balance outstanding under this Note to the lesser of (i) the rate that is 5 percentage points above the rate of interest otherwise applicable, or (ii) the maximum rate of interest that Lender may charge by applicable law, independent of whether the holder elects to accelerate the principal balance outstanding under this Note.

c.   Confession of Judgment. To the extent permitted by applicable law, Borrower authorizes any attorney designated by Lender or any clerk of any court of record to appear for Borrower and confess judgment against Borrower in favor of Lender for the full amount due on this Note (including principal, accrued interest, charges and fees), plus court costs, plus attorneys' fees equal to 15% of the amount due, all without prior notice or opportunity of Borrower for prior hearing, without stay of execution or right of appeal, and expressly waiving the benefit of all exemption laws and any irregularity or error in entering any such judgment. No single exercise of the power to confess judgment granted in this paragraph shall exhaust the power, regardless of whether such exercise is ruled invalid, void or voidable by any court, nor shall this Note, Lender's right to attorneys' fees in the amount described herein or any other obligation hereunder or under any other Loan Document merge into any such judgment. The power to confess judgment granted in this paragraph may be exercised from time to time as often as the holder of this Note may elect. Borrower acknowledges that the actual amount of attorneys' fees incurred by Lender would be impossible to calculate at the time judgment by confession is entered, as all such fees would not yet have been incurred. Accordingly, Borrower agrees that attorneys' fees equal to 15% of the amount due is reasonable given the circumstances.

d.   Setoff. Lender may set off any amounts in any account or represented by any certificate with Lender in the name of Borrower or in which Borrower has an interest. As additional security for this Note, Borrower hereby pledges and grants to Lender a lien on and security interest in, and authorizes Lender to offset such obligations of Borrower or any guarantor of the Loan to Lender against, all property of Borrower now or at any time hereafter in the possession of, in transit to, under the control of, or on deposit with Lender, in any capacity whatsoever, including without limitation, any balance of any deposit account and any credits with Lender.

2.3.   _Expenses of Collection and Attorneys' Fees_. If this Note is referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, Borrower shall pay all of Lender's costs, fees and expenses, including reasonable attorneys' fees, resulting from such referral.

3.   **MISCELLANEOUS**

3.1.   _Assignability_. This Note may be assigned by Lender or any holder at any time or from time to time. This Note shall inure to the benefit of and be enforceable by Lender and Lender's successors and assigns and any other person to whom Lender or any holder may grant an interest in Borrower's obligations under this Note, and shall be binding and enforceable against Borrower and Borrower's personal representatives, successors and assigns.

3.2.   _Negotiable Instrument_. Borrower agrees that this Note shall be deemed a negotiable instrument even if this Note would not qualify under applicable law, absent this Section, as a negotiable instrument.

3.3.   _Choice of Law_. This Note shall be governed by the laws of the State of Maryland.

2

3.4.    *Unconditional Obligations*.   Borrower's obligations under this Note shall be the absolute and unconditional duty and obligation of Borrower and shall be independent of any rights of set-off, recoupment or counterclaim which Borrower might otherwise have against the holder of this Note, and Borrower shall pay absolutely the payments of principal, interest, fees and expenses required under this Note, free of any deductions and without abatement, diminution or set-off.

3.5.    *Severability*.   In the event that any provision of this Note conflicts with applicable law, such conflict shall not affect other provisions of this Note which can be given effect without the conflicting provision, and to this end the provisions of this Note are declared to be severable.

3.6.    *Tense; Gender; Section Headings*.   In this Note, the singular includes the plural and *vice versa*; and each reference to any gender also applies to any other gender.   The section headings are for convenience only and are not part of this Note.

3.7.    *Time*.   Time is of the essence of this Note.

## 4.    CONSENTS AND WAIVERS

4.1.    *Waiver of Presentment, Etc*.   Borrower waives presentment, notice of dishonor and protest.

4.2.    *Consent to Extensions, Etc*.   From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's option, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

4.3.    *Jury Trial Waiver*.   Borrower and Lender (by acceptance of this Note) jointly waive trial by jury in any action or proceeding to which Borrower and any holder of this Note may be parties, arising out of or in any way pertaining to this Note or any of the other Loan Documents.   It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Note.   This waiver is knowingly, willingly and voluntarily made by Borrower, and Borrower hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.   Borrower further represents that it has been represented in the signing of this Note and in the making of this waiver by independent legal counsel, selected of its own free will, and that it has had the opportunity to discuss this waiver with counsel.

IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the date first written above.

WITNESS/ATTEST:                         **BORROWER:**

_____        _____ (SEAL)
                                        EVANDER F. KANE

3

**Acknowledgment**

STATE OF MARYLAND, CITY/COUNTY OF *Prince George* TO WIT:

I HEREBY CERTIFY that on this 20TH day of June, 2014, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared EVANDER F. KANE, known to me or satisfactorily proven to be the person named in the foregoing document, and acknowledged that he executed the foregoing document for the purposes therein contained.

IN WITNESS MY Hand and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires:

3-31-2018

JACQUELYN D. HUNT-ERWIN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires March 31, 2018

4

## EXHIBIT A

| Payment | Date | Interest | Principal | Total |
|---------|------|----------|-----------|-------|
| 1 | 8/1/2014 | $9,158 | $0 | $9,158 |
| 2 | 9/1/2014 | $9,158 | $0 | $9,158 |
| 3 | 10/1/2014 | $9,158 | $0 | $9,158 |
| 4 | 11/1/2014 | $9,158 | $51,356 | $60,514 |
| 5 | 12/1/2014 | $8,688 | $51,826 | $60,514 |
| 6 | 1/1/2015 | $8,213 | $52,301 | $60,514 |
| 7 | 2/1/2015 | $7,734 | $52,780 | $60,514 |
| 8 | 3/1/2015 | $7,251 | $53,263 | $60,514 |
| 9 | 4/1/2015 | $6,763 | $53,751 | $60,514 |
| 10 | 5/1/2015 | $6,271 | $0 | $6,271 |
| 11 | 6/1/2015 | $6,271 | $0 | $6,271 |
| 12 | 7/1/2015 | $6,271 | $0 | $6,271 |
| 13 | 8/1/2015 | $6,271 | $0 | $6,271 |
| 14 | 9/1/2015 | $6,271 | $0 | $6,271 |
| 15 | 10/1/2015 | $6,271 | $0 | $6,271 |
| 16 | 11/1/2015 | $6,271 | $54,243 | $60,514 |
| 17 | 12/1/2015 | $5,774 | $54,740 | $60,514 |
| 18 | 1/1/2016 | $5,273 | $55,241 | $60,514 |
| 19 | 2/1/2016 | $4,767 | $55,747 | $60,514 |
| 20 | 3/1/2016 | $4,256 | $56,258 | $60,514 |
| 21 | 4/1/2016 | $3,741 | $56,773 | $60,514 |
| 22 | 5/1/2016 | $3,221 | | $3,221 |
| 23 | 6/1/2016 | $3,221 | $0 | $3,221 |
| 24 | 7/1/2016 | $3,221 | $0 | $3,221 |
| 25 | 8/1/2016 | $3,221 | $0 | $3,221 |
| 26 | 9/1/2016 | $3,221 | $0 | $3,221 |
| 27 | 10/1/2016 | $3,221 | $0 | $3,221 |
| 28 | 11/1/2016 | $3,221 | $57,293 | $60,514 |
| 29 | 12/1/2016 | $2,697 | $57,817 | $60,514 |
| 30 | 1/1/2017 | $2,167 | $58,347 | $60,514 |
| 31 | 2/1/2017 | $1,633 | $58,881 | $60,514 |
| 32 | 3/1/2017 | $1,093 | $59,421 | $60,514 |
| 33 | 4/1/2017 | $549 | $59,965 | $60,514 |
| | | $173,678 | $1,000,000 | $1,173,678 |

5

EVANDER F. KANE
8447 Isabel Place
Vancouver, British Columbia V6P 6R8

June 20, 2014

Winnipeg Jets Hockey Club Limited Partnership
345 Graham Avenue
Winnipeg, Manitoba R3C 5S6

Re:     National Hockey League Standard Player's Contract dated as of September 15, 2012 ("Contract")
between Evander F. Kane ("Employee") and Winnipeg Jets Hockey Club Limited Partnership
("Employer")

Ladies and Gentlemen:

Reference is hereby made to the Contract. This letter agreement is executed and delivered in conjunction
with the Contract and for other good and valuable consideration, the receipt and sufficiency of which is
hereby acknowledged by Employee. Employee hereby directs that the sum of $34,517.50 from each
payment due and owing by Employer to Employee under the Contract be sent via wire transfer of
immediately available funds to the following account (the "Account") on or before the fifteenth and
thirtieth days of each month during the term of the Contract:

| | |
|---|---|
| Account Name: | Evander F. Kane |
| Account No.: | 6000368503 |
| Address: | 8447 Isabel Place |
| | Vancouver, British Columbia V6P 6R8 |
| Contact: | William Godfrey |
| Telephone: | 301-572-3757 |
| ABA Routing No.: | 2550-7325-1 |

Notwithstanding the foregoing, upon written notice from American Bank of the occurrence of a default by
Employee under his agreements with American Bank, Employer shall deliver to the Account all sums due
and owing to Employee under the Contract. Employer shall be entitled to rely upon notice from
American Bank that a default has occurred without any obligation or liability on the part of Employer to
inquire as to the existence of a default.

These instructions and agreements contained herein are irrevocable for the term of the Contract, and are
being relied upon by American Bank in connection with a loan transaction with Employee. Employee
hereby acknowledges and agrees that (i) American Bank is an intended third party beneficiary of the
instructions and agreements contained herein, (ii) American Bank shall have the right to enforce such
instructions and agreements directly which may be enforced in any court having jurisdiction hereunder,
and (iii) such instructions and agreements may be revoked only by written notice from American Bank
directed to the Employer.

Sincerely,

EVANDER F. KANE

## MEMORANDUM OF SETTLEMENT

Date of Closing: June 20, 2014

Borrower: Evander F. Kane

Lender: American Bank

=================================================================

$1,000,000 Loan

| Amount Advanced to Borrower at Closing | $1,000,000.00 | |
|---|---|---|
| Payoff – Capital Financial Partners LLC | | $627,000.00 |
| Loan Fee to American Bank | | $20,000.00 |
| Deposit to Pledged Account | | $27,474.00 |
| Fees and Disbursements to Offit Kurman, P.A.<br>Attorneys' Fees<br>Record Searches (estimate)<br>Filing Fees | | $5,000.00<br>$1,500.00<br>$250.00 |
| Death, Disability or Disgrace Policy | | $13,346.64 |
| SSL Underwriting Fee | | $40,000.00 |
| Finders' Fee | | $4,000.00 |
| **Total Settlement Costs** | | **$738,570.64** |
| **TOTAL AMOUNT TO BORROWER** | **$261,429.36** | |

THE UNDERSIGNED HEREBY ACKNOWLEDGES THAT IT HAS EXAMINED, APPROVED AND RECEIVED A COPY OF THIS STATEMENT, AND FURTHER AGREES THAT HE WILL CORRECT ANY ERRORS OR OMISSIONS HEREON OR DETERMINED POST-CLOSING.

BORROWER:

EVANDER F. KANE

# PROMISSORY NOTE

**Borrower:**    Evander Frank Kane
115 N. Crescent Street
Beverly Hills, CA  90210

**Lender:**    East West Bank
Loan Servicing Department
9300 Flair Drive, 6th Floor
El Monte, CA  91731

**Principal Amount:  $1,750,000.00**                **Date of Note:   July 15, 2015**

**PROMISE TO PAY.**   Evander Frank Kane ("Borrower") promises to pay East West Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Seven Hundred Fifty Thousand & 00/100 Dollars ($1,750,000.00), together with interest on the unpaid principal balance from July 15, 2015, until paid in full.

**PAYMENT.  Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:  one (1) interest payment on October 15, 2015; then six (6) monthly consecutive principal and interest payments in the initial amount of $101,906.00 each, beginning November 15, 2015; then one (1) interest payment on October 15, 2016; then six (6) monthly consecutive principal and interest payments in the initial amount of $101,906.00 each, beginning November 15, 2016; then six (6) monthly consecutive principal and interest payments in the initial amount of $101,906.00 each, beginning November 15, 2017; and one principal and interest payment of $117,450.90 on April 15, 2018.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.   Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**VARIABLE INTEREST RATE.**  The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the daily Wall Street Journal Prime Rate, as quoted in the "Money Rates" column of The Wall Street Journal (Western Edition) all as determined by Lender (the "Index").   The Index is not necessarily the lowest rate charged by Lender on its loans.   If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.   Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each day.   Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.250% per annum.**  Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.500 percentage point over the Index, adjusted if necessary for any maximum rate limitation described below, resulting in an initial rate of 5.75%.   NOTICE:   Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.**

**PREPAYMENT; MINIMUM INTEREST CHARGE.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.    In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00**.   Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.   Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.   Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.   If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:   East West Bank, Loan Service Department, 9300 Flair Drive, 6th Floor El Monte, CA   91731.**

**LATE CHARGE.**  If a payment is 11 days or more late, Borrower will be charged **6.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.**  Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin").   The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.   After maturity, or after this Note would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Note.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading

Loan No. 372001003                                                                                                               1

at any time thereafter.

**Death and Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**OTHER DEFAULTS MODIFIED.** Notwithstanding the section above entitled "Other Defaults", Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or Agreement or in any of the Related Documents between Lender and Borrower; or any shareholder, member, trustor, or any owner of the Borrower also holding a controlling interest in any given entity's common stock, membership interest, trust interest, or any ownership interest ("Related Entity"), fails to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and the Related Entity.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**JUDICIAL REFERENCE.** If the waiver of the right to a trial by jury is not enforceable, the parties hereto agree that any and all disputes or controversies of any nature between them arising at any time shall be decided by a reference to a private judge, mutually selected by the parties or, if they cannot agree, then any party may seek to have a private judge appointed in accordance with California Code of Civil Procedure §§ 638 and 640 (or pursuant to comparable provisions of federal law if the dispute falls within the exclusive jurisdiction of the federal courts). The reference proceedings shall be conducted pursuant to and in accordance with the provisions of California Code of Civil Procedure §§ 638 through 645.1, inclusive. The private judge shall have the power, among others, to grant provisional relief, including without limitation, entering temporary restraining orders, issuing preliminary and permanent injunctions and appointing receivers. All such proceedings shall be closed to the public and confidential and all records relating thereto shall be permanently sealed. If during the course of any dispute, a party desires to seek provisional relief, but a judge has not been appointed at that point pursuant to the judicial reference procedures, then such party may apply to the Court for such relief. The proceeding before the private judge shall be conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings. The parties shall be entitled to discovery which shall be conducted in the same manner as it would be before a court under the rules of discovery applicable to judicial proceedings. The private judge shall oversee discovery and may enforce all discovery rules and orders applicable to judicial proceedings in the same manner as a trial court judge. The parties agree that the selected or appointed private judge shall have the power to decide all issues in the action or proceeding, whether of fact or of law, and shall report a statement of decision thereon pursuant to California Code of Civil Procedure § 644(a). Nothing in this paragraph shall limit the right of any party at any time to exercise self-help remedies, foreclose against collateral, or obtain provisional remedies. The private judge shall also determine all issues relating to the applicability, interpretation, and enforceability of this paragraph.

The parties agree that time is of the essence in conducting the referenced proceedings. The parties shall promptly and diligently cooperate with one another and the referee, and shall perform such acts as may be necessary to obtain prompt and expeditious resolution of the dispute or controversy in accordance with the terms hereof. The costs shall be borne equally by the parties.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.**

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) insurance policies described in Assignments of Insurance Policies dated July 15, 2015.

Loan No. 372001003

2

(B)   All proceeds under that certain National Hockey League Standard Player's Contract dated July 1, 2012 between Evander Kane and Winnipeg Jets Hockey Club Limited, as assigned to the Buffalo Sabres Hockey Club described in a Commercial Pledge Agreement dated July 15, 2015.

(C)   deposit accounts described in an Assignment of Deposit Account dated July 15, 2015.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**CERTIFICATION OF ACCURACY.** Borrower certifies under penalty of perjury that all financial documents provided to Lender, which may include income statements, balance sheets, accounts payable and receivable listings, inventory listings, rents rolls, and tax returns, are the most recent such documents prepared by Borrower, that they give a complete and accurate statement of the financial condition of Borrower, as of the dates of such statements, and that no material change has occurred since such time, except as disclosed to Lender in writing.  Borrower agrees to notify Lender immediately of the extent and character of any material adverse change in the Borrower's financial condition.  The financial documents shall constitute continuing representations of Borrower and shall be construed by Lender to be continuing statements of the financial condition of Borrower and to be new and original statement of all assets and liabilities of Borrower with respect to each advance under this Note and every other transaction in which Borrower becomes obligated to Lender until Borrower advises Lender to the contrary.   The financial documents are being given to induce Lender to extend credit and Lender is relying upon such documents.  Lender may verify with third parties any information contained in financial documents delivered to Lender, obtain information from others, and ask and answer questions and requests seeking credit experience about the undersigned.

**SUCCESSOR INTERESTS.**   The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.**   Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: East West Bank Loan Service Department 9300 Flair Drive, 6th Floor El Monte, CA 91731.

**ORAL AGREEMENTS NOT EFFECTIVE.** This Note or Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written negotiations, agreements and understandings of the parties with respect to the subject matter hereof and shall remain in full force and effect in accordance with its terms and conditions.   Moreover, any subsequent oral statements, negotiations, agreements or understandings of the parties shall not be effective against Lender unless (i) expressly stated in writing, (ii) duly approved and authorized by an appropriate decision making committee of Lender on such terms and conditions as such committee shall deem necessary or appropriate in the committee's sole and absolute opinion and judgment and (iii) executed by an authorized officer of Lender.    Borrower shall not rely or act on any oral statements, negotiations, agreements or understandings between the parties at anytime whatsoever, including before or during any Lender approval process stated above.   Borrower acknowledges and agrees that Borrower shall be responsible for its own actions, including any detrimental reliance on any oral statements, negotiations, agreements or understandings between the parties and that Lender shall not be liable for any possible claims, counterclaims, demands, actions, causes of action, damages, costs, expenses and liability whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, at law or in equity, originating in whole or in part in connection with any oral statements, negotiations, agreements or understandings between the parties which the Borrower may now or hereafter claim against the Lender.   Neither this Note or Agreement nor any other Related Document, nor any terms hereof or thereof may be amended, supplemented or modified except in accordance with the provisions of this section.   Lender may from time to time, (a) enter into with Borrower written amendments, supplements or modifications hereto and to the Related Documents or (b) waive, on such terms and conditions as Lender may specify in such instrument, any of the requirements of this Note or Agreement or the Related Documents or any Event Default and its consequences, if, but only if, such amendment, supplement, modification or waiver is (i) expressly stated in writing, (ii) duly approved and authorized by an appropriate decision making committee of Lender on such terms and conditions as such committee shall deem necessary or appropriate in the committee's sole and absolute opinion and judgment and (iii) executed by an authorized officer of Lender.   Then such amendment, supplement, modification or waiver shall be effective only in the specific instance and specific purpose for which given.

**GENERAL PROVISIONS.**  If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.   Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.   Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor.   Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.   All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.   All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.   The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.   BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**


X _____
Evander Frank Kane

LaserPro, Ver. 14.5.10.004  Copr. D-H I USA Corporation 1997, 2015.   All Rights Reserved.   - CA  F:\PROD\LOANDOC\CF\LPL\D20.FC  TR-23019  PR-1 (M)

Loan No. 372001003

3



**Phone: 954.620.7038**
**Fax: 972.616.5206**

### FEE AGREEMENT

**THIS FEE AGREEMENT** (Agreement) is made this _23_ day of **July 2015** by and between Sure Sports Lending ("SSL") and Evander Kane ("Applicant")

WHEREAS, APPLICANT wishes to arrange financing via loans, lines of credit and equity transactions;

NOW, THEREFORE, it is agreed as follows:

A. In consideration of services rendered, APPLICANT agrees to pay SSL a service fee equal to __4%__ percent of the gross amount of the loan or line commitment (**Not to be less than $3,000**) at the time of funds being transferred from Lender to APPLICANT. **Borrower Savings**: Any SSL Fee Agreement with a service fee under 5% of the gross amount of the loan or line commitment is subject to an additional fee equaling 40% of total SAVINGS, if any, from the terms sheet executed by the Borrower, that Sure Sports negotiates on behalf of the Borrower.

B. This agreement is irrevocable, unconditional, and non-retractable and shall be automatically extended to any additional funding or contract, extension, or renewal relating to fund of said loan or the line of credit and shall be subject to fees set forth herein and agreed hereto.

C. All fees shall be paid in full at the time a loan or line of credit is closed by a Lender from the proceeds of the loan directly to SSL without further instruction from APPLICANT.
**Fees will be delivered when due to SSL via domestic wire to:**
Sure Sports Lending, LLC
Wells Fargo, NA
Routing #: 121 000 248
Account #: 873 624 4040

D. As further consideration to SSL, APPLICANT agrees not to obtain financing from Lenders or equity participants supplied by SSL, either directly or through third parties, without prior express written consent of SSL, for period of 36 months from the date of this agreement.

E. As further consideration to SSL, APPLICANT agrees that any payment made five (5) days past the date such payment is due and owed to Lender – whether Lender be SSL or a Lender provided by SSL – shall carry a one percent (1%) collection fee ("Collection Fee"), pursuant to the following:

    i. One percent (1%) of APPLICANT's current outstanding balance to Lender will be paid to SSL as a service charge; and

    ii. The Collection Fee shall apply to each payment that is made by APPLICANT five (5) days past the date such payment is due and owed to Lender.

F. This agreement shall be governed by the laws of the state of Florida. SSL AND APPLICANT agree that the courts of the state of Florida shall be the appropriate venue to resolve all claims arising thereto.

G. Further, it is agreed and acknowledged by the undersigned that their signatures on facsimile transmissions will have the same force and effect as originals.

H. If the loan or equity participation is not closed due to refusal or failure on the part of the APPLICANT to go forward after acceptance of a commitment by our Lender or participator, the fee is immediately due and payable in full.

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 340 of 455





**Phone: 954.620.7038**
**Fax: 972.616.5206**

SURE SPORTS LENDING

BY: _____
    Leon C. McKenzie        Date
    President

APPLICANT

BY: _____ July 23/10
    Evander Kane        Date
    Borrower



July 23rd, 2015

Evander Kane
115 N Crescent St
Beverley Hills, CA 90210

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires (account information listed below) released out of my account with American Bank (ending in 8503) for the following:

- $17,500      SSL Service and Underwriting
- $2,000        SSL Legal

**Sure Sports Lending - $17,500**
Wells Fargo Bank, NA
Account #:        873 624 4040
Routing #:        121 000 248
Ref:                  Evander Kane

**Sure Sports Lending - $2,000**
Wells Fargo Bank, NA
Account #:        937 349 7966
Routing #:        121 000 248
Ref:                  Evander Kane

Please have the remaining balance wired to my account listed below:

**Evander Kane**
Bank Name:      East West Bank
Account #:        203200974
Routing #:        322070381

Sincerely,

Evander Kane

$500,000



August 28, 2015

## PROMISSORY NOTE

    FOR VALUE RECEIVED, **EVANDER F. KANE** ("Borrower"), promises to pay to the order of **Tenacity 7401 New Hampshire LLC** ("Lender"), during regular business hours at Lender's office at 641 S Street NW Washington DC 20001, or such other place as Lender may from time to time designate, the principal sum of Five Hundred Thousand ($500,000.00) ("Loan"), with interest thereon at the rate or rates specified below until paid in full, and any and all other sums which may be owing to Lender by Borrower pursuant to this Promissory Note ("Note"), in accordance with the provisions set forth herein. This Note is made pursuant to and in accordance with the Loan and Security Agreement of even dated herewith between Borrower and Lender (as amended from time to time, "Loan Agreement"). Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the Loan is made, the terms of which are hereby incorporated herein by reference. Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

## 1.    PRIMARY BUSINESS TERMS

1.1.    _Maturity Date_. The final and absolute maturity date of this Note ("Maturity Date") shall be September 28, 2015.

1.2.    _Interest Rate_. From the date of this Note until all sums owed on this Note are paid in full, interest shall accrue on the principal balance outstanding under this Note at the rate of 12.00% _per annum_. Interest shall be calculated on the basis of a 360 days per year factor applied to the actual days on which there exists a principal balance outstanding under this Note.

1.3.    _Payment_. Borrower shall make a payment to Lender of accrued and unpaid interest only on September 28, 2015 in the amount of $505,000.0. Borrower shall make a monthly payment to Lender in an amount equal to the "payment" for such date as set forth in the schedule attached hereto as Exhibit A ("Payment Schedule"). At Lender's option, all payments due under this Note may be automatically debited by Lender from any of Borrower's accounts maintained with Lender. All payments made under this Note shall be made by such form of check, draft or other instrument as may be approved from time to time by Lender, and shall be payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. All payments made under this Note shall be applied first to late charges or other sums owed to Lender, next to accrued interest, and then to principal, or in such other order or proportion as Lender, in Lender's sole discretion, may elect from time to time.

1.4.    _Late Charge_. If any payment due under this Note is not received by Lender within 5 calendar days after its due date, Borrower shall pay a late charge equal to 10% of the amount then due.

1.5.    _Prepayment_. Borrower may prepay this Note in whole or in part at any time or from time to time without premium or additional interest. All prepayments shall be applied to principal in the inverse order of scheduled maturities.

## 2.    DEFAULT AND REMEDIES

2.1.    _Events of Default_. Each of the following shall constitute an event of default under this Note ("Event of Default"):

       a.    A default in the payment of any sum due under this Note.

       b.    A default in the performance of any of the covenants, conditions or terms of the Loan Agreement or any other agreement or document executed by Borrower or any other person for the benefit of Lender or any holder in connection with the Loan (collectively with the Loan Agreement, "Loan Documents").



Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 343 of 455

2.2.   _Remedies_.  Upon the occurrence of an Event of Default, in addition to all other rights and remedies available to Lender under the Loan Documents and applicable law, Lender shall have the following rights and remedies:

a.   _Acceleration_.  Lender, in Lender's sole discretion and without notice or demand, may declare the entire principal balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable; reference is made to the Loan Documents for further and additional rights on the part of Lender to declare the entire balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable.

b.   _Default Interest Rate_.  Lender, in Lender's sole discretion and without notice or demand, may raise the rate of interest accruing on the principal balance outstanding under this Note to the lesser of (i) the rate that is 5 percentage points above the rate of interest otherwise applicable, or (ii) the maximum rate of interest that Lender may charge by applicable law, independent of whether the holder elects to accelerate the principal balance outstanding under this Note.

c.   _Confession of Judgment_.  To the extent permitted by applicable law, Borrower authorizes any attorney designated by Lender or any clerk of any court of record to appear for Borrower and confess judgment against Borrower in favor of Lender for the full amount due on this Note (including principal, accrued interest, charges and fees), plus court costs, plus attorneys' fees equal to 15% of the amount due, all without prior notice or opportunity of Borrower for prior hearing, without stay of execution or right of appeal, and expressly waiving the benefit of all exemption laws and any irregularity or error in entering any such judgment.  No single exercise of the power to confess judgment granted in this paragraph shall exhaust the power, regardless of whether such exercise is ruled invalid, void or voidable by any court, nor shall this Note, Lender's right to attorneys' fees in the amount described herein or any other obligation hereunder or under any other Loan Document merge into any such judgment.  The power to confess judgment granted in this paragraph may be exercised from time to time as often as the holder of this Note may elect.  Borrower acknowledges that the actual amount of attorneys' fees incurred by Lender would be impossible to calculate at the time judgment by confession is entered, as all such fees would not yet have been incurred.  Accordingly, Borrower agrees that attorneys' fees equal to 15% of the amount due is reasonable given the circumstances.

d.   _Setoff_.  Lender may set off any amounts in any account or represented by any certificate with Lender in the name of Borrower or in which Borrower has an interest.  As additional security for this Note, Borrower hereby pledges and grants to Lender a lien on and security interest in, and authorizes Lender to offset such obligations of Borrower or any guarantor of the Loan to Lender against, all property of Borrower now or at any time hereafter in the possession of, in transit to, under the control of, or on deposit with Lender, in any capacity whatsoever, including without limitation, any balance of any deposit account and any credits with Lender.

2.3.   _Expenses of Collection and Attorneys' Fees_.  If this Note is referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, Borrower shall pay all of Lender's costs, fees and expenses, including reasonable attorneys' fees, resulting from such referral.

## 3.   MISCELLANEOUS

3.1.   _Assignability_.  This Note may be assigned by Lender or any holder at any time or from time to time.  This Note shall inure to the benefit of and be enforceable by Lender and Lender's successors and assigns and any other person to whom Lender or any holder may grant an interest in Borrower's obligations under this Note, and shall be binding and enforceable against Borrower and Borrower's personal representatives, successors and assigns.

3.2.   _Negotiable Instrument_.  Borrower agrees that this Note shall be deemed a negotiable instrument even if this Note would not qualify under applicable law, absent this Section, as a negotiable instrument.

3.3.   _Choice of Law_.  This Note shall be governed by the laws of the State of Maryland.

2

3.4.   *Unconditional Obligations*.  Borrower's obligations under this Note shall be the absolute and unconditional duty and obligation of Borrower and shall be independent of any rights of set-off, recoupment or counterclaim which Borrower might otherwise have against the holder of this Note, and Borrower shall pay absolutely the payments of principal, interest, fees and expenses required under this Note, free of any deductions and without abatement, diminution or set-off.

3.5.   *Severability*.  In the event that any provision of this Note conflicts with applicable law, such conflict shall not affect other provisions of this Note which can be given effect without the conflicting provision, and to this end the provisions of this Note are declared to be severable.

3.6.   *Tense; Gender; Section Headings*.  In this Note, the singular includes the plural and *vice versa*; and each reference to any gender also applies to any other gender.  The section headings are for convenience only and are not part of this Note.

3.7.   *Time*.  Time is of the essence of this Note.

4.     **CONSENTS AND WAIVERS**

4.1.   *Waiver of Presentment, Etc*.  Borrower waives presentment, notice of dishonor and protest.

4.2.   *Consent to Extensions, Etc*.  From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's option, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

4.3.   *Jury Trial Waiver*.  Borrower and Lender (by acceptance of this Note) jointly waive trial by jury in any action or proceeding to which Borrower and any holder of this Note may be parties, arising out of or in any way pertaining to this Note or any of the other Loan Documents.  It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Note.  This waiver is knowingly, willingly and voluntarily made by Borrower, and Borrower hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.  Borrower further represents that it has been represented in the signing of this Note and in the making of this waiver by independent legal counsel, selected of its own free will, and that it has had the opportunity to discuss this waiver with counsel.

       IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the date first written above.

WITNESS/ATTEST:                    **BORROWER:**


_____          _____(SEAL)
                                   EVANDER F. KANE

3

Nevada          **Acknowledgment**

STATE OF MARYLAND, CITY/COUNTY OF ___Clark___ , TO WIT:

    I HEREBY CERTIFY that on this _30_ day of August, 2015, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared EVANDER F. KANE, known to me or satisfactorily proven to be the person named in the foregoing document, and acknowledged that he executed the foregoing document for the purposes therein contained.

    IN WITNESS MY Hand and Notarial Seal.



_____(SEAL)
NOTARY PUBLIC

My Commission Expires:

   _4 - 23 - 18_

MARIA TERESA MOJICA
NOTARY PUBLIC STATE OF NEVADA
No. 12-7109-1
MY APPT. EXP. APRIL 23, 2018

4




**Loan payments:**
**$505,000.00**

**Total payable:**
**$505,000.00**

1 monthly payments of:
$505,000.00

Total interest:
$5,000.00

**Start date**: August 28, 2015
**End date**: September 28, 2015

Loan amount:
$500,000.00
Extra fees:
$0.00
Interest Rate:
12%
Effective Annual Rate:
12.68%

LOAN REPAYMENTS BY MONTH

| Month | Start Balance | Principal | Interest | Payment |
|-------|---------------|-----------|----------|---------|
| 1 | $ 500,000.00 | $ 500,000.00 | $ 5,000.00 | $ 505,000.00 |
| 2 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

 **SURESPORTS** LENDING

August ____, 2015

Evander Kane
115 N Crescent St
Beverley Hills, CA 90210

RE: $500,000 Loan between Evander Kane and Tenacity 7401 New Hampshire Ave LLC

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires (account information listed below) released out of my loan proceeds for the following:

- $20,000.00     SSL Service/Underwriting Fee
- $1,000.00     SSL Legal Fee
- $6,551.50     Insurance Premium

**Sure Sports Lending - $20,000.00**
Wells Fargo Bank, NA
1926 Hollywood Blvd
Suite 308
Account #:     873 624 4040
Routing #:     121 000 248
Ref:     Evander Kane

**Sure Sports Lending - $1000.00**
Wells Fargo Bank, NA
1926 Hollywood Blvd
Suite 308
Hollywood, FL 33020
Account #:     937 349 7966
Routing #:     121 000 248
Ref:     Evander Kane

**Exceptional Risk Advisors- $6,551.50**
Bank of America
210 Route 17 South
Mahwah, NJ 07430
Account #:     003817813814
Routing #:     026009593
Ref:     Evander Kane

Please have the remaining funds wired to my management account listed below:

**Evander Kane**
Bank Name:
Account #:
Routing #:     *RBC USA*

Sincerely,

Evander Kane



# PROMISSORY NOTE

$3,597,000.00

January 21, 2016

**FOR VALUE RECEIVED**, Evander F. Kane, whose resides at 115 N Crescent St, Beverley Hills, CA 90210 (the "Borrower"), promises to pay to Thrivest Specialty Funding, LLC a Pennsylvania Limited Liability Company with its principal offices located at 2 Penn Center Plaza, 1500 JFK Blvd., Suite 220, Philadelphia, PA 19102 ("Lender"), or its assigns, at Lender's address, or at such place as Lender designates from time to time, the principal sum of $3,597,000.00 (Three Million Five Hundred Ninety Seven Dollars and No Cents) ("Repayment Amount") in lawful money of the United States of America, together with interest thereon, as described in this Promissory Note. Unless the term of this Promissory Note is extended by the Lender, the entire then remaining outstanding principal balance of the Loan and all accrued but unpaid interest shall be due and payable on October 1, 2016.s

1.     **Payments**.     Borrower shall make interest payments on the principal balance of the Loan outstanding from time to time at the fixed interest rate of Twelve Percent (12%) per annum together with such portion of the principal as is included in the scheduled payments according to the following schedule:

| Payment | Date | Interest | Principle | Total |
|---|---|---|---|---|
| 1 | 2/1/2016 | $99,000 | $0 | $99,000 |
| 2 | 3/1/2016 | $99,000 | $0 | $99,000 |
| 3 | 4/1/2016 | $99,000 | $0 | $99,000 |
| 4 | 5/1/2016 | $0 | $0 | $0 |
| 5 | 6/1/2016 | $0 | $0 | $0 |
| 6 | 7/1/2016 | $0 | $0 | $0 |
| 7 | 8/1/2016 | $0 | $0 | $0 |
| 8 | 9/1/2016 | $0 | $0 | $0 |
| 9 | 10/1/2016 | $0 | $3,300,000 | $3,300,000 |
| | | $297,000 | $3,300,000 | $3,597,000 |

Interest shall be payable in arrears and shall be computed on the basis of a 360-day year.

At the sole discretion of the Lender, there can be (2) 8-month extensions, see Exhibit B for Repayment Schedule with Extensions

2.     **Prepayment of Principal**. During the entire term of the Loan, prepayment of all or part of the principal may be made by Borrower without penalty; *provided, however* that, except for payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note, all such principal prepayments shall be in even multiples of ONE THOUSAND and no/100 DOLLARS US ($1,000.00 US). Prepayments shall be applied against the outstanding principal balance of the Loan and shall not extend or postpone the due date of any subsequent monthly interest payment or change or reduce the minimum monthly payments set forth in the foregoing payment schedule, unless Lender shall agree otherwise in writing. As used herein, the term prepayment shall include all voluntary payments and all payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note.

3.     **Loan Documents**. This Promissory Note is secured by

    (a) A Secure Financial Transaction Agreement creating a security interest in all of Borrower's tangible and intangible personal property assets including, without limitation, all of Borrower's deposit accounts of any

13

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 349 of 455

kind and nature whatsoever and wherever located and Borrower's professional Hockey League contract with the Winnipeg Jets who has offices located at 345 Graham Avenue, Winnipeg, MB R3C 5SC, Canada that was assigned to the Buffalo Sabres and/or any future holder of the Borrower's hockey contract.

This Promissory Note, the Secure Financial Transaction Agreement, and such other related documents are collectively referred to in this Promissory Note as the "Financial Transaction Documents."

4.    **Default**. A breach of any of the terms of this Promissory Note by Borrower or a default by Borrower hereunder shall constitute a default under each of the Loan Documents; a default by Borrower or any guarantor under any of the Loan Documents shall constitute a default under this Promissory Note (each an "Event of Default"). Upon the occurrence of an Event of Default the entire outstanding balance of principal and accrued interest, together with all other amounts payable hereunder and/or under any one or more of the Loan Documents and all costs and reasonable attorneys' fees incurred by Lender in collecting or enforcing the terms of the Loan Documents and/or the payment of such amounts, shall be due and payable at the option of Lender, without further notice, which notice Borrower waives.

5.    **Late Charge**. If any payment of principal, interest or any other sums due to Lender hereunder or under any one or more of the Loan Documents is not received by Lender within ten (10) calendar days from the date it is due, including the payment due on the Maturity Date, a late charge in an amount equal to the greater of 5% of the regularly scheduled payment or $250.00 shall be due from Borrower. Borrower agrees and acknowledges that the late fee constitutes an administrative fee and is not interest for any purpose. This late payment charge shall apply individually to all payments past due, including the final balloon payment of principal due hereunder, and no daily pro rata adjustment shall be made. Until said late charge is paid, it shall accrue interest at the same rate as is then in effect under this Promissory Note. Should default be made in the payment of any amount due under this Promissory Note on the date it is due and if such default is not cured prior to the expiration of ten (10) days following Lender's delivery of written notice of such default to Borrower, then Lender may, at its election, declare all of the principal and interest immediately due and payable without notice, presentation or demand for payment.

In the event of a default in the payment of any monthly installment of interest due hereunder on the date on which it is due, and which default continues for a period of ten (1 0) days, said unpaid interest shall accrue interest at the rate of Eighteen Percent (18%) per annum beginning on the date upon which said payment was due and said interest shall continue to accrue from day to day until all interest in arrears is paid.

6.    **Application of Payments**. All payments shall be applied in the following order: i) first to costs of collection as set forth in section 9, below, ii) next to late charges and prepayment fee, if any, iii) next, to the repayment of Loans by Lender (as described below) for the benefit of Borrower, plus interest on such Loans at the rate set forth herein above iv) next, to accrued interest on the principal of this Promissory Note, and v) next, to principal. Loans by Lender for the benefit of Borrower shall include Loans resulting from the occurrence of a default under the terms of this Promissory Note or a default under any of the Loan Documents. If any such Loan is not repaid on demand, Lender may apply, at its option, any money received from Borrower to repay such Loans plus interest on such Loans.

7.    **Waivers**.    Borrower, and any guarantors and endorsers, for themselves and their legal representatives, successors and assigns, severally waive presentment for payment, protest, demand and notice of presentment, notice of protest, demand and dishonor and nonpayment of this Promissory Note.

8.    **Maximum Rate of Interest**. No provision of this Promissory Note or any of the other the Loan Documents shall be deemed to require Borrower to pay or be liable for the payment of interest in excess of the maximum legal rate of interest (if there is any maximum) allowable under applicable law. If for any reason interest in excess of such amount will have been paid under this Promissory Note, as a result of acceleration or otherwise, any such excess shall constitute and be treated as a payment of principal under this Promissory Note, and shall reduce the principal balance of this Promissory Note by the amount of such excess, or if in excess of the principal balance, such excess shall be refunded.

14

9. **Costs of Enforcement**. Borrower agrees to pay all costs of enforcement of the terms of this Promissory Note and the costs of enforcement of the terms of any of the Loan Documents and costs of collection, including reasonable attorneys' fees, that Lender incurs in connection with any default hereunder or under any of the Loan Documents (whether before or after any cure). Additionally, Borrower agrees to pay all costs, fees and expenses, including reasonable attorneys' fees, that Lender incurs, before or after any default, in endeavoring to protect, enforce and realize on this Promissory Note or any one of the Loan Documents or as result of any litigation or other action in which Lender becomes involved as a party, witness or otherwise as a result of or in any way relating to this Promissory Note, and of the Loan Documents or the Loan being made to Borrower. Any and all such costs paid or incurred by Lender shall bear interest at the same rate set forth herein for the principal balance due hereunder and shall become due and payable immediately upon demand by Lender.

10. **Nature of Obligations**. Borrower is obligated to pay the principal, interest, late charges and prepayment premium, if any, on this Promissory Note and any other sums payable hereunder and under any of the Loan Documents, and Lender shall have full recourse against Borrower and all of Borrower's property of every kind or nature whatsoever and wherever located in the collection of the amounts due under this Promissory Note and/or under the Loan Documents. If this Promissory Note is signed by more than one maker, the singular includes the plural, and the makers of this Promissory Note are jointly and severally liable for all obligations described in this Promissory Note.

11. **Applicable Law; Severability**. This Promissory Note shall be governed by the internal laws of the State of Florida. In any litigation in any way relating to this Promissory Note or any of the Loan Documents, Borrower hereby consents to the jurisdiction of the Southern District Court of Fort Lauderdale, State of Florida having jurisdiction. Invalidity of any provision of this Promissory Note shall not affect the validity of any other provision. Without affecting the liability of Borrower, or any guarantor or endorser, Lender may, without notice, renew or extend the time for payment, accept partial payments, release or impair any security for the payment of this Promissory Note, agree not to sue any party liable under this Promissory Note or any one or more of the Loan Documents, or otherwise modify the terms of payment of all or any part of the indebtedness evidenced by this Promissory Note. Waiver of any default shall not constitute a waiver of any subsequent default.

12. **Transferability; Modification.** Lender may freely transfer and assign this Promissory Note. This Promissory Note may only be modified, extended or discharged by a written agreement executed by the party against whom enforcement of any modification, extension or discharge is sought.

13. **Waiver of Right to Trial by Jury**. To the fullest extend allowed by law, Borrower hereby waives trial by jury in any suit or legal or administrative proceeding in connection with this Security Agreement, the Note or any other document executed in connection with the loan transaction contemplated under the Note or any other documents or transactions contemplated or referred to herein, including, without limitation, trial by jury with respect to any third party in any lawsuit or proceeding in which the Borrower, the Lender and/or any Guarantor(s) are patties.

14. **Consent to Garnishment**. The Borrower hereby consents to the issuance of a Writ of Garnishment and the garnishment of Borrower's accounts and wages in the enforcement of any collection action taken by Lender in connection with the enforcement of the terms of this Promissory Note or any one or more of the Loan Documents.

15 **Time**. Time shall be deemed to be of the essence of this Promissory Note and of each covenants, agreements and conditions to be performed hereunder.

16. **Binding Effect**. This terms, conditions, representations, warranties and covenants of this Promissory Note shall be binding upon the Borrower and shall inure to the benefit of the Lender, and their respective successors, representatives, heirs, devisees, administrators, successors and assigns.

17. **Conduct Not a Waiver**. No waiver of default by Lender shall be effective unless in writing signed by Lender and a waiver of any default by Lender or any forbearance of the enforcement of its rights under this Promissory or under any of the Loan Documents or any other document executed in connection with the loan transaction contemplated under this

15

Promissory Note, shall not operate as a waiver of any other right or of any subsequent default or the same default on any future occasion.

18. **Remedies Cumulative**. No right or remedy conferred upon or reserved to Lender hereunder is intended to be exclusive of any other right or remedy and every right and remedy shall be cumulative and in addition to every other right or remedy given or reserved hereunder or under applicable law. Every right or remedy under this Promissory Note or any other document executed in connection with the loan transaction contemplated under this Promissory Note, or under applicable law may be exercised as may be deemed necessary of convenient by Lender.

This Promissory Note has been executed and is effective on the date(s) set forth below.

BORROWER: Evander F. Kane

By: _____    Date: _Jan 23/16_
   Borrower

STATE OF _NY_                    }:
                                      SS:
COUNTY OF _ERIE_                }

On this, the _23rd_ day of _January_, 20_16_, before me
_LISA CZERNIEJEWSKI_, the undersigned officer, personally appeared
_Evander F. Kane_, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that _he_ (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Lisa Czerniejewski_
      Notary Public

Printed Name: _LISA CZERNIEJEWSKI_

LISA CZERNIEJEWSKI #01CZ6153377
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Oct. 2, 20 /8

My Commission Expires:

_10/2/18_

16

## EXHIBIT B

### REPAYMENT SCHEDULE WITH EXTENSION:

| Payment | Date | Interest | Principal | Total |
|---|---|---|---|---|
| 1 | 2/1/2016 | $33,000 | $0 | $33,000 |
| 2 | 3/1/2016 | $33,000 | $0 | $33,000 |
| 3 | 4/1/2016 | $33,000 | $0 | $33,000 |
| 4 | 5/1/2016 | $33,000 | $0 | $33,000 |
| 5 | 6/1/2016 | $33,000 | $0 | $33,000 |
| 6 | 7/1/2016 | $33,000 | $0 | $33,000 |
| 7 | 8/1/2016 | $33,000 | $0 | $33,000 |
| 8 | 9/1/2016 | $33,000 | $0 | $33,000 |
| 9 | 10/1/2016 | $33,000 | $0 | $33,000 |
| 10 | 11/1/2016 | $33,000 | $260,201 | $293,201 |
| 11 | 12/1/2016 | $30,398 | $262,803 | $293,201 |
| 12 | 1/1/2017 | $27,770 | $265,431 | $293,201 |
| 13 | 2/1/2017 | $25,116 | $268,085 | $293,201 |
| 14 | 3/1/2017 | $22,435 | $270,766 | $293,201 |
| 15 | 4/1/2017 | $19,727 | $273,474 | $293,201 |
| 16 | 5/1/2017 | $16,992 | $0 | $16,992 |
| 17 | 6/1/2017 | $16,992 | $0 | $16,992 |
| 18 | 7/1/2017 | $16,992 | $0 | $16,992 |
| 19 | 8/1/2017 | $16,992 | $0 | $16,992 |
| 20 | 9/1/2017 | $16,992 | $0 | $16,992 |
| 21 | 10/1/2017 | $16,992 | $0 | $16,992 |
| 22 | 11/1/2017 | $16,992 | $276,209 | $293,201 |
| 23 | 12/1/2017 | $14,230 | $278,971 | $293,201 |
| 24 | 1/1/2018 | $11,441 | $281,760 | $293,201 |
| 25 | 2/1/2018 | $8,623 | $284,578 | $293,201 |
| 26 | 3/1/2018 | $5,777 | $287,424 | $293,201 |
| 27 | 4/1/2018 | $2,903 | $290,298 | $293,201 |
| | | $617,366 | $3,300,000 | $3,917,366 |

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 353 of 455

 **SURESPORTS** LENDING

January 23, 2016

Evander Kane
95 Main St
Buffalo, NY 14203

RE: $3.3M Loan between Evander Kane and Tenacity 7401 Thrivest LLC

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires released out of my loan proceeds for the following:

- $132,000      SSL Service/Underwriting Fee
- $22,000       Insurance Premium
- $2,082,451.30  Loan Payoff

**Sure Sports Lending - $132,000**
Wells Fargo Bank, NA
Account #:     873 624 4040
Routing #:     121 000 248
Ref:           Evander Kane

**International Specialty Insurance - $22,000**
BB&T
1661 North Bridge Street
Elkin, NC 28621
Account #:     0005200290110
Routing #:     053101121
Reference:     Evander Kane

**East West Bank - $2,082,451.30**
East West Bank
135 N. Los Robles Ave., Pasadena, CA 91101.
ABA No. 322070381
Credit to Account #242833-187
Attention: Angela Lee, Loan Number 372001003 & #72001008



Please have the remaining funds wired to my account listed below:

Evander F. Kane
RBC Royal Bank
8447 Isabel Place
Vancouver British Columbia, CA
Account #:      100050046
Routing #:      063216608

Sincerely,

Evander Kane




**SURESPORTS** LENDING

July 6, 2016

Evander Kane
8447 Isabel Pl
Vancouver BC V6P 6R8

RE: $50k Loan between Evander Kane and Now Playing

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires released out of my loan proceeds for the following:

- $4,000       Service/Underwriting Fee
- $3,191.30    Insurance Premium
- $1,000       Legal/Closing Fee

**Sure Sports Lending - $4,000**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL
Routing #:        121 000 248
Account #:        873 624 4040
Ref:              Evander Kane

**International Specialty Insurance- $3,191.30**
BB&T
1661 North Bridge Street
Elkin, North Carolina 28621
Routing #:        0531011121
Swift Code:       BRBTUS33
Account #:        0005200290110
Ref:              Evander Kane

**Sure Sports Lending - $1,000**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:        121 000 248
Account #:        937 349 7966
Ref:              Evander Kane



Please have the remaining funds wired to my account listed below:

RBC USA account

Sincerely,

Evander Kane

# PROMISSORY NOTE

**$50,000.00**

THIS PROMISSORY NOTE ("**Note**") is made and effective this 6th day of July, 2016 ("**Effective Transaction Date**"),

**BETWEEN:** **NOW PLAYING, LLC**, a limited liability company duly organized and existing under the laws of the State of Florida ("**Lender**"), having a principal address located at 1926 Hollywood Boulevard, Suite 307, Hollywood, Florida 33020;

**AND:** Evander Kane
8447 Isabel Place
Vancouver BC V6P 6R8 ("**Borrower**")

With each being referred to individually as a "**party**," and collectively as the "**parties**" throughout this Note.

## I. TERMS

FOR VALUE RECEIVED, Borrower, on behalf of himself/herself and his/her heirs, executors, administrators, personal representatives, and permitted assigns promises to pay to the order of Lender, or its assigns (Lender and/or its assigns, as applicable, are collectively referred to as "**Holder**") or its respective designees, in accordance with the payment schedule attached hereto as **Exhibit A** ("**Repayment Schedule**"), the principal sum of Seven Hundred Fifty Thousand Dollars $50,000.00 (the "**Loan**"), together with interest as provided herein, and all other Obligations (as defined herein) that may be owing by Borrower to Lender under the Loan Documents (as defined herein), from the date hereof until the earlier of (i) Maturity, or (ii) the acceleration of the obligations and liabilities owing by Borrower to Lender, as outlined hereunder.

## II. DEFINITIONS

1. MATURITY. "**Maturity Date**" shall mean October 1, 2016.

2. PRINCIPAL. "**Principal**" or "**Principal Amount**" shall refer to the net disbursement amount of $50,000.00, plus any increases due to a failure to pay or any additional loan made by Lender to Borrower under the terms of this Note.

   Lender's sole obligation contained within this Note shall be to provide Borrower with the net disbursement amount of $50,000.00. Borrower acknowledges that Lender shall have no obligation to lend additional monies to Borrower.

3. PAYMENT. "**Payment**" shall mean the transfer by Borrower to Lender of any monies due and payable to Lender under the terms of this Note. All Payments shall be made in legal currency

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 358 of 455



of the United States (USD). Payments shall be made pursuant to and governed by the provisions contained in Section III of this Note.

4. EVENT OF DEFAULT. An "**Event of Default**" shall mean the happening of any of the occurrences outlined in Section IV of this Note.

5. COLLECTION COSTS. "**Collection Costs**" shall refer to any costs: (i) incurred by Borrower or Lender if this Note is placed in the hands of an attorney for the purpose of enforcement for collection; (ii) collected through lawsuit, probate, or bankruptcy court; or (iii) incurred by Borrower or Lender in the case of occurrence of any Event of Default under this Note.

6. LOAN DOCUMENTS. "**Loan Documents**" shall refer to the collection of documents delivered to Borrower in conjunction with this Note, including, without limitation, this Note, the "Loan and Security Agreement," the "Pledge Agreement," the "Direct Deposit Agreement," and/or any other documents provided by Lender to Borrower related to the subject matter of this Note.

## III.   PAYMENT

7. PROMISE TO PAY. Borrower acknowledges that installments of the Principal Amount and interest as accrued thereon shall be due and payable to Holder in the amounts and on the dates shown on the Repayment Schedule; provided, however, that the entire Principal Amount, together will all accrued and unpaid interest and any other charges, advances, and fees, if any, outstanding hereunder, shall be due and payable to Holder in full on the earlier of (i) the Maturity Date, or (ii) upon the acceleration of this Note in accordance with the terms hereof.

Borrower acknowledges that Borrower shall be solely responsible for making timely Payments in accordance with the Repayment Schedule and that Holder has no duty or obligation to notice or warn Borrower at the time when Payments become due. Payments will be delivered when due to Lender via domestic wire to: **Now Playing, LLC, Wells Fargo, NA, Routing #: 063 107 513, Account # 558 214 1734**. Holder may amend where payments must be written through providing Borrower prior written notice.

All Payments shall be applied first to accrued interest due, and thereafter to the outstanding Principal Amount. Any outstanding Principal and interest, together with any and all other unpaid amounts that are owed by Borrower to Holder under this Note, and/or any other Loan Documents executed in connection herewith, shall be due and payable on the earlier of (i) the Maturity Date, or (ii) the acceleration of the obligations and liabilities owing by Borrower to Holder under this Note, and/or any other Loan Documents executed in connection herewith, in accordance with the terms hereof or thereof.

The Principal Amount outstanding shall bear interest at a rate of interest per annum equal to 12% ("**Interest Rate**"). The Interest Rate shall be calculated based on a 360-day year and charged for the actual number of days elapsed beginning as of the Effective Transaction Date of this Note.

Notwithstanding any provision to the contrary contained in this Note and/or any Loan Documents executed in connection herewith, in no event shall the interest rate charged on the Loan exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable for any reason shall be deemed received on account of, and will automatically be applied to reduce, the outstanding Principal Amount and any other sums (other than interest) due and payable to Provider under this Note, and the provisions hereof shall be deemed amended and modified to provide for the highest rate of interest permitted under applicable law.

8. EXTENSIONS & RENEWALS. Borrower consents to any extension, renewals, or modifications of this Note or any part thereof without notice, and Borrower agrees that it will remain liable as such during any extension, renewal, or modification hereof until the Loan is fully paid.

9. RETURNED CHECKS DUE TO INSUFFICIENT FUNDS. Borrower accepts and acknowledges that a fee of Twenty Dollars (USD $20.00) will be charged and applied to the Principal Amount for any check returned that was made by Borrower to Holder due to insufficient funds in Borrower's account.

10. PREPAYMENT. Provided that Borrower is not in default of the terms, covenants, and conditions of this Note pursuant to an Event of Default, this Note may be prepaid any time without penalty, in whole or in part, and only with express written permission from Holder, by paying Holder an amount equal to the sum of (i) the Principal Amount then outstanding; (ii) all interest due; and (iii) any late charge and/or other charges or fees then due and owed to Holder. In the event Holder provides express written permission, Borrower may prepay all or part of this Note, which prepaid amounts shall be applied to the Principal Amount due in reverse order of their due dates and shall be credited to installments of the Principal Amount in the inverse order of its maturity.

In the event Borrower is in default and/or has not acquired express written permission from Holder: (i) no portion of the Principal Amount or interest thereon may be prepaid. In the event that any Payment (or portion thereof) is received by Holder in advance of the Maturity Date or the acceleration of Borrower's duties and obligation according to this Note, such Payment (or portion thereof) shall not be credited against the obligations of Borrower under this Note and/or the Loan Documents executed in connection herewith ("**Obligations**") until the next, applicable due date noted on the Repayment Schedule; and (ii) in the event that Holder receives Payment hereunder in excess of the scheduled amount of a Payment pursuant to the Repayment Schedule, such excess shall be allocated to future Payments (up to the otherwise unpaid scheduled amounts thereof) and credited against the Obligations on the applicable due date of such future Payment as they become due.

11. SECURITY. Borrower agrees and acknowledges that until the Principal Amount and interest owed under this Note are paid in full, this Note will be secured by Borrower's contract with Winnepeg Jets Hockey Club Limited, as assigned to Buffalo Sabres Hockey Club ("**Borrower's Team**") with a date of execution on July 1, 2012. In the event Borrower is traded, moves to, or signs a free-agent contract with another team based within the United States or outside of the United States while this Note remains outstanding and in effect, this

Note will be secured by whatever subsequent contract(s) Borrower enters into that replaces or follows the contract identified herein.

In the Event of Default, or upon Lender's choosing in Lender's sole discretion, Borrower will be required to enter into a team direction agreement ("**Direct Deposit Agreement**") with Borrower's Team and Holder under which all monies paid to Borrower by Borrower's Team, up to the amount owing by Borrower to Holder under this Note, shall be directly deposited into an account maintained by Holder, or of Holder's choosing, until Holder is paid in full. Borrower shall indemnify and hold harmless Holder, its affiliates, and its directors, officers, agents, attorneys, and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including, without limitation, any and all court costs and reasonably incurred attorney's fees, in any way related to or arising out of or in connection with the Direct Deposit Agreement, except as may result solely from the gross negligence or willful misconduct of Holder. Borrower's obligation to make all Payments required by this Note in accordance with the Repayment Schedule is independent of any obligation of Borrower's Team or under the Direct Deposit Agreement and any obligation of Lender under any other Loan Document. Under no circumstances shall the failure of Borrower's Team to comply with its obligations under the Direct Deposit Agreement or the failure of Lender to comply with its obligations under any Loan Document in any manner limit, reduce, or otherwise affect the obligation of Borrower under this Note or serve as a defense to the nonpayment of any amounts due hereunder.

In the event Borrower's contract expires or Borrower's Team files for bankruptcy, Borrower will be held personally liable for any outstanding Principal Amount and interest thereon, plus any increases due to a failure to pay or additional loan by Lender to Borrower under the terms of this Note.

Borrower hereby consents to the issuance of a continuing writ of garnishment or attachment against his disposable earnings in order to satisfy, in whole or in part, any money judgment entered in favor of Lender pursuant to this Note and shall sign the "**Florida Garnishment Exemption Waiver**," attached hereto as **Exhibit B**.

This Note shall be the joint and several obligation of Borrower, and Borrower's sureties, guarantors, and endorsers hereof, and shall be binding upon them and their respective heirs, executors, administers, successors, administrators, personal representatives, and permitted assigns. Borrower shall pay the costs of all documentary, revenue, tax, or other stamps now or hereafter required by any law at any time to be affixed to or which are otherwise made necessary as a result of this Note, and if any taxes be imposed with respect to debts secured by mortgages and/or deeds of trust with respect to notes evidencing debts so secured, Borrower agrees to pay Holder the full amount of any such taxes, and hereby waives any contrary provisions of any laws or rules of court now or hereafter in effect.

## IV.    REMEDIES

12. REPRESENTATIONS AND WARRANTIES. Borrower hereby makes the following representations and warranties, before and after giving effect to the transactions contemplated hereby this

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 361 of 455



Note: (i) There is no claim, action, lawsuit, proceeding, arbitration, complaint, charge or investigation pending, or to the Borrower's knowledge, currently threatened against or involving Borrower; and (ii) Borrower has no obligations to make payments to any third party pursuant to any instrument, judgment, order, writ, decree, note, or indenture.

13. EVENTS OF DEFAULT. The occurrence of any of the following event shall constitute and "**Event of Default**" under this Note:

    a) The failure by Borrower to pay or otherwise satisfy, or cause to be paid or otherwise satisfied, the Principal Amount and any interest accrued thereon, as accrued, as and when due in accordance with the Repayment Schedule and the terms hereof;

    b) The voluntary filing by Borrower of a petition in bankruptcy or other action by Borrower seeking protection from Borrower's creditors under bankruptcy or insolvency laws (each a "**Voluntary Petition**," and collectively, the "**Voluntary Petitions**");

    c) The filing of an involuntary bankruptcy petition by Borrower's creditors, together with the failure of such petition to be dismissed, rescinded, or otherwise rendered of no further legal effect within sixty (60) days (each an "**Involuntary Petition**," and collectively, the "**Involuntary Petitions**," and together with the Voluntary Petitions, "**Insolvency Petitions**");

    d) Any breach or violation by Borrower of Borrower's representations, warranties, covenants, agreements or obligations under this Note or any other Loan Document (Borrower acknowledges that all such representations, covenants, warranties, agreements and obligations of Borrower are fundamental and a material inducement for Lender to enter into this Note and the Loan Documents, and that any breach, regardless of degree or nature, shall be considered material in nature and an Event of Default hereunder);

    e) Any voluntary alteration by Borrower of the withholdings or deductions made from time to time by Borrower's Team from sums due and owing to Borrower under Borrower's contract with Borrower's Team in any manner that is materially inconsistent with Borrower's prior withholdings or deductions, or that materially reduces the net amount of any payment to be made by Borrower's Team under Borrower's contract with Borrower's Team;

    f) In the event of the assignment of Borrower's contract with Borrower's Team by Borrower's Team, any failure by such assignee to execute and deliver to Lender, within ten (10) days following the effectiveness of such assignment, a duly executed written undertaking evidencing such assignee's agreement to perform and be bound by the obligations of the assignor under the Direct Deposit Agreement for so long as this Note shall remain outstanding and in effect;

g) The unenforceability of any material term or condition of this Note or any other Loan Document;

h) If Borrower makes an assignment of this Note for the benefit of creditors, or admits in writing Borrower's inability to make Payments according to the Repayment Schedule as they become due; or

i) The occurrence of any event defined as an "Event of Default" according to any Loan Documents executed in connection herewith this Note.

Upon the occurrence of an Event of Default, and – except as provided for herein – if said Event of Default shall remain uncured for a period of ten (10) days, at the option and upon the declaration of Holder and upon written notice to Borrower ("**Acceleration Notice**"), the entire unpaid Principal Amount and accrued and unpaid interest thereon shall, without presentment, demand, protest, or prior written notice of any kind, all of hereby are expressly waived, be forthwith due and payable, and Holder may, immediately and without expiration of any applicable grace period, enforce Payment of all amounts due and owing under this Note and exercise all other remedies granted to Holder at law, equity, or otherwise.

Furthermore and in addition to the foregoing, upon the occurrence of an Event of Default, this Note, at the option of Holder, shall bear interest on the Principal Amount and any other outstanding obligations under the Note at a per annum rate equal to the lesser of (i) Twenty Percent (20%), or (ii) the maximum interest rate that Borrower may by law be required to pay ("**Default Rate**"). The Default Rate shall be computed beginning from the occurrence of the Event of Default (without regard to any notice or grace period) until the earlier of the date upon which (i) the Event of Default is cured to the Holder's sole satisfaction, or (ii) all obligations and liabilities under the Note are paid in full in cash, or via any legal tender agreed to be accepted by Holder.

14. <u>ACCELERATION.</u> In addition to Holder's right to demand Payment in full of all obligations and liabilities owed by Maker to Lender under this Note and/or any other Loan Documents executed in connection herewith upon the occurrence of an Event of Default, Lender shall have the right to demand immediate Payment of the outstanding Principal Amount and all interest accrued thereon if Borrower is offered terms similar to the financing contemplated for Maker in the "**Now Playing Term Sheet**," attached hereto as **Exhibit C**.

15. <u>BANKRUPTCY.</u> Borrower hereby acknowledges that in the event Borrower becomes a party to an Insolvency Petition, whether voluntary or involuntary, under the United States Bankruptcy Code or any other insolvency law of any state or of the United States, whether or not an Event of Default shall have occurred hereunder, Lender will be required to retain legal counsel in order to represent its interest pursuant to the terms of this Note. In such event, to the extent permitted by law, and subject to the approval of the United States Bankruptcy Court, Borrower agrees to reimburse and pay Lender, upon demand, any and all attorney's fees and costs, including, without limitation, court costs incurred by Lender in connection with any and all aspects of such representation. Without limiting the generality of the foregoing, Lender shall be entitled to reimbursement of all attorney's fees and costs incurred in connection with



consultation concerning the bankruptcy filing, negotiation concerning the treatment of Lender, consultation concerning the impact of the proposals by Borrower regarding administration of the bankruptcy estate, preparation and filing of proofs of claim, and the filing and prosecution of motions and/or adversary proceedings. To the fullest extent permitted by law, the fees and costs referred to herein shall be deemed part of the overall obligation owed by Borrower to Lender and shall bear interest at the applicable Interest Rate set forth in this Note from the date the attorney's fees and costs are incurred by Lender.

16. DELAY. The failure or delay by Holder in the exercise of any power, right, or privilege, or to declare any default hereunder, shall not operate as a novation of this Note or as a waiver thereof. Any and all waivers of any term or provision contained in this Note, or any power, right, or privilege bestowed upon Holder hereunder, must be in writing, signed by Holder.

17. CUMULATIVE. The remedies under this Note shall be cumulative in nature, concurrent, and may be pursued singularly or successively together, at the sole discretion of Holder, and may be exercised as often as occurrence thereof. All rights and remedies existing hereunder are cumulative, and not exclusive of, any rights or remedies otherwise available.

18. COSTS. Borrower shall be liable to pay all reasonable and necessary Collection Costs, including, without limitation, those relating to reasonable attorney's fees incurred by Lender due to Borrower's failure to make Payment as described herein and/or Lender's enforcement of this Note, whether by court action or otherwise.

19. NO INJUNCTIVE RELIEF. Borrower hereby waives the right to assert a claim or counterclaim against Lender for injunctive relief and/or specific performance arising out of or relating to this Note, including, without limitation, any claim or counterclaim against Lender relating to the exercise of Lender's rights and remedies arising out of or relating to this Note. Borrower hereby acknowledges that any claim or counterclaim against Lender arising out of or relating to this Note can be adequately remedied by action at law for money damages.

20. WAIVER OF JURY TRIAL. Lender and Borrower hereby knowingly, voluntarily, and intentionally waive the right either may have to a trial by jury in respect to any litigation based hereon, or arising out or, under, or in connection with this Note and/or any Loan Documents executed in connection herewith, or any course of conduct, course of dealing, statements (whether oral or written) or actions of either party. Borrower hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

## V.    MISCELLANEOUS

21. BINDING. This Note shall be binding upon Borrower and Borrower's successors and permitted assigns, and shall inure to the benefit of Lender and its successors and permitted assigns, and may be assigned by Lender without seeking prior approval from Borrower. Borrower may not assign this Note or any of Borrower's obligations and liabilities hereunder without the prior written consent of Lender. Any such purported assignment in contravention of this provision shall be null and void.

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 364 of 455



22. WAIVERS AND ACKNOWLEDGEMENTS OF BORROWER. Borrower hereby (i) waives presentment for payment, demand, protest and notice of presentment, notice of acceleration, notice of protest, notice of nonpayment, notice of dishonor, and each and every notice of any kind respecting this Note and the enforcement hereof; (ii) agrees and acknowledges that Lender at any time or times, without notice to or obtaining Borrower's consent, may grant extensions of time, without limit as to the number of the aggregate period of such extensions, for the Payment of any amounts owed pursuant to the Principal Amount, plus interest and/or other sums due and owed to Lender hereunder; (iii) waives all exemptions under the laws of the State of Florida and/or any other state or territory of the United States of America, to the fullest extent permitted by law; and (iv) waives the benefit of any law or rule intended for Borrower's advantage or protection as an obligor under this Note under this Note or providing for Borrower's release or discharged from liability under this Note, in whole or in part, on account of any facts or circumstances other than full and complete payment of all amounts due under this Note.

23. RELATIONSHIP. Lender and Borrower intend that the relationship created and evidenced by this Note shall be solely that of debtor and creditor, and that nothing in this Note shall be construed or interpreted as creating a joint venture, partnership, or any other type of agency relationship between Lender and Borrower.

24. NOTICES. All notices or other communications hereunder shall be in writing and shall be sent via email or by prepaid first class U.S. mail to a party at its address given above, or to any other address as to which such party notifies the other, and shall be deemed given one (1) day following the issuance thereof if sent by email, or three (3) days following the deposit thereof with the United States Postal Service. All communications made by Borrower to Lender shall be copied and sent to Lender's counsel at: HEITNER LEGAL, P.L.L.C., ATTN: Darren A. Heitner, Esq., 1736 NE 7th Street, Fort Lauderdale, Florida 33304; email: Darren@heitnerlegal.com; provided, however, that the failure to provide notice to Lender's counsel shall not be deemed a material breach of this Note.

25. SEVERABILITY. Any term or provision of this Note that is deemed invalid or unenforceable by a court of competent jurisdiction shall be modified and enforced to the fullest extent permitted by law or statute, and shall not affect the validity or enforceability of the remaining terms and provisions hereof.

26. GOVERNING LAW; JURISDICTION. This Note shall be deemed entered into in the State of Florida, and shall be governed and construed under the laws of the State of Florida, without regard to conflict of law principles thereof. Borrower hereby irrevocably submits to the exclusive personal jurisdiction and venue of any state or federal court sitting in the State of Florida regarding any action or proceeding arising out of or relating to this Note, hereby waives any claims of objections or defenses thereto, and hereby irrevocably agrees that all claims in respect of such action or proceeding shall be heard and determined in such Florida state or federal court.

27. ENTIRE AGREEMENT. All understandings, representations and agreements heretofore with respect to this Note are merged into this Note, which, together with the Loan Documents

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 365 of 455



executed in connection herewith, fully and completely express the agreement between Lender and Borrower. Borrower acknowledges that neither Lender nor any other party acting in concert with Lender has made any representation, warranty, or statement to Borrower in order to induce Borrower into executing this Note, and hereby expressly waives any and all claims for fraud in the inducement.

The terms and provisions contained in this Note may not be terminated orally, or varied, discharged, altered, or modified except by a writing signed by the party to be charged therewith.

This Note may be executed in one or more counterparts, each of shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Any signature delivered by a party facsimile or electronic transmission shall be deemed an original signature hereto.

28. <u>AMBIGUITIES.</u> Each party acknowledges that its legal counsel has participated in the preparation of this Note and therefore stipulates that the rule of construction stating that ambiguities are to be resolved against the drafting party shall not be applied in the interpretation of this Note to favor one party against the other.

[INTENTIONALLY LEFT BLANK]
[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, and intending to be legally bound, the undersigned have caused this Note to be duly executed as of the Effective Transaction Date written above.

**BORROWER:**

By: Evander Kane

8447 Isabel Place
Vancouver BC V6P 6R8

**LENDER:**

By:    Leon C. McKenzie
Title:    President

Now Playing, LLC
1926 Hollywood Boulevard, Suite 307
Hollywood, Florida 33020

STATE OF _FL_ )
COUNTY OF _Broward_ )SS: FF 160485

On July 6, 2016, Evander Kane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

Notary Public



$200,000

July 7, 2016

## PROMISSORY NOTE

FOR VALUE RECEIVED, Evander Frank Kane ("Borrower"), promises to pay to the order of SCL-D, LLC ("Lender"), during regular business hours at Lender's office at 10000 Town Center Avenue, Suite #410 Columbia, MD 21044, or such other place as Lender may from time to time designate, the principal sum of $200,000 ("Loan"), with interest thereon at the rate or rates specified below until paid in full, and any and all other sums which may be owing to Lender by Borrower pursuant to this Promissory Note ("Note"), in accordance with the provisions set forth herein. This Note is made pursuant to and in accordance with the Loan and Security Agreement of even dated herewith between Borrower and Lender (as amended from time to time, "Loan Agreement"). Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the Loan is made, the terms of which are hereby incorporated herein by reference. Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

**1)    PRIMARY BUSINESS TERMS**

a)    _Maturity Date_.  The final and absolute maturity date of this Note ("Maturity Date") shall be October 16, 2016.

b)    _Interest Rate_.  From the date of this Note until all sums owed on this Note are paid in full, interest shall accrue on the principal balance outstanding under this Note at the rate of 15% _per annum_.  Interest shall be calculated on the basis of a 360 days per year factor applied to the actual days on which there exists a principal balance outstanding under this Note.

c)    _Payment_.  Monthly principal payments are required until the owed amount has been paid in full. Borrower shall make a payment to Lender in an amount equal to the "payment" for such date as set forth in the schedule attached hereto as <u>Exhibit A</u> ("Payment Schedule").  At Lender's option, all payments due under this Note may be automatically debited by Lender from any of Borrower's accounts. All payments made under this Note shall be made by such form of check, draft or other instrument as may be approved from time to time by Lender, and shall be payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. All payments made under this Note shall be applied first to late charges or other sums owed to Lender, next to accrued interest, and then to principal, or in such other order or proportion as Lender, in Lender's sole discretion, may elect from time to time.

d)    _Late Charge_.  If any payment due under this Note is not received by Lender within 5 calendar days after its due date, Borrower shall pay a late charge equal to 10% of the amount then due.

e)    _Prepayment_. Borrower may prepay this Note in whole or in part at any time or from time to time without premium or additional interest. All prepayments shall be applied to principal in the inverse order of scheduled maturities.

**2)    DEFAULT AND REMEDIES**

a)    _Events of Default_. Each of the following shall constitute an event of default under this Note ("Event of Default"):

      i)    A default in the payment of any sum due under this Note.

1

ii) A default in the performance of any of the covenants, conditions or terms of the Loan Agreement or any other agreement or document executed by Borrower or any other person for the benefit of Lender or any other holder in connection with the Loan (collectively with the Loan Agreement, "Loan Documents").

b) *Remedies*. Upon the occurrence of an Event of Default, in addition to all other rights and remedies available to Lender under the Loan Documents and applicable law, Lender shall have the following rights and remedies:

i) Acceleration. Lender, in Lender's sole discretion and without notice or demand, may declare the entire principal balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable; reference is made to the Loan Documents for further and additional rights on the part of Lender to declare the entire balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable.

ii) Default Interest Rate. Lender, in Lender's sole discretion and without notice or demand, may raise the rate of interest accruing on the principal balance outstanding under this Note to the lesser of (i) the rate that is 5 percentage points above the rate of interest otherwise applicable, or (ii) the maximum rate of interest that Lender may charge by applicable law, independent of whether the holder elects to accelerate the principal balance outstanding under this Note.

iii) Confession of Judgment. To the extent permitted by applicable law, Borrower authorizes any attorney designated by Lender or any clerk of any court of record to appear for Borrower and confess judgment against Borrower in favor of Lender for the full amount due on this Note (including principal, accrued interest, charges and fees), plus court costs, plus attorneys' fees equal to 15% of the amount due, all without prior notice or opportunity of Borrower for prior hearing, without stay of execution or right of appeal, and expressly waiving the benefit of all exemption laws and any irregularity or error in entering any such judgment. No single exercise of the power to confess judgment granted in this paragraph shall exhaust the power, regardless of whether such exercise is ruled invalid, void or voidable by any court, nor shall this Note, Lender's right to attorneys' fees in the amount described herein or any other obligation hereunder or under any other Loan Document merge into any such judgment. The power to confess judgment granted in this paragraph may be exercised from time to time as often as the holder of this Note may elect. Borrower acknowledges that the actual amount of attorneys' fees incurred by Lender would be impossible to calculate at the time judgment by confession is entered, as all such fees would not yet have been incurred. Accordingly, Borrower agrees that attorneys' fees equal to 15% of the amount due is reasonable given the circumstances.

iv) Setoff. Lender may set off any amounts in any account or represented by any certificate with Lender in the name of Borrower or in which Borrower has an interest. As additional security for this Note, Borrower hereby pledges and grants to Lender a lien on and security interest in, and authorizes Lender to offset such obligations of Borrower or any guarantor of the Loan to Lender against, all property of Borrower now or at any time hereafter in the possession of, in transit to, under the control of, or on deposit with Lender, in any capacity whatsoever, including without limitation, any balance of any deposit account and any credits with Lender.

c) *Expenses of Collection and Attorneys' Fees*. If this Note is referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, Borrower shall pay all of Lender's costs, fees and expenses, including reasonable attorneys' fees, resulting from such referral.

2

## 3) MISCELLANEOUS

a)   *Assignability*.  This Note may be assigned by Lender or any holder at any time or from time to time.  This Note shall inure to the benefit of and be enforceable by Lender and Lender's successors and assigns and any other person to whom Lender or any holder may grant an interest in Borrower's obligations under this Note, and shall be binding and enforceable against Borrower and Borrower's personal representatives, successors and assigns.

b)   *Negotiable Instrument*.  Borrower agrees that this Note shall be deemed a negotiable instrument even if this Note would not qualify under applicable law, absent this Section, as a negotiable instrument.

c)   *Choice of Law*.  This Note shall be governed by the laws of the State of Maryland.

d)   *Unconditional Obligations*.  Borrower's obligations under this Note shall be the absolute and unconditional duty and obligation of Borrower and shall be independent of any rights of set-off, recoupment or counterclaim which Borrower might otherwise have against the holder of this Note, and Borrower shall pay absolutely the payments of principal, interest, fees and expenses required under this Note, free of any deductions and without abatement, diminution or set-off.

e)   *Severability*.  In the event that any provision of this Note conflicts with applicable law, such conflict shall not affect other provisions of this Note which can be given effect without the conflicting provision, and to this end the provisions of this Note are declared to be severable.

f)   *Tense; Gender; Section Headings*.  In this Note, the singular includes the plural and *vice versa*; and each reference to any gender also applies to any other gender.  The section headings are for convenience only and are not part of this Note.

g)   *Time*.  Time is of the essence of this Note.

## 4) CONSENTS AND WAIVERS

a)   *Waiver of Presentment, Etc*.  Borrower waives presentment, notice of dishonor and protest.

b)   *Consent to Extensions, Etc*.  From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's option, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

c)   *Jury Trial Waiver*.  Borrower and Lender (by acceptance of this Note) jointly waive trial by jury in any action or proceeding to which Borrower and any holder of this Note may be parties, arising out of or in any way pertaining to this Note or any of the other Loan Documents.  It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Note.  This waiver is knowingly, willingly and voluntarily made by Borrower, and Borrower hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.  Borrower further represents that it has been represented in the signing of this

3

Note and in the making of this waiver by independent legal counsel, selected of its own free will, and that it has had the opportunity to discuss this waiver with counsel.

IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the date first written above.

WITNESS/ATTEST:                    **BORROWER:**

_____     _____(SEAL)
DOMINIQUE ZELAYA                        Evander Frank Kane

4

**Acknowledgment**

STATE OF ___FL___, CITY/COUNTY OF ___Broward___, TO WIT:

    I HEREBY CERTIFY that on the ___7th___ of ___July___ 2016 before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared Evander Frank Kane known to me or satisfactorily proven to be the person named in the foregoing document, and acknowledged that he executed the foregoing document for the purposes therein contained.

    IN WITNESS MY Hand and Notarial Seal.

_____(SEAL)
NOTARY PUBLIC

My Commission Expires:

___Sep 16, 2018___

5

## Exhibit A

## Loan Repayment Chart

| Payment | Date | Interest | Principal | Total |
|---------|--------|----------|-----------|-----------|
| 1 | Aug-16 | $0 | $0 | $0 |
| 2 | Sep-16 | $0 | $0 | $0 |
| 3 | Oct-16 | $7,500 | $200,000 | $207,500 |
| | | $7,500 | $200,000 | $207,500 |

6





July 7, 2016

Evander Kane
8447 Isabel Pl
Vancouver BC V6P 6R8

RE: $200k Loan between Evander Kane and SCL-D LLC

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires released out of my loan proceeds for the following:

- $8,000        Service/Underwriting Fee
- $50,500      Loan Payoff
- $500          Legal/Closing Fee

**Sure Sports Lending - $8,000**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL
Routing #:        121 000 248
Account #:       873 624 4040
Ref:                 Evander Kane

**Now Playing-$50,500**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:        063 107 513
Account #:       558 214 1734
Ref:                 Evander Kane

**Sure Sports Lending - $500**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:        121 000 248
Account #:       937 349 7966
Ref:                 Evander Kane





Please have the remaining funds wired to my account listed below:

**Evander Kane**
RBC Royal Bank
Atlanta, GA
Routing #: 063216608
Account #: 100050046

Sincerely,

Evander Kane

## PROMISSORY NOTE

**$4,150,000.00**

THIS PROMISSORY NOTE ("**Note**") is made and effective this 6th day of October, 2016 ("**Effective Transaction Date**"),

**BETWEEN: DEANGELO VEHICLE SALES, LLC**, a limited liability company duly organized and existing under the laws of the State of Pennsylvania ("**Lender**"), having a principal address located at 9 Banks Avenue, McAdoo, PA 18237;

**AND: EVANDER FRANK KANE**, an individual having an address located at 35 Ojibwa Circle, Buffalo, NY 14202 ("**Borrower**")

With each being referred to individually as a "**Party**," and collectively as the "**Parties**" throughout this Note.

### I. TERMS

FOR VALUE RECEIVED, Borrower, on behalf of himself and his heirs, executors, administrators, personal representatives, and permitted assigns promises to pay to the order of Lender, or its assigns (Lender and/or its assigns, as applicable, are collectively referred to as "**Holder**") or its respective designees, in accordance with the payment schedule attached hereto as **Exhibit A** ("**Repayment Schedule**"), the principal sum of Four Million, One Hundred and Fifty Thousand Dollars (USD $4,150,000.00) (the "**Loan**"), together with interest as provided herein, and all other Obligations (as defined herein) that may be owing by Borrower to Lender under the Loan Documents (as defined herein), from the date hereof until the earlier of (i) Maturity, or (ii) the acceleration of the obligations and liabilities owing by Borrower to Lender, as outlined hereunder.

### II. DEFINITIONS

1. MATURITY. "Maturity Date" shall mean as follows: Borrower acknowledges that Lender may exercise rights to invoke an earlier Maturity Date as follows: the term of the Note shall be for a period of six (6) months (the "Initial Term") and shall be automatically extended for two (2) additional six (6) month periods (collectively, the "Extension Periods"). Upon the expiration of the Initial Term and/or the first Extension Period, as applicable, the term of this Agreement shall automatically extend as provided herein unless Lender provides Borrower with at least thirty (30) days advanced written notice of Lender's intent not to extend the term ("No Extension Letter"). Upon Borrower's receipt of the No Extension Letter, the Initial Term or the first Extension Period, as applicable, shall terminate upon the expiration of the Initial Term, or first Extension Period, as applicable, and the Maturity Date shall be the last date of such term. For purposes of clarification, (i) in the event the Initial Term and Extension Periods are recognized in full, the Maturity Date shall mean April 15, 2018; (ii) in the event only the Initial Term is recognized in full, the Maturity Date shall mean April 15, 2017; and (iii) in the event

1



only the Initial Term and the first Extension Period are recognized in full, the Maturity Date shall mean October 15, 2017. The Initial Term and any and all extension period shall be known as the "Term" throughout this Agreement. In the event Lender exercises its rights to extend the Term via not providing Borrower with the No Extension Letter as provided herein, for each extension of the Term, Borrower shall pay an additional Four percent (4%) ("Extension Interest") on the remaining Principal Amount and any and all interest incurred thereon. The Extension Interest shall apply upon the beginning of the Extension Period(s).

2. PRINCIPAL. "**Principal**" or "**Principal Amount**" shall refer to the net disbursement amount of Four Million, One Hundred and Fifty Thousand Dollars (USD \$4,150,000.00), plus any increases due to a failure to pay or any additional loan made by Lender to Borrower under the terms of this Note.

Lender's sole obligation contained within this Note shall be to provide Borrower with the net disbursement amount of Four Million, One Hundred and Fifty Thousand Dollars (USD \$4,150,000.00). Borrower acknowledges that Lender shall have no obligation to lend additional monies to Borrower.

3. PAYMENT. "**Payment**" shall mean the transfer by Borrower to Lender of any monies due and payable to Lender under the terms of this Note. All Payments shall be made in legal currency of the United States (USD). Payments shall be made pursuant to and governed by the provisions contained in Section III of this Note.

4. EVENT OF DEFAULT. An "**Event of Default**" shall mean the happening of any of the occurrences outlined in Section IV of this Note.

5. COLLECTION COSTS. "**Collection Costs**" shall refer to any costs: (i) incurred by Borrower or Lender if this Note is placed in the hands of an attorney for the purpose of enforcement for collection; (ii) collected through lawsuit, probate, or bankruptcy court; or (iii) incurred by Borrower or Lender in the case of occurrence of any Event of Default under this Note.

6. LOAN DOCUMENTS. "**Loan Documents**" shall refer to the collection of documents delivered to Borrower in conjunction with this Note, including, without limitation, this Note, the "Loan and Security Agreement," the "Pledge Agreement," the "Direct Deposit Agreement," and/or any other documents provided by Lender to Borrower related to the subject matter of this Note.

### III. PAYMENT

7. PROMISE TO PAY. Borrower acknowledges that installments of the Principal Amount and interest as accrued thereon shall be due and payable to Holder in the amounts and on the dates shown on the Repayment Schedule; provided, however, that the entire Principal Amount, together will all accrued and unpaid interest and any other charges, advances, and fees, if any, outstanding hereunder, shall be due and payable to Holder in full on the earlier of (i) the Maturity Date, or (ii) upon the acceleration of this Note in accordance with the terms hereof.

2



Borrower shall maintain a direct deposit relationship with Holder and acknowledges that Borrower shall be solely responsible for making timely Payments in accordance with the Repayment Schedule and that Holder has no duty or obligation to notice or warn Borrower at the time when Payments become due. Payments will be delivered when due to Lender via domestic wire to: **DeAngelo Vehicle Sales, LLC, Landmark Community Bank, 383 S. Poplar Street, Hazelton, PA 18201, Routing #: 031 318 677, Account # 511527**. Holder may amend where payments must be written through providing Borrower prior written notice.

All Payments shall be applied first to accrued interest due, and thereafter to the outstanding Principal Amount. Any outstanding Principal and interest, together with any and all other unpaid amounts that are owed by Borrower to Holder under this Note, and/or any other Loan Documents executed in connection herewith, shall be due and payable on the earlier of (i) the Maturity Date, or (ii) the acceleration of the obligations and liabilities owing by Borrower to Holder under this Note, and/or any other Loan Documents executed in connection herewith, in accordance with the terms hereof or thereof.

The Principal Amount outstanding shall bear interest at a rate of interest per annum equal to 12% ("**Interest Rate**"). The Interest Rate shall be calculated based on a 360-day year and charged for the actual number of days elapsed beginning as of the Effective Transaction Date of this Note.

Notwithstanding any provision to the contrary contained in this Note and/or any Loan Documents executed in connection herewith, in no event shall the interest rate charged on the Loan exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the outstanding Principal Amount and any other sums (other than interest) due and payable to Holder under this Note, and the provisions hereof shall be deemed amended and modified to provide for the highest rate of interest permitted under applicable law.

8. EXTENSIONS & RENEWALS. Borrower consents to any extension, renewals, or modifications of this Note or any part thereof without notice, and Borrower agrees that it will remain liable as such during any extension, renewal, or modification hereof until the Loan is fully paid.

9. RETURNED CHECKS DUE TO INSUFFICIENT FUNDS. Borrower accepts and acknowledges that a fee of Twenty Dollars (USD $20.00) will be charged and applied to the Principal Amount for any check returned that was made by Borrower to Holder due to insufficient funds in Borrower's account.

10. PREPAYMENT. Provided that Borrower is not in default of the terms, covenants, and conditions of this Note pursuant to an Event of Default, this Note may be prepaid any time without penalty, in whole or in part, by paying Holder an amount equal to the sum of (i) the Principal Amount then outstanding; (ii) all interest due; and (iii) any late charge and/or other charges or fees then due and owed to Holder. Borrower may prepay all or part of this Note, which prepaid amounts shall be applied to the Principal Amount due in reverse order of their due dates, and shall be credited to installments of the Principal Amount in the inverse order of its maturity.

3

In the event Borrower is in default: (i) no portion of the Principal Amount or interest thereon may be prepaid. In the event that any Payment (or portion thereof) is received by Holder in advance of the Maturity Date or the acceleration of Borrower's duties and obligation according to this Note, such Payment (or portion thereof) shall not be credited against the obligations of Borrower under this Note and/or the Loan Documents executed in connection herewith ("**Obligations**") until the next, applicable due date noted on the Repayment Schedule; and (ii) in the event that Holder receives Payment hereunder in excess of the scheduled amount of a Payment pursuant to the Repayment Schedule, such excess shall be allocated to future Payments (up to the otherwise unpaid scheduled amounts thereof) and credited against the Obligations on the applicable due date of such future Payment as they become due.

11. SECURITY. Borrower agrees and acknowledges that until the Principal Amount and interest owed under this Note are paid in full, this Note will be secured by Borrower's contract with Winnipeg Jets Hockey Club Limited Partnership ("**Borrower's Team**") with a date of execution on or around September 15, 2012, as assigned to Hockey Western New York, LLC d/b/a Buffalo Sabres. In the event Borrower is traded, moves to, or signs a free-agent contract with another team based within the United States or outside of the United States while this Note remains outstanding and in effect, this Note will be secured by whatever subsequent contract(s) Borrower enters into that replaces or follows the contract identified herein.

In the Event of Default, or upon Lender's choosing in Lender's sole discretion, Borrower will be required to enter into a team direction agreement ("**Direct Deposit Agreement**") with Borrower's Team and Holder under which all monies paid to Borrower by Borrower's Team, up to the amount owing by Borrower to Holder under this Note, shall be directly deposited into an account maintained by Holder, or of Holder's choosing, until Holder is paid in full. Borrower shall indemnify and hold harmless Holder, its affiliates, and its directors, officers, agents, attorneys, and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including, without limitation, any and all court costs and reasonably incurred attorney's fees, in any way related to or arising out of or in connection with the Direct Deposit Agreement, except as may result solely from the gross negligence or willful misconduct of Holder. Borrower's obligation to make all Payments required by this Note in accordance with the Repayment Schedule is independent of any obligation of Borrower's Team or under the Direct Deposit Agreement and any obligation of Lender under any other Loan Document. Under no circumstances shall the failure of Borrower's Team to comply with its obligations under the Direct Deposit Agreement or the failure of Lender to comply with its obligations under any Loan Document in any manner limit, reduce, or otherwise affect the obligation of Borrower under this Note or serve as a defense to the nonpayment of any amounts due hereunder.

In the event Borrower's contract expires or Borrower's Team files for bankruptcy, Borrower will be held personally liable for any outstanding Principal Amount and interest thereon, plus any increases due to a failure to pay or additional loan by Lender to Borrower under the terms of this Note.

4

Borrower hereby consents to the issuance of a continuing writ of garnishment or attachment against his disposable earnings in order to satisfy, in whole or in part, any money judgment entered in favor of Lender pursuant to this Note.

This Note shall be the joint and several obligation of Borrower, and Borrower's sureties, guarantors, and endorsers hereof, and shall be binding upon them and their respective heirs, executors, administers, successors, administrators, personal representatives, and permitted assigns. Borrower shall pay the costs of all documentary, revenue, tax, or other stamps now or hereafter required by any law at any time to be affixed to or which are otherwise made necessary as a result of this Note, and if any taxes be imposed with respect to debts secured by mortgages and/or deeds of trust with respect to notes evidencing debts so secured, Borrower agrees to pay Holder the full amount of any such taxes, and hereby waives any contrary provisions of any laws or rules of court now or hereafter in effect.

## IV.    REMEDIES

12. REPRESENTATIONS AND WARRANTIES. Borrower hereby makes the following representations and warranties, before and after giving effect to the transactions contemplated hereby this Note: (i) There is no claim, action, lawsuit, proceeding, arbitration, complaint, charge or investigation pending, or to the Borrower's knowledge, currently threatened against or involving Borrower; (ii) Borrower has no obligations to make payments to any third party pursuant to any instrument, judgment, order, writ, decree, note, or indenture; and (iii) in the event Borrower does have other obligations to make payments to a third party pursuant to any written instrument, Borrower has fully informed Lender of same, in addition to any liens placed on Borrower's property pursuant to such obligations, via the "**Other Current Liabilities / Liens of Borrower**" document attached hereto as **Exhibit B**.

13. EVENTS OF DEFAULT. The occurrence of any of the following event shall constitute and "**Event of Default**" under this Note:

   a) The failure by Borrower to pay or otherwise satisfy, or cause to be paid or otherwise satisfied, the Principal Amount and any interest accrued thereon, as accrued, as and when due in accordance with the Repayment Schedule and the terms hereof (i.e. by the Maturity Date);

   b) The voluntary filing by Borrower of a petition in bankruptcy or other action by Borrower seeking protection from Borrower's creditors under bankruptcy or insolvency laws (each a "**Voluntary Petition**," and collectively, the "**Voluntary Petitions**");

   c) The filing of an involuntary bankruptcy petition by Borrower's creditors, together with the failure of such petition to be dismissed, rescinded, or otherwise rendered of no further legal effect within sixty (60) days (each an "**Involuntary Petition**," and collectively, the "**Involuntary Petitions**," and together with the Voluntary Petitions, "**Insolvency Petitions**");

5

d) Any breach or violation by Borrower of Borrower's representations, warranties, covenants, agreements or obligations under this Note or any other Loan Document (Borrower acknowledges that all such representations, warranties, covenants, agreements and obligations of Borrower are fundamental and a material inducement for Lender to enter into this Note and the Loan Documents, and that any breach, regardless of degree or nature, shall be considered material in nature and an Event of Default hereunder);

e) Any voluntary alteration by Borrower of the withholdings or deductions made from time to time by Borrower's Team from sums due and owing to Borrower under Borrower's contract with Borrower's Team in any manner that is materially inconsistent with Borrower's prior withholdings or deductions, or that materially reduces the net amount of any payment to be made by Borrower's Team under Borrower's contract with Borrower's Team;

f) In the event of the assignment of Borrower's contract with Borrower's Team by Borrower's Team, any failure by such assignee to execute and deliver to Lender, within ten (10) days following the effectiveness of such assignment, a duly executed written undertaking evidencing such assignee's agreement to perform and be bound by the obligations of the assignor under the Direct Deposit Agreement for so long as this Note shall remain outstanding and in effect;

g) The unenforceability of any material term or condition of this Note or any other Loan Document;

h) If Borrower makes an assignment of this Note for the benefit of creditors, or admits in writing Borrower's inability to make Payments according to the Repayment Schedule as they become due; or

i) The occurrence of any event defined as an "Event of Default" according to any Loan Documents executed in connection herewith this Note.

Upon the occurrence of an Event of Default, and if said Event of Default shall remain uncured for a period of ten (10) days, at the option and upon the declaration of Holder and upon written notice to Borrower ("**Acceleration Notice**"), the entire unpaid Principal Amount and accrued and unpaid interest thereon shall, without presentment, demand, protest, or prior written notice of any kind, all of hereby are expressly waived, be forthwith due and payable, and Holder may, immediately and without expiration of any applicable grace period, enforce Payment of all amounts due and owing under this Note and exercise all other remedies granted to Holder at law, equity, or otherwise.

Furthermore and in addition to the foregoing, upon the occurrence of an Event of Default, this Note shall bear interest on the Principal Amount and any other outstanding obligations under the Note at a per annum rate equal to the lesser of (i) Ten Percent (10%), or (ii) the maximum interest rate that Borrower may by law be required to pay ("**Default Rate**"). The Default Rate shall be computed beginning from the occurrence of the Event of Default (without regard to

6



any notice or grace period) until the earlier of the date upon which (i) the Event of Default is cured to the Holder's sole satisfaction, or (ii) all obligations and liabilities under the Note are paid in full in cash, or via any legal tender agreed to be accepted by Holder.

14. ACCELERATION. In addition to Holder's right to demand Payment in full of all obligations and liabilities owed by Borrower to Lender under this Note and/or any other Loan Documents executed in connection herewith upon the occurrence of an Event of Default, Lender shall have the right to demand immediate Payment of the outstanding Principal Amount and all interest accrued thereon if Borrower is offered terms similar to the financing contemplated for Borrower in the "**Sure Sports Lending Term Sheet**," attached hereto as **Exhibit C**.

15. BANKRUPTCY. Borrower hereby acknowledges that in the event Borrower becomes a party to an Insolvency Petition, whether voluntary or involuntary, under the United States Bankruptcy Code or any other insolvency law of any state or of the United States, whether or not an Event of Default shall have occurred hereunder, Lender will be required to retain legal counsel in order to represent its interest pursuant to the terms of this Note. In such event, to the extent permitted by law, and subject to the approval of the United States Bankruptcy Court, Borrower agrees to reimburse and pay Lender, upon demand, any and all attorney's fees and costs, including, without limitation, court costs incurred by Lender in connection with any and all aspects of such representation. Without limiting the generality of the foregoing, Lender shall be entitled to reimbursement of all attorney's fees and costs incurred in connection with consultation concerning the bankruptcy filing, negotiation concerning the treatment of Lender, consultation concerning the impact of the proposals by Borrower regarding administration of the bankruptcy estate, preparation and filing of proofs of claim, and the filing and prosecution of motions and/or adversary proceedings. To the fullest extent permitted by law, the fees and costs referred to herein shall be deemed part of the overall obligation owed by Borrower to Lender and shall bear interest at the applicable Interest Rate set forth in this Note from the date the attorney's fees and costs are incurred by Lender.

16. DELAY. The failure or delay by Holder in the exercise of any power, right, or privilege, or to declare any default hereunder, shall not operate as a novation of this Note or as a waiver thereof. Any and all waivers of any term or provision contained in this Note, or any power, right, or privilege bestowed upon Holder hereunder, must be in writing, signed by Holder.

17. CUMULATIVE. The remedies under this Note shall be cumulative in nature, concurrent, and may be pursued singularly or successively together, at the sole discretion of Holder, and may be exercised as often as occurrence thereof. All rights and remedies existing hereunder are cumulative, and not exclusive of, any rights or remedies otherwise available.

18. COSTS. Borrower shall be liable to pay all reasonable and necessary Collection Costs, including, without limitation, those relating to reasonable attorney's fees incurred by Lender due to Borrower's failure to make Payment as described herein and/or Lender's enforcement of this Note, whether by court action or otherwise.

19. NO INJUNCTIVE RELIEF. Borrower hereby waives the right to assert a claim or counterclaim against Lender for injunctive relief and/or specific performance arising out of or relating to

7

this Note, including, without limitation, any claim or counterclaim against Lender relating to the exercise of Lender's rights and remedies arising out of or relating to this Note. Borrower hereby acknowledges that any claim or counterclaim against Lender arising out of or relating to this Note can be adequately remedied by action at law for money damages.

20. WAIVER OF JURY TRIAL. Lender and Borrower hereby knowingly, voluntarily, and intentionally waive the right either may have to a trial by jury in respect to any litigation based hereon, or arising out or, under, or in connection with this Note and/or any Loan Documents executed in connection herewith, or any course of conduct, course of dealing, statements (whether oral or written) or actions of either Party. Borrower hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

21. CONFESSION OF JUDGMENT. Lender acknowledges that Borrower's execution of this Note and providing of the Loan is contingent upon, and is primarily induced by, Lender's execution of the affidavit of Confession of Judgment ("**Affidavit**") provided by Borrower in conjunction with the Loan Documents. Lender acknowledges that the Affidavit is legal document executed under penalty of perjury, and shall be enforceable in any court of law in the jurisdiction governing the execution of this Note.

## V. MISCELLANEOUS

22. BINDING. This Note shall be binding upon Borrower and Borrower's successors and permitted assigns, and shall inure to the benefit of Lender and its successors and permitted assigns, and may be assigned by Lender without seeking prior approval from Borrower. Borrower may not assign this Note or any of Borrower's obligations and liabilities hereunder without the prior written consent of Lender. Any such purported assignment in contravention of this provision shall be null and void.

23. WAIVERS AND ACKNOWLEDGEMENTS OF BORROWER. Borrower hereby (i) waives presentment for payment, demand, protest and notice of presentment, notice of acceleration, notice of protest, notice of nonpayment, notice of dishonor, and each and every notice of any kind respecting this Note and the enforcement hereof; (ii) agrees and acknowledges that Lender at any time or times, without notice to or obtaining Borrower's consent, may grant extensions of time, without limit as to the number of the aggregate period of such extensions, for the Payment of any amounts owed pursuant to the Principal Amount, plus interest and/or other sums due and owed to Lender hereunder; (iii) waives all exemptions, including, without limitation, with regard to garnishment, under the laws of the State of New York and/or any other state or territory of the United States of America, to the fullest extent permitted by law; and (iv) waives the benefit of any law or rule intended for Borrower's advantage or protection as an obligor under this Note or providing for Borrower's release or discharge from liability under this Note, in whole or in part, on account of any facts or circumstances other than full and complete payment of all amounts due under this Note.

24. RELATIONSHIP. Lender and Borrower intend that the relationship created and evidenced by this Note shall be solely that of debtor and creditor, and that nothing in this Note shall be construed

8

or interpreted as creating a joint venture, partnership, or any other type of agency relationship between Lender and Borrower.

25. NOTICES. All notices or other communications hereunder shall be in writing and shall be sent via email or by prepaid first class U.S. mail to a Party at its address given above, or to any other address as to which such Party notifies the other, and shall be deemed given one (1) day following the issuance thereof if sent by email, or three (3) days following the deposit thereof with the United States Postal Service.

26. SEVERABILITY. Any term or provision of this Note that is deemed invalid or unenforceable by a court of competent jurisdiction shall be modified and enforced to the fullest extent permitted by law or statute, and shall not affect the validity or enforceability of the remaining terms and provisions hereof.

27. GOVERNING LAW; JURISDICTION. This Note shall be deemed entered into in the State of New York, and shall be governed and construed under the laws of the State of New York, without regard to conflict of law principles thereof. The Parties hereby irrevocably submit to the exclusive personal jurisdiction and venue of any state or federal court sitting in the State of New York regarding any action or proceeding arising out of or relating to this Note, hereby waive any claims of objections or defenses thereto, and hereby irrevocably agree that all claims in respect of such action or proceeding shall be heard and determined in such New York state or federal court.

28. ENTIRE AGREEMENT. All understandings, representations and agreements heretofore with respect to this Note are merged into this Note, which, together with the Loan Documents executed in connection herewith, fully and completely express the agreement between Lender and Borrower. Borrower acknowledges that neither Lender nor any other party acting in concert with Lender has made any representation, warranty, or statement to Borrower in order to induce Borrower into executing this Note, and hereby expressly waives any and all claims for fraud in the inducement.

The terms and provisions contained in this Note may not be terminated orally, or varied, discharged, altered, or modified except by a writing signed by the Party to be charged therewith.

This Note may be executed in one or more counterparts, each of shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Any signature delivered by a Party via facsimile or electronic transmission shall be deemed an original signature hereto.

29. AMBIGUITIES. Each Party acknowledges that its legal counsel has participated in the preparation of this Note and therefore stipulates that the rule of construction stating that ambiguities are to be resolved against the drafting Party shall not be applied in the interpretation of this Note to favor one Party against the other.

9

30. Legal Counsel. **THIS DOCUMENT CONTAINS LEGAL TERMS AND RIGHTS THAT AFFECT BORROWER. BORROWER HEREBY ACKNOWLEDGES THAT LENDER HAS ADVISED BORROWER TO SEEK INDEPENDENT LEGAL COUNSEL AND THAT BORROWER HAS SECURED OR HAS HAD THE OPPORTUNITY TO SECURE LEGAL COUNSEL TO REPRESENT BORROWER IN CONNECTION WITH THIS AGREEMENT.**

**IN WITNESS WHEREOF**, and intending to be legally bound, the undersigned have caused this Note to be duly executed as of the Effective Transaction Date written above.

**BORROWER:**

By: Evander Frank Kane

35 Ojibwa Circle
Buffalo, NY 14202

**LENDER:**

By: Paul Deangelo
*I have authority to bind Lender*

DeAngelo Vehicle Sales, LLC
9 Banks Avenue
McAdoo, PA 18237

STATE OF New York )
)SS:
COUNTY OF Erie )

On October , 6th , 2016, Evander Frank Kane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

Notary Public

JOHN P. DUFFY
Notary Public, State of NY
No. 01DU6299728
Qualified in Erie County
My Commission Expires March 31, 2018



October 6, 2016

Evander Kane
35 Ojibwa Circle
Buffalo, NY 14202

RE: $4.15M Loan between DeAngelo Vehicle Sales, LLC and Evander Kane

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires (respective account information listed below) released out of my loan proceeds for the following:

- $41,500     Service/Underwriting Fee (Partial)
- $3,300,000     Loan Payoff
- $207,500     Loan Payoff
- $71,392.85     PTD w/ Loss-of-Value Insurance Premium
- $95,385.67     Dishonor & Disgrace Insurance Premium
- $5,000     Legal/Closing Fee

### Sure Sports Lending - $41,500
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:     121 000 248
Account #:     873 624 4040
Ref:     Evander Kane

### Thrivest Specialty Funding - $3,300,000
WSFS Bank
500 Delaware Ave
Wilmington, DE 18901
Routing #:     031 100 102
Account #:     210 700 977
Ref:     Evander Kane

### SCL-D, LLC - $207,500
Wells Fargo Private Bank
7 St. Paul Street
Baltimore, MD 21202
Routing #:     121000248
Account #:     8252617637
Ref:     Evander Kane

### International Specialty Insurance - $71,392.85
BB&T
1661 North Bridge Street
Elkin, NC 28621
Routing #:     053101121
Account#:     0005200290110
Ref:     Evander Kane PTD LOV



 **SURESPORTS** LENDING

**International Specialty Insurance - $95,385.67**
BB&T
1661 North Bridge Street
Elkin, NC 28621
Routing#:      053101121
Account#:      0005200290110
Ref:           Evander Kane

**Sure Sports Lending - $5,000**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:     121 000 248
Account #:     937 349 7966
Ref:           Evander Kane

Please have the remaining funds wired to my account as follows:

**Evander Kane**
RBC Royal Bank
Atlanta, GA
Routing #:     063216608
Account #:     100050046

Sincerely,

Evander Kane

# PROMISSORY NOTE

**$580,000.00**

THIS PROMISSORY NOTE (**"Note"**) is made and effective this 23rd day of December, 2016 (**"Effective Transaction Date"**),

> **BETWEEN:** **DEANGELO VEHICLE SALES, LLC**, a limited liability company duly organized and existing under the laws of the State of Pennsylvania (**"Lender"**), having a principal address located at 9 Banks Avenue, McAdoo, PA 18237;
>
> **AND:** **EVANDER FRANK KANE**, an individual having an address located at 35 Ojibwa Circle, Buffalo, NY 14202 (**"Borrower"**)

With each being referred to individually as a **"Party,"** and collectively as the **"Parties"** throughout this Note.

## I.   TERMS

FOR VALUE RECEIVED, Borrower, on behalf of himself and his heirs, executors, administrators, personal representatives, and permitted assigns promises to pay to the order of Lender, or its assigns (Lender and/or its assigns, as applicable, are collectively referred to as **"Holder"**) or its respective designees, in accordance with the payment schedule attached hereto as **Exhibit A** (**"Repayment Schedule"**), the principal sum of Five Hundred, Eighty Thousand Dollars (USD $580,000.00) (the **"Loan"**), together with interest as provided herein, and all other Obligations (as defined herein) that may be owing by Borrower to Lender under the Loan Documents (as defined herein), from the date hereof until the earlier of (i) Maturity, or (ii) the acceleration of the obligations and liabilities owing by Borrower to Lender, as outlined hereunder.

## II.   DEFINITIONS

1. MATURITY. **"Maturity Date"** shall mean April 15, 2017.

2. PRINCIPAL. **"Principal"** or **"Principal Amount"** shall refer to the net disbursement amount of Five Hundred, Eighty Thousand Dollars (USD $580,000.00), plus any increases due to a failure to pay or any additional loan made by Lender to Borrower under the terms of this Note.

   Lender's sole obligation contained within this Note shall be to provide Borrower with the net disbursement amount of Five Hundred, Eighty Thousand Dollars (USD $580,000.00). Borrower acknowledges that Lender shall have no obligation to lend additional monies to Borrower.

1

3. <u>PAYMENT.</u> **"Payment"** shall mean the transfer by Borrower to Lender of any monies due and payable to Lender under the terms of this Note. All Payments shall be made in legal currency of the United States (USD). Payments shall be made pursuant to and governed by the provisions contained in Section III of this Note.

4. <u>EVENT OF DEFAULT.</u> An **"Event of Default"** shall mean the happening of any of the occurrences outlined in Section IV of this Note.

5. <u>COLLECTION COSTS.</u> **"Collection Costs"** shall refer to any costs: (i) incurred by Borrower or Lender if this Note is placed in the hands of an attorney for the purpose of enforcement for collection; (ii) collected through lawsuit, probate, or bankruptcy court; or (iii) incurred by Borrower or Lender in the case of occurrence of any Event of Default under this Note.

6. <u>LOAN DOCUMENTS.</u> **"Loan Documents"** shall refer to the collection of documents delivered to Borrower in conjunction with this Note, including, without limitation, this Note, the "Loan and Security Agreement," the "Pledge Agreement," the "Direct Deposit Agreement," and/or any other documents provided by Lender to Borrower related to the subject matter of this Note.

### III.   PAYMENT

7. <u>PROMISE TO PAY.</u> Borrower acknowledges that installments of the Principal Amount and interest as accrued thereon shall be due and payable to Holder in the amounts and on the dates shown on the Repayment Schedule; provided, however, that the entire Principal Amount, together will all accrued and unpaid interest and any other charges, advances, and fees, if any, outstanding hereunder, shall be due and payable to Holder in full on the earlier of (i) the Maturity Date, or (ii) upon the acceleration of this Note in accordance with the terms hereof.

Borrower shall maintain a direct deposit relationship with Holder and acknowledges that Borrower shall be solely responsible for making timely Payments in accordance with the Repayment Schedule and that Holder has no duty or obligation to notice or warn Borrower at the time when Payments become due. Payments will be delivered when due to Lender via domestic wire to: **DeAngelo Vehicle Sales, LLC, Landmark Community Bank, 383 S. Poplar Street, Hazelton, PA 18201, Routing #: 031 318 677, Account # 511527.** Holder may amend where payments must be written through providing Borrower prior written notice.

All Payments shall be applied first to accrued interest due, and thereafter to the outstanding Principal Amount. Any outstanding Principal and interest, together with any and all other unpaid amounts that are owed by Borrower to Holder under this Note, and/or any other Loan Documents executed in connection herewith, shall be due and payable on the earlier of (i) the Maturity Date, or (ii) the acceleration of the obligations and liabilities owing by Borrower to Holder under this Note, and/or any other Loan Documents executed in connection herewith, in accordance with the terms hereof or thereof.

2

The Principal Amount outstanding shall bear interest at a rate of interest per annum equal to 12% ("**Interest Rate**"). The Interest Rate shall be calculated based on a 360-day year and charged for the actual number of days elapsed beginning as of the Effective Transaction Date of this Note.

Notwithstanding any provision to the contrary contained in this Note and/or any Loan Documents executed in connection herewith, in no event shall the interest rate charged on the Loan exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the outstanding Principal Amount and any other sums (other than interest) due and payable to Holder under this Note, and the provisions hereof shall be deemed amended and modified to provide for the highest rate of interest permitted under applicable law.

8. EXTENSIONS & RENEWALS. Borrower consents to any extension, renewals, or modifications of this Note or any part thereof without notice, and Borrower agrees that it will remain liable as such during any extension, renewal, or modification hereof until the Loan is fully paid.

9. RETURNED CHECKS DUE TO INSUFFICIENT FUNDS. Borrower accepts and acknowledges that a fee of Twenty Dollars (USD $20.00) will be charged and applied to the Principal Amount for any check returned that was made by Borrower to Holder due to insufficient funds in Borrower's account.

10. PREPAYMENT. Provided that Borrower is not in default of the terms, covenants, and conditions of this Note pursuant to an Event of Default, this Note may be prepaid any time without penalty, in whole or in part, by paying Holder an amount equal to the sum of (i) the Principal Amount then outstanding; (ii) all interest due; and (iii) any late charge and/or other charges or fees then due and owed to Holder. Borrower may prepay all or part of this Note, which prepaid amounts shall be applied to the Principal Amount due in reverse order of their due dates, and shall be credited to installments of the Principal Amount in the inverse order of its maturity.

In the event Borrower is in default: (i) no portion of the Principal Amount or interest thereon may be prepaid. In the event that any Payment (or portion thereof) is received by Holder in advance of the Maturity Date or the acceleration of Borrower's duties and obligation according to this Note, such Payment (or portion thereof) shall not be credited against the obligations of Borrower under this Note and/or the Loan Documents executed in connection herewith ("**Obligations**") until the next, applicable due date noted on the Repayment Schedule; and (ii) in the event that Holder receives Payment hereunder in excess of the scheduled amount of a Payment pursuant to the Repayment Schedule, such excess shall be allocated to future Payments (up to the otherwise unpaid scheduled amounts thereof) and credited against the Obligations on the applicable due date of such future Payment as they become due.

11. SECURITY. Borrower agrees and acknowledges that until the Principal Amount and interest owed under this Note are paid in full, this Note will be secured by Borrower's contract with

3

Winnipeg Jets Hockey Club Limited Partnership ("**Borrower's Team**") with a date of execution on or around September 15, 2012, subsequently assigned to Hockey Western New York, LLC d/b/a Buffalo Sabres. In the event Borrower is traded, moves to, or signs a free-agent contract with another team based within the United States or outside of the United States while this Note remains outstanding and in effect, this Note will be secured by whatever subsequent contract(s) Borrower enters into that replaces or follows the contract identified herein.

In the Event of Default, or upon Lender's choosing in Lender's sole discretion, Borrower will be required to enter into a team direction agreement ("**Direct Deposit Agreement**") with Borrower's Team and Holder under which all monies paid to Borrower by Borrower's Team, up to the amount owing by Borrower to Holder under this Note, shall be directly deposited into an account maintained by Holder, or of Holder's choosing, until Holder is paid in full. Borrower shall indemnify and hold harmless Holder, its affiliates, and its directors, officers, agents, attorneys, and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including, without limitation, any and all court costs and reasonably incurred attorney's fees, in any way related to or arising out of or in connection with the Direct Deposit Agreement, except as may result solely from the gross negligence or willful misconduct of Holder. Borrower's obligation to make all Payments required by this Note in accordance with the Repayment Schedule is independent of any obligation of Borrower's Team or under the Direct Deposit Agreement and any obligation of Lender under any other Loan Document. Under no circumstances shall the failure of Borrower's Team to comply with its obligations under the Direct Deposit Agreement or the failure of Lender to comply with its obligations under any Loan Document in any manner limit, reduce, or otherwise affect the obligation of Borrower under this Note or serve as a defense to the nonpayment of any amounts due hereunder.

In the event Borrower's contract expires or Borrower's Team files for bankruptcy, Borrower will be held personally liable for any outstanding Principal Amount and interest thereon, plus any increases due to a failure to pay or additional loan by Lender to Borrower under the terms of this Note.

Borrower hereby consents to the issuance of a continuing writ of garnishment or attachment against his disposable earnings in order to satisfy, in whole or in part, any money judgment entered in favor of Lender pursuant to this Note.

This Note shall be the joint and several obligation of Borrower, and Borrower's sureties, guarantors, and endorsers hereof, and shall be binding upon them and their respective heirs, executors, administers, successors, administrators, personal representatives, and permitted assigns. Borrower shall pay the costs of all documentary, revenue, tax, or other stamps now or hereafter required by any law at any time to be affixed to or which are otherwise made necessary as a result of this Note, and if any taxes be imposed with respect to debts secured by mortgages and/or deeds of trust with respect to notes evidencing debts so secured, Borrower agrees to pay Holder the full amount of any such taxes, and hereby waives any contrary provisions of any laws or rules of court now or hereafter in effect.

4

## IV.   REMEDIES

12. <u>REPRESENTATIONS AND WARRANTIES.</u> Borrower hereby makes the following representations and warranties, before and after giving effect to the transactions contemplated hereby this Note: (i) There is no claim, action, lawsuit, proceeding, arbitration, complaint, charge or investigation pending, or to the Borrower's knowledge, currently threatened against or involving Borrower; (ii) Borrower has no obligations to make payments to any third party pursuant to any instrument, judgment, order, writ, decree, note, or indenture; and (iii) in the event Borrower does have other obligations to make payments to a third party pursuant to any written instrument, Borrower has fully informed Lender of same, in addition to any liens placed on Borrower's property pursuant to such obligations, via the **"Other Current Liabilities / Liens of Borrower"** document attached hereto as **<u>Exhibit B</u>**.

13. <u>EVENTS OF DEFAULT.</u> The occurrence of any of the following event shall constitute and **"Event of Default"** under this Note:

   a) The failure by Borrower to pay or otherwise satisfy, or cause to be paid or otherwise satisfied, the Principal Amount and any interest accrued thereon, as accrued, as and when due in accordance with the Repayment Schedule and the terms hereof (i.e. by the Maturity Date);

   b) The voluntary filing by Borrower of a petition in bankruptcy or other action by Borrower seeking protection from Borrower's creditors under bankruptcy or insolvency laws (each a **"Voluntary Petition,"** and collectively, the **"Voluntary Petitions"**);

   c) The filing of an involuntary bankruptcy petition by Borrower's creditors, together with the failure of such petition to be dismissed, rescinded, or otherwise rendered of no further legal effect within sixty (60) days (each an **"Involuntary Petition,"** and collectively, the **"Involuntary Petitions,"** and together with the Voluntary Petitions, **"Insolvency Petitions"**);

   d) Any breach or violation by Borrower of Borrower's representations, warranties, covenants, agreements or obligations under this Note or any other Loan Document (Borrower acknowledges that all such representations, warranties, covenants, agreements and obligations of Borrower are fundamental and a material inducement for Lender to enter into this Note and the Loan Documents, and that any breach, regardless of degree or nature, shall be considered material in nature and an Event of Default hereunder);

   e) Any voluntary alteration by Borrower of the withholdings or deductions made from time to time by Borrower's Team from sums due and owing to Borrower under Borrower's contract with Borrower's Team in any manner that is materially inconsistent with Borrower's prior withholdings or deductions, or that materially reduces the net amount of any payment to be made by Borrower's Team under Borrower's contract with Borrower's Team;

5

f) In the event of the assignment of Borrower's contract with Borrower's Team by Borrower's Team, any failure by such assignee to execute and deliver to Lender, within ten (10) days following the effectiveness of such assignment, a duly executed written undertaking evidencing such assignee's agreement to perform and be bound by the obligations of the assignor under the Direct Deposit Agreement for so long as this Note shall remain outstanding and in effect;

g) The unenforceability of any material term or condition of this Note or any other Loan Document;

h) If Borrower makes an assignment of this Note for the benefit of creditors, or admits in writing Borrower's inability to make Payments according to the Repayment Schedule as they become due; or

i) The occurrence of any event defined as an "Event of Default" according to any Loan Documents executed in connection herewith this Note.

Upon the occurrence of an Event of Default, and if said Event of Default shall remain uncured for a period of ten (10) days, at the option and upon the declaration of Holder and upon written notice to Borrower ("**Acceleration Notice**"), the entire unpaid Principal Amount and accrued and unpaid interest thereon shall, without presentment, demand, protest, or prior written notice of any kind, all of hereby are expressly waived, be forthwith due and payable, and Holder may, immediately and without expiration of any applicable grace period, enforce Payment of all amounts due and owing under this Note and exercise all other remedies granted to Holder at law, equity, or otherwise.

Furthermore and in addition to the foregoing, upon the occurrence of an Event of Default, this Note shall bear interest on the Principal Amount and any other outstanding obligations under the Note at a per annum rate equal to the lesser of (i) Ten Percent (10%), or (ii) the maximum interest rate that Borrower may by law be required to pay ("**Default Rate**"). The Default Rate shall be computed beginning from the occurrence of the Event of Default (without regard to any notice or grace period) until the earlier of the date upon which (i) the Event of Default is cured to the Holder's sole satisfaction, or (ii) all obligations and liabilities under the Note are paid in full in cash, or via any legal tender agreed to be accepted by Holder.

14. ACCELERATION. In addition to Holder's right to demand Payment in full of all obligations and liabilities owed by Borrower to Lender under this Note and/or any other Loan Documents executed in connection herewith upon the occurrence of an Event of Default, Lender shall have the right to demand immediate Payment of the outstanding Principal Amount and all interest accrued thereon if Borrower is offered terms similar to the financing contemplated for Borrower in the "**Sure Sports Lending Term Sheet**," attached hereto as **Exhibit C**.

6

15. <u>BANKRUPTCY.</u> Borrower hereby acknowledges that in the event Borrower becomes a party to an Insolvency Petition, whether voluntary or involuntary, under the United States Bankruptcy Code or any other insolvency law of any state or of the United States, whether or not an Event of Default shall have occurred hereunder, Lender will be required to retain legal counsel in order to represent its interest pursuant to the terms of this Note. In such event, to the extent permitted by law, and subject to the approval of the United States Bankruptcy Court, Borrower agrees to reimburse and pay Lender, upon demand, any and all attorney's fees and costs, including, without limitation, court costs incurred by Lender in connection with any and all aspects of such representation. Without limiting the generality of the foregoing, Lender shall be entitled to reimbursement of all attorney's fees and costs incurred in connection with consultation concerning the bankruptcy filing, negotiation concerning the treatment of Lender, consultation concerning the impact of the proposals by Borrower regarding administration of the bankruptcy estate, preparation and filing of proofs of claim, and the filing and prosecution of motions and/or adversary proceedings. To the fullest extent permitted by law, the fees and costs referred to herein shall be deemed part of the overall obligation owed by Borrower to Lender and shall bear interest at the applicable Interest Rate set forth in this Note from the date the attorney's fees and costs are incurred by Lender.

16. <u>DELAY.</u> The failure or delay by Holder in the exercise of any power, right, or privilege, or to declare any default hereunder, shall not operate as a novation of this Note or as a waiver thereof. Any and all waivers of any term or provision contained in this Note, or any power, right, or privilege bestowed upon Holder hereunder, must be in writing, signed by Holder.

17. <u>CUMULATIVE.</u> The remedies under this Note shall be cumulative in nature, concurrent, and may be pursued singularly or successively together, at the sole discretion of Holder, and may be exercised as often as occurrence thereof. All rights and remedies existing hereunder are cumulative, and not exclusive of, any rights or remedies otherwise available.

18. <u>COSTS.</u> Borrower shall be liable to pay all reasonable and necessary Collection Costs, including, without limitation, those relating to reasonable attorney's fees incurred by Lender due to Borrower's failure to make Payment as described herein and/or Lender's enforcement of this Note, whether by court action or otherwise.

19. <u>NO INJUNCTIVE RELIEF.</u> Borrower hereby waives the right to assert a claim or counterclaim against Lender for injunctive relief and/or specific performance arising out of or relating to this Note, including, without limitation, any claim or counterclaim against Lender relating to the exercise of Lender's rights and remedies arising out of or relating to this Note. Borrower hereby acknowledges that any claim or counterclaim against Lender arising out of or relating to this Note can be adequately remedied by action at law for money damages.

20. <u>WAIVER OF JURY TRIAL.</u> Lender and Borrower hereby knowingly, voluntarily, and intentionally waive the right either may have to a trial by jury in respect to any litigation based hereon, or arising out or, under, or in connection with this Note and/or any Loan Documents executed in connection herewith, or any course of conduct, course of dealing, statements (whether oral or written) or actions of either Party. Borrower hereby represents

7

that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

21. CONFESSION OF JUDGMENT. Lender acknowledges that Borrower's execution of this Note and providing of the Loan is contingent upon, and is primarily induced by, Lender's execution of the affidavit of Confession of Judgment ("**Affidavit**") provided by Borrower in conjunction with the Loan Documents. Lender acknowledges that the Affidavit is legal document executed under penalty of perjury, and shall be enforceable in any court of law in the jurisdiction governing the execution of this Note.

## V.    MISCELLANEOUS

22. BINDING. This Note shall be binding upon Borrower and Borrower's successors and permitted assigns, and shall inure to the benefit of Lender and its successors and permitted assigns, and may be assigned by Lender without seeking prior approval from Borrower. Borrower may not assign this Note or any of Borrower's obligations and liabilities hereunder without the prior written consent of Lender. Any such purported assignment in contravention of this provision shall be null and void.

23. WAIVERS AND ACKNOWLEDGEMENTS OF BORROWER. Borrower hereby (i) waives presentment for payment, demand, notice of presentment, notice of acceleration, notice of protest, notice of nonpayment, notice of dishonor, and each and every notice of any kind respecting this Note and the enforcement hereof; (ii) agrees and acknowledges that Lender at any time or times, without notice to or obtaining Borrower's consent, may grant extensions of time, without limit as to the number of the aggregate period of such extensions, for the Payment of any amounts owed pursuant to the Principal Amount, plus interest and/or other sums due and owed to Lender hereunder; (iii) waives all exemptions, including, without limitation, with regard to garnishment, under the laws of the State of New York and/or any other state or territory of the United States of America, to the fullest extent permitted by law; and (iv) waives the benefit of any law or rule intended for Borrower's advantage or protection as an obligor under this Note or providing for Borrower's release or discharge from liability under this Note, in whole or in part, on account of any facts or circumstances other than full and complete payment of all amounts due under this Note.

24. RELATIONSHIP. Lender and Borrower intend that the relationship created and evidenced by this Note shall be solely that of debtor and creditor, and that nothing in this Note shall be construed or interpreted as creating a joint venture, partnership, or any other type of agency relationship between Lender and Borrower.

25. NOTICES. All notices or other communications hereunder shall be in writing and shall be sent via email or by prepaid first class U.S. mail to a Party at its address given above, or to any other address as to which such Party notifies the other, and shall be deemed given one (1) day following the issuance thereof if sent by email, or three (3) days following the deposit thereof with the United States Postal Service.

8

26. <u>SEVERABILITY.</u> Any term or provision of this Note that is deemed invalid or unenforceable by a court of competent jurisdiction shall be modified and enforced to the fullest extent permitted by law or statute, and shall not affect the validity or enforceability of the remaining terms and provisions hereof.

27. <u>GOVERNING LAW; JURISDICTION.</u> This Note shall be deemed entered into in the State of New York, and shall be governed and construed under the laws of the State of New York, without regard to conflict of law principles thereof. The Parties hereby irrevocably submit to the exclusive personal jurisdiction and venue of any state or federal court sitting in the State of New York regarding any action or proceeding arising out of or relating to this Note, hereby waive any claims of objections or defenses thereto, and hereby irrevocably agree that all claims in respect of such action or proceeding shall be heard and determined in such New York state or federal court.

28. <u>ENTIRE AGREEMENT.</u> All understandings, representations and agreements heretofore with respect to this Note are merged into this Note, which, together with the Loan Documents executed in connection herewith, fully and completely express the agreement between Lender and Borrower. Borrower acknowledges that neither Lender nor any other party acting in concert with Lender has made any representation, warranty, or statement to Borrower in order to induce Borrower into executing this Note, and hereby expressly waives any and all claims for fraud in the inducement.

The terms and provisions contained in this Note may not be terminated orally, or varied, discharged, altered, or modified except by a writing signed by the Party to be charged therewith.

This Note may be executed in one or more counterparts, each of shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Any signature delivered by a Party via facsimile or electronic transmission shall be deemed an original signature hereto.

29. <u>AMBIGUITIES.</u> Each Party acknowledges that its legal counsel has participated in the preparation of this Note and therefore stipulates that the rule of construction stating that ambiguities are to be resolved against the drafting Party shall not be applied in the interpretation of this Note to favor one Party against the other.

30. <u>LEGAL COUNSEL.</u> **THIS DOCUMENT CONTAINS LEGAL TERMS AND RIGHTS THAT AFFECT BORROWER. BORROWER HEREBY ACKNOWLEDGES THAT LENDER HAS ADVISED BORROWER TO SEEK INDEPENDENT LEGAL COUNSEL AND THAT BORROWER HAS SECURED OR HAS HAD THE OPPORTUNITY TO SECURE LEGAL COUNSEL TO REPRESENT BORROWER IN CONNECTION WITH THIS AGREEMENT.**

9

 **SURESPORTS**

December 23, 2016

Evander Frank Kane
35 Ojibwa Circle
Buffalo, NY 14202

RE: $580K loan between Evander Frank Kane and DeAngelo Vehicle Sales

As per my Fee Agreement with Sure Sports Lending, I, Evander Frank Kane, authorize the following wires released out of my loan proceeds for the following:

- $23,200 — Service/Underwriting Fee
- $2,987.37 — Insurance Premium
- $1,500 — Legal/Closing

**Sure Sports Lending - $23,200**
Wells Fargo Bank, NA
Account #:     873 624 4040
Routing #:     121 000 248
Ref:             Evander Kane

**Exceptional Risk Advisors, LLC - $2,987.37**
Bank of America
210 Route 17 South
Mahwah, NJ 07430
Routing #:     026009593
Account #:     381032861897
Ref:             JJ Hickson

**Sure Sports Lending - $1,500**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:     121 000 248
Account #:     937 349 7966
Ref:             Evander Kane





Please have the remaining funds wired to my account listed below:


Beneficiary: Evander Kane
Beneficiary bank: RBC Wealth Management
Bank address: Suite 500-1055 West Georgia St.
Vancouver, BC V6E 3S5
Branch/transit#: 00010
Bank ID#: 003
Account#: 4600532
Swift code: ROYCCAT2


Sincerely,

Evander Frank Kane



EXHIBIT A
PROMISSORY NOTE

$1,975,000.00

March 2, 2017

**FOR VALUE RECEIVED**, Evander F. Kane, whose resides at 35 Ojibwa Circle, Buffalo, NY 14202 (the "Borrower"), promises to pay to Thrivest Specialty Funding, LLC a Delaware Limited Liability Company with its principal offices located at Eight Tower Bridge, 161 Washington St., Suite #240, Conshohocken, PA 19428 ("Lender"), or its assigns, at Lender's address, or at such place as Lender designates from time to time, the principal sum of $1,975,000.00 (One Million Nine Hundred Seventy Five Thousand Dollars and No Cents) ("Repayment Amount") in lawful money of the United States of America, together with interest thereon, as described in this Promissory Note (the "Loan"). Unless the term of this Promissory Note is extended by the Lender, the entire then remaining outstanding principal balance of the Loan and all accrued but unpaid interest shall be due and payable on August 15, 2017 (the "Maturity Date"). This Promissory Note is subject to the terms and provisions of that certain Secured Financial Transaction and Security Agreement No. 2 by and between Borrower and Lender dated March 2, 2017 (the "Agreement"). The provisions of the Agreement are incorporated herein by reference.

1.   **Payments**. Borrower shall make interest payments on the principal balance of the Loan outstanding from time to time at the fixed interest rate of Twelve Percent (12%) per annum together with such portion of the principal as is included in the scheduled payments according to the following schedule:

| Payment | Date | Interest | Principle | Total |
|---------|------|----------|-----------|-------|
| 1 | 15-Mar-17 | $0 | $0 | $0 |
| 2 | 15-Apr-17 | $0 | $0 | $0 |
| 3 | 15-May-17 | $0 | $0 | $0 |
| 4 | 15-Jun-17 | $0 | $0 | $0 |
| 5 | 15-Jul-17 | $0 | $0 | $0 |
| 6 | 15-Aug-17 | $0 | $1,975,000 | $1,975,000 |
| **Total** | | $0 | $1,975,000 | $1,975,000 |

Interest shall be payable in arrears and shall be computed on the basis of a 360-day year.

2.   **Prepayment of Principal**. During the entire term of the Loan, prepayment of all or part of the principal may be made by Borrower without penalty; *provided, however* that, except for payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note, all such principal prepayments shall be in even multiples of ONE THOUSAND and no/100 DOLLARS US ($1,000.00 US). Prepayments shall be applied against the outstanding principal balance of the Loan and shall not extend or postpone the due date of any subsequent monthly interest payment or change or reduce the minimum monthly payments set forth in the foregoing payment schedule, unless Lender shall agree otherwise in writing. As used herein, the term prepayment shall include all voluntary payments and all payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note.

3.   **Loan Documents**. This Promissory Note is secured by:

(a) The Agreement creating a security interest in all of the Pledged Payments specifically those derived from (i) Borrower's professional National Hockey League contract with the Winnipeg Jets that was traded to the Buffalo Sabres on February 11, 2015 or Borrower's contract with any future contract holder and (ii) any

13

other subsequent contract or arrangement pursuant to which the Borrower enters into in respect of services performed by Borrower for playing professional hockey.

This Promissory Note, the Agreement, and such other related documents are collectively referred to in this Promissory Note as the "Financial Transaction Documents."

4.  **Default**. A breach of any of the terms of this Promissory Note by Borrower or a default by Borrower hereunder shall constitute a default under any of the Financial Transaction Documents ; a default by Borrower or any guarantor under an of the Financial transaction Documents shall constitute a default under this Promissory Note (each an "Event of Default"). Upon the occurrence of an Event of Default the entire outstanding balance of principal and accrued interest, together with all other amounts payable hereunder and/or under any one or more of the Financial Transaction Documents and all costs and reasonable attorneys' fees incurred by Lender in collecting or enforcing the terms of the Financial transaction Documents and/or the payment of such amounts, shall be due and payable at the option of Lender, without further notice, which notice Borrower waives.

5.  **Consent to Extension, Etc.** From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's sole and absolute discretion, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

6.  **Late Charge**. If any payment of principal, interest or any other sums due to Lender hereunder or under any one or more of the Financial Transaction Documents is not received by Lender within ten (10) calendar days from the date it is due, including the payment due on the Maturity Date, a late charge in an amount equal to the greater of 10% of the regularly scheduled payment or $250.00 shall be due from Borrower. Borrower agrees and acknowledges that the late fee constitutes an administrative fee and is not interest for any purpose. This late payment charge shall apply individually to all payments past due, including the final balloon payment of principal due hereunder, and no daily pro rata adjustment shall be made. Until said late charge is paid, it shall accrue interest at the same rate as is then in effect under this Promissory Note. Should default be made in the payment of any amount due under this Promissory Note on the date it is due and if such default is not cured prior to the expiration of ten (10) days following Lender's delivery of written notice of such default to Borrower, then Lender may, at its election, declare all of the principal and interest immediately due and payable without notice, presentation or demand for payment.

In the event of a default in the payment of any monthly installment of interest due hereunder on the date on which it is due, and which default continues for a period of ten (10) days, said unpaid interest shall accrue interest at the rate of 6% above the rate of interest otherwise applicable beginning on the date upon which said payment was due and said interest shall continue to accrue from day to day until all interest in arrears is paid.

7.  **Application of Payments**. All payments shall be applied in the following order: i) first to costs of collection as set forth in section 9, below, ii) next to late charges and prepayment fee, if any, iii) next, to the repayment of Loans by Lender (as described below) for the benefit of Borrower, plus interest on the Loan at the rate set forth herein above iv) next, to accrued interest on the principal of this Promissory Note, and v) next, to principal.

8.  **Waivers**. Borrower, and any guarantors and endorsers, for themselves and their legal representatives, successors and assigns, severally waive presentment for payment, protest, demand and notice of presentment, notice of protest, demand and dishonor and nonpayment of this Promissory Note.

9.  **Maximum Rate of Interest**. No provision of this Promissory Note or any of the other the Financial transaction Documents shall be deemed to require Borrower to pay or be liable for the payment of interest in excess of the maximum legal rate of interest (if there is any maximum) allowable under applicable law. If for any reason interest in excess of such

14

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 400 of 455

amount will have been paid under this Promissory Note, as a result of acceleration or otherwise, any such excess shall constitute and be treated as a payment of principal under this Promissory Note, and shall reduce the principal balance of this Promissory Note by the amount of such excess, or if in excess of the principal balance, such excess shall be refunded.

10. **Costs of Enforcement**. Borrower agrees to pay all costs of enforcement of the terms of this Promissory Note and the costs of enforcement of the terms of any of the Financial transaction Documents and costs of collection, including reasonable attorneys' fees, that Lender incurs in connection with any default hereunder or under any of the Financial transaction Documents (whether before or after any cure). Additionally, Borrower agrees to pay all costs, fees and expenses, including reasonable attorneys' fees, that Lender incurs, before or after any default, in endeavoring to protect, enforce and realize on this Promissory Note or any one of the Financial transaction Documents or as result of any litigation or other action in which Lender becomes involved as a party, witness or otherwise as a result of or in any way relating to this Promissory Note, and of the Financial transaction Documents or the Loan being made to Borrower. Any and all such costs paid or incurred by Lender shall bear interest at the same rate set forth herein for the principal balance due hereunder and shall become due and payable immediately upon demand by Lender.

11. **Nature of Obligations**. Borrower is obligated to pay the principal, interest, late charges and prepayment premium, if any, on this Promissory Note and any other sums payable hereunder and under any of the Financial transaction Documents, and Lender shall have full recourse against Borrower and all of Borrower's property of every kind or nature whatsoever and wherever located in the collection of the amounts due under this Promissory Note and/or under the Financial transaction Documents. If this Promissory Note is signed by more than one maker, the singular includes the plural, and the makers of this Promissory Note are jointly and severally liable for all obligations described in this Promissory Note.

12. **Applicable Law; Severability**. This Promissory Note shall be governed by the internal laws of the State of Florida. In any litigation in any way relating to this Promissory Note or any of the Financial Transaction Documents, Borrower hereby consents to the jurisdiction of the Southern District Court of Fort Lauderdale, State of Florida having jurisdiction. Invalidity of any provision of this Promissory Note shall not affect the validity of any other provision. Without affecting the liability of Borrower, or any guarantor or endorser, Lender may, without notice, renew or extend the time for payment, accept partial payments, release or impair any security for the payment of this Promissory Note, agree not to sue any party liable under this Promissory Note or any one or more of the Financial Transaction Documents, or otherwise modify the terms of payment of all or any part of the indebtedness evidenced by this Promissory Note. Waiver of any default shall not constitute a waiver of any subsequent default.

13. **Transferability; Modification.** Lender may freely transfer and assign this Promissory Note. This Promissory Note may only be modified, extended or discharged by a written agreement executed by the party against whom enforcement of any modification, extension or discharge is sought.

14. **WAIVER OF RIGHT TO TRIAL BY JURY**. TO THE FULLEST EXTEND ALLOWED BY LAW, BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT OR LEGAL OR ADMINISTRATIVE PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THIS PROMISSORY NOTE OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE LOAN TRANSACTION CONTEMPLATED UNDER THIS PROMISSORY NOTE OR ANY OTHER DOCUMENTS OR TRANSACTIONS CONTEMPLATED OR REFERRED TO HEREIN, INCLUDING, WITHOUT LIMITATION, TRIAL BY JURY WITH RESPECT TO ANY THIRD PARTY IN ANY LAWSUIT OR PROCEEDING IN WHICH THE BORROWER, THE LENDER AND OR ANY GUARANTOR(S) ARE PARTIES.

15. **Consent to Garnishment**. The Borrower hereby consents to the issuance of a Writ of Garnishment and the garnishment of Borrower's accounts and wages in the enforcement of any collection action taken by Lender in connection with the enforcement of the terms of this Promissory Note or any one or more of the Financial Transaction Documents.

15

16. **Time**. Time shall be deemed to be of the essence of this Promissory Note and of each covenants, agreements and conditions to be performed hereunder.

17. **Binding Effect**. This terms, conditions, representations, warranties and covenants of this Promissory Note shall be binding upon the Borrower and shall inure to the benefit of the Lender, and their respective successors, representatives, heirs, devisees, administrators, successors and assigns.

18. **Conduct Not a Waiver**. No waiver of default by Lender shall be effective unless in writing signed by Lender and a waiver of any default by Lender or any forbearance of the enforcement of its rights under this Promissory or under any of the Financial Transaction Documents or any other document executed in connection with this loan transaction contemplated under this Promissory Note, shall not operate as a waiver of any other right or of any subsequent default or the same default on any future occasion.

19. **Remedies Cumulative**. No right or remedy conferred upon or reserved to Lender hereunder is intended to be exclusive of any other right or remedy and every right and remedy shall be cumulative and in addition to every other right or remedy given or reserved hereunder or under applicable law. Every right or remedy under this Promissory Note or any other document executed in connection with the loan transaction contemplated under this Promissory Note, or under applicable law may be exercised as may be deemed necessary of convenient by Lender.

This Promissory Note has been executed and is effective on the date(s) set forth below.

BORROWER: EVANDER F. KANE

By: _____ Date: _03/03/17_
　　　　　Borrower

STATE OF _NY_ }:
　　　　　　　　　　　　　SS:
COUNTY OF _ERIE_ }

On this, the _3RD_ day of _MARCH_, 20_17_, before me _LISA CZERNIEJEWSKI_, the undersigned officer, personally appeared _EVANDER F. KANE_, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that _HE_ (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Lisa Czerniejewski_
　　Notary Public

Printed Name: _LISA CZERNIEJEWSKI_

My Commission Expires: _10/2/18_

LISA CZERNIEJEWSKI #01CZ6153377
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Oct. 2, 20_18_

16


**SURESPORTS** LENDING

March 3, 2017

Evander Kane
35 Ojibwa Circle
Buffalo, NY 14202

RE: $1.975M Loan between Thrivest Specialty Funding, LLC and Evander Kane

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires (respective account information listed below) released out of my loan proceeds for the following:

- $79,000      Service/Underwriting Fee
- $574,200      Loan Payoff
- $100,000      Loan Payoff
- $58,250      LOV PTD Insurance Premium
- $10,836      Death Insurance Premium
- $47,327.52      Dishonor & Disgrace Insurance Premium
- $6,000      Legal/Closing

**Sure Sports Lending - $79,000**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:      121 000 248
Account #:      873 624 4040
Ref:      Evander Kane

**DeAngelo Vehicle Sales, LLC - $574,200**
Landmark Community Bank
383 S. Poplar Street
Hazelton, PA 18201
Routing #:      031 318 677
Account #:      511527
Ref:      Evander Kane ($580K)

**Seneca Gaming Corporation - $100,000**
Beneficiary Bank:      KeyBank Key Plaza Branch
Bank Address:      66 S Pearl St
     Albany, NY 12207
Routing #:      021 300 077
Account #:      329681090349
Swift Code:      KEYBUS33ALB
For Benefit Of:      Evander Kane, 35 Ojibwa Circle Buffalo, NY 14202



**Hanleigh Management Inc. Premium Trust - $58,250**
BB&T International Services Division
200 S. College St. FL 18
Charlotte, NC 28202
Routing #:     053101121
Account #:    0005201229210
Ref:            Evander Kane LOV PTD Premium


**ASU International, Inc. - $10,836**
Wells Fargo Bank
155 5th Street
San Francisco, CA  94103
HCC Specialty Underwriters on Behalf of Lloyds Premium
Routing #:     121000248
Account #:    4834784373
Ref:            Evander Kane Death Premium


**ASU International, Inc. - $47,327.52**
Wells Fargo Bank
155 5th Street
San Francisco, CA  94103
HCC Specialty Underwriters on Behalf of Lloyds Premium
Routing #:     121000248
Account #:    4834784373
Ref:            Evander Kane Dishonor & Disgrace Premium


**Sure Sports Lending - $6,000**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:     121 000 248
Account #:    937 349 7966
Ref:            Evander Kane



**Please have the remaining funds wired to my account as follows:**

Beneficiary: Evander Kane
Beneficiary bank: RBC Wealth Management
Bank address: Suite 500-1055 West Georgia St.
Vancouver, BC V6E 3S5
Branch/transit#: 00010
Bank ID#: 003
Account#: 4600532
Swift code: ROYCCAT2

Sincerely,

Evander Kane



EXHIBIT A

PROMISSORY NOTE

$1,225,000.00

April 6, 2017

**FOR VALUE RECEIVED**, Evander F. Kane, whose resides at 35 Ojibwa Circle, Buffalo, NY 14202 (the "Borrower"), promises to pay to Thrivest Specialty Funding, LLC a Delaware Limited Liability Company with its principal offices located at Eight Tower Bridge, 161 Washington St., Suite #240, Conshohocken, PA 19428 ("Lender"), or its assigns, at Lender's address, or at such place as Lender designates from time to time, the principal sum of $1,225,000.00 (One Million Two Hundred Twenty Five Thousand Dollars and No Cents) ("Repayment Amount") in lawful money of the United States of America, together with interest thereon, as described in this Promissory Note (the "Loan"). Unless the term of this Promissory Note is extended by the Lender, the entire then remaining outstanding principal balance of the Loan and all accrued but unpaid interest shall be due and payable on August 15, 2017 (the "Maturity Date"). This Promissory Note is subject to the terms and provisions of that certain Secured Financial Transaction and Security Agreement #3 by and between Borrower and Lender dated April 6, 2017 (the "Agreement"). The provisions of the Agreement are incorporated herein by reference.

1. **Payments.** Borrower shall make interest payments on the principal balance of the Loan outstanding from time to time at the fixed interest rate of Twelve Percent (12%) per annum together with such portion of the principal as is included in the scheduled payments according to the following schedule:

| Payment | Date | Interest | Principle | Total |
|---------|------|----------|-----------|-------|
| 1 | 15-Apr-17 | $0 | $0 | $0 |
| 2 | 15-May-17 | $0 | $0 | $0 |
| 3 | 15-Jun-17 | $0 | $0 | $0 |
| 4 | 15-Jul-17 | $0 | $0 | $0 |
| 5 | 15-Aug-17 | $0 | $1,225,000 | $1,225,000 |
| | **Total** | $0 | $1,225,000 | $1,225,000 |

Interest shall be payable in arrears and shall be computed on the basis of a 360-day year.

2. **Prepayment of Principal.** During the entire term of the Loan, prepayment of all or part of the principal may be made by Borrower without penalty; *provided, however* that, except for payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note, all such principal prepayments shall be in even multiples of ONE THOUSAND and no/100 DOLLARS US ($1,000.00 US). Prepayments shall be applied against the outstanding principal balance of the Loan and shall not extend or postpone the due date of any subsequent monthly interest payment or change or reduce the minimum monthly payments set forth in the foregoing payment schedule, unless Lender shall agree otherwise in writing. As used herein, the term prepayment shall include all voluntary payments and all payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note.

3. **Loan Documents.** This Promissory Note is secured by:

(a) The Agreement creating a security interest in all of the Pledged Payments specifically those derived from (i) Borrower's professional National Hockey League contract with the Winnipeg Jets that was traded to the Buffalo Sabres on February 11, 2015 or Borrower's contract with any future contract holder and (ii) any other subsequent contract or arrangement pursuant to which the Borrower enters into in respect of services performed by Borrower for playing professional hockey.

12

This Promissory Note, the Agreement, and such other related documents are collectively referred to in this Promissory Note as the "Financial Transaction Documents."

4.    **Default**. A breach of any of the terms of this Promissory Note by Borrower or a default by Borrower hereunder shall constitute a default under any of the Financial Transaction Documents ; a default by Borrower or any guarantor under an of the Financial transaction Documents shall constitute a default under this Promissory Note (each an "Event of Default"). Upon the occurrence of an Event of Default the entire outstanding balance of principal and accrued interest, together with all other amounts payable hereunder and/or under any one or more of the Financial Transaction Documents and all costs and reasonable attorneys' fees incurred by Lender in collecting or enforcing the terms of the Financial transaction Documents and/or the payment of such amounts, shall be due and payable at the option of Lender, without further notice, which notice Borrower waives.

5.    **Consent to Extension, Etc.** From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's sole and absolute discretion, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

6.    **Late Charge**. If any payment of principal, interest or any other sums due in full to Lender hereunder or under any one or more of the Financial Transaction Documents is not received by Lender within ten (10) calendar days from the date it is due, including the payment due on the Maturity Date, a late charge in an amount equal to the greater of 10% of the regularly scheduled payment or $250.00 shall be due from Borrower. Borrower agrees and acknowledges that the late fee constitutes an administrative fee and is not interest for any purpose. This late payment charge shall apply individually to all payments past due, including the final balloon payment of principal due hereunder, and no daily pro rata adjustment shall be made. Until said late charge is paid, it shall accrue interest at the same rate as is then in effect under this Promissory Note. If the loan is still outstanding thirty (30) days after the 10% penalty, Lender will begin the procedure to garnish Borrower's wages. Should default be made in the payment of any amount due under this Promissory Note on the date it is due and if such default is not cured prior to the expiration of ten (10) days following Lender's delivery of written notice of such default to Borrower, then Lender may, at its election, declare all of the principal and interest immediately due and payable without notice, presentation or demand for payment.

In the event of a default in the payment of any monthly installment of interest due hereunder on the date on which it is due, and which default continues for a period of ten (10) days, said unpaid interest shall accrue interest at the rate of 6% above the rate of interest otherwise applicable beginning on the date upon which said payment was due and said interest shall continue to accrue from day to day until all interest in arrears is paid.

7.    **Application of Payments**. All payments shall be applied in the following order: i) first to costs of collection as set forth in section 9, below, ii) next to late charges and prepayment fee, if any, iii) next, to the repayment of Loans by Lender (as described below) for the benefit of Borrower, plus interest on the Loan at the rate set forth herein above iv) next, to accrued interest on the principal of this Promissory Note, and v) next, to principal.

8.    **Waivers**. Borrower, and any guarantors and endorsers, for themselves and their legal representatives, successors and assigns, severally waive presentment for payment, protest, demand and notice of presentment, notice of protest, demand and dishonor and nonpayment of this Promissory Note.

9.    **Maximum Rate of Interest**. No provision of this Promissory Note or any of the other the Financial transaction Documents shall be deemed to require Borrower to pay or be liable for the payment of interest in excess of the maximum legal rate of interest (if there is any maximum) allowable under applicable law. If for any reason interest in excess of such amount will have been paid under this Promissory Note, as a result of acceleration or otherwise, any such excess shall

13

constitute and be treated as a payment of principal under this Promissory Note, and shall reduce the principal balance of this Promissory Note by the amount of such excess, or if in excess of the principal balance, such excess shall be refunded.

10. **Costs of Enforcement**. Borrower agrees to pay all costs of enforcement of the terms of this Promissory Note and the costs of enforcement of the terms of any of the Financial transaction Documents and costs of collection, including reasonable attorneys' fees, that Lender incurs in connection with any default hereunder or under any of the Financial transaction Documents (whether before or after any cure). Additionally, Borrower agrees to pay all costs, fees and expenses, including reasonable attorneys' fees, that Lender incurs, before or after any default, in endeavoring to protect, enforce and realize on this Promissory Note or any one of the Financial transaction Documents or as result of any litigation or other action in which Lender becomes involved as a party, witness or otherwise as a result of or in any way relating to this Promissory Note, and of the Financial transaction Documents or the Loan being made to Borrower. Any and all such costs paid or incurred by Lender shall bear interest at the same rate set forth herein for the principal balance due hereunder and shall become due and payable immediately upon demand by Lender.

11. **Nature of Obligations**. Borrower is obligated to pay the principal, interest, late charges and prepayment premium, if any, on this Promissory Note and any other sums payable hereunder and under any of the Financial transaction Documents, and Lender shall have full recourse against Borrower and all of Borrower's property of every kind or nature whatsoever and wherever located in the collection of the amounts due under this Promissory Note and/or under the Financial transaction Documents. If this Promissory Note is signed by more than one maker, the singular includes the plural, and the makers of this Promissory Note are jointly and severally liable for all obligations described in this Promissory Note.

12. **Applicable Law; Severability**. This Promissory Note shall be governed by the internal laws of the State of Florida. In any litigation in any way relating to this Promissory Note or any of the Financial Transaction Documents, Borrower hereby consents to the jurisdiction of the Southern District Court of Fort Lauderdale, State of Florida having jurisdiction. Invalidity of any provision of this Promissory Note shall not affect the validity of any other provision. Without affecting the liability of Borrower, or any guarantor or endorser, Lender may, without notice, renew or extend the time for payment, accept partial payments, release or impair any security for the payment of this Promissory Note, agree not to sue any party liable under this Promissory Note or any one or more of the Financial Transaction Documents, or otherwise modify the terms of payment of all or any part of the indebtedness evidenced by this Promissory Note. Waiver of any default shall not constitute a waiver of any subsequent default.

13. **Transferability; Modification**. Lender may freely transfer and assign this Promissory Note. This Promissory Note may only be modified, extended or discharged by a written agreement executed by the party against whom enforcement of any modification, extension or discharge is sought.

14. **WAIVER OF RIGHT TO TRIAL BY JURY**. TO THE FULLEST EXTEND ALLOWED BY LAW, BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT OR LEGAL OR ADMINISTRATIVE PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THIS PROMISSORY NOTE OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE LOAN TRANSACTION CONTEMPLATED UNDER THIS PROMISSORY NOTE OR ANY OTHER DOCUMENTS OR TRANSACTIONS CONTEMPLATED OR REFERRED TO HEREIN, INCLUDING, WITHOUT LIMITATION, TRIAL BY JURY WITH RESPECT TO ANY THIRD PARTY IN ANY LAWSUIT OR PROCEEDING IN WHICH THE BORROWER, THE LENDER AND OR ANY GUARANTOR(S) ARE PARTIES.

15. **Consent to Garnishment**. The Borrower hereby consents to the issuance of a Writ of Garnishment and the garnishment of Borrower's accounts and wages in the enforcement of any collection action taken by Lender in connection with the enforcement of the terms of this Promissory Note or any one or more of the Financial Transaction Documents.

16. **Time**. Time shall be deemed to be of the essence of this Promissory Note and of each covenants, agreements and conditions to be performed hereunder.

17.    **Binding Effect**. This terms, conditions, representations, warranties and covenants of this Promissory Note shall be binding upon the Borrower and shall inure to the benefit of the Lender, and their respective successors, representatives, heirs, devisees, administrators, successors and assigns.

18.    **Conduct Not a Waiver**. No waiver of default by Lender shall be effective unless in writing signed by Lender and a waiver of any default by Lender or any forbearance of the enforcement of its rights under this Promissory or under any of the Financial Transaction Documents or any other document executed in connection with this loan transaction contemplated under this Promissory Note, shall not operate as a waiver of any other right or of any subsequent default or the same default on any future occasion.

19.    **Remedies Cumulative**. No right or remedy conferred upon or reserved to Lender hereunder is intended to be exclusive of any other right or remedy and every right and remedy shall be cumulative and in addition to every other right or remedy given or reserved hereunder or under applicable law. Every right or remedy under this Promissory Note or any other document executed in connection with the loan transaction contemplated under this Promissory Note, or under applicable law may be exercised as may be deemed necessary of convenient by Lender.

This Promissory Note has been executed and is effective on the date(s) set forth below.


BORROWER:  EVANDER F. KANE


By: X _____          Date: ___04/07/12 · 17___
               Borrower


STATE OF _NY_              }:
                                            SS:
COUNTY OF _ERIE_           }

On this, the ___7th___ day of ___April___, 20_17_, before me
_LISA CZERNIEJEWSKI_, the undersigned officer, personally appeared
___EVANDER F. KANE___, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that ___HE___ (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Lisa Czerniejewski_
               Notary Public

Printed Name: _LISA CZERNIEJEWSKI_

My Commission Expires: _10/2/18_

LISA CZERNIEJEWSKI #01CZ6153377
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Oct. 2, 20__18

15

 **SURESPORTS**

April 7, 2017

Evander Kane
35 Ojibwa Circle
Buffalo, NY 14202

RE: $1.225M Loan between Thrivest Specialty Funding, LLC and Evander Kane

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires (respective account information listed below) released out of my loan proceeds for the following:

- $49,000          Service/Underwriting
- $162,088.60      Agent Payoff
- $5,000           Legal/Closing

**Sure Sports Lending - $49,000**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:        121 000 248
Account #:        873 624 4040
Ref:              Evander Kane

**Newport Sports Management, Inc. - $162,088.60**
HSBC Bank Canada
70 York Street
Toronto, Ontario CANADA M5J 1S9
Swift Code: HKBCCATT
Beneficiary (SWIFT Tag 59): Newport Sports Management, Inc.
Beneficiary Name: Newport Sports Management, Inc.
201 City Center Drive, Suite 400
Mississauga, Ontario CANADA L5B 2T4
Beneficiary Account: 381389070
Institution Number: 016
Transit Number: 10002

**Sure Sports Lending - $5,000**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:        121 000 248
Account #:        937 349 7966
Ref:              Evander Kane



 **SURESPORTS**

Please have the remaining funds wired to my personal account as follows:

**Evander Kane - $130,000**
Beneficiary Bank: Bank of America

*account ending in 0171*

**Evander Kane - $768,661.40**
Beneficiary bank: RBC Wealth Management
Bank address: Suite 500-1055 West Georgia St.
Vancouver, BC V6E 3S5
Branch/transit#: 00010
Bank ID#: 003
Account#: 4600532
Swift code: ROYCCAT2

Sincerely,

X

Evander Kane

## PROMISSORY NOTE

**$3,550,000.00**

THIS PROMISSORY NOTE ("**Note**") is made and effective this 5ᵗʰ day of July 2017 ("**Effective Transaction Date**"),

> **BETWEEN:** **SEVEN ISLES CAPITAL, LLC**, a limited liability company duly organized and existing under the laws of the State of Florida ("**Lender**"), having a principal address located at 2328 Aqua Vista Blvd, Fort Lauderdale, FL 33301;
>
> **AND:** **EVANDER KANE**, an individual having an address located at 35 Ojibwa Circle, Buffalo, NY 14202 ("**Borrower**")

With each being referred to individually as a "**Party**," and collectively as the "**Parties**" throughout this Note.

### I. TERMS

FOR VALUE RECEIVED, Borrower, on behalf of himself and his heirs, executors, administrators, personal representatives, and permitted assigns promises, to pay to the order of Lender, or its assigns (Lender and/or its assigns, as applicable, are collectively referred to as "**Holder**") or its respective designees, in accordance with the payment schedule attached hereto as **Exhibit A** ("**Repayment Schedule**"), the principal sum of Three Million Five Hundred Fifty-Five Thousand Dollars (USD $3,550,000.00) (the "**Loan**"), together with interest as provided herein, and all other Obligations (as defined herein) that may be owing by Borrower to Lender under the Loan Documents (as defined herein), from the date hereof until the earlier of (i) Maturity, or (ii) the acceleration of the obligations and liabilities owing by Borrower to Lender, as outlined hereunder.

### II. DEFINITIONS

1. MATURITY. "**Maturity Date**" shall mean as follows: Borrower acknowledges that Lender may exercise rights to invoke an earlier Maturity Date as follows: the maturity date of the Note shall be August 5, 2018 (the "Initial Term") and shall be automatically extended for one (1) additional three (3) month period (the "Extension Period"). Upon the expiration of the Initial Term, as applicable, the term of this Agreement shall automatically extend as provided herein unless Lender provides Borrower with at least thirty (30) days advanced written notice of Lender's intent not to extend the term ("No Extension Letter"). Upon Borrower's receipt of the No Extension Letter, the Initial Term, as applicable, shall terminate upon the expiration of the Initial Term, as applicable, and the Maturity Date shall be August 5, 2018. For purposes of clarification, (i) in the event the Initial Term and Extension Period are recognized in full, the Maturity Date shall mean November 5, 2018; (ii) in the event only the Initial Term is recognized in full, the Maturity Date shall mean August 5, 2018; The Initial Term and any and all extension period shall be known as the "Term" throughout this Agreement. In the event

1



Lender exercises its rights to extend the Term via not providing Borrower with the No Extension Letter as provided herein, for each extension of the Term, Borrower shall pay an additional Ten percent (10%) ("Extension Interest") on the remaining Principal Amount and any and all interest incurred thereon. The Extension Interest shall apply upon the beginning of the Extension Period.

2. PRINCIPAL. **"Principal"** or **"Principal Amount"** shall refer to the net disbursement amount of Three Million Five Hundred Fifty-Five Thousand Dollars (USD $3,550,000.00), plus any increases due to a failure to pay or any additional loan made by Lender to Borrower under the terms of this Note.

   Lender's sole obligation contained within this Note shall be to provide Borrower with the net disbursement amount of Three Million Five Hundred Fifty-Five Thousand Dollars (USD $3,550,000.00). Borrower acknowledges that Lender shall have no obligation to lend additional monies to Borrower.

3. PAYMENT. **"Payment"** shall mean the transfer by Borrower to Lender of any monies due and payable to Lender under the terms of this Note. All Payments shall be made in legal currency of the United States (USD). Payments shall be made pursuant to and governed by the provisions contained in Section III of this Note.

4. EVENT OF DEFAULT. An **"Event of Default"** shall mean the happening of any of the occurrences outlined in Section IV of this Note.

5. COLLECTION COSTS. **"Collection Costs"** shall refer to any costs: (i) incurred by Borrower or Lender if this Note is placed in the hands of an attorney for the purpose of enforcement for collection; (ii) collected through lawsuit, probate, or bankruptcy court; or (iii) incurred by Borrower or Lender in the case of occurrence of any Event of Default under this Note.

6. LOAN DOCUMENTS. **"Loan Documents"** shall refer to the collection of documents delivered to Borrower in conjunction with this Note, including, without limitation, this Note, the "Loan and Security Agreement," the "Direct Deposit Agreement," and/or any other documents provided by Lender to Borrower related to the subject matter of this Note.

7. LOAN PURPOSE. The purpose of the Loan shall be strictly for commercial purposes, and Borrower and Lender acknowledge that Borrower shall not use the Loan for any other reason.

## III. PAYMENT

8. PROMISE TO PAY. Borrower acknowledges that installments of the Principal Amount and interest as accrued thereon shall be due and payable to Holder in the amounts and on the dates shown on the Repayment Schedule; provided, however, that the entire Principal Amount, together will all accrued and unpaid interest and any other charges, advances, and fees, if any, outstanding hereunder, shall be due and payable to Holder in full on the earlier of (i) the Maturity Date, or (ii) upon the acceleration of this Note in accordance with the terms hereof.

2



Borrower shall be solely responsible for making timely Payments in accordance with the Repayment Schedule and that Holder has no duty or obligation to notice or warn Borrower at the time when Payments become due. Payments will be delivered when due to Lender via domestic wire to:

**Seven Isles Capital, LLC**
**M&T Bank**
**50 Laurell Mall Dr**
**Hazle Township**
**PA 18201**
**Routing: 022 000 046**
**Account: 986 754 7243**

Holder may amend where payments must be written through providing Borrower prior written notice.

All Payments shall be applied first to accrued interest due, and thereafter to the outstanding Principal Amount. Any outstanding Principal and interest, together with any and all other unpaid amounts that are owed by Borrower to Holder under this Note, and/or any other Loan Documents executed in connection herewith, shall be due and payable on the earlier of (i) the Maturity Date, or (ii) the acceleration of the obligations and liabilities owing by Borrower to Holder under this Note, and/or any other Loan Documents executed in connection herewith, in accordance with the terms hereof or thereof.

The Principal Amount outstanding shall bear interest at a rate of interest per annum equal to 18% ("**Interest Rate**"). The Interest Rate shall be calculated based on a 360-day year and charged for the actual number of days elapsed beginning as of the Effective Transaction Date of this Note.

Notwithstanding any provision to the contrary contained in this Note and/or any Loan Documents executed in connection herewith, in no event shall the interest rate charged on the Loan exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the outstanding Principal Amount and any other sums (other than interest) due and payable to Holder under this Note, and the provisions hereof shall be deemed amended and modified to provide for the highest rate of interest permitted under applicable law.

9. EXTENSIONS & RENEWALS. Borrower consents to any extension, renewals, or modifications of this Note or any part thereof without notice, and Borrower agrees that it will remain liable as such during any extension, renewal, or modification hereof until the Loan is fully paid. Furthermore, Borrower consents to Lender's application of the Extension Fee in the event Borrower elects to exercise his right to invoke the Extension Period.

3

10. RETURNED CHECKS DUE TO INSUFFICIENT FUNDS. Borrower accepts and acknowledges that a fee of Twenty Dollars (USD $20.00) will be charged and applied to the Principal Amount for any check returned that was made by Borrower to Holder due to insufficient funds in Borrower's account.

11. PREPAYMENT. Provided that Borrower is not in default of the terms, covenants, and conditions of this Note pursuant to an Event of Default, this Note may be prepaid any time without penalty, in whole or in part, by paying Holder an amount equal to the sum of (i) the Principal Amount then outstanding; (ii) all interest due; and (iii) any late charge and/or other charges or fees, including, without limitation, the Extension Fee, then due and owed to Holder. Borrower may prepay all or part of this Note, which prepaid amounts shall be applied to the Principal Amount due in reverse order of their due dates, and shall be credited to installments of the Principal Amount in the inverse order of its Maturity.

In the event Borrower is in default: (i) no portion of the Principal Amount or interest thereon may be prepaid. In the event that any Payment (or portion thereof) is received by Holder in advance of the Maturity Date or the acceleration of Borrower's duties and obligation according to this Note, such Payment (or portion thereof) shall not be credited against the obligations of Borrower under this Note and/or the Loan Documents executed in connection herewith ("**Obligations**") until the next, applicable due date noted on the Repayment Schedule; and (ii) in the event that Holder receives Payment hereunder in excess of the scheduled amount of a Payment pursuant to the Repayment Schedule, such excess shall be allocated to future Payments (up to the otherwise unpaid scheduled amounts thereof) and credited against the Obligations on the applicable due date of such future Payment as they become due.

12. SECURITY. Borrower agrees and acknowledges that until the Principal Amount and interest owed under this Note are paid in full, this Note will be secured by Borrower's contract with Buffalo Sabres ("**Borrower's Team**") with a date of execution on or around July 1, 2012. In the event Borrower is traded, moves to, or signs a free-agent contract with another team based within the United States or outside of the United States while this Note remains outstanding and in effect, this Note will be secured by whatever subsequent contract(s) Borrower enters into that replaces or follows the contract identified herein.

In the Event of Default, or upon Lender's choosing in Lender's sole discretion, Borrower will be required to enter into a team direction agreement ("**Direct Deposit Agreement**") with Borrower's Team and Holder under which all monies paid to Borrower by Borrower's Team, up to the amount owing by Borrower to Holder under this Note, shall be directly deposited into an account maintained by Holder, or of Holder's choosing, until Holder is paid in full. Borrower shall indemnify and hold harmless Holder, its affiliates, and its directors, officers, agents, attorneys, and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including, without limitation, any and all court costs and reasonably incurred attorney's fees, in any way related to or arising out of or in connection with the Direct Deposit Agreement, except as may result solely from the gross negligence or willful misconduct of Holder. Borrower's obligation to make all Payments required by this Note in accordance with the Repayment Schedule is independent of any obligation of Borrower's Team or under the Direct Deposit Agreement and any obligation of Lender under

4

any other Loan Document. Under no circumstances shall the failure of Borrower's Team to comply with its obligations under the Direct Deposit Agreement or the failure of Lender to comply with its obligations under any Loan Document in any manner limit, reduce, or otherwise affect the obligation of Borrower under this Note or serve as a defense to the nonpayment of any amounts due hereunder.

In the event Borrower's contract expires or Borrower's Team files for bankruptcy, Borrower will be held personally liable for any outstanding Principal Amount and interest thereon, plus any increases due to a failure to pay or additional loan by Lender to Borrower under the terms of this Note.

Borrower hereby consents to the issuance of a continuing writ of garnishment or attachment against his disposable earnings in order to satisfy, in whole or in part, any money judgment entered in favor of Lender pursuant to this Note.

This Note shall be the joint and several obligation of Borrower, and Borrower's sureties, guarantors, and endorsers hereof, and shall be binding upon them and their respective heirs, executors, administers, successors, administrators, personal representatives, and permitted assigns. Borrower shall pay the costs of all documentary, revenue, tax, or other stamps now or hereafter required by any law at any time to be affixed to or which are otherwise made necessary as a result of this Note, and if any taxes be imposed with respect to debts secured by mortgages and/or deeds of trust with respect to notes evidencing debts so secured, Borrower agrees to pay Holder the full amount of any such taxes, and hereby waives any contrary provisions of any laws or rules of court now or hereafter in effect.

13. BONUS INCOME FROM BORROWER'S CONTRACT. In addition to subsection 8 above, until full Payment of the Loan, including, without limitation, any and all accrued interest incurred thereon and any other Obligations of Borrower, Borrower agrees that Lender shall receive Sixty Percent (60%) of all bonuses due and payable to Borrower from Borrower's NHL Contract for the 2017-2018 NHL Season. For purposes of this Note, (i) "**NHL Contract**" shall mean either: (a) Borrower's Contract, or (b) in the event Borrower signs a Contract Extension prior to or during the 2017-2018 NHL Season, the Standard NHL Player Contract Borrower signs with Borrower's Team or any other NHL Team for the 2017-2018 NHL Season; and (ii) "**Bonus Income**" shall mean any and all bonus due and payable to Borrower pursuant to the Borrowers future NHL Contract, including, without limitation, signing bonus, and any and all other bonuses, incentives, and other bonus monies due and payable to Borrower therefrom.

Borrower shall make Payment of Income to Lender to the account set forth in subsection 8 above within thirty (10) days of Borrower's receipt thereof. Failure to make Payment as set forth herein shall constitute an Event of Default under this Note.

## IV. REMEDIES

5

14. REPRESENTATIONS AND WARRANTIES. Borrower hereby makes the following representations and warranties, before and after giving effect to the transactions contemplated hereby this Note: (i) There is no claim, action, lawsuit, proceeding, arbitration, complaint, charge or investigation pending, or to the Borrower's knowledge, currently threatened against or involving Borrower; (ii) Borrower has no obligations to make payments to any third party pursuant to any instrument, judgment, order, writ, decree, note, or indenture; and (iii) in the event Borrower does have other obligations to make payments to a third party pursuant to any written instrument, Borrower has fully informed Lender of same, in addition to any liens placed on Borrower's property pursuant to such obligations, via the **"Other Current Liabilities / Liens of Borrower"** document attached hereto as **Exhibit B**.

15. EVENTS OF DEFAULT. The occurrence of any of the following event shall constitute and **"Event of Default"** under this Note:

    a) The failure by Borrower to pay or otherwise satisfy, or cause to be paid or otherwise satisfied, the Principal Amount and any interest accrued thereon, as accrued, as and when due in accordance with the Repayment Schedule and the terms hereof (i.e. by the Maturity Date);

    b) The voluntary filing by Borrower of a petition in bankruptcy or other action by Borrower seeking protection from Borrower's creditors under bankruptcy or insolvency laws (each a **"Voluntary Petition,"** and collectively, the **"Voluntary Petitions"**);

    c) The filing of an involuntary bankruptcy petition by Borrower's creditors, together with the failure of such petition to be dismissed, rescinded, or otherwise rendered of no further legal effect within sixty (60) days (each an **"Involuntary Petition,"** and collectively, the **"Involuntary Petitions,"** and together with the Voluntary Petitions, **"Insolvency Petitions"**);

    d) Any breach or violation by Borrower of Borrower's representations, warranties, covenants, agreements or obligations under this Note or any other Loan Document (Borrower acknowledges that all such representations, warranties, covenants, agreements and obligations of Borrower are fundamental and a material inducement for Lender to enter into this Note and the Loan Documents, and that any breach, regardless of degree or nature, shall be considered material in nature and an Event of Default hereunder);

    e) Any voluntary alteration by Borrower of the withholdings or deductions made from time to time by Borrower's Team from sums due and owing to Borrower under Borrower's contract with Borrower's Team in any manner that is materially inconsistent with Borrower's prior withholdings or deductions, or that materially reduces the net amount of any payment to be made by Borrower's Team under Borrower's contract with Borrower's Team;

6



f) In the event of the assignment of Borrower's contract with Borrower's Team by Borrower's Team, any failure by such assignee to execute and deliver to Lender, within ten (10) days following the effectiveness of such assignment, a duly executed written undertaking evidencing such assignee's agreement to perform and be bound by the obligations of the assignor under the Direct Deposit Agreement for so long as this Note shall remain outstanding and in effect;

g) The unenforceability of any material term or condition of this Note or any other Loan Document;

h) If Borrower makes an assignment of this Note for the benefit of creditors, or admits in writing Borrower's inability to make Payments according to the Repayment Schedule as they become due; or

i) The occurrence of any event defined as an "Event of Default" according to any Loan Documents executed in connection herewith this Note.

Upon the occurrence of an Event of Default, and if said Event of Default shall remain uncured for a period of ten (10) days, at the option and upon the declaration of Holder and upon written notice to Borrower ("**Acceleration Notice**"), the entire unpaid Principal Amount and any accrued and unpaid interest thereon shall, without presentment, demand, protest, or prior written notice of any kind, all of which are hereby are expressly waived, be forthwith due and payable, and Holder may, immediately and without expiration of any applicable grace period, enforce Payment of all amounts due and owing under this Note and exercise all other remedies granted to Holder at law, equity, or otherwise.

Furthermore and in addition to the foregoing, upon the occurrence of an Event of Default, this Note shall bear **additional** interest on the Principal Amount, plus any accrued interest and any other outstanding obligations under the Note, at a per annum rate equal to the lesser of (i) Ten Percent (10%), or (ii) the maximum interest rate that Borrower may by law be required to pay ("**Default Rate**"). The Default Rate shall be computed beginning from the occurrence of the Event of Default (without regard to any notice or grace period) until the earlier of the date upon which (i) the Event of Default is cured to the Holder's sole satisfaction, or (ii) all obligations and liabilities under the Note are paid in full in cash, or via any legal tender agreed to be accepted by Holder. For purposes of clarification, the Default Rate shall be calculated based upon, and added to, the Principal Amount, plus any and all interest accrued thereon via the Interest Rate and/or Extension Fee, as applicable.

16. ACCELERATION. In addition to Holder's right to demand Payment in full of all obligations and liabilities owed by Borrower to Lender under this Note and/or any other Loan Documents executed in connection herewith upon the occurrence of an Event of Default, Lender shall have the right to demand immediate Payment of the outstanding Principal Amount and all interest accrued thereon if Borrower is offered terms similar to the financing contemplated for Borrower in the "**Sure Sports Lending Term Sheet**," attached hereto as **Exhibit C**.

7



17. BANKRUPTCY. Borrower hereby acknowledges that in the event Borrower becomes a party to an Insolvency Petition, whether voluntary or involuntary, under the United States Bankruptcy Code or any other insolvency law of any state or of the United States, whether or not an Event of Default shall have occurred hereunder, Lender will be required to retain legal counsel in order to represent its interest pursuant to the terms of this Note. In such event, to the extent permitted by law, and subject to the approval of the United States Bankruptcy Court, Borrower agrees to reimburse and pay Lender, upon demand, any and all attorney's fees and costs, including, without limitation, court costs incurred by Lender in connection with any and all aspects of such representation. Without limiting the generality of the foregoing, Lender shall be entitled to reimbursement of all attorney's fees and costs incurred in connection with consultation concerning the bankruptcy filing, negotiation concerning the treatment of Lender, consultation concerning the impact of the proposals by Borrower regarding administration of the bankruptcy estate, preparation and filing of proofs of claim, and the filing and prosecution of motions and/or adversary proceedings. To the fullest extent permitted by law, the fees and costs referred to herein shall be deemed part of the overall obligation owed by Borrower to Lender and shall bear interest at the applicable Interest Rate set forth in this Note from the date the attorney's fees and costs are incurred by Lender.

18. DELAY. The failure or delay by Holder in the exercise of any power, right, or privilege, or to declare any default hereunder, shall not operate as a novation of this Note or as a waiver thereof. Any and all waivers of any term or provision contained in this Note, or any power, right, or privilege bestowed upon Holder hereunder, must be in writing, signed by Holder.

19. CUMULATIVE. The remedies under this Note shall be cumulative in nature, concurrent, and may be pursued singularly or successively together, at the sole discretion of Holder, and may be exercised as often as occurrence thereof. All rights and remedies existing hereunder are cumulative, and not exclusive of, any rights or remedies otherwise available.

20. COSTS. Borrower shall be liable to pay all reasonable and necessary Collection Costs, including, without limitation, those relating to reasonable attorney's fees incurred by Lender due to Borrower's failure to make Payment as described herein and/or Lender's enforcement of this Note, whether by court action or otherwise.

21. NO INJUNCTIVE RELIEF. Borrower hereby waives the right to assert a claim or counterclaim against Lender for injunctive relief and/or specific performance arising out of or relating to this Note and/or the Loan Documents, including, without limitation, any claim or counterclaim against Lender relating to the exercise of Lender's rights and remedies arising out of or relating to this Note and/or the Loan Documents. Borrower hereby acknowledges that any claim or counterclaim against Lender arising out of or relating to this Note can be adequately remedied by action at law for money damages.

22. WAIVER OF JURY TRIAL. Lender and Borrower hereby knowingly, voluntarily, and intentionally waive the right either may have to a trial by jury in respect to any litigation based hereon, or arising out or, under, or in connection with this Note and/or any Loan Documents executed in connection herewith, or any course of conduct, course of dealing, statements (whether oral or written) or actions of either Party. Borrower hereby represents that no

8

representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

23. CONFESSION OF JUDGMENT. Lender acknowledges that Borrower's execution of this Note and providing of the Loan is contingent upon, and is primarily induced by, Lender's execution of the Confession of Judgment ("**Confession of Judgment**") provided by Borrower in conjunction with the Loan Documents. Lender acknowledges that the Confession of Judgment is a legal document executed under penalty of perjury, and shall be enforceable in any court of law in the jurisdiction governing the execution of this Note. The Confession of Judgment is attached hereto as **Exhibit D.**

## V.   MISCELLANEOUS

24. BINDING. This Note shall be binding upon Borrower and Borrower's successors and permitted assigns, and shall inure to the benefit of Lender and its successors and permitted assigns, and may be assigned by Lender without seeking prior approval from Borrower. Borrower may not assign this Note or any of Borrower's obligations and liabilities hereunder without the prior written consent of Lender. Any such purported assignment in contravention of this provision shall be null and void.

25. WAIVERS AND ACKNOWLEDGEMENTS OF BORROWER. Borrower hereby (i) waives presentment for payment, demand, protest and notice of presentment, notice of acceleration, notice of protest, notice of nonpayment, notice of dishonor, and each and every notice of any kind respecting this Note and the enforcement hereof; (ii) agrees and acknowledges that Lender at any time or times, without notice to or obtaining Borrower's consent, may grant extensions of time, without limit as to the number of the aggregate period of such extensions, for the Payment of any amounts owed pursuant to the Principal Amount, plus interest and/or other sums due and owed to Lender hereunder; (iii) waives all exemptions, including, without limitation, with regard to garnishment, under the laws of the State of New York and/or any other state or territory of the United States of America, to the fullest extent permitted by law; and (iv) waives the benefit of any law or rule intended for Borrower's advantage or protection as an obligor under this Note or providing for Borrower's release or discharge from liability under this Note, in whole or in part, on account of any facts or circumstances other than full and complete payment of all amounts due under this Note.

26. RELATIONSHIP. Lender and Borrower intend that the relationship created and evidenced by this Note shall be solely that of debtor and creditor, and that nothing in this Note shall be construed or interpreted as creating a joint venture, partnership, or any other type of agency relationship between Lender and Borrower.

27. NOTICES. All notices or other communications hereunder shall be in writing and shall be sent via email or by prepaid first class U.S. mail to a Party at its address given above, or to any other address as to which such Party notifies the other, and shall be deemed given one (1) day following the issuance thereof if sent by email, or three (3) days following the deposit thereof with the United States Postal Service.

9

28. SEVERABILITY. Any term or provision of this Note that is deemed invalid or unenforceable by a court of competent jurisdiction shall be modified and enforced to the fullest extent permitted by law or statute, and shall not affect the validity or enforceability of the remaining terms and provisions hereof.

29. GOVERNING LAW; JURISDICTION. This Note shall be deemed entered into in the State of New York, and shall be governed and construed under the laws of the State of New York, without regard to conflict of law principles thereof. The Parties hereby irrevocably submit to the exclusive personal jurisdiction and venue of any state or federal court sitting in the State of New York regarding any action or proceeding arising out of or relating to this Note, hereby waive any claims of objections or defenses thereto, and hereby irrevocably agree that all claims in respect of such action or proceeding shall be heard and determined in such New York state or federal court.

30. ENTIRE AGREEMENT. All understandings, representations and agreements heretofore with respect to this Note are merged into this Note, which, together with the Loan Documents executed in connection herewith, fully and completely express the agreement between Lender and Borrower. Borrower acknowledges that neither Lender nor any other party acting in concert with Lender has made any representation, warranty, or statement to Borrower in order to induce Borrower into executing this Note, and hereby expressly waives any and all claims for fraud in the inducement.

The terms and provisions contained in this Note may not be terminated orally, or varied, discharged, altered, or modified except by a writing signed by the Party to be charged therewith.

This Note may be executed in one or more counterparts, each of shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Any signature delivered by a Party via facsimile or electronic transmission shall be deemed an original signature hereto.

31. AMBIGUITIES. Each Party acknowledges that its legal counsel has participated in the preparation of this Note and therefore stipulates that the rule of construction stating that ambiguities are to be resolved against the drafting Party shall not be applied in the interpretation of this Note to favor one Party against the other.

32. LEGAL COUNSEL. **THIS DOCUMENT CONTAINS LEGAL TERMS AND RIGHTS THAT AFFECT BORROWER. BORROWER HEREBY ACKNOWLEDGES THAT LENDER HAS ADVISED BORROWER TO SEEK INDEPENDENT LEGAL COUNSEL AND THAT BORROWER HAS SECURED OR HAS HAD THE OPPORTUNITY TO SECURE LEGAL COUNSEL TO REPRESENT BORROWER IN CONNECTION WITH THIS AGREEMENT.**

**IN WITNESS WHEREOF**, and intending to be legally bound, the undersigned have caused this Note to be duly executed as of the Effective Transaction Date written above.

10



**BORROWER:**

By:    Evander Kane

**LENDER:**

By:    Paul DeAngelo
*I have authority to bind Lender*

35 Ojibwa Circle
Buffalo, NY 14202

Seven Isles Capital, LLC
2328 Aqua Vista Blvd
Fort Lauderdale, FL 33301

STATE OF _____ Nevada _____ )
                                 )SS:
COUNTY OF _____ Clark _____ )

On July 5, 2017, Evander Kane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

NAKIA WOODSON
Notary Public, State of Nevada
Appointment No. 05-98616-1
My Appt. Expires Apr 8, 2018

## EXHIBITS TO PROMISSORY NOTE

EXHIBIT A:      REPAYMENT SCHEDULE

EXHIBIT B:      OTHER CURRENT LIABILITIES / LIENS OF BORROWER

EXHIBIT C:      SURE SPORTS LENDING TERM SHEET

EXHIBIT D:      CONFESSION OF JUDGMENT

11

Evander Kane
35 Ojibwa Circle
Buffalo, NY 14202

Re: $3.55M loan between Seven Isles Capital, LLC and Evander Kane

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires (account information listed below) released out of my loan proceeds for the following:

- $115,375.00   Service / Underwriting Fee
- $40,000.00    Insurance Premium (EST)
- $2,534,638.00 Loan Payoff
- $1,000.00     Legal closing

## Sure Sports Lending - $115,375.00

Wells Fargo Bank
1807 N Young Circle
Hollywood, FL
Routing #:     121 000 248
Account #:     873 624 4040
Ref:           Evander Kane

## Hanleigh Management Inc. Premium Trust - $40,000.00

BB&T International Services Division
200 S. College St. FL 18
Charlotte, NC 28202
Routing #:     053101121
Account #:     0005201229210
Ref:           Evander Kane

## DeAngelo Vehicle Sales, LLC - $2,534,638.00

Landmark Community Bank
383 S. Poplar Street
Hazelton, PA 18201
Routing #:     031318677
Account#:      00511527
Ref:           Evander Kane

1

**Sure Sports Lending – $1,000.00**

Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:    121 000 248
Account #:   937 349 7966
Ref:        Evander Kane

**Please have the remaining funds wired to my account as follows:**

**Evander Kane**
East West Bank
9300 Flair Drive, 4th FL
El Monte, CA 91731
Routing #:   322070381
Account #:   2032004455

RBC wealth Management %
account ending in 0532

Sincerely,

Evander Kane

2



## EXHIBIT A
## PROMISSORY NOTE

$3,000,000.00

July 5, 2017

**FOR VALUE RECEIVED,** Evander F. Kane, whose resides at 35 Ojibwa Circle, Buffalo, NY 14202 (the "Borrower"), promises to pay to Thrivest Specialty Funding, LLC a Delaware Limited Liability Company with its principal offices located at Eight Tower Bridge, 161 Washington St., Suite #240, Conshohocken, PA 19428 ("Lender"), or its assigns, at Lender's address, or at such place as Lender designates from time to time, the principal sum of $3,000,000.00 (Three Million Dollars and No Cents) ("Repayment Amount") in lawful money of the United States of America, together with interest thereon, as described in this Promissory Note (the "Loan"). Unless the term of this Promissory Note is extended by the Lender, the entire then remaining outstanding principal balance of the Loan and all accrued but unpaid interest shall be due and payable on August 5, 2018 (the "Maturity Date"). This Promissory Note is subject to the terms and provisions of that certain Secured Financial Transaction and Security Agreement #4 by and between Borrower and Lender dated July 5, 2017 (the "Agreement"). The provisions of the Agreement are incorporated herein by reference.

1. **Payments.** Borrower shall make interest payments on the principal balance of the Loan outstanding from time to time at the fixed interest rate of Twelve Percent (12%) per annum together with such portion of the principal as is included in the scheduled payments according to the following schedule:

| Payment | Date | Interest | Principal | Total |
|---|---|---|---|---|
| 1 | 5-Aug-17 | $0 | $0 | $0 |
| 2 | 5-Sep-17 | $0 | $0 | $0 |
| 3 | 5-Oct-17 | $0 | $0 | $0 |
| 4 | 5-Nov-17 | $0 | $0 | $0 |
| 5 | 5-Dec-17 | $0 | $0 | $0 |
| 6 | 5-Jan-18 | $0 | $0 | $0 |
| 7 | 5-Feb-18 | $0 | $0 | $0 |
| 8 | 5-Mar-18 | $0 | $0 | $0 |
| 9 | 5-Apr-18 | $0 | $0 | $0 |
| 10 | 5-May-18 | $0 | $0 | $0 |
| 11 | 5-Jun-18 | $0 | $0 | $0 |
| 12 | 5-Jul-18 | $0 | $0 | $0 |
| 13 | 5-Aug-18 | $0 | $3,000,000 | $3,000,000 |
| | | $0 | $3,000,000 | $3,000,000 |

Interest shall be payable in arrears and shall be computed on the basis of a 360-day year.

2. **Prepayment of Principal.** During the entire term of the Loan, prepayment of all or part of the principal may be made by Borrower without penalty; *provided, however* that, except for payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note, all such principal prepayments shall be in even multiples of ONE THOUSAND and no/100 DOLLARS US ($1,000.00 US). Prepayments shall be applied against the outstanding principal balance of the Loan and shall not extend or postpone the due date of any subsequent monthly interest payment or change or reduce the minimum monthly payments set forth in the foregoing payment schedule, unless Lender shall agree otherwise in writing. As used herein, the term prepayment shall include all

13

voluntary payments and all payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note.

3. **Loan Documents.** This Promissory Note is secured by:

(a) The Agreement creating a security interest in all of the Pledged Payments specifically those derived from (i) Borrower's professional National Hockey League contract with the Winnipeg Jets that was traded to the Buffalo Sabres on February 11, 2015 or Borrower's contract with any future contract holder and (ii) any other subsequent contract or arrangement pursuant to which the Borrower enters into in respect of services performed by Borrower for playing professional hockey.

This Promissory Note, the Agreement, and such other related documents are collectively referred to in this Promissory Note as the "Financial Transaction Documents."

4. **Default.** A breach of any of the terms of this Promissory Note by Borrower or a default by Borrower hereunder shall constitute a default under any of the Financial Transaction Documents ; a default by Borrower or any guarantor under an of the Financial transaction Documents shall constitute a default under this Promissory Note (each an "Event of Default"). Upon the occurrence of an Event of Default the entire outstanding balance of principal and accrued interest, together with all other amounts payable hereunder and/or under any one or more of the Financial Transaction Documents and all costs and reasonable attorneys' fees incurred by Lender in collecting or enforcing the terms of the Financial transaction Documents and/or the payment of such amounts, shall be due and payable at the option of Lender, without further notice, which notice Borrower waives.

5. **Consent to Extension, Etc.** From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's sole and absolute discretion, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

6. **Late Charge.** If any payment of principal, interest or any other sums due in full to Lender hereunder or under any one or more of the Financial Transaction Documents is not received by Lender within ten (10) calendar days from the date it is due, including the payment due on the Maturity Date, a late charge in an amount equal to the greater of 10% of the regularly scheduled payment or $250.00 shall be due from Borrower. Borrower agrees and acknowledges that the late fee constitutes an administrative fee and is not interest for any purpose. This late payment charge shall apply individually to all payments past due, including the final balloon payment of principal due hereunder, and no daily pro rata adjustment shall be made. Until said late charge is paid, it shall accrue interest at the same rate as is then in effect under this Promissory Note. If the loan is still outstanding thirty (30) days after the 10% penalty, Lender will begin the procedure to garnish Borrower's wages. Should default be made in the payment of any amount due under this Promissory Note on the date it is due and if such default is not cured prior to the expiration of ten (10) days following Lender's delivery of written notice of such default to Borrower, then Lender may, at its election, declare all of the principal and interest immediately due and payable without notice, presentation or demand for payment.

In the event of a default in the payment of any monthly installment of interest due hereunder on the date on which it is due, and which default continues for a period of ten (10) days, said unpaid interest shall accrue interest at the rate of 6% above the rate of interest otherwise applicable beginning on the date upon which said payment was due and said interest shall continue to accrue from day to day until all interest in arrears is paid.

7. **Application of Payments.** All payments shall be applied in the following order: i) first to costs of collection as set forth in section 9, below, ii) next to late charges and prepayment fee, if any, iii) next, to the repayment of Loans by Lender

14

(as described below) for the benefit of Borrower, plus interest on the Loan at the rate set forth herein above iv) next, to accrued interest on the principal of this Promissory Note, and v) next, to principal.

8. **Waivers.** Borrower, and any guarantors and endorsers, for themselves and their legal representatives, successors and assigns, severally waive presentment for payment, protest, demand and notice of presentment, notice of protest, demand and dishonor and nonpayment of this Promissory Note.

9. **Maximum Rate of Interest.** No provision of this Promissory Note or any of the other the Financial transaction Documents shall be deemed to require Borrower to pay or be liable for the payment of interest in excess of the maximum legal rate of interest (if there is any maximum) allowable under applicable law. If for any reason interest in excess of such amount will have been paid under this Promissory Note, as a result of acceleration or otherwise, any such excess shall constitute and be treated as a payment of principal under this Promissory Note, and shall reduce the principal balance of this Promissory Note by the amount of such excess, or if in excess of the principal balance, such excess shall be refunded.

10. **Costs of Enforcement.** Borrower agrees to pay all costs of enforcement of the terms of this Promissory Note and the costs of enforcement of the terms of any of the Financial transaction Documents and costs of collection, including reasonable attorneys' fees, that Lender incurs in connection with any default hereunder or under any of the Financial transaction Documents (whether before or after any cure). Additionally, Borrower agrees to pay all costs, fees and expenses, including reasonable attorneys' fees, that Lender incurs, before or after any default, in endeavoring to protect, enforce and realize on this Promissory Note or any one of the Financial transaction Documents or as result of any litigation or other action in which Lender becomes involved as a party, witness or otherwise as a result of or in any way relating to this Promissory Note, and of the Financial transaction Documents or the Loan being made to Borrower. Any and all such costs paid or incurred by Lender shall bear interest at the same rate set forth herein for the principal balance due hereunder and shall become due and payable immediately upon demand by Lender.

11. **Nature of Obligations.** Borrower is obligated to pay the principal, interest, late charges and prepayment premium, if any, on this Promissory Note and any other sums payable hereunder and under any of the Financial transaction Documents, and Lender shall have full recourse against Borrower and all of Borrower's property of every kind or nature whatsoever and wherever located in the collection of the amounts due under this Promissory Note and/or under the Financial transaction Documents. If this Promissory Note is signed by more than one maker, the singular includes the plural, and the makers of this Promissory Note are jointly and severally liable for all obligations described in this Promissory Note.

12. **Applicable Law; Severability.** This Promissory Note shall be governed by the internal laws of the State of Florida. In any litigation in any way relating to this Promissory Note or any of the Financial Transaction Documents, Borrower hereby consents to the jurisdiction of the Southern District Court of Fort Lauderdale, State of Florida having jurisdiction. Invalidity of any provision of this Promissory Note shall not affect the validity of any other provision. Without affecting the liability of Borrower, or any guarantor or endorser, Lender may, without notice, renew or extend the time for payment, accept partial payments, release or impair any security for the payment of this Promissory Note, agree not to sue any party liable under this Promissory Note or any one or more of the Financial Transaction Documents, or otherwise modify the terms of payment of all or any part of the indebtedness evidenced by this Promissory Note. Waiver of any default shall not constitute a waiver of any subsequent default.

13. **Transferability; Modification.** Lender may freely transfer and assign this Promissory Note. This Promissory Note may only be modified, extended or discharged by a written agreement executed by the party against whom enforcement of any modification, extension or discharge is sought.

14. **WAIVER OF RIGHT TO TRIAL BY JURY.** TO THE FULLEST EXTEND ALLOWED BY LAW, BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT OR LEGAL OR ADMINISTRATIVE PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THIS PROMISSORY NOTE OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE LOAN TRANSACTION CONTEMPLATED UNDER THIS PROMISSORY NOTE OR ANY OTHER DOCUMENTS OR

15

TRANSACTIONS CONTEMPLATED OR REFERRED TO HEREIN, INCLUDING, WITHOUT LIMITATION, TRIAL BY JURY WITH RESPECT TO ANY THIRD PARTY IN ANY LAWSUIT OR PROCEEDING IN WHICH THE BORROWER, THE LENDER AND OR ANY GUARANTOR(S) ARE PARTIES.

15. **Consent to Garnishment.** The Borrower hereby consents to the issuance of a Writ of Garnishment and the garnishment of Borrower's accounts and wages in the enforcement of any collection action taken by Lender in connection with the enforcement of the terms of this Promissory Note or any one or more of the Financial Transaction Documents.

16. **Time.** Time shall be deemed to be of the essence of this Promissory Note and of each covenants, agreements and conditions to be performed hereunder.

17. **Binding Effect.** This terms, conditions, representations, warranties and covenants of this Promissory Note shall be binding upon the Borrower and shall inure to the benefit of the Lender, and their respective successors, representatives, heirs, devisees, administrators, successors and assigns.

18. **Conduct Not a Waiver.** No waiver of default by Lender shall be effective unless in writing signed by Lender and a waiver of any default by Lender or any forbearance of the enforcement of its rights under this Promissory or under any of the Financial Transaction Documents or any other document executed in connection with this loan transaction contemplated under this Promissory Note, shall not operate as a waiver of any other right or of any subsequent default or the same default on any future occasion.

19. **Remedies Cumulative.** No right or remedy conferred upon or reserved to Lender hereunder is intended to be exclusive of any other right or remedy and every right and remedy shall be cumulative and in addition to every other right or remedy given or reserved hereunder or under applicable law. Every right or remedy under this Promissory Note or any other document executed in connection with the loan transaction contemplated under this Promissory Note, or under applicable law may be exercised as may be deemed necessary of convenient by Lender.

This Promissory Note has been executed and is effective on the date(s) set forth below.

BORROWER: EVANDER F. KANE

By: _____ Date: July 5/17
Borrower

Notary acknowledgement appears on the next page

16



Evander Kane
35 Ojibwa Circle
Buffalo, NY 14202

Re: $3M loan between Thrivest Specialty Funding, LLC and Evander Kane

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires
(account information listed below) released out of my loan proceeds for the following:

- $97,500.00     Service / Underwriting Fee
- $25,750.00     Disgrace Insurance Premium
- $5,407.50      Death Insurance Premium
- $104,427.00    Loan Payoff
- $1,955,250.00 Loan Payoff
- $1,000.00      Legal closing

## Sure Sports Lending - $97,500.00

Wells Fargo Bank
1807 N Young Circle
Hollywood, FL
Routing #:      121 000 248
Account #:      873 624 4040
Ref:            Evander Kane

## ASU International, Inc. - $25,750.00

Wells Fargo Bank
155 5th Street
San Francisco, CA 94103
HCC Specialty Underwriters on Behalf of Lloyds Premium
Routing #:      121000248
Account #:      4834784373
Ref:            Evander Kane

## ASU International, Inc. - $5,407.50

Wells Fargo Bank
155 5th Street
San Francisco, CA 94103
HCC Specialty Underwriters on Behalf of Lloyds Premium
Routing #:      121000248
Account #:      4834784373
Ref:            Evander Kane

1



### Now Playing, LLC - $104,427.00

Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #: 121 000 248
Account #: 558 214 1734
Ref: Evander Kane

### Thrivest Specialty Funding, LLC - $1,955,250.00

WSFS Bank
500 Delaware Avenue
Wilmington, DE 19801
Routing#: 031 100 102
Account#: 210 800 686
Ref: Evander Kane

### Sure Sports Lending – $1,000.00

Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #: 121 000 248
Account #: 937 349 7966
Ref: Evander Kane

**Please have the remaining funds wired to my account as follows:**

**Evander Kane**
East West Bank
9300 Flair Drive, 4th FL
El Monte, CA 91731
Routing #: 322070381
Account #: 2033004455

RBC Wealth management
Account ending in 0532

Sincerely,

Evander Kane

2



EXHIBIT A
PROMISSORY NOTE

$4,850,000.00                                                    September 28, 2017

**FOR VALUE RECEIVED**, Evander F. Kane, whose resides at 35 Ojibwa Circle, Buffalo, NY 14202 (the "Borrower"), promises to pay to Thrivest Specialty Funding, LLC a Delaware Limited Liability Company with its principal offices located at Eight Tower Bridge, 161 Washington St., Suite #240, Conshohocken, PA 19428 ("Lender"), or its assigns, at Lender's address, or at such place as Lender designates from time to time, the principal sum of $4,850,000.00 (Four Million, Eight Hundred Fifty Thousand, Dollars and No Cents) ("Repayment Amount") in lawful money of the United States of America, together with interest thereon, as described in this Promissory Note (the "Loan"). Unless the term of this Promissory Note is extended by the Lender, the entire then remaining outstanding principal balance of the Loan and all accrued but unpaid interest shall be due and payable on August 15, 2018 (the "Maturity Date"). This Promissory Note is subject to the terms and provisions of that certain Secured Financial Transaction and Security Agreement #5 by and between Borrower and Lender dated September 28, 2017 (the "Agreement"). The provisions of the Agreement are incorporated herein by reference.

1.  **Payments**. Borrower shall make interest payments on the principal balance of the Loan outstanding from time to time at the fixed interest rate of Fifteen Percent (15%) per annum together with such portion of the principal as is included in the scheduled payments according to the following schedule:

| Payment | Date | Interest | Principal | Total |
|---|---|---|---|---|
| 1 | 15-Oct-17 | $0 | $0 | $0 |
| 2 | 15-Nov-17 | $0 | $0 | $0 |
| 3 | 15-Dec-17 | $0 | $0 | $0 |
| 4 | 15-Jan-18 | $0 | $0 | $0 |
| 5 | 15-Feb-18 | $0 | $0 | $0 |
| 6 | 15-Mar-18 | $0 | $0 | $0 |
| 7 | 15-Apr-18 | $0 | $0 | $0 |
| 8 | 15-May-18 | $0 | $0 | $0 |
| 9 | 15-Jun-18 | $0 | $0 | $0 |
| 10 | 15-Jul-18 | $0 | $0 | $0 |
| 11 | 15-Aug-18 | $0 | $4,850,000 | $4,850,000 |
| | | $0 | $4,850,000 | $4,850,000 |

Interest shall be payable in arrears and shall be computed on the basis of a 360-day year.

2.  **Prepayment of Principal**. During the entire term of the Loan, prepayment of all or part of the principal may be made by Borrower without penalty; *provided, however* that, except for payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note, all such principal prepayments shall be in even multiples of ONE THOUSAND and no/100 DOLLARS US ($1,000.00 US). Prepayments shall be applied against the outstanding principal balance of the Loan and shall not extend or postpone the due date of any subsequent monthly interest payment or change or reduce the minimum monthly payments set forth in the foregoing payment schedule, unless Lender shall agree otherwise in writing. As used herein, the term prepayment shall include all voluntary payments and all payments occurring as a result of the acceleration by Lender of the principal amount of this Promissory Note.

13

3.  **Loan Documents**.  This Promissory Note is secured by:

    (a) The Agreement creating a security interest in all of the Pledged Payments specifically those derived from (i) Borrower's professional National Hockey League contract with the Winnipeg Jets that was traded to the Buffalo Sabres on February 11, 2015 or Borrower's contract with any future contract holder and (ii) any other subsequent contract or arrangement pursuant to which the Borrower enters into in respect of services performed by Borrower for playing professional hockey.

    This Promissory Note, the Agreement, and such other related documents are collectively referred to in this Promissory Note as the "Financial Transaction Documents."

4.  **Default**.  A breach of any of the terms of this Promissory Note by Borrower or a default by Borrower hereunder shall constitute a default under any of the Financial Transaction Documents ; a default by Borrower or any guarantor under an of the Financial transaction Documents shall constitute a default  under  this Promissory Note (each an "Event of Default"). Upon the occurrence of an Event of Default the entire outstanding balance of principal and accrued interest, together with all other amounts payable hereunder and/or under any one or more of the Financial Transaction Documents and all costs and reasonable attorneys' fees incurred by Lender in collecting or enforcing the terms of the Financial transaction Documents and/or the payment of such amounts, shall be due and payable at the option of Lender, without further notice, which notice Borrower waives.

5.  **Consent to Extension, Etc.**  From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's sole and absolute discretion, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

6.  **Late Charge**.  If any payment of principal, interest or any other sums due in full to Lender hereunder or under any one or more of the Financial Transaction Documents is not received by Lender within ten (10) calendar days from the date it is due, including the payment due on the Maturity Date, a late charge in an amount equal to the greater of 10% of the regularly scheduled payment or $250.00 shall be due from Borrower. Borrower agrees and acknowledges that the late fee constitutes an administrative fee and is not interest for any purpose. This late payment charge shall apply individually to all payments past due, including the final balloon payment of principal due hereunder, and no daily pro rata adjustment shall be made.  Until said late charge is paid, it shall accrue interest at the same rate as is then in effect under this Promissory Note. If the loan is still outstanding thirty (30) days after the 10% penalty, Lender will begin the procedure to garnish Borrower's wages. Should default be made in the payment of any amount due under this Promissory Note on the date it is due and if such default is not cured prior to the expiration of ten (10) days following Lender's delivery of written notice of such default to Borrower, then Lender may, at its election, declare all of the principal and interest immediately due and payable without notice, presentation or demand for payment.

    In the event of a default in the payment of any monthly installment of interest due hereunder on the date on which it is due, and which default continues for a period of ten (10) days, said unpaid interest shall accrue interest at the rate of 6% above the rate of interest otherwise applicable beginning on the date upon which said payment was due and said interest shall continue to accrue from day to day until all interest in arrears is paid.

7.  **Application of Payments**.  All payments shall be applied in the following order: i) first to costs of collection as set forth in section 9, below, ii) next to late charges and prepayment fee, if any, iii) next, to the repayment of Loans by

Lender (as described below) for the benefit of Borrower, plus interest on the Loan at the rate set forth herein above iv) next, to accrued interest on the principal of this Promissory Note, and v) next, to principal.

8.  **Waivers**.  Borrower, and any guarantors and endorsers, for themselves and their legal representatives, successors and assigns, severally waive presentment for payment, protest, demand and notice of presentment, notice of protest, demand and dishonor and nonpayment of this Promissory Note.

9.  **Maximum Rate of Interest**.  No provision of this Promissory Note or any of the other the Financial transaction Documents shall be deemed to require Borrower to pay or be liable for the payment of interest in excess of the maximum legal rate of interest (if there is any maximum) allowable under applicable law.  If for any reason interest in excess of such amount will have been paid under this Promissory Note, as a result of acceleration or otherwise, any such excess shall constitute and be treated as a payment of principal under this Promissory Note, and shall reduce the principal balance of this Promissory Note by the amount of such excess, or if in excess of the principal balance, such excess shall be refunded.

10. **Costs of Enforcement**.  Borrower agrees to pay all costs of enforcement of the terms of this Promissory Note and the costs of enforcement of the terms of any of the Financial transaction Documents and costs of collection, including reasonable attorneys' fees, that Lender incurs in connection with any default hereunder or under any of the Financial transaction Documents (whether before or after any cure).  Additionally, Borrower agrees to pay all costs, fees and expenses, including reasonable attorneys' fees, that Lender incurs, before or after any default, in endeavoring to protect, enforce and realize on this Promissory Note or any one of the Financial transaction Documents or as result of any litigation or other action in which Lender becomes involved as a party, witness or otherwise as a result of or in any way relating to this Promissory Note, and of the Financial transaction Documents or the Loan being made to Borrower. Any and all such costs paid or incurred by Lender shall bear interest at the same rate set forth herein for the principal balance due hereunder and shall become due and payable immediately upon demand by Lender.

11. **Nature of Obligations**.  Borrower is obligated to pay the principal, interest, late charges and prepayment premium, if any, on this Promissory Note and any other sums payable hereunder and under any of the Financial transaction Documents, and Lender shall have full recourse against Borrower and all of Borrower's property of every kind or nature whatsoever and wherever located in the collection of the amounts due under this Promissory Note and/or under the Financial transaction Documents. If this Promissory Note is signed by more than one maker, the singular includes the plural, and the makers of this Promissory Note are jointly and severally liable for all obligations described in this Promissory Note.

12. **Applicable Law; Severability**.  This Promissory Note shall be governed by the internal laws of the State of Florida. In any litigation in any way relating to this Promissory Note or any of the Financial Transaction Documents, Borrower hereby consents to the jurisdiction of the Southern District Court of Fort Lauderdale, State of Florida having jurisdiction. Invalidity of any provision of this Promissory Note shall not affect the validity of any other provision.  Without affecting the liability of Borrower, or any guarantor or endorser, Lender may, without notice, renew or extend the time for payment, accept partial payments, release or impair any security for the payment of this Promissory Note, agree not to sue any party liable under this Promissory Note or any one or more of the Financial Transaction Documents, or otherwise modify the terms of payment of all or any part of the indebtedness evidenced by this Promissory Note.  Waiver of any default shall not constitute a waiver of any subsequent default.

13. **Transferability; Modification.**  Lender may freely transfer and assign this Promissory Note. This Promissory Note may only be modified, extended or discharged by a written agreement executed by the party against whom enforcement of any modification, extension or discharge is sought.

14. **WAIVER OF RIGHT TO TRIAL BY JURY**.  TO THE FULLEST EXTEND ALLOWED BY LAW, BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT OR LEGAL OR ADMINISTRATIVE PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THIS

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 433 of 455

PROMISSORY NOTE OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE LOAN TRANSACTION CONTEMPLATED UNDER THIS PROMISSORY NOTE OR ANY OTHER DOCUMENTS OR TRANSACTIONS CONTEMPLATED OR REFERRED TO HEREIN, INCLUDING, WITHOUT LIMITATION, TRIAL BY JURY WITH RESPECT TO ANY THIRD PARTY IN ANY LAWSUIT OR PROCEEDING IN WHICH THE BORROWER, THE LENDER AND OR ANY GUARANTOR(S) ARE PARTIES.

15. **Consent to Garnishment**. The Borrower hereby consents to the issuance of a Writ of Garnishment and the garnishment of Borrower's accounts and wages in the enforcement of any collection action taken by Lender in connection with the enforcement of the terms of this Promissory Note or any one or more of the Financial Transaction Documents.

16. **Time**. Time shall be deemed to be of the essence of this Promissory Note and of each covenants, agreements and conditions to be performed hereunder.

17. **Binding Effect**. This terms, conditions, representations, warranties and covenants of this Promissory Note shall be binding upon the Borrower and shall inure to the benefit of the Lender, and their respective successors, representatives, heirs, devisees, administrators, successors and assigns.

18. **Conduct Not a Waiver**. No waiver of default by Lender shall be effective unless in writing signed by Lender and a waiver of any default by Lender or any forbearance of the enforcement of its rights under this Promissory or under any of the Financial Transaction Documents or any other document executed in connection with this loan transaction contemplated under this Promissory Note, shall not operate as a waiver of any other right or of any subsequent default or the same default on any future occasion.

19. **Remedies Cumulative**. No right or remedy conferred upon or reserved to Lender hereunder is intended to be exclusive of any other right or remedy and every right and remedy shall be cumulative and in addition to every other right or remedy given or reserved hereunder or under applicable law. Every right or remedy under this Promissory Note or any other document executed in connection with the loan transaction contemplated under this Promissory Note, or under applicable law may be exercised as may be deemed necessary of convenient by Lender.

This Promissory Note has been executed and is effective on the date(s) set forth below.

BORROWER: Evander F. Kane

By: _____   Date: _10/02/17_
        Borrower

Notary acknowledgement appears on the next page

16

STATE OF *New York* }:

COUNTY OF *Erie* }

SS:

On this, the _2^ND_ day of _October_, 20 _17_, before me _John P. Lefko_, the undersigned officer, personally appeared _Evander F Kane_, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that _He_ (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

Printed Name: _____

My Commission Expires: _____

JOHN P. LEFKO
Notary Public, State of New York
No. 01LE5023028
Qualified In Erie County
My Commission Expires June 30, 2018

17

October 2, 2017

Evander Kane
35 Ojibwa Circle
Buffalo, NY 14202

Re: $4.85M loan between Thrivest Specialty Funding, LLC and Evander Kane

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires
(account information listed below) released out of my loan proceeds for the following:

- $74,000.00      Service / Underwriting Fee
- $16,093.75      Disgrace Insurance Premium
- $2,535.86       Death Insurance Premium
- $2,700,000.00 Loan Payoff
- $500,000.00   Loan Payoff
- $5,000.00       Legal / Closing

## Sure Sports Lending - $74,000.00

Wells Fargo Bank
1807 N Young Circle
Hollywood, FL
Routing #:      121 000 248
Account #:      873 624 4040
Ref:            Evander Kane

## ASU International, Inc. - $16,093.75

Wells Fargo Bank
155 5th Street
San Francisco, CA  94103
HCC Specialty Underwriters on Behalf of Lloyds Premium
Routing #:      121000248
Account #:      4834784373
Ref:            Evander Kane

## ASU International, Inc. - $2,535.86

Wells Fargo Bank
155 5th Street
San Francisco, CA  94103
HCC Specialty Underwriters on Behalf of Lloyds Premium
Routing #:      121000248
Account #:      4834784373
Ref:            Evander Kane

1

**Thrivest Specialty Funding, LLC - $2,700,000.00**
WSFS Bank
500 Delaware Avenue
Wilmington, DE 19801
Routing#:         031 100 102
Account#:        210 800 686
Ref:                   Evander Kane

**Cosmopolitan - $500,000.00**
Account Name:
Bank Name:  *Wells Fargo*
Bank Address:          *ending in  acct#: 412 492 6072*
Routing #:
Account #:  ~~737 003 7118~~
Ref:                   Evander Kane

**Sure Sports Lending – $5,000.00**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:         121 000 248
Account #:        937 349 7966
Ref:                   Evander Kane

2

**Please have the remaining funds wired to my account as follows:**

**Evander Kane - ~~$531,801.89~~** $721,801.89

Beneficiary Bank: RBC Wealth Management Bank address: Suite 500-1055 West Georgia St.
Vancouver, BC V6E 3S5
Branch/transit#: 00010
Bank ID#: 003
Account#: 4600532
Swift code: ROYCCAT2

**Evander Kane - $200,000**
Beneficiary Bank:    Bank of America
Bank Address:
Routing #:
Account #:

Sincerely,

Evander Kane

3

$1,250,000.00

Bethesda, Maryland<br>December 18, 2017

## PROMISSORY NOTE

FOR VALUE RECEIVED, **KANE FINANCIAL LLC,** a Maryland limited liability company ("Borrower"), promises to pay to the order of **DEMOCRACY CAPITAL CORPORATION** ("Lender"), during regular business hours at Lender's office at 4800 Montgomery Lane, 10th Floor, Bethesda, Maryland 20814, or such other place as Lender may from time to time designate, the principal sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) ("Loan"), with interest thereon at the rate or rates specified below until paid in full, and any and all other sums which may be owing to Lender by Borrower pursuant to this Promissory Note ("Note"), in accordance with the provisions set forth herein.

**1.      PRIMARY BUSINESS TERMS**

1.1.      _Maturity Date_.  The final and absolute maturity date of this Note ("Maturity Date") shall be September 19, 2018.

1.2.      _Interest Rate_.  From the date of this Note until all sums owed on this Note are paid in full, interest shall accrue on the principal balance outstanding under this Note at the rate of 18.00% _per annum_. Interest shall be calculated on the basis of a 360 days per year factor applied to the actual days on which there exists a principal balance outstanding under this Note.

1.3.      _Payment_.  On the date hereof, Borrower shall prepay interest for the full term of this Note, from the date hereof until the Maturity Date, in the amount of $168,750.00.  On the Maturity Date, Borrower shall pay in full all sums due under this Note, including principal, interest, charges and fees.  All payments made under this Note shall be made by such form of check, draft or other instrument as may be approved from time to time by Lender, and shall be payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment.  All payments made under this Note shall be applied first to late charges or other sums owed to Lender, next to accrued interest, and then to principal, or in such other order or proportion as Lender, in Lender's sole discretion, may elect from time to time.

1.4.      _Late Charge_.  If any payment due under this Note is not received by Lender within 5 calendar days after its due date, Borrower shall pay a late charge equal to 10% of the amount then due.

1.5.      _Prepayment_.  Borrower may prepay this Note in whole or in part at any time or from time to time without premium or additional interest. All prepayments shall be applied to principal in the inverse order of scheduled maturities.

1.6.      _Commitment Fee_.  Borrower shall pay to Lender on or before the date of this Agreement a non-refundable and unconditional commitment fee of $50,000.00.  The commitment fee shall be the absolute property of Lender upon payment. The commitment fee shall not be considered to be a payment of any of Lender's costs and expenses incurred in connection with the Loan.

**2.      REPRESENTATIONS AND WARRANTIES**

2.1.      _Representations and Warranties_.  Borrower represents and warrants to Lender as follows:

        a.      Organization and Authority.  Borrower is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Maryland.  Borrower has the power and authority to consummate the transactions contemplated hereby, and has taken all necessary action to authorize the execution, delivery, and performance of this Note and the other Loan Documents executed and delivered by Borrower.

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 439 of 455



b. <u>Financial Statements</u>. The financial statements of Borrower, if any, delivered to Lender prior to the date of this Note are true and correct in all respects, and fairly present the financial condition of Borrower as of their respective dates, and no adverse change has occurred in the financial condition of Borrower since the date of the most recent such financial statement.

c. <u>No Litigation</u>. There are no actions, suits, or proceedings pending or, to the knowledge of Borrower, threatened against Borrower at law or in equity or before or by any governmental authority which have not been previously disclosed to Lender; and to Borrower's knowledge, Borrower is not in default with respect to any order, writ, injunction, decree, or demand of any court or any governmental authority.

d. <u>No Breach of Other Agreements</u>. The consummation of the transactions contemplated by this Note and the performance of this Note and the other Loan Documents (defined below) will not result in any breach of, or constitute a default under, any mortgage, deed of trust, lease, loan or credit agreement, or any other instrument to which Borrower is a party or by which Borrower may be bound or affected.

e. <u>Tax Returns</u>. Borrower has filed all required federal, state and local tax returns and has paid all taxes as shown on such returns as they have become due. No claims against Borrower have been assessed or are unpaid with respect to any such taxes.

f. <u>No Violation</u>. Borrower is in compliance with all laws, regulations, ordinances and orders of public authorities applicable to it. Borrower is obtaining the Loan solely for the purpose of holding, developing, and managing commercial real property for profit, and Loan proceeds are not intended to be used, and will not be used, for family, household, agricultural or personal purposes.

g. <u>USA Patriot Act</u>. No Identified Party is identified in any Blocked Persons List. "Blocked Persons List" means any list of known or suspected terrorists published by any United States government agency, including, without limitation, (i) the annex to Executive Order 13224 issued on September 23, 2001 by the President of the United States and (ii) the Specially Designated Nationals List published by the United States Office of Foreign Assets Control. "Identified Party" means Borrower, each Obligor, each affiliate of Borrower or any Obligor and each Principal of any of the foregoing. "Principal" means if a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the interest, ownership stock or stock equivalent of the entity. "Obligor" means any Person or entity other than Borrower who may at any time now or hereafter be primarily or secondarily liable for payment or performance of any obligations in connection with the Loan or under the Loan Documents, including without limitation each Obligor and any other maker, endorser, surety, or guarantor of all or a portion of Borrower's obligations in connection with the Loan or any Person who is now or hereafter a party to any of the Loan Documents. "Person" means an individual, an estate, a trust, a corporation, a partnership, a limited liability company, a government or governmental agency or instrumentality and any other legal entity.

2.2. <u>*Continuing Nature of Representations and Warranties*</u>. Unless Lender is notified to the contrary in writing, the representations and warranties made by Borrower in Section 2.1 shall remain true and accurate in all respects until the Loan has been paid and satisfied in full. Borrower shall immediately notify Lender in writing if any of the representations and warranties made by Borrower in Section 2.1 should become untrue, inaccurate or incomplete.

## 3. ADDITIONAL COVENANTS

3.1. <u>*Reporting Requirements*</u>. Borrower shall submit to Lender such financial statements, tax returns and other information regarding Borrower or any Obligor as Lender may request in Lender's sole discretion. The costs of submitting all financial statements and other information required by this Section shall be paid by Borrower.

Case: 21-05016   Doc# 39-2   Filed: 11/17/22   Entered: 11/17/22 16:58:52   Page 440 of 455

3.2.   _Subordination_.  Borrower subordinates the payment of any and all present and future indebtedness, liabilities, and obligations of any nature whatsoever of each Identified Party to Borrower, whether direct or indirect, liquidated or contingent, primary or secondary, alone or jointly with others, due or to become due, secured or unsecured, now existing or hereafter created, including without limitation all principal, interest, expense payments, liquidation costs, and attorneys' fees and expenses owed or incurred in connection with any of the foregoing indebtedness, to the payment of the Loan. So long as all or any part of the Loan remains unpaid, Borrower shall not, without the prior written consent of Lender, ask, demand, sue for, set off, accept, or receive any payment of all or any part of such indebtedness, liabilities and obligations of any Identified Party to Borrower.  Borrower shall not subordinate, assign, or transfer to any other Person all or any part of such indebtedness, liabilities and obligations of any Identified Party to Borrower, without the prior written consent of Lender.

3.3.   _USA Patriot Act_.  Borrower shall immediately notify Lender in writing if Borrower becomes aware that any Identified Party is identified in any Blocked Persons List.  At no time shall any Identified Party be identified in any Blocked Persons List.

## 4.   DEFAULT AND REMEDIES

4.1.   _Events of Default_. Each of the following shall constitute an event of default under this Note ("Event of Default"):

a.   Failure to Pay.  The failure of Borrower to pay to Lender when and as due and payable any and all amounts payable by Borrower to Lender under the provisions of this Note.

b.   Failure to Perform.  Borrower fails to perform or observe any covenant or agreement contained in this Note.

c.   Default Under Other Loan Documents.  A default in the performance of any of the covenants, conditions or terms of any agreement or document executed by Borrower, any Obligor or any other person for the benefit of Lender or any holder in connection with the Loan (collectively, "Loan Documents").

d.   Failure of Representation or Warranty.  Any representation or warranty made by Borrower or any Obligor in this Note or any other Loan Document proves to have been untrue, inaccurate, incomplete, incorrect or misleading in any respect.

e.   Inability to Pay Debts.  If Borrower or any Obligor is unable to pay its or his debts as they mature.

f.   Voluntary Bankruptcy, Etc.  Borrower, any Obligor or any member of Borrower or any Obligor: (i) voluntarily is adjudicated as bankrupt or insolvent, (ii) seeks or consents to the appointment of a receiver or trustee for itself or for all or any part of its property, (iii) files a petition seeking relief under the bankruptcy or similar laws of the United States or any state or any other competent jurisdiction, (iv) makes a general assignment for the benefit of creditors, or (v) admits in writing its inability to pay its debts as they mature.

g.   Involuntary Bankruptcy, Etc.  A court of competent jurisdiction enters an order, judgment or decree appointing, without the consent of Borrower, such Obligor or such member of Borrower or such Obligor, a receiver or trustee for Borrower, any Obligor or any member of any Obligor for all or any part of its property or approving a petition filed against it or him seeking relief under the bankruptcy or other similar laws of the United States or any state or other competent jurisdiction, and such order, judgment or decree shall remain in force undischarged or unstayed for a period of 60 calendar days.

h.   Transfers of Assets or Interests. The sale, transfer or encumbrance of any of the assets of Borrower or any Obligor other than for reasonably equivalent value; or the sale, transfer or encumbrance

3

of any beneficial interest in Borrower or any Obligor; or a change in control of Borrower or any Obligor which is a corporation, partnership or other legal entity.

       i.      <u>Judgment</u>. A final judgment for the payment of money is rendered against Borrower or any Obligor and remains unsatisfied for a period of 30 calendar days after the date of entry.

       j.      <u>Extraordinary Acts</u>. The sale, dissolution, merger, consolidation, liquidation or reorganization of Borrower, any Obligor or any member of Borrower or any Obligor which is a corporation, partnership or other legal entity.

       k.      <u>Material Adverse Change</u>. The occurrence of a material adverse change in the financial condition of Borrower or any Obligor.

       l.      <u>Cross-Default</u>. The occurrence of a default under any other indebtedness of Borrower or any Obligor to Lender or to any other Person.

4.2.    <u>Remedies</u>. Upon the occurrence of an Event of Default, in addition to all other rights and remedies available to Lender under the Loan Documents and applicable law, Lender shall have the following rights and remedies:

       a.      <u>Acceleration</u>. Lender, in Lender's sole discretion and without notice or demand, may declare the entire principal balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable; provided, however, that the entire principal balance outstanding under this Note, plus accrued interest and all other sums owed under this Note shall be deemed automatically due and payable in full immediately upon the occurrence of any Event of Default described in Section 4.1(e), 4.1(f) or 4.1(g) above.

       b.      <u>Default Interest Rate</u>. Lender, in Lender's sole discretion and without notice or demand, may raise the rate of interest accruing on the principal balance outstanding under this Note to the lesser of (i) the rate that is 5 percentage points above the rate of interest otherwise applicable, or (ii) the maximum rate of interest that Lender may charge by applicable law, independent of whether the holder elects to accelerate the principal balance outstanding under this Note.

       c.      <u>Confession of Judgment</u>. Borrower authorizes any attorney designated by Lender or any clerk of any court of record to appear for Borrower and confess judgment against Borrower in favor of Lender for the full amount due on this Note (including principal, accrued interest, charges and fees), plus court costs, plus attorneys' fees equal to 15% of the amount due, all without prior notice or opportunity of Borrower for prior hearing, without stay of execution or right of appeal, and expressly waiving the benefit of all exemption laws and any irregularity or error in entering any such judgment. No single exercise of the power to confess judgment granted in this paragraph shall exhaust the power, regardless of whether such exercise is ruled invalid, void or voidable by any court, nor shall this Note, Lender's right to attorneys' fees in the amount described herein or any other obligation hereunder or under any other Loan Document merge into any such judgment. The power to confess judgment granted in this paragraph may be exercised from time to time as often as the holder of this Note may elect. Borrower acknowledges that the actual amount of attorneys' fees incurred by Lender would be impossible to calculate at the time judgment by confession is entered, as such all such fees would not yet have been incurred. Accordingly, Borrower agrees that attorneys' fees equal to 15% of the amount due is reasonable given the circumstances.

       d.      <u>Setoff</u>. Lender may set off any amounts in any account or represented by any certificate with Lender in the name of Borrower or in which Borrower has an interest. As additional security for this Note, Borrower hereby pledges and grants to Lender a lien on and security interest in, and authorizes Lender to offset such obligations of Borrower or any guarantor of the Loan to Lender against, all property of Borrower now or at any time hereafter in the possession of, in transit to, under the control of, or on deposit with Lender, in any capacity whatsoever, including without limitation, any balance of any deposit account and any credits with Lender.

4

4.3.    *Expenses of Collection and Attorneys' Fees*.  If this Note is referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, Borrower shall pay all of Lender's costs, fees and expenses, including reasonable attorneys' fees actually incurred by Lender, resulting from such referral.  Borrower intends that the provisions of this Section 2.3 shall not be merged into any judgment under this Note, but shall survive every such judgment so that Borrower shall pay all costs, fees and expenses, including reasonable attorneys' fees, incurred by Lender in connection with this Note, whether incurred before or after judgment, and including without limitation any reasonable attorneys' fees and expenses incurred by Lender in collecting on any such judgment.

## 5.    MISCELLANEOUS

5.1.    *Notices*.  All notices, demands, requests and other communications required under the Loan Documents shall be in writing and shall be deemed to have been properly given if sent by hand delivery, Federal Express (or similar overnight courier service), or by United States certified mail (return receipt requested), postage prepaid, addressed to the party for whom it is intended at its address hereinafter set forth:

|  |  |
|---|---|
| If to Lender: | Democracy Capital Corporation<br>4800 Montgomery Lane, 10th Floor<br>Bethesda, Maryland 20814 |
|  | With copies to: |
|  | Brian C. Rosenberg<br>Rosenberg Pelino LLC<br>6031 University Boulevard, Suite 300<br>Ellicott City, Maryland 21043 |
| If to Borrower: | Kane Financial, LLC<br>35 Ojibwa Circle<br>Buffalo, New York 14202 |

Notice shall be deemed given as of the date of hand delivery, as of the date specified for delivery if by overnight courier service or as of 2 calendar days after the date of mailing, as the case may be.

5.2.    *Assignability*.  This Note may be assigned by Lender or any holder at any time or from time to time.  This Note shall inure to the benefit of and be enforceable by Lender and Lender's successors and assigns and any other person to whom Lender or any holder may grant an interest in Borrower's obligations under this Note, and shall be binding and enforceable against Borrower and Borrower's personal representatives, successors and assigns.

5.3.    *Negotiable Instrument*.  Borrower agrees that this Note shall be deemed a negotiable instrument even if this Note would not qualify under applicable law, absent this Section, as a negotiable instrument.

5.4.    *Choice of Law*.  This Note shall be governed by the laws of the State of Maryland.

5.5.    *Unconditional Obligations*.  Borrower's obligations under this Note shall be the absolute and unconditional duty and obligation of Borrower and shall be independent of any rights of set-off, recoupment or counterclaim which Borrower might otherwise have against the holder of this Note, and Borrower shall pay absolutely the payments of principal, interest, fees and expenses required under this Note, free of any deductions and without abatement, diminution or set-off.

5.6.    *Tense; Gender; Section Headings*.  In this Note, the singular includes the plural and *vice versa*; and each reference to any gender also applies to any other gender.  The section headings are for convenience only and are not part of this Note.

5.7.    *Time*.  Time is of the essence of this Note.

Case: 21-05016    Doc# 39-2    Filed: 11/17/22    Entered: 11/17/22 16:58:52    Page 443 of 455

5.8.   *Business Purpose*.  This Note evidences a commercial loan and an extension of credit for a commercial purpose, and the loan proceeds shall be used only for a business purpose and not for any personal, family or household purpose.

## 6.    CONSENTS AND WAIVERS

6.1.   *Waiver of Presentment, Etc*.  Borrower waives presentment, notice of dishonor and protest.

6.2.   *Consent to Extensions, Etc*.  From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's option, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

6.3.   *JURY TRIAL WAIVER*.  BORROWER AND LENDER (BY ACCEPTANCE OF THIS NOTE) JOINTLY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH BORROWER AND ANY HOLDER OF THIS NOTE MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS.  IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE.  THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER, AND BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.  BORROWER FURTHER REPRESENTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

**[SIGNATURE PAGE FOLLOWS]**

6

IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the date first written above.

WITNESS/ATTEST:                          **BORROWER**:

_____ LLC
A Maryland Limited Liability Company

_____          By:  _____ (SEAL)
                                               Evander F. Kane
                                               Sole Member

**Acknowledgment**

STATE OF MARYLAND, CITY/COUNTY OF ____*ERIE*____, TO WIT:

I HEREBY CERTIFY that on this _19_ day of December, 2017, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared Evander F. Kane, and acknowledged himself to be the Sole Member of Kane Financial LLC, a Maryland limited liability company, and acknowledged that he, being authorized so to do, executed the foregoing document for the purposes therein contained, in the aforementioned capacity.

IN WITNESS MY Hand and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires:

_____

JOHN P. LEFKO
Notary Public, State of New York
No. 01LE5023028
Qualified In Erie County
My Commission Expires June 30, 2018

7

December 18, 2017

Evander Kane
35 Ojibwa Circle
Buffalo, NY 14202

Re: $1.25M loan between Democracy Capital Corporation and Evander Kane

As per my Fee Agreement with Sure Sports Lending, I, Evander Kane, authorize the following wires
(account information listed below) released out of my loan proceeds for the following:

- $50,000.00    Service / Underwriting Fee
- $42,307.25    Death & Disgrace Insurance Premium
- $33,681.00    LOV Insurance Premium
- $3,500.00     Legal / Closing

**Sure Sports Lending - $50,000.00**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL
Routing #:      121 000 248
Account #:      873 624 4040
Ref:            Evander Kane

**ASU International, Inc. - $42,307.25**
Wells Fargo Bank
155 5th Street
San Francisco, CA 94103
HCC Specialty Underwriters on Behalf of Lloyds Premium
Routing #:      121000248
Account #:      4834784373
Ref:            Evander Kane

**International Specialty Insurance - $33,681.00**
BB&T
1661 North Bridge St
Elkin, NC 28621
Routing #:      053101121
Account #:      0005200290110
Ref:            Evander Kane

1

**Sure Sports Lending - $3,500.00**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:      121 000 248
Account #:      937 349 7966
Ref:            Evander Kane


**Please have the remaining funds wired to my account as follows:**

**Evander Kane - $659,775.00**
East West Bank
9300 Flair Drive, 4th Floor
El Monte, CA 91731
Routing #:      322 070 381
Account #:      203 200 4455
Ref:            Loan No. 372001033 (1/15/18 & 2/15/18)

**Evander Kane - $235,486.75**
East West Bank
9300 Flair Drive, 4th Floor
El Monte, CA 91731
Routing #:      322 070 381
Account #:      203 200 5783
Ref:            $1.25M-DCC


Sincerely,


Evander Kane

2

$1,850,000                                                                                         March 22, 2018

## PROMISSORY NOTE

FOR VALUE RECEIVED, EVANDER KANE ("Borrower"), promises to pay to the order of
South River Capital LLC ("Lender"), during regular business hours at Lender's office at 1500 Wild
Cranberry Drive, Crownsville, MD 21032, or such other place as Lender may from time to time
designate, the principal sum of $1,850,000 ("Loan"), with interest thereon at the rate or rates specified
below until paid in full, and any and all other sums which may be owing to Lender by Borrower pursuant
to this Promissory Note ("Note"), in accordance with the provisions set forth herein. This Note is made
pursuant to and in accordance with the Loan and Security Agreement of even dated herewith between
Borrower and Lender (as amended from time to time, "Loan Agreement"). Reference is hereby made to
the Loan Agreement for a statement of all of the terms and conditions under which the Loan is made, the
terms of which are hereby incorporated herein by reference. Capitalized terms used herein and not
otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

1)      **PRIMARY BUSINESS TERMS**

a)      *Maturity Date*.  The final and absolute maturity date of this Note ("Maturity Date") shall be
August 30, 2018. Lender has an option to accelerate this maturity at Lender's sole discretion on May 31,
2018. Lender will provide Borrower written notice within no less than 30 days if accelerated maturity
option is exercised.

b)      *Interest Rate*.  From the date of this Note until all sums owed on this Note are paid in full, interest
shall accrue on the principal balance outstanding under this Note at the rate of 18% *per annum*.  Interest
shall be calculated on the basis of a 360 days per year factor applied to the actual days on which there
exists a principal balance outstanding under this Note.

c)      *Payment*.  Monthly principal payments are required until the owed amount has been paid in full.
Borrower shall make a payment to Lender in an amount equal to the "payment" for such date as set forth
in the schedule attached hereto as Exhibit A ("Payment Schedule").  At Lender's option, all payments due
under this Note may be automatically debited by Lender from any of Borrower's accounts. All payments
made under this Note shall be made by such form of check, draft or other instrument as may be approved
from time to time by Lender, and shall be payable in lawful money of the United States of America,
which shall be legal tender in payment of all debts and dues, public and private, at the time of payment.
All payments made under this Note shall be applied first to late charges or other sums owed to Lender,
next to accrued interest, and then to principal, or in such other order or proportion as Lender, in Lender's
sole discretion, may elect from time to time.

d)      *Late Charge*.  If any payment due under this Note is not received by Lender within 5 calendar
days after its due date, Borrower shall pay a late charge equal to 10% of the amount then due.

e)      *Prepayment*. Borrower may prepay this Note in whole or in part at any time or from time to time
without premium or additional interest. All prepayments shall be applied to principal in the inverse order
of scheduled maturities.

2)      **DEFAULT AND REMEDIES**

a)      *Events of Default*. Each of the following shall constitute an event of default under this Note
("Event of Default"):

1



i)      A default in the payment of any sum due under this Note.

ii)     A default in the performance of any of the covenants, conditions or terms of the Loan Agreement or any other agreement or document executed by Borrower or any other person for the benefit of Lender or any holder in connection with the Loan (collectively with the Loan Agreement, "Loan Documents").

b)      _Remedies_. Upon the occurrence of an Event of Default, in addition to all other rights and remedies available to Lender under the Loan Documents and applicable law, Lender shall have the following rights and remedies:

i)      Acceleration. Lender, in Lender's sole discretion and without notice or demand, may declare the entire principal balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable; reference is made to the Loan Documents for further and additional rights on the part of Lender to declare the entire balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable.

ii)     Default Interest Rate. Lender, in Lender's sole discretion and without notice or demand, may raise the rate of interest accruing on the principal balance outstanding under this Note to the lesser of (i) the rate that is 5 percentage points above the rate of interest otherwise applicable, or (ii) the maximum rate of interest that Lender may charge by applicable law, independent of whether the holder elects to accelerate the principal balance outstanding under this Note.

iii)    Confession of Judgment. To the extent permitted by applicable law, Borrower authorizes any attorney designated by Lender or any clerk of any court of record to appear for Borrower and confess judgment against Borrower in favor of Lender for the full amount due on this Note (including principal, accrued interest, charges and fees), plus court costs, plus attorneys' fees equal to 15% of the amount due, all without prior notice or opportunity of Borrower for prior hearing, without stay of execution or right of appeal, and expressly waiving the benefit of all exemption laws and any irregularity or error in entering any such judgment. No single exercise of the power to confess judgment granted in this paragraph shall exhaust the power, regardless of whether such exercise is ruled invalid, void or voidable by any court, nor shall this Note, Lender's right to attorneys' fees in the amount described herein or any other obligation hereunder or under any other Loan Document merge into any such judgment. The power to confess judgment granted in this paragraph may be exercised from time to time as often as the holder of this Note may elect. Borrower acknowledges that the actual amount of attorneys' fees incurred by Lender would be impossible to calculate at the time judgment by confession is entered, as all such fees would not yet have been incurred. Accordingly, Borrower agrees that attorneys' fees equal to 15% of the amount due is reasonable given the circumstances.

iv)     Setoff. Lender may set off any amounts in any account or represented by any certificate with Lender in the name of Borrower or in which Borrower has an interest. As additional security for this Note, Borrower hereby pledges and grants to Lender a lien on and security interest in, and authorizes Lender to offset such obligations of Borrower or any guarantor of the Loan to Lender against, all property of Borrower now or at any time hereafter in the possession of, in transit to, under the control of, or on deposit with Lender, in any capacity whatsoever, including without limitation, any balance of any deposit account and any credits with Lender.

c)      _Expenses of Collection and Attorneys' Fees_. If this Note is referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, Borrower shall pay all of Lender's costs, fees and expenses, including reasonable attorneys' fees, resulting from such referral.

**3)      MISCELLANEOUS**

2

a) *Assignability.* This Note may be assigned by Lender or any holder at any time or from time to time. This Note shall inure to the benefit of and be enforceable by Lender and Lender's successors and assigns and any other person to whom Lender or any holder may grant an interest in Borrower's obligations under this Note, and shall be binding and enforceable against Borrower and Borrower's personal representatives, successors and assigns.

b) *Negotiable Instrument*. Borrower agrees that this Note shall be deemed a negotiable instrument even if this Note would not qualify under applicable law, absent this Section, as a negotiable instrument.

c) *Choice of Law*. This Note shall be governed by the laws of the State of Maryland.

d) *Unconditional Obligations*. Borrower's obligations under this Note shall be the absolute and unconditional duty and obligation of Borrower and shall be independent of any rights of set-off, recoupment or counterclaim which Borrower might otherwise have against the holder of this Note, and Borrower shall pay absolutely the payments of principal, interest, fees and expenses required under this Note, free of any deductions and without abatement, diminution or set-off.

e) *Severability*. In the event that any provision of this Note conflicts with applicable law, such conflict shall not affect other provisions of this Note which can be given effect without the conflicting provision, and to this end the provisions of this Note are declared to be severable.

f) *Tense; Gender; Section Headings*. In this Note, the singular includes the plural and *vice versa*; and each reference to any gender also applies to any other gender. The section headings are for convenience only and are not part of this Note.

g) *Time*. Time is of the essence of this Note.

**4) CONSENTS AND WAIVERS**

a) *Waiver of Presentment, Etc*. Borrower waives presentment, notice of dishonor and protest.

b) *Consent to Extensions, Etc*. From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's option, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

c) *Jury Trial Waiver*. Borrower and Lender (by acceptance of this Note) jointly waive trial by jury in any action or proceeding to which Borrower and any holder of this Note may be parties, arising out of or in any way pertaining to this Note or any of the other Loan Documents. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Note. This waiver is knowingly, willingly and voluntarily made by Borrower, and Borrower hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect. Borrower further represents that it has been represented in the signing of this Note and in the making of this waiver by independent legal counsel, selected of its own free will, and that it has had the opportunity to discuss this Note, the Loan and this waiver with counsel.

3

IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the date first written above.

WITNESS/ATTEST:                           **BORROWER:**

_____          _____(SEAL)

                                          Evander Kane

**Acknowledgment**

STATE OF _California_ , CITY/COUNTY OF _Santa Clara_ , TO WIT:

     I HEREBY CERTIFY that on March 22, 2018 before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared Evander Kane, known to me or satisfactorily proven to be the person named in the foregoing document, and acknowledged that he executed the foregoing document for the purposes therein contained.

     IN WITNESS MY Hand and Notarial Seal.

_____(SEAL)
NOTARY PUBLIC

My Commission Expires:

_October 15, 2020_



JENNIFER CHOYCE
Notary Public - California
Santa Clara County
Commission # 2164980
My Comm. Expires Oct 15, 2020

4

**Exhibit A**

# Loan Repayments by Month

| MONTH | START BALANCE | PRINCIPAL | INTEREST RESERVE* | PAYMENT DUE |
|---|---|---|---|---|
| 30-APR-18 | $1,850,000.00 | $0.00 | $27,750.00 | $0.00 |
| 30-MAY-18 | $1,850,000.00 | $0.00 | $27,750.00 | $0.00 |
| 30-JUN-18 | $1,850,000.00 | $0.00 | $27,750.00 | $0.00 |
| 30-JUL-18 | $1,850,000.00 | $0.00 | $27,750.00 | $0.00 |
| 30-AUG-18 | $1,850,000.00 | $1,850,000.00 | $27,750.00 | $1,850,000.00 |

5



Evander Kane
35 Ojibwa Circle
Buffalo, NY 14202

Re: $1.85M loan between South River Capital, LLC and Evander Kane

As per my Fee Agreement with Sure Sports, I, Evander Kane, authorize the following wires (account information listed below) released out of my loan proceeds for the following:

- $74,000.00    Service / Underwriting Fee
- $412,934.24   Loan Payoff (Partial-EWB)
- $300,000.00   Loan Payoff (Cosmo)
- $163,000.00   Loan Payoff (Alexander Zoltan Zabori)
- $33,446.25    Insurance Premium (Death & Disgrace)
- $17,211.49    Insurance Premium (LOV / PTD)
- $7,500.00     Legal / Closing

**Sure Sports Lending - $74,000.00**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL
Routing #:      121 000 248
Account #:      873 624 4040
Ref:            Evander Kane

**East West Bank - $412,934.24**
East West Bank
135 N. Los Robles Ave.
Pasadena, CA 91101
Routing #:      322 070 381
Account #:      242833-187
Ref:            Attn. Angela Lee - Loan No. 372001033

**NP 1 LLC – dba The Cosmopolitan of Las Vegas - $300,000.00**
Wells Fargo Bank
3800 Howard Hughes Parkway Suite 400
Las Vegas, NV 89169
Routing #:          121000248
Account #:          4124926072
Beneficiary Name:   Evander Kane
Casino Identity #:  917331

Closing Statement - 1

**Alexander Zoltan Zabori - $163,000.00**
Canadian Imperial Bank of Commerce
7188 King George Blvd
Surrey, BC V3W 5A3
Routing #:        001000620
Account #:        9027939
Transit #:        00620
Ref:              Evander Kane

**Exceptional Risk Advisors, LLC - $33,446.25**
Bank of America
210 Route 17 South
Mahwah, NJ 07430
ACH ABA #:        021200339
Wire Transfer:    026009593
Account #:        381032861897
Ref:              Evander Kane

**International Specialty Insurance - $17,211.49**
BB&T
1661 North Bridge St
Elkin, NC  28621
Routing #:        053101121
Account #:        0005200290110
Ref:              Evander Kane

**Sure Sports Lending - $7,500.00**
Wells Fargo Bank
1807 N Young Circle
Hollywood, FL 33020
Routing #:        121 000 248
Account #:        937 349 7966
Ref:              Evander Kane

Closing Statement - 2



**Please wire the remaining funds into my East West Bank account, listed below.**

**Evander Kane**
East West Bank
135 N. Los Robles Ave.
Pasadena, CA 91101
Routing #:      322 070 381
Account #:      2032005783

Sincerely,

Evander Kane