ANTHONY & PARTNERS, LLC
JOHN A. ANTHONY (SBN0731013)
  janthony@anthonyandpartners.com
ANDREW J. GHEKAS (SBN 0119169)
  aghekas@anthonyandpartners.com
*Both admitted Pro Hac Vice*
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone: 813.273.5616
Facsimile: 813.221.4113

NIESAR & VESTAL LLP
PETER C. CALIFANO (SBN 129043)
  pcalifano@nvlawllp.com
JOHN A. KELLEY (SPN 194073)
  jkelley@nvlawllp.com
90 New Montgomery St. 9th Floor
San Francisco, California 94105
Telephone: 415.882.5300
Facsimile: 415.882.5400

Attorneys for Plaintiff
CENTENNIAL BANK

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**[San Jose Division]**

| | |
|---|---|
| In re | CASE NO. 21-50028 SLJ |
| EVANDER FRANK KANE, | Chapter 7 |
| Debtors. | |
| CENTENNIAL BANK, an Arkansas state chartered bank, | Adv No. 21-05016 |
| Plaintiff, | **CENTENNIAL BANK'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING OR REFERENCE TO DEFENDANT'S RESPONSES TO DISCOVERY AT TRIAL [DOC. 41]**[1] |
| vs. | |
| EVANDER FRANK KANE, | |
| Defendant. | |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Civil Rule" references are to the Federal Rules of Civil Procedure, "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, "AP" references are to the docket in this proceeding, and "BK" references are to the docket in the underlying bankruptcy case.

Centennial Bank ("Centennial"), hereby responds in opposition to "Defendant's Motion <u>In Limine</u> to Exclude Evidence Regarding or Reference to Defendant's Responses to Discovery at Trial" (the "In Limine Motion") [Doc. 41] filed by Evander Frank Kane ("Kane") on December 30, 2022.

## I. INTRODUCTION

The In Limine Motion confirms Kane is **not** entitled to a discharge. After two years of litigation, Kane finally recognizes that his admitted failure to keep or preserve sufficient records from which his financial condition or business transactions might be ascertained and his inability to offer **any** explanation, let alone a satisfactory one, as to his admitted loss of assets and deficiency of assets to meet his stated liabilities, requires that this Court to deny Kane a bankruptcy discharge under Sections 727(a)(3) and 727(a)(5).

Instead of accepting this reality, however, Kane now desperately seeks to have this Court preclude Centennial from offering evidence of Kane's failures at the anticipated trial (the "Trial") under the guise of a "discovery dispute." Kane's motion is premised on a fundamental misunderstanding of the requisite burdens placed on each party to an adversary proceeding brought under Sections 727(a)(3) or 727(a)(5). This misunderstanding appears in the In Limine Motion's second sentence, which seeks to point blame at Centennial on Kane's own failure to preserve and produce records and explain the loss or deficiency of assets. Doc. 41 at 2. Through this gross misunderstanding of how the law works, Kane asks this Court to preclude Centennial "from introducing any evidence, testimony, or argument relating to the sufficiency of Kane's responses and any adverse inferences that might be drawn from the lack of certain records that fall within a normal discovery issue." <u>Id</u>. Despite this bold request, the In Limine Motion fails to cite **any** authority from **any** federal court for the proposition Centennial is precluded from offering evidence and/or testimony of Kane's own failures to keep and preserve relevant records, or offer a sufficient explanation for the loss of over $20,000,000 in assets.

Setting aside the In Limine Motion's unsound legal foundation, it is also factually inaccurate. Centennial did not "fail" or sit on any rights. Instead, through his counsel and own sworn testimony, Kane repeatedly affirmed that he did not maintain or preserve records relating to (i) $2,150,000 of

loan proceeds he received from certain "friends" and "family friends"; (ii) numerous bank accounts and credit cards identified by Kane to the point where Kane cannot even explain significant cash transfers and deposits to and from his own accounts; (iii) the use of over $8,000,000 in net loan proceeds received from various private institutional lenders in the five years leading up to the Petition Date; (iv) his admitted multi-million dollar gambling losses; and (v) the over $20,000,000 Kane received as compensation as a professional hockey player in the three years leading up to the Petition Date. <u>See</u> Doc. 39-1. What is more, Kane could offer no explanation or only the most vague and indefinite explanations of losses based on estimates uncorroborated by documentation such as "he must have used the money on living expenses." This is not sufficient.

Having failed in his obligations to this Court and his creditors, Kane now seeks to hide this evidence and his own testimony from this Court. Such a gambit should not be countenanced. The In Limine Motion is legally deficient, and only acts to substantiate Centennial's position as this matter approaches the Trial. The In Limine motion should be denied.

## II. ARGUMENT

**A.   KANE'S FAILURE TO COMPLY WITH THIS COURT'S TRIAL SCHEDULING ORDER**

Although Kane cites to this Court's "Trial Scheduling Order" (the "Scheduling Order") [Doc. 33], Kane failed to comply with the same. Pursuant to Section 6 of the Scheduling Order, titled "Motions In Limine," this Court directed that:

> The parties **must confer** on the evidence that will be offered at trial, see paragraph 3(G) and (H), above. Any party who wishes to exclude evidence **must** file and serve a motion in line by the date stated above. Such motion **shall include** a certification that the parties have met and conferred **in good faith as required**. Opposition must be filed by the date indicated. The court will rule on these motions at the commencement of the trial.

Doc. 33 at 5. One searches in vain for any certification that Kane met and conferred in good faith to discuss the In Limine Motion, this is because no such conference ever occurred. Instead, despite the counsel for Centennial, Kane, and Hope Parker ("Parker"), having participated in two (2) telephonic conferences to discuss Trial, witnesses, exhibits, and other matters to be included in the parties joint pre-trial statement, on December 15, 2022, and again on December 29, 2022, not once did Kane's counsel ever indicate that Kane intended to file the present In Limine Motion – let alone

seek to discuss the same. See Ghekas and Califano Declarations being filed contemporaneously herewith.

If Kane had properly conferred in good faith with counsel for Centennial in advance of filing the In Limine Motion, as required by the Scheduling Order, perhaps a discussion would have alleviated the need for Kane to burden this Court with such an unsubstantiated motion. But he did not. On this basis alone, the In Limine Motion should be denied.

**B.     STANDARD FOR DETERMINATION**

Under appropriate circumstances, motions in limine may be used to exclude inadmissible or prejudice evidence before it is actually offered. See Luce v. United States, 469 U.S. 38, 40 n.2 (1984); see also Pinal Creek Grp. V. Newmont Mining Corp., 2006 WL 1766494, at *1 (D. Ariz. June 26, 2006). However, in bench trials, it is unnecessary for a court to determine whether to exclude evidence prior to the start of trial. See Alan L. Frank Law Associates, P.C. v. OOO RM Invest, 2016 WL 9348064 (S.D. Fla. Nov. 30, 2016) (citing Cramer v. Sabine Transp. Co., 141 F.Supp.2d 727, 733 (S.D. Tex. 2001) (noting, "this is a bench trial, making any motion in limine asinine on its face"); see also Crane-Mcnab v. County of Merced, 2011 WL 94424, at *1 (E.D. Cal. Jan. 11, 2011). Moreover, Kane's request is over-broad, and therefore inappropriate for review at the motion in limine stage. See Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., 2010 WL 2035800, (C.D. Cal. May 19, 2019) (holding that motions in limine should "rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial."); see also In re Cathode Ray Tube (CRT) Antitrust Litigation, 2016 WL 7803893 at *2 (N.D. Cal. Nov. 15, 2016) ("Defendant have not placed the evidence in question before the Court, and the Court cannot rule in a vacuum"); United States v. Pacific Gas and Electric Company, 178 F.Supp.3d 927 (N.D. Cal. 2016) ("Rulings on admissibility of evidence normally should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.") (internal citations omitted). In light of the foregoing, and as more thoroughly explained below, the In Limine Motion is due to be denied.

## C. KANE'S POSITION IS FACTUALLY INACCURATE

Kane's overarching argument is that Centennial somehow failed in its efforts to obtain discovery compliance from Kane, simply because Centennial did not file any motion with this Court seeking to compel Kane's compliance with unspecified discovery requests. Doc. 41 at 6-7. Although not clear, it appears Kane is focused on his failure to produce records "beyond the two years prior to the petition date that Kane agreed to provide as evidence at trial." Doc. 41 at 7. In putative support of the same, Kane fixates on two encounters: the first, is Kane's responses and objections to Centennial's Request for Production 35-36, 38, 40, 46, and 51-53, where "Kane agreed to produce non-privileged documents from the two years prior to the petition date and that are responsive to Centennial's requests that are in Kane's possession, custody, and control, and that can be located by a reasonable search." Doc. 41 at 3. The second, is Centennial's rejection of Kane's attempts to unilaterally restrict discovery of financial documents to a two-year look back period. Doc. 41 at 4.

While Kane selectively cites to certain e-mail and letter correspondence between counsel, Kane neglects to inform this Court that in objecting to Kane's attempts to limit discovery in this action, Centennial first sought confirmation from Kane's counsel as to the basis of Kane's objection as follows:

> As for the two years that Mr. Kane has agreed to produce documents, we do not agree that this is a reasonable limitation. For starters, even the Centennial Bank and Zions' loans that are identified on Mr. Kane's schedules date back to 2018. Moreover, it appears that Mr. Kane regularly took out various loans to pay off other loans, dating back to well over two years prepetition. Understanding where this money came from and where it went, is obviously relevant to Mr. Kane's bankruptcy and the adversary. However, **before bringing this issue before the Court, are you able to confirm whether or not Mr. Kane has financial records for not only each of the accounts and credit cards identified on his schedules, but also those not identified, dating back to January 2015** – or 6 years prepetition – **or any time longer than January 2019 – the two years Mr. Kane has agreed to produce for? If Mr. Kane does not have any financial documents for the time period we are looking for than that is one thing**. But if Mr. Kane is holding back any documents either under a claim of privilege or because they are dated pre-January 2019, then we need to address this with the Court.

Doc. 42-1, Exhibit "D", March 1, 2022 e-mail from A. Ghekas to S. Finestone and R. Witthans.

(emphasis added). Two days later, on March 3, 2022, counsel for Kane responded as follows:

> I am undertaking a comparison of all statements produced to you against **all statements Mr. Kane has in his possession or control**. If I find any missing statements within the 2-year time period, then we will produce them to you promptly. For what it's worth (and we can discuss this later in detail), non-production of statements within the 2-year window is due to them not being in Mr. Kane's possession or control, rather than withholding them on privilege or other grounds. **I am in the process of verifying, but I do not believe that Mr. Kane has any statements dating prior to midway through 2019.**

Id. (emphasis added). A week later, counsel for Kane stated that:

> …we have found RBC -5963 statements from February to July of 2020 that we will be producing. We may also have a few statements from late 2019 for RBC -0532 and 05955 that I am looking into. We are attempting to gain access to the other statements (and will produce those on a rolling basis if found). Otherwise, **we will confirm that Mr. Kane no longer has access to the accounts.**

Id.(emphasis added). Another week later and Kane's counsel confirmed that "Evander … no longer has access to the accounts at Bank of America and Wells Fargo, and cannot obtain statements electronically." Id.

Thus, prior to burdening this Court with a motion to compel, Centennial first sought confirmation that Kane was not withholding documents based upon his selective two-year look back period. Kane's counsel verified that "Mr Kane [does not] have any statements dating prior to midway through 2019." Thus, despite attempting to couch it as a discovery dispute, the issue is Kane's own failure, verified by his counsel, to maintain and preserve records regarding his financial condition.

At his deposition, Kane, while under oath, verified his counsel's "confirmation." To be sure, Kane confirmed that: (i) he has no bank statements for his Wells Fargo account ending in -1607 for 2019, 2018, or any year prior to 2020; (ii) he has no bank statements for his Royal Bank of Canada account ending in 4741 predating June 26, 2020; (iii) he has no bank statements predating September 12, 2019, for his Royal Bank of Canada account ending in 05955; (iv) he has no bank statements predating September 12, 2019, for his Royal Bank of Canada account ending in -0532; (v) he does not have any documents for any year associated with his American Express credit card that is unaffiliated with any financial institution; (vi) he does not have any documents predating September

2020 for his Wells Fargo American Express account ending in 2-64004; and (vii) he has no records regarding any of his bank statements or accounts predating 2019. Doc. 39-2 at ¶26(a)-(g), Exhibit "12."

Accordingly, in light of Kane's sworn testimony and his counsel's "confirmation" that Kane did not have records regarding any of his bank accounts and credit cards predating 2019, there was nothing to bring to this Court's attention other than Kane's admitted failure to maintain and preserve adequate records regarding his financial condition – which Centennial has done. Doc. 39-1. Simply because Centennial sought the foregoing information through discovery, and Kane failed to maintain and preserve documentation and records – as was his obligation – does not transform Kane's testimony into a "discovery dispute" that is exempt from presentation at Trial. Instead, Kane's testimony regarding his failure to maintain and preserve records is highly relevant to this matter and will ultimately require a denial of discharge.[2]

**D.   KANE'S POSITION IS LOGICALLY AND LEGALLY UNTENABLE**

Kane misapprehends his obligations as a debtor seeking a discharge. As a debtor, Kane has an affirmative duty to maintain and preserve information by presenting sufficient written evidence to enable creditors to reasonably ascertain a debtor's present financial condition and to follow his business transactions for a reasonable period in the past. Caneva v. Sun Cmty. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008) (quoting Rhoades v. Wikle, 453 F.2d 51, 53 (9th Cir. 1971)); In re Brandenfels, BAP No. OR-14-1145-FJuKi, 2015 WL 5883317, at *6 (9th Cir. BAP 2015). The Ninth Circuit has stated that Section 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs." Caneva, 550 F.3d at 762 (quoting Peterson v. Scott (In re Scott), 172 F.3d 959, 969 (7th Cir. 1999); see also In re Tan, 2007 WL 7541007, at *12 (9th Cir. BAP Sep. 28, 2007) ("Keep" means to maintain a record, as in "to keep a diary."). Thus, the affirmative duty to create records means that the debtor must have

---

[2] Kane's motion does not even address his failure to maintain documentation or records, or his failure to offer any explanation, let alone a satisfactory one, regarding disposition of assets, including the over $2,000,000 he received from "friends" and "family friends", over $8,000,000 he received in net loan proceeds from various third-parties, and over $20,000,000 he received in gross compensation as a professional ice hockey player in the three years immediately preceding his bankruptcy filing. All of these are an independent basis to deny Kane a discharge under Sections 727(a)(3) and 727(a)(5).

acted to keep contemporaneous records when transactions occurred. See Hunt v. Steffensen (In re Steffensen), 534 B.R. 180, 199 (Bankr. D. Utah 2015). It is not enough for the debtor to provide records about his overall financial situation; he must also provide records adequate to allow creditors to trace all of his transaction. Brandenfels, 2015 WL 5883317, at *6.

In failing to recognize his obligations as a debtor, Kane seeks to cast blame on Centennial for somehow neglecting to bring to Kane's own attention the deficiencies in his record keeping and explanations. It is not Centennial's duty to obtain records from third-parties, but Kane's duty to have kept and preserved the records. See Zhen Chen v. United States Trustee (In re Zhen Chen), 2017 WL 4768104, at *8 (9th Cir. BAP Oct. 17, 2017); In re Artem Koshkalada, 2020 WL 2730782, at *6 (9th Cir. BAP May 26, 2020); see In re Kresock, 2020 WL 7133510, at *15 (Bankr. D. Ari. Nov. 24, 2020) (citing In re Artem Koshkalada, 2020 WL 2730782, at *6)); see also Peters V. Michael (In re Michael), 433 B.R. 214, 225 (Bankr. N.D. Ohio 2010) (Under §727(a)(3), "[a] creditor, even if they have the power to obtain the records, such as through subpoena, is not under an obligation to do so.").

The fact that Kane failed to maintain and preserve records is not a basis to preclude Centennial from offering said evidence at Trial. Instead, this is precisely what the Trial is about.

### III. CONCLUSION

Kane's effort to preclude Centennial from offering evidence, testimony, and argument regarding Kane's failure to maintain and preserve records and documentation as to his identified bank accounts and credit cards in the 6 years leading up to his filing for bankruptcy protection, represents a last-ditch effort to turn the tide on Kane's lack of record keeping that he cannot refute and has already acknowledged under oath on multiple occasions. But simply attempting to characterize Kane's lack of record keeping as a discovery dispute because Kane failed to produce documents which he did not have is disingenuous at best. The evidence and testimony – directly from Kane himself – are that he has no documents for any of his bank accounts and credit cards pre-dating 2019, and only a handful of documents for the two-years immediately preceding his bankruptcy filing. This – together with Kane's other testimony, or lack thereof, regarding his

Case: 21-05016   Doc# 43   Filed: 01/03/23   Entered: 01/03/23 17:00:30   Page 8 of 9

8

disposition of over $20,000,000 in identifiable assets and failure to maintain and preserve records regarding his receipt and use of various loan proceeds and salary – is both extremely relevant and will not cause undue prejudice to Kane. Accordingly, the same should not be excluded from trial.

DATED: January 3, 2023  ANTHONY & PARTNERS, LLC

By:     */s/ Andrew J. Ghekas*
Andrew J. Ghekas
Attorneys for Plaintiff
CENTENNIAL BANK

DATED: January 3, 2023  NIESAR & VESTAL LLP

By:     */s/ Peter C. Califano*
Peter C. Califano
Attorneys for Plaintiff
CENTENNIAL BANK